**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

JANE DOE,

*Plaintiff,*

v.                                                    Case No. 20-cv-856

BOARD OF REGENTS, THE UNIVERSITY OF
WISCONSIN, and REBECCA BLANK, as an individual,

*Defendants.*

---

**COMPLAINT**

---

Plaintiff Jane Doe ("Ms. Doe" or "Plaintiff") for her Complaint against Defendants, THE

UNIVERSITY OF WISCONSIN ("UW" or "the University") and REBECCA BLANK, states as

follows:[1]

**<u>NATURE OF THE LAWSUIT</u>**

1.      Plaintiff bring this civil rights action alleging that the University of Wisconsin

discriminated against her, in violation of Title IX, through its deliberate indifference to known

sexual violence and for itsr gender motivated failure to provide even basic due process to Plaintiff.

Plaintiff also asserts a claim against Rebecca Blank for violating her procedural due process rights

under 42 U.S.C. § 1983.

2.      Abandoning state and federal law as well as its own policies, UW succumbed to

gender-based pressures in summarily reversing a fourteen-month Title IX process to readmit a

male football player with neither notice nor due process to Plaintiff in breach of both the civil

---

[1] Due to the sensitive nature of the abuse contained herein as well as the ages of the students
involved, Plaintiff has moved this Court to permit her to proceed under the pseudonym of "Jane
Doe" and permit her to refer to the students who assaulted her as "PLAYER 1" and "PLAYER 2."

rights and school policy obligations afforded to all students at UW.  As a result, Plaintiff was denied the equal opportunity to participate in education free from harassment and discrimination.

3.     In April of 2018, Plaintiff was sexually assaulted by a male football player and fellow student at UW, PLAYER 1, while another football player, PLAYER 2, photographed.

4.     Both men were starting members of the much-celebrated UW football team.

5.     The day following the rape, Plaintiff went to the hospital for an examination and called her parents who came to Madison to be with her.  Given the physical and emotional state of their daughter, Plaintiff's parents took her back to her hometown.  The rape was then reported to UW.

6.     UW spent fourteen months investigating and resolving the reported sexual assaults, conducting an exhaustive Title IX process that afforded numerous rights and due process to all parties.

7.     In June 2019, UW finally concluded its Title IX proceedings and appeal processes and found that PLAYER 1 had sexually assaulted Plaintiff and that PLAYER 2 was responsible for sexual harassment. As a result, UW expelled PLAYER 1 from the University and PLAYER 2 was given probation with an educational requirement on sexual harassment and abuse.

8.     Through an exhaustive Title IX process and subsequent appeals, the UW Office of the Dean of Students, the Title IX Hearing Committee, the Chancellor's Office and the Board of Regents made four independent determinations that PLAYER 1 had raped Plaintiff, and that she was highly intoxicated during the assault.

9.     PLAYER 1 was also prosecuted criminally for the rape and a judge held that probable cause existed that PLAYER 1 had raped Plaintiff.  Following the final Title IX outcome,

that criminal matter went to trial and the jury found that the state failed to prove that PLAYER 1 was guilty beyond a reasonable doubt.

10.     In the wake of the verdict, a fast-spreading public call to readmit PLAYER 1 to the UW arose, stoked by PLAYER 1's counsel as well as UW employees, members of the UW football program, and members of the UW community generally.

11.     Media and social media alike were replete with gender-based smears suggesting that Plaintiff was merely an additional example of a promiscuous woman falsely accusing men of rape.

12.     Soon thereafter, PLAYER 1's counsel lobbied and pressured the Defendants to replace the school's Title IX finding with that of the criminal jury, utilizing public sentiment that the athlete must have been falsely accused.

13.     The UW, after being highly criticized for its prior Title IX finding and discipline, quickly readmitted PLAYER 1 and allowed him to rejoin the football team, violating both school policy and federal law.

14.     Plaintiff learned of this lobbying and reconsideration process only through media reports as the UW refused to provide her any information about what the school was contemplating behind closed doors.

15.     Days before the Fall 2019 semester was to begin, the UW and Chancellor Blank simply reversed the finding that PLAYER 1 had committed sexual assault and allowed him to re-enroll in the University.

16.     On information and belief, this reversal is the only one of its kind at the UW.

17.     Defendants claimed their decision was based on "new information" learned in the criminal trial, despite the fact that UW officials neither attended nor ordered a transcript of the trial.

18.     According to one administrator involved in the decision, the rushed nature of the decision was due to the impending start of the football season.

19.     As a UW student, Plaintiff thereafter suffered from a highly hostile educational environment where she was forced to walk to class in fear of running into her rapist and his accomplice.

20.     On information and belief, Defendants' actions were the result of gender bias and in response to specific and substantial gender-based pressures from the UW community as well as the media.

21.     Such gender bias and deliberately subjecting a female student to a known hostile educational environment in the interest of football is exactly the types of discrimination that Title IX was designed to prevent.

## PARTIES, JURISDICTION AND VENUE

22.     Plaintiff is an individual and brings this claim in her individual capacity.

23.     Plaintiff is a student matriculating at the University of Wisconsin.

24.     Defendant THE UNIVERSITY OF WISCONSIN MADISON ("UW" or "the University" or "the school") is a government educational institution with its primary campus in Madison, Wisconsin.

25.     UW receives federal funding in many forms, including federal student aid, and as such is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX").

26.     Defendant Rebeca Blank ("Chancellor Blank" or "Dr. Blank") is the Chancellor of the UW and is a Wisconsin resident.

27.     This Court has jurisdiction over this action under 28 U.S.C. §1331 and 28 U.S.C. §1367.

28.     Venue is proper in this Court under 28 U.S.C. §1391(b)(1) and (2).

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS
## THE SEXUAL ASSAULT OF PLAINTIFF

29.     Plaintiff Jane Doe had longed dreamed of going to college at the University of Wisconsin.  As a high school student, she worked hard to get high enough grades to give herself the chance for admission to UW.   When it finally happened, she could not have been more excited and prouder to be a Wisconsin Badger.  Tragically, the events marking the end of her freshmen year turned her dream into a nightmare.

30.     In the early morning hours of, April 22, 2018, Plaintiff was sexually assaulted by PLAYER 1.

31.     PLAYER 1 was sober the night she was assaulted while Plaintiff was heavily intoxicated.

32.     Plaintiff had been out with friends at a bar known as the "Double U."

33.     After a night of drinking, a group of students went back to the apartment of PLAYER 1 and 2.  Later that evening, Player 1 sexually assaulted Plaintiff and during which time Player 2 took photographs of Plaintiff.

34.     Due to her intoxication, Plaintiff does not recall going back to the football players' apartment.

35.     The next day, Plaintiff left Madison and went home and told her parents what had happened.  The assault was immediately reported to the UW.

36.    Plaintiff finished the semester at her parents' house out of fear of attending school with the two men.

37.    After receiving the report, the matter was assigned to the school's Title IX office that, along with the Dean of Students office, is specifically trained in the investigation and resolution of sexual assault complaints on campus.

38.    By May 2018, the Title IX office had sufficient information to begin the investigation into PLAYER 1 and PLAYER 2. The Title IX coordinator notified the players of the investigation and began inquiring of witnesses.

39.    Plaintiff was cooperative in all stages of the proceedings.

40.    To the contrary, PLAYER 1 and PLAYER 2 refused to be interviewed.

41.    Though of no help to the Plaintiff, in July 2018, the UW Athletic Department decided that the two men should be suspended from the UW football team indefinitely based upon the UW Student Athlete Discipline Policy.

42.    The day before the August 2018 UW football media day, the Athletic Department reversed that suspension and reinstated the two athletes offering no explanation.

43.    Later that month, Plaintiff was set to return to campus for the Fall 2018 academic semester.  No resolution of the matter was imminent, and no meaningful interim measures were put in place to protect Plaintiff.

44.    Meanwhile, as the media had already learned of the allegations and the football season was set to start, the tenor around campus was very hostile towards Plaintiff. Public comments in social media, news media, and University football message boards expressed very hostile and disgusting comments about the Plaintiff, including threats of physical harm.  One such

message stated that Plaintiff should be "stoned to death." As PLAYER 1 was one of the biggest stars on the football team, the hostile talk around this matter was rampant both on and off campus.

45.     Plaintiff began to withdraw from nonessential educational and various social opportunities due to the hostility and blind support for the football players.

46.     On one of the first days of class for that semester, Plaintiff was in a classroom when PLAYER 2 walked in, noticed Plaintiff, and took a seat. Though the school had instructed the PLAYERS 1 and 2 that it was their responsibility to vacate any area where the Plaintiff was located, PLAYER 2 refused to leave the classroom. The interaction left Plaintiff in a panic and she felt as though the message was being sent to her that PLAYERS 1 and 2 were not going to abide by any restrictions and that UW was not going to help her.

47.     The hostile environment on campus became nearly inescapable for Plaintiff with both PLAYERS having no restrictions other than to refrain from directly contacting her. Plaintiff began either having to walk to classes with a friend or if that was not possible, talking to her parents on the phone while she was walking. Plaintiff began avoiding certain areas of campus and altered her walking route to class to limit the likelihood of running into either men. Plaintiff would occasionally skip certain classes altogether out of fear of encountering the men.

48.     Plaintiff's fear of these two men on campus was overwhelming. On at least one other occasions, Plaintiff ran into PLAYER 2 on campus which sent her into a panic and greatly increased her anxiety and fear of walking to and from her classes.

### PLAYER 1 AND PLAYER 2 FOUND RESPONSIBLE BY UW

49.     On October 30, 2018, following a five-month investigation by the Title IX office, Assistant Dean Ervin Cox issued his written decision on the complaint. Assistant Dean Cox found

that PLAYER 1 had sexually assaulted Plaintiff and that PLAYER 2 had committed both Sexual

Harassment, a violation that would constitute a felony in criminal court.[2]

50.    In the context of these Title IX findings, Sexual Assault and Sexual Harassment are

defined by the University of Wisconsin Policy on Sexual Harassment and Sexual Violence.

51.    In finding PLAYER 1 responsible for sexual assault, the Assistant Dean's

recommended sanction for PLAYER 1 was expulsion.  In particular, Assistant Dean Cox found

that PLAYER 1's very presence on campus "would have a significant negative effect" on

[Plaintiff's] educational experience" due to Plaintiff's fear of him.

52.    The consequence for PLAYER 2's behavior was probation with requirements that

he stay out of bars, not consume alcohol underage, and complete an education program entitled

RESPECT, which is for students who have been found responsible for sexual harassment.

## AN IN-PERSON HEARING PANEL AND TWO ADDITIONAL APPEAL PANELS FIND THE PLAYERS RESPONSIBLE FOR SEXUAL ASSAULT AND HARASSMENT

53.    Following this outcome, PLAYER 1 set the matter for a hearing in front of a hearing

committee ("Committee") made up of three individuals.  All parties were present and represented

by advisors.

54.    At the hearing, despite being ordered to stay away from Plaintiff, PLAYER 1 saw

Plaintiff and began deliberately walking toward her in an effort to intimidate her.  Plaintiff's

advisor had to step in front of PLAYER 1 and stop him from physically coming in contact her.

Plaintiff suffered a panic attack as a result of PLAYER 1's behavior.

55.    At this hearing, both parties had the right to hear and respond to all evidence to be

used in the Committee's consideration and to present their own witnesses and evidence.  The

---

[2] PLAYER 2 was not charged criminally only due to an immunity agreement with the prosecution to testify in the criminal case against PLAYER 1.

committee heard from witnesses, considered all evidence provided by the parties, and accepted arguments from the parties' counsel.

56.     Plaintiff testified in person and was subject to cross examination by PLAYER 1's counsel.

57.     Conversely, PLAYER 1 skipped out of the hearing just before he was to be cross examined by Plaintiff's counsel.

58.     Following the hearing, the Committee unanimously confirmed that PLAYER 1 sexually assaulted Plaintiff.

59.     The Committee also found that a hostile educational environment had been created for the Plaintiff and that Plaintiff should not be further subjected to this hostile learning environment during the duration of her education at UW.  In essence, the Committee determined that PLAYER 1's very presence on campus created a hostile learning environment for Plaintiff.

60.     Having now been independently found responsible by both the Title IX Office and the Hearing Committee, PLAYER 1 appealed to the Chancellor's Office.

61.     Defendant Chancellor Blank reviewed all of the pertinent documents submitted by PLAYER 1 and denied the appeal, affirming the same factors that supported PLAYER 1's original disciplinary outcome.  Overall, the Chancellor found that the established record supported the findings and the Committee's decision.

62.     The Chancellor's decision also indicated that "this is the final decision in this matter" but that if PLAYER 1 wished to seek a procedural review, he would need to petition the Board of Regents.

63.     Having been found independently responsible by the Dean of Students, the Hearing Committee, and the Chancellor, PLAYER 1 next sought final review permitted in the UW process

from the Board of Regents, which assigned the matter to the specific Board Committee on Student Discipline and other Student Appeals ("Board Committee").

64.     The Board Committee conducted "careful examination of the record" and on June 7, 2019, concluded that PLAYER 1's request was denied.  In doing so, the Board Committee made over six pages of specific findings of fact all consistent with the Hearing Committee's and Chancellor's findings that the record showed that PLAYER 1 sexually assaulted Plaintiff, including but not limited to the following:

- Plaintiff was very intoxicated.

- PLAYER 1 was sober.

- Plaintiff communicated her unwillingness to engage in sexual intercourse with PLAYER 1.

65.     With the Board Committee decision, the UW process was final.

66.     The Board Committee advised PLAYER 1 that he had a right under Wisconsin law to seek judicial review of UW's decision, but PLAYER 1 chose not to.

## THE CRIMINAL VERDICT AND THE BACKLASH AT UW

67.     In the fall of 2018, The Dane County District Attorney charged PLAYER 1 with criminal sex assault.

68.     At the July 2019 trial on those charges, Plaintiff testified consistent with the information she provided to UW.

69.     PLAYER 1 and PLAYER 2 both chose to testify and did so falsely, with PLAYER 2 overtly changing his prior statement that Plaintiff was intoxicated.

70.     Applying the heightened standard of proof beyond a reasonable doubt, on August 2, 2019, the jury found PLAYER 1 not guilty.

71.     Following the verdict, massive local outcry poured into the University suggesting that the not guilty verdict meant that PLAYER 1 had been falsely accused and that he should be let back into school and allowed to play on the football team.

72.     Much of the outcry involved gender-based epithets and was directly hostile towards Plaintiff, who many now believed had lied about being raped out of regret or shame, a common gender stereotype of women who report rape.  This harassment included sexual and gender-based name calling, including calling her a "slut" and "whore," as well as verbal taunts perpetuating gender stereotypes that Plaintiff was a promiscuous liar.  The hostility towards Plaintiff ranged from threatened acts of violence such as suggesting she be "stoned to death" to calls to be imprisoned for lying. These statements showed up in comments to news articles, social media, football message/chat rooms and calls to the UW administration.

73.     Upon seeing this rise in public pressure, the UW football program also started pressuring the school with Head Football Coach Paul Chryst planting the seed that he would like to have PLAYER 1 back on the team which was then widely reported in the media.

74.     A host of UW football players also attempted to influence the school, writing a letter to the Chancellor imploring her to readmit PLAYER 1.  That letter was also widely distributed to the media.

75.     The media coverage of these hostile gender-based narratives spread quickly and pervasively.  A dominant message around the UW community was that PLAYER 1 had been wrongly expelled as an example of a school caving to the #MeToo movement and that the UW now needed to right a wrong.

76.     In addition, the UW was being openly criticized by students, alumni, donors and the media for expelling PLAYER 1 and ending his football tenure at UW.

77.     The UW was aware of and was sensitive to these criticisms and on more than one occasion, and in violation of the Federal Educational Rights and Privacy Act, ("FERPA"), publicly commented on its handling of Plaintiff's Title IX matter.

78.     At the time, UW had three separate unrelated federal investigations pending at the Department of Education's Office of Civil Rights for its poor handling of Title IX/sexual assault matters and on information and belief, was sensitive to the related criticism.

79.     As such, UW had motivation to readmit PLAYER 1 both to quell the hostility and the suggestion that it discriminates against male students on the basis of gender and also to avoid the renewal of PLAYER 1's lawsuit against UW alleging the same.

## PLAYER 1'S PETITION FOR RESTORATION OF RIGHTS

80.     In coordination with a media campaign, PLAYER 1 and his counsel sought to circumvent the fully adjudicated Title IX outcome against PLAYER 1 by submitting a "Petition for Restoration of Rights After Suspension or Revocation," a seldom used provision in the University of Wisconsin Administrative Code designed to permit disciplined students to ask to return to class.

81.     Chapter 17 of the University of Wisconsin System Administrative Code ("Chapter 17") applies to student disciplinary action throughout the University of Wisconsin System, including procedures for student nonacademic disciplinary matters.

82.     Among other provisions, UWS 17.14 provides that absent the granting of an appeal by the Board of Regents, the disciplinary decision by the Chancellor shall be final.

83.     Similarly, the University website walks UW students though all of the stages of the Title IX process -- a process which concludes with any appeal decision made by the Board of Regents.  "Appeal decisions by the chancellor or designee are final, except that the Board of

Regents may, at its discretion, grant a review upon the record, upon written request submitted by any party within 14 days of the appeal decision. The non-appealing party will receive notice of the appeal to the Board of Regents."  https://compliance.wisc.edu/titleix/student/

84.     Separately from the Title IX process, UWS 17.18 provides the school the opportunity to re-admit a student who has been suspended or expelled as a type of commutation of the punishment where appropriate.

85.     Nowhere in UWS 17.18 is the University authorized to reverse its own underlying Title IX factual findings

86.     Moreover, allowing the University to reverse its prior Title IX factual findings without providing both parties with the right to receive a written report summarizing all of the evidence collected by the University and the right to a hearing on that evidence necessitating reversal of factual findings would violate the University's own explicit Title IX procedures and policies, and the due process protections of those procedures and policies.

87.     The rights to receive a written report and right to a hearing are consistent with the then-existing guidance from the US Department of Education, which requires that in a sexual assault disciplinary matter, "[t]he decision-maker(s) must offer each party the same meaningful access to any information that will be used during informal and formal disciplinary meetings and hearings, including the investigation report" and that "[a]ny process made available to one party in the adjudication procedure should be made equally available to the other party." Department of Education, Q and A on Sexual Misconduct, page 5, September 1, 2017.

88.     Nevertheless, UW permitted PLAYER 1 to privately offer additional evidence to which Plaintiff could not respond, in violation of the University's own policies.

89.     On August 6, 2019, PLAYER 1 filed his Petition for Restoration of Rights, which contained exhibits that, although mislabeled as "evidence presented at trial," consisted almost entirely of information previously presented by PLAYER 1 during the Title IX process or other information that was in PLAYER 1's possession but which he strategically chose not to submit during the Title IX  process.

90.     According to the Chancellor, such new evidence included but was not limited to items such as:

- Select pieces of evidence from the trial;[3]

- Select text messages;

- Media accounts;

- Notes of the closing argument from PLAYER 1's attorney; and

- A lengthy written argument from PLAYER 1's attorney in support of the petition.

91.     The Chancellor also noted, however, that PLAYER 1 still refused to provide certain information requested by the Chancellor and only submitted self-selected material.

92.     The Petition itself extensively focused on gender-based stereotyping and shaming. The Petition also relief upon gender-based animus in making irrelevant allegations pertaining to sexual history and sexual preferences, something prohibited in the University's Title IX process.

93.     Meanwhile, the school was still receiving pressure from the media and broader UW community including pressure from at least one significant donor to readmit the star football player.  Social media members were also posting the phone number to Chancellor Blank's office

---

[3] No actual evidence from the trial was submitted.

so members of the public could call in and "express their outrage" that PLAYER 1 was still expelled, along with other gender-based comments calling Plaintiff a"Lying Whore."

94.     On August 12, 2019, PLAYER 1, his attorneys, and 18 members of the UW football team, held a press conference to place further pressure on the University announcing their petition to seek PLAYER 1's reinstatement.

95.     Still, the University did not even notify Plaintiff that it was considering additional "new" evidence and contemplating allowing PLAYER 1 to return to the school and its football program.

96.     While the Petition for Restoration of Rights was pending, Plaintiff's Title IX advisor contacted the UW Chancellor's office asking for information about what was going on. The advisor was informed that Plaintiff and her advisor were not allowed to participate in any pending process and that she was not entitled to have or respond to any new information provided by PLAYER 1.

## UW VIOLATES THE ATHLETIC DEPARTMENT DISCIPLINE POLICY TO GET PLAYER 1 BACK ON THE FIELD

97.     Despite UW's motivation to readmit PLAYER 1, merely readmitting him to the school would not have made him eligible to return to play for the football team.

98.     On information and belief, rejoining the football team was the only reason that PLAYER 1 wanted to return to UW and the only way that Defendants could end the pressure being placed on them.

99.     According to the UW Student Athlete Discipline Policy, a student must be suspended from all team activities if there has been a finding of sexual assault.

100.    The policy and related mandatory suspension apply where:

"A student-athlete is found responsible either by the Office of Student Conduct and Community Standards (if the student-athlete waives the student-athlete's right to a subsequent hearing under Chapter UWS 17) or by the hearing committee or examiner under Chapter UWS 17 (if the student-athlete proceeds to the hearing) for misconduct, where the sanction is either suspension or expulsion."

101.    "Sexual assault" carries a sanction of suspension or expulsion at UW.

102.    Though in some conduct matters under the policy, the Athletic Department may make its own inquiry and findings, in the case of sexual assault the department must rely on the findings from the Title IX process.  "The Athletic Department shall not conduct independent investigations or make findings in cases involving allegations of sexual harassment or sexual violence and, instead, will defer to the findings of the investigation conducted by the Title IX Coordinator (or designee)."

103.    Thus, granting PLAYER 1 a restoration of rights to attend UW, was not enough to get him back on the football team.

## THE PROCESS WAS CUT SHORT DUE TO THE LOOMING FOOTBALL CALENDAR

104.    School Vice President of Legal Affairs Ray Taffora was a part of the Chancellor's team that considered the Petition.

105.    As the administration did not have anyone present in the criminal trial, Mr. Taffora had to verify the "new evidence" now being offered by PLAYER 1 via a transcript of the proceedings.

106.    On August 12, 2019, in response to media coverage of PLAYER 1's Petition, the University publicly tweeted the following statement,

"UW-Madison is committed to performing a complete and thorough review of any petition for reinstatement that it receives. In most cases this involves a full review

16

of all relevant court records, which in this case were not provided in the petition. We are working to gather this information currently and will complete our review of the petition as quickly as possible once we have it.  No decision on this matter has been made at this time."

107.    This tweet went out publicly to the media while the University still chose to not even notify Plaintiff that her 14 month Title IX outcome was being reconsidered.

108.    The very next day, Mr. Taffora called the court reporter who presided over the criminal trial insisting on a rushed transcript.  The Court reporter informed him that he would provide a transcript, but it could not be rushed as there were other transcript requests that either predated Mr. Taffora's or had higher priority such as defendants serving prison time for their convictions.

109.    Mr. Taffora next called the Office of the District Attorney with some urgency and spoke with Deputy District Attorney Bill Brown and demanded that Brown give him a summary of the trial.  Mr. Brown refused and indicated that Mr. Taffora would have to order a transcript.

110.    Mr. Taffora stated to Mr. Brown that the University could not wait for an actual transcript because football season was about to start.

111.    On August 19, 2019, and without having so much as ordered the trial transcript, the University not only granted PLAYER 1's Petition to come back to school, but also reversed the underlying Title IX finding of sexual assault, thus clearing the way for PLAYER 1 to return to the football team.

112.    Notably, in reversing the outcome, the school did not conclude that the rape never occurred. Instead, UW's new official determination was that by the preponderance of the evidence, the Title IX matter was somehow "incapable of resolution" Functionally, the UW determined that the preponderance of the evidence showed neither a sexual assault nor the lack of a sexual assault.

17

113.    Left in place however was the separate determination that PLAYER 1 had sexually *harassed* Plaintiff.   For that count of sexual harassment that Defendant Chancellor Blank previously acknowledged "had the effect of creating a hostile environment for [Plaintiff]," UW imposed no further sanction, not even the "RESPECT" educational program.

## THE FIRST AND ONLY NOTICE TO PLAINTIFF

114.    Plaintiff, having heard nothing from the school since the final Title IX outcome in early June, 2019, received a new notice on August, 19, 2019, from the University notifying her that PLAYER 1 had petitioned the school for readmission, submitted new evidence and that the Chancellor had reversed the Title IX findings on sexual assault.   The University sent this notice to Plaintiff at the same time that it sent out a press release announcing its decision.   The press release, which violated Plaintiff's student privacy rights under "FERPA," was designed for no legitimate purpose other than to quell the gender-hostile pressure on the school.

115.    On information and belief, the Chancellor's decision to overturn a Title IX finding of rape and readmit a student through a Petition for Restoration of Rights is the only decision of its kind at the UW.

116.    Shortly after the Chancellor's decision, PLAYER 1 publicly celebrated and expressed gratitude that he was now able to continue at the University, which itself received very favorable press and public comments.   Editorials such as "Blank made the right decision" and "In [PLAYER 1's] case, Wisconsin is one program doing things the right way" showered praise on the school for righting the publicly perceived wrong, as did comments to the articles and social media.

117.    Meanwhile, due to UW's reversal of the finding of sexual assault, Plaintiff was harassed for what was now labeled a false allegation.  On August 22, 2019, a friend of PLAYER 1 messaged Plaintiff threatening that she was lucky that the friend didn't know her real identity until after the trial."

118.    Meanwhile, PLAYER 1 stated to the press "I'm ready to win football games and start back getting my education and I expect to do it at a very high level."[4]

## HOSTILE EDUCATIONAL ENVIRONMENT

119.    The Chancellor's ex parte and unprecedented decision to re-admit PLAYER 1 could not have come at a worse time for Plaintiff, as the fall 2019 semester was days away from beginning.  As previously stated, and noted by the Dean of Students, Plaintiff greatly feared being on campus with the two men involved with her rape.

120.    Due to the Chancellor's timing in deciding on PLAYER 1's Petition, Plaintiff did not have time to transfer schools before the start of the academic year just days away and was forced to either to attend school with her assailant or leave school.

121.    After great consideration, Plaintiff returned for her third year of school.  The very day Plaintiff returned to campus, she ran into PLAYER 2 in her building and was terrified.

122.    Plaintiff and her Title IX advisor met with school officials and the UW Police Department to ask what the school could do if she again ran into one of the Players or experienced retaliation from other students.  The school officials refused to help her in any way.  The clear

---

[4] A few days following the football team's bowl game that season, PLAYER 1 dropped out of the University and entered the NFL draft.

message to Plaintiff was that the school was not there to help her.  She was told in that meeting that if she needed help, she should call the police.

123.    The remainder of the fall of 2019 was miserable for Plaintiff.  After running into PLAYER 2 on her first day back to school in her apartment building and being told that the school would do nothing to help her, Plaintiff limited her activities and presence on campus in fear of running into PLAYER 1 or PLAYER 2.

124.    PLAYER 1 was again a star of the football team and led the team in receptions, gaining constant adulation and praise in the media.

125.    Just as the Dean of Students' findings had stated, Plaintiff's educational environment and daily existence at UW was now extremely hostile.

126.    As a result of her fear of PLAYER 1 on campus, Plaintiff was forced to miss classes out of fear of PLAYER 1, avoid areas of campus out of fear, ask friends to escort her while walking to classes or calling her parents to have them on the phone if no one could walk with her.  Plaintiff was also living in a constant state of stress as a result which required her to work harder and longer hours to attain the same grades and take a lower course-load.  Plaintiff will now likely require an additional semester to complete her degree.

## FACTS IN SUPPORT OF DUE PROCESS CLAIM AGAINST DEFENDANT BLANK

127.    UW Madison's legal relationship with its students is contractual in nature.  *Doe v Purdue*, 928 F.3d 652, 660 (2019).

128.    Communicated to all prospective students, including Plaintiff, the UW states in their application materials that "The UW System is committed to equal opportunity for all. No student may be denied admission to, participation in or the benefits of, or be discriminated against

in any service, program, course or facility of the system or its institutions because of the student's race, color, creed, religion, sex, national origin, disability, ancestry, or age"

129.    In developing a series of Title IX policies in conjunction with the UWS Code on Student Discipline, students at UW are promised a non-discriminatory educational environment.

130.    The UW is bound by both their policies and Chapter 17 of the UWS Code and has made promises to all students that it follows the same.

131.    The UW Policy on Discrimination, Harassment, and Retaliation provides, "The purposes of this policy are to: express the Board of Regents' commitment to providing an environment free of discrimination, harassment, and retaliation; codify in Board of Regents policy the statutory prohibitions against discriminatory conduct; and assign oversight responsibility."

132.    The UW Policy on Discrimination, Harassment, and Retaliation also cites to Wisconsin state law that provides that "No student may be denied admission to, or participation in or the benefits of, or be discriminated against in any service, program, course or facility of the UW System or its institutions on the basis of race, color, creed, religion, age, sex, sexual orientation, gender identity or expression, national origin, ancestry, disability, pregnancy, marital or parental status, or any other category protected by law, including physical condition or developmental disability as defined in Wisconsin Statutes §51.01(5)."

133.    Additionally, in the UW-Madison Policy on Sexual Harassment and Sexual Violence disseminated to all students including Plaintiff, the UW commits "to creating and maintaining a campus community that is free from sexual harassment and sexual violence."

134.    In exchange for these promises, among others, Plaintiff along with many other UW students, with the help of federal student-aid, pay the University substantial moneys for her tuition and fees at the University.

135.    Additionally, in response to these promises regarding sexual harassment and discrimination, UW students agree not to violate the UWS Code, including prohibitions against sexual harassment.

136.    The UWS Code and its procedures are provided generally to the students via the school's website and specifically to each student, including Plaintiff, via email at the start of her or his education and at various points throughout her or his time at the UW.

137.    On information and belief, the same references are provided to students in mandatory sexual assault and dating training required for all new UW students.

138.    Also, under the school's policies, students who make complaints about sexual assault, including Plaintiff, are promised the same rights under the school procedures as those held by any accused student.

139.    Included in those guaranteed rights, the students are entitled to be provided 1) a written report which must include a written description of all the information available to the university, and 2) a hearing on that information.

140.    At such a hearing, the students have the right to be heard on the matter, to question witnesses relevant to the information gathered by the University, and to provide their own information or witnesses.

141.    The UW breached the above-described promises to Plaintiff by withholding all evidence from Plaintiff upon which the UW and Chancellor Blank relied when it and she considered PLAYER 1's Petition.

142.    The UW Title IX policies also specifically state that the result of any disciplinary outcome is final following a student's appeal to the UW Board of Regents.

143.     The UWS Code more specifically provides that in regard to proceedings involving the presentation of any evidence, the right to respond to evidence, question witnesses, present witnesses, and have the student's advisor question witnesses, "a complainant shall have all the same rights as the respondent in this subsection."  UWS 17.11(2)

144.     There is no provision in either the UWS code or the UW Title IX policy that allows for one party, during any phase of the process, to provide any evidence that is kept secret from the other party.

145.     Also, through the Title IX Process policy and the UW-Madison Policy on Sexual Harassment and Sexual Violence, the UW commits to students, prospective students and their parents alike, that they are committed to providing a non-sexually hostile environment for their students.

146.     The UWS Code assures that "The missions of the University of Wisconsin System and its individual institutions can be realized only if the university's teaching, learning, research and service activities occur in living and learning environments that are safe and free from violence, harassment, fraud, theft, disruption, and intimidation. In promoting such environments, the university has a responsibility to address student nonacademic misconduct." Chapter UWS 17.01.

147.     In addition, all incoming students including Plaintiff, receive a Security and Safety Report from the Associate Vice Chancellor's office providing them with the school's disciplinary policy and procedures, including the policies at issue in this case.  The Safety Report from that office provides a detailed breakdown of the policies in UWS Chapter 17 which include a) a timeline of the number of days that each step is expected to take including all stages of the appeal process, b) that both the complaining students and accused students have equal right to provide

and respond to evidence presented by the other party, and that any outcome of an appeal to the Board of Regents is the final decision in the matter. UWS 17.18 is noticeably not mentioned.

148.     In August of 2018, Plaintiff was also advised through an email from the Vice Chancellor of Student Affairs, Lori Reesor, of the UW's revamped 2018 Sexual Harassment policy.[5]  The revamped policy language further advised Plaintiff of all reporting and disciplinary processes for such matters.  The advisement makes no reference to a Petition for Restoration of Rights as being a part of such process.

149.     The aforementioned UW policies and procedures, together with University's obligation to comply with Chapter 17 of the UWS Code, constituted contractual obligations and promises by UW to the Plaintiff.

150.     By virtue of excluding Plaintiff entirely from information and participation in the school's "rehearing" of the Title IX findings, and the Chancellor's decision regarding PLAYER 1's petition, the UW breached its contractual obligations and promises to Plaintiff, causing her damages in the form of impact to her education and emotional distress.


**FIRST CLAIM FOR RELIEF**
**Violation of Title IX, 20 U.S.C. § 1681(a) -**
**Deliberate Indifference - Against the UW**

151.     Plaintiff incorporates the preceding paragraphs by reference.

152.     UW, as a public university, receives federal funding and is therefore subject to the conditions set forth in Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

---

[5] Sexual Assault and Rape are considered by the UW as well as the US Department of Education to be extreme forms of Sexual Harassment.

153.     Defendants were on actual notice of extreme gender-based harassment in the form of sexual assault following Plaintiff's report and cooperation with the UW Title IX office which was subsequently reviewed by defendants during PLAYER 1's appeals.

154.     Following the not guilty verdict at PLAYER 1's criminal trial, Defendant UW faced significant gender-based public and internal pressure to re-admit PLAYER 1 and reverse the sexual assault finding to permit him to play men's football.

155.     As a result of this pressure, Defendant UW initiated, adjudicated, and implemented a new and unauthorized disciplinary finding and outcome, finding PLAYER 1 *not* responsible for two counts of sexual assault.  Plaintiff was wholly excluded from that process in violation of UW Title IX policies and procedures, as well as the UWS Code.

156.      Reversing not only the outcome of expulsion but also the underlying Title IX finding of sexual assault based upon a process hidden from Plaintiff was clearly unreasonable where four prior determinations that involved all parties over a fourteen-month time frame found that PLAYER 1 had sexually assaulted Plaintiff.

157.     The discriminatory process was implemented to quell rampant gender-based animus and return PLAYER 1 to the men's football program.

158.     Such behavior by the UW subjected Plaintiff to discrimination on the basis of sex and made her more vulnerable to further harassment and abuse by requiring her to either attend school in a clearly hostile educational environment or abandon her education at the UW entirely. The UW has acknowledged that the very presence of PLAYER 1 and PLAYER 2 on campus created a hostile educational environment for Plaintiff.

159.     As a result of the UW's gender-based discrimination, Plaintiff has been forced to suffer from a hostile educational environment created by UW which led to forego educational opportunities such as classes, on campus academic resources, and extracurricular activities.

160.     The UW's decision to re-admit PLAYER 1 to the detriment of Plaintiff constituted deliberate indifference to gender-based harassment.

161.     Plaintiff has suffered damages as a result of the UW's violations of Title IX in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### Violation of Title IX, 20 U.S.C. § 1681(a)-Discrimination on the Basis of Gender
### Erroneous Outcome - Against the UW

162.     Plaintiff incorporates the preceding paragraphs by reference.

163.     The UW, as a public university, receives federal funding and is therefore subject to the conditions set forth in Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

164.     Following the not-guilty verdict at PLAYER 1's criminal trial, Defendant UW faced significant gender-based public and internal pressure to re-admit PLAYER 1, reverse the sexual assault finding, and permit him to play men's football.

165.     As a result of this pressure, Defendant UW initiated, adjudicated, and implemented a new and unauthorized disciplinary finding and outcome while wholly excluding Plaintiff from the process in violation of UW Title IX policies and procedures, as well as the UWS Code.

166.     Reversing not only the sanction of expulsion but also the Title IX finding of sexual assault based upon a process hidden from Plaintiff, in violation of school policy and practice,  due to specific gender-based pressure and to aid the UW men's football team, created an erroneous outcome after four prior determinations found that PLAYER 1 had sexually assaulted Plaintiff.

167.     The discriminatory process was implemented to quell rampant gender-based animus and return PLAYER 1 to the men's football program.

168.     Such behavior by Defendant UW subjected Plaintiff to discrimination on the basis of sex and made her more vulnerable to further harassment and abuse by requiring her to either attend school in a hostile educational environment or abandon her education at UW entirely.  UW has acknowledged that the very presence of PLAYER 1 and PLAYER 2 on campus created a hostile educational environment for Plaintiff.

169.     As a result of Defendant's gender-based discrimination, Plaintiff suffered from a clearly hostile educational environment created by UW which led her to forego educational opportunities such as classes, on campus academic resources, and extracurricular activities.

170.     Defendant UW's decision to re-admit PLAYER 1 to the detriment of Plaintiff was the result of deliberate discrimination against Plaintiff on the basis of her gender.

171.     Plaintiff has suffered damages as a result of UW's violations of Title IX in an amount to be proven at trial.


**THIRD CLAIM FOR RELIEF**
**Procedural Due Process Violation Under 42 U.S.C. § 1983 Against Chancellor Blank**

172.     Plaintiff incorporates the preceding paragraphs by reference.

173.     In her role as Chancellor of a public state university, Chancellor Blank was at all times acting under the color of state law.

174.     Plaintiff had legally protected property rights based upon obligations and promises made by the UW under its Title IX policies, trainings, and the UWS Code to a continued education free from discrimination and sexual harassment and to full and fair access to a disciplinary process designed to remedy and/or prevent that harassment and discrimination.

27

175.     The UW Policy on Discrimination, Harassment, and Retaliation provides that "[t]he purposes of this policy are to: express the Board of Regents' commitment to providing an environment free of discrimination, harassment, and retaliation; codify in Board of Regents policy the statutory prohibitions against discriminatory conduct; and assign oversight responsibility."

176.     The UW Policy on Discrimination, Harassment, and Retaliation also cites to Wisconsin state law that provides that "[n]o student may be denied admission to, or participation in or the benefits of, or be discriminated against in any service, program, course or facility of the UW System or its institutions on the basis of race, color, creed, religion, age, sex, sexual orientation, gender identity or expression, national origin, ancestry, disability, pregnancy, marital or parental status, or any other category protected by law, including physical condition or developmental disability as defined in Wisconsin Statutes §51.01(5)."

177.     Communicated to all prospective students, including Plaintiff, the UW states in its application materials that "[t]he UW System is committed to equal opportunity for all. No student may be denied admission to, participation in or the benefits of, or be discriminated against in any service, program, course or facility of the system or its institutions because of the student's race, color, creed, religion, sex, national origin, disability, ancestry, age."

178.     As set forth above, through its website, mandatory student trainings, and literature disseminated by the UW to its students, the University formed a contract with Plaintiff in which it promised certain procedural protections outlined in the UWS as well as an educational environment free from discrimination on the basis of gender.

179.     By virtue of Chancellor Blank's actions in controverting the Title IX investigation and disciplinary process in order to improperly re-admit PLAYER 1 without any notice to or

involvement of Plaintiff, Plaintiff was deprived of these legally-protected entitlements without due process of law.

180.     Chancellor Blank's discriminatory decision was motivated by gender as it was in direct response to and designed to quash the public gender-based animus fueled by the not guilty verdict in the criminal case as well as the desire to benefit and succumb to the pressure of the men's football team.

181.     In particular, due process was not afforded to Plaintiff as doing so would have prohibited PLAYER 1 from starting the men's football season, which would have triggered significant further outrage and pressure from the community.

182.     Plaintiff was consigned to an educational environment filled with fear and trepidation, not knowing when she might encounter her assailant and not able to trust that the University would make any effort to help her.

183.     Plaintiff was promised an equal right to the disciplinary process but was forced instead to watch in silence as the Chancellor Blank reversed the four previous Title IX findings and welcomed the assailant back with open arms in a display that, given the already-hostile atmosphere surrounding her, created an environment in which Plaintiff was regarded as a liar and subjected to gender-based slurs and threats.

184.     The right to a fundamentally fair grievance procedure to determine the outcome of the grievance process was clearly established at the time of Chancellor Blank's actions.

185.     The right to attend school free from a known hostile educational environment was clearly established at the time of Chancellor Blank's actions.

186.     Plaintiff suffered significant damages as a result of these violations of 42 U.S.C. § 1983, as set forth above.

## PRAYER FOR RELIEF

On her claims for relief, Plaintiff seeks the following:

A.      An award of damages to be determined at trial, including, without limitation, reimbursement and prepayment for all of Plaintiff's expenses incurred as a consequence of the Defendants' actions; damages for deprivation of equal access to the educational benefits and opportunities provided by UW; and damages for past, present and future emotional pain and suffering, and  enjoyment of life in an amount to be determined by the jury;

B.      An award of punitive damages under 42 U.S.C. § 1983 with respect to Defendant Chancellor Blank;

C.      Statutory and mandatory pre- and post-judgement interest on all sums awarded;

D.      Injunctive relief in the form of reversing the Chancellor's discriminatory action and reinstating the Title IX finding of sexual assault against PLAYER 1.

E.      An award of costs and attorney fees (pursuant to 42 U.S.C. § 1988(b)); and

F.      Any other relief as is proper.

**PLAINTIFF DEMANDS A JURY TRIAL OF ALL ISSUES SO TRIABLE**

Dated:  September 15, 2020

Respectfully submitted,

HUTCHINSON BLACK AND COOK, LLC

By:   *Pro Hac Vice Admission Forth Coming*
    John Clune
    Christopher Ford
    Lauren Groth
    921 Walnut Street, Suite 200
    Boulder, CO  80302
    (303) 442-6514
    clune@hbcboulder.com
    ford@hbcboulder.com
    groth@hbcboulder.com


DAVIS AND PLEDL S.C.

By:   */s/ Robert Theine Pledl*
    Robert (Rock) Theine Pledl
    Victoria L Davis Davila
    1433 N Water Street, Suite 400
    Milwaukee Wi 53202
    (414) 488-1351
    rtp@davisandpledl.com