IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JANE DOE,

       Plaintiff,

    v.                        Case No. 20-CV-856

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM
AND REBECCA BLANK,

       Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................1

ALLEGED FACTS .................................................................................4

LEGAL STANDARD..............................................................................6

ARGUMENT ..........................................................................................7

    I.    Doe did not state a Title IX claim. ...............................................7

        A.    Title IX of the Education Amendments ................................7

            1.    Title IX liability requires the *recipient*'s action or inaction to be clearly unreasonable – a recipient cannot be held vicariously liable ...............................9

            2.    Title IX liability requires funding recipients to exercise some control over the harasser and context in which it occurs ......................................... 10

            3.    Courts should refrain from second guessing disciplinary decisions made by school administrators............................................................ 11

        B.    Doe's claims fall short of meeting Title IX's requirements ...................................................................... 13

            1.    Only discrimination and harassment that rises to the level of being severe, pervasive, and objectively offensive is actionable against the Board ...................................................................... 13

            2.    The Board acted swiftly and appropriately upon learning of the harassment. ...................................... 15

        C.    Reinstating PLAYER 1 following the not guilty jury verdict was reasonable ........................................ 21

    II.    Doe did not state a due process claim........................................... 25

A.  Doe does not have a property interest in general university policies, rules, and handbooks. ......................... 25

B.  Doe does not have a property interest in adherence to the nonacademic misconduct procedures. ......................... 28

C.  Doe does not have a property right in maintaining the disciplinary decision originally handed to PLAYER 1 ....... 29

D.  Individuals aggrieved by a final agency decision may appeal the decision under Chapter 227 of the Wisconsin Statutes ............................................................ 31

III.  Chancellor Blank is entitled to qualified immunity because no case clearly establishes a person granting a petition for restoration of rights violates due process .................................... 33

CONCLUSION .............................................................. 35

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JANE DOE,

   Plaintiff,

  v.          Case No. 20-CV-856

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM
AND REBECCA BLANK,

   Defendants.

---

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS**

---

### INTRODUCTION

This case is about the decision to readmit a student (called PLAYER 1 in the Complaint) to the University of Wisconsin-Madison (UW) after he was acquitted of sexual assault charges via jury trial. Plaintiff Jane Doe alleges two categories of claims: (1) violations of Title IX of the Education Amendments—on both deliberate indifference and erroneous outcome grounds—against the Board of Regents of the University of Wisconsin System (Board); and (2) violations of the Fourteenth Amendment right to procedural due process against UW Chancellor Rebecca Blank, brought via 42 U.S.C. § 1983. Both

claims should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Doe's first Title IX claim alleges deliberate indifference to gender-based harassment. It appears to be based on the UW's decision to re-admit PLAYER 1 despite Doe's assertions that she had been subject to gender-based harassment—both in the alleged assault itself and in public shaming that occurred over social media. Doe also appears to allege the UW's decision to readmit PLAYER 1 constituted gender-based harassment, particularly because the UW did not involve Doe in the decisional process. (Dkt. 1, ¶¶ 153-57.) Doe alleged PLAYER 1's return to campus created a hostile educational environment for her. But Doe's complaint fails to state a claim for deliberate indifference under Title IX because she pled facts proving the UW's actions in response to Doe's allegations were not unreasonable under the circumstances. According to the complaint, upon learning of the alleged assault, the university instituted Title IX proceedings, issued no contact orders, determined both respondents were responsible for nonacademic misconduct, expelled PLAYER 1, and placed the other respondent, PLAYER 2, on probation.[1] (Dkt. 1 ¶¶ 38, 46, 51-52.)

---

[1] The Defendants neither confirm nor deny Doe's allegations related to the alleged discipline. The Defendants accept these facts as true, as they must, to comply with the legal standard at issue here. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citations omitted).

Doe's second Title IX claim alleges the UW's reversal of its sexual assault finding and expulsion decision constituted an "erroneous outcome" of the Title IX proceedings. This is based on Doe's allegations that the reversal process was hidden from Doe, violated school policy and practice, and "was implemented to quell rampant gender-based animus and return PLAYER 1 to the men's football program." (Dkt. 1 ¶¶ 166-67.)

This claim should be dismissed because there are no facts to suggest the Board or the Chancellor was motivated by gender bias. Doe's complaint conclusively establishes the UW adhered to procedures outlined in the Wisconsin Administrative Code in readmitting PLAYER 1, and it alleged why the UW changed the Title IX outcome: PLAYER 1 petitioned for restoration of rights after the jury's not guilty verdict, PLAYER 1's attorney's provided additional information that surfaced during trial, and the public applied pressure to readmit a star football player. (Dkt. 1 ¶¶ 70, 73-76, 84, 89-90, 106.) Regardless of whether these allegations are true, Doe has pled herself out of court.

Doe's third claim is against Chancellor Blank and alleges Blank violated Doe's due process rights when Blank readmitted PLAYER 1 to UW after PLAYER 1 was acquitted at trial. This claim must be dismissed because Doe did not point to a property or liberty interest implicated, Doe's exclusive means of challenging an agency decision based on irregular procedure is under the

Wisconsin administrative procedure act, and Blank is entitled to qualified immunity. No clearly established law holds that a university official violates the Constitution when she readmits a student, who had been expelled for alleged misconduct, when that student is acquitted for the same conduct at trial.

This case illuminates the steep challenges the UW faced in complying with Title IX's mandate to expeditiously adjudicate Doe's claim while defending a motion for a preliminary injunction by PLAYER 1 seeking to halt those very proceedings.[2] At all stages, the Board and Chancellor acted reasonably and fairly in balancing the rights and interests of Doe, the complainant, and PLAYER 1, the respondent, despite the pressures of public opinion and despite the prospect of a lawsuit by both parties.

## ALLEGED FACTS[3]

In April of 2018, Jane Doe and her friend reported to police and to the UW that they were sexually assaulted by UW football player, PLAYER 1, and sexually harassed by a second UW football player, PLAYER 2. (Dkt. 1 ¶¶ 4-5.)

---

[2] See WIWD Case No. 18-CV-1832 *Cephus v. Univ. of Wisc. Bd. of Regents et al*, seeking a preliminary injunction to halt Title IX proceedings and alleging Fourteenth Amendment due process and equal protection violations.

[3] All facts, unless otherwise noted, are taken directly from the Complaint. For the purpose of this motion, the facts are accepted as true, as they must be under the applicable legal standard. This brief does not affirm nor deny the alleged facts, particularly with respect to those allegations related to student education records, including but not limited to disciplinary decisions.

Following an investigation and Title IX student misconduct proceedings, (and according to the Complaint) the UW found PLAYER 1 responsible for sexually assaulting Doe and expelled him from UW Madison. The UW found PLAYER 2 responsible for sexual harassment and placed him on probation. (Dkt. 1 ¶ 7.) In the meantime, the Dane County district attorney's office criminally charged PLAYER 1 for the same incidents. *See* Dane County Case Number 18-CF-1694. On August 2, 2019, following a jury trial, PLAYER 1 was acquitted of sexual assault charges.[4] (Dkt. 1 ¶ 9.)

After the jury's no-guilty verdict, there was a "fast-spreading public call to readmit" PLAYER 1, as expressed in the media, by PLAYER 1's attorneys, and by the UW football team. (Dkt. 1 ¶¶ 10, 12.) Some media and social media contained gender-based smears about Doe. (Dkt. 1. ¶ 11.) PLAYER 1 petitioned the UW for restoration of rights under the Wisconsin Administrative Code. The Chancellor reviewed the petition, determined the previous finding of responsibility for sexual assault was now inconclusive, readmitted PLAYER 1, and allowed him to return to the football team. (Dkt. 1. ¶¶ 15, 95, 112.)

---

[4] This court can take judicial notice of the date and outcome of the jury trial, as published on the Wisconsin Circuit Court Access website. *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994) (finding public court documents judicially noticeable)).

From these facts, Doe asserts the Board was deliberately indifferent to known sexual harassment and intentionally discriminated against her because of sex. She further asserts Chancellor Blank violated her right to procedural due process when she rescinded findings of sexual assault and readmitted PLAYER 1 to the UW.

## LEGAL STANDARD

The Supreme Court has held Title IX peer-on-peer harassment cases can be decided as a matter of law: "In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not "'clearly unreasonable'" as a matter of law. *Davis v. Monroe Cnty. Bd. of Edu.,* 526 U.S. 629, 649 (1999).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss tests the sufficiency of the complaint; it does not determine the merits of the lawsuit. *See Triad Assocs., Inc. v. Chi. Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989). To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).

Deciding a motion to dismiss, courts must accept the factual allegations as true, *see id.* at 572, in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). However, a complaint cannot simply contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must include specific allegations that, if true, make the plaintiff's claim for relief more than speculative. *See Twombly*, 550 U.S. at 555; *Houlihan v. City of Chicago*, 871 F.3d 540, 554 (7th Cir. 2017) ("[S]peculation cannot defeat summary judgment."); *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors").

## ARGUMENT

## I.    Doe did not state a Title IX claim.

### A.    Title IX of the Education Amendments

Title IX of the Educational Amendments of 1972 state that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). An educational institution that receives federal funds, and is

thus subject to Title IX, is referred to as a "recipient." *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 468 (1999).

In 1999, the U.S. Supreme Court decided *Davis v. Monroe County Board of Education*, which recognized a private suit for money damages under Title IX against a school district arising from peer-on-peer harassment. 526 U.S. at 633. Under *Davis*, liability against a recipient can only attach when the "recipient acts with deliberate indifference to known acts of harassment in its programs or activities," and when the sexual harassment "is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id. Davis* and its progeny are steadfast in their narrow allowance of liability for peer-on-peer sexual abuse. *Davis*, 526 U.S. at 640-41; *Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 911 (7th Cir. 2020).

Analyzing whether a funding recipient was deliberately indifferent, three separate but related precepts are relevant here. To be liable for damages, the recipient's actions must have been clearly unreasonable under the circumstances; the recipient cannot be held vicariously liable for the conduct of others. In addition, the recipient must have exercised some control over the harasser or the context in which the harassment occurred. Finally, courts should refrain from second-guessing the disciplinary decisions of school administrators.

### 1. Title IX liability requires the *recipient*'s action or inaction to be clearly unreasonable – a recipient cannot be held vicariously liable

Peer-on-peer Title IX cases hold that liability for damages against recipients asks only whether the *recipient*'s actions were "clearly unreasonable" under the circumstances, even when underlying case facts involve sexual violence and sexual harassment that describe horrific stories of victimization. *N.K. v. St. Mary's Springs Acad. of Fond Du Lac Wisconsin, Inc.,* 965 F. Supp.2d 1025, 1035 (E.D. Wis. 2013). In this case, Doe's allegations detail a sexual assault by a star football player, an explosion of media attention surrounding the assault allegations, vilification of Doe over social media, a criminal trial and not guilty verdict that garnered media attention, death threats toward Doe, and calls to reinstate her abuser to the university and the football team. (Dkt. 1 ¶¶ 33, 71-76.) Doe alleged this experience had devastating effects on her mental health and ability to complete her education. (Dkt. 1 ¶¶ 45-48, 119-126.) But in determining whether the complaint states a claim for relief, the law maintains a laser-like focus on whether the recipient's conduct—and not anyone else's—causes harm. *Pogorzelska v. VanderCook Coll. of Music,* 442 F. Supp. 3d 1054, 1062 (N.D. Ill. 2020).

9

Thus, the recipient's liability is not based on agency principles[5]; it is based solely on its own actions (or inactions) upon receiving actual knowledge that a student is being victimized at school. *Id.* at 642-43; *see also Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998) (holding the school district was liable for its own "official decision . . . not to remedy the violation."). In other words, "a school cannot be held vicariously liable." *N.K.,* 965 F. Supp. 2d at 1034. Likewise, the Court expressly disavowed a requirement that schools fix, remedy, or prevent peer harassment. *Davis*, 526 U.S. at 642-43, 648. The deliberate indifference standard asks only whether the recipient's response to known sexual harassment was "clearly unreasonable." *Davis*, 526 U.S. at 648. If the plaintiff's complaint establishes the recipient's actions were *not* clearly unreasonable, as Doe's complaint does, the complaint must be dismissed. *Pogorzelska,* 442 F. Supp. 3d at 1062 (citing *Davis*, 526 U.S. at 649).

### 2. Title IX liability requires funding recipients to exercise some control over the harasser and context in which it occurs

Suits for damages against schools alleging deliberate indifference to peer-on-peer harassment require the plaintiff to clear a high bar. That is

---

[5] The Supreme Court expressly distinguished liability for sexual harassment that can exist under Title VII of the Civil Rights Act. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999) (distinguishing *Faragher v. City of Boca Raton*, 524 U.S 775, 791–92 (1998) and *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986) from *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 283 (1998)).

especially so in the university setting, where students are adults and university officials have little control over students beyond the classroom, dormitory, or other "on campus" setting.[6] *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 512 (7th Cir. 2010) (quoting *Davis*, 526 U.S. at 645) (holding Title IX liability requires the funding recipient have "substantial control over both the harasser and the context in which the known harassment occurs.") "This substantial control element is essential for Title IX liability because a school district cannot be liable for its indifference to harassment that it lacks the authority to prevent." *Doe-2*, 593 F.3d at 512.[7] This requirement is critical here, where much of the negative publicity and social media bullying occurred outside the UW's sphere of influence or control.

### 3.    Courts should refrain from second guessing disciplinary decisions made by school administrators

When evaluating whether a funding recipient's actions or inactions constitute deliberate indifference, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id*. at 648-49;

---

[6] Newly promulgated federal regulations recognize challenges inherent in being liable for conduct of adults that occurs off-campus, and while the new Title IX regulations are not retroactive, they illustrate why federal courts have required plaintiffs stating peer-on-peer claims to meet heavy burdens. 34 C.F.R. pt. 106; *see also Doe v. Rensselaer Polytechnic Inst., No*. 1:20-CV-1185, 2020 WL 6118492, at *3, 4 (N.D.N.Y. Oct. 16, 2020).

[7] *Davis* characterized this as the recipient needing "some control over the alleged harassment" or at the very least have "the authority to take remedial action." 526 U.S. at 644.

*Gabrielle M. v. Park Forest-Chi. Heights, IL. Sch. Dist.* 163, 315 F.3d 817, 825 (7th Cir. 2003) ("[S]chool administrators should be supported, rather than second-guessed, in their 'heroic efforts' to teach our nation's young people." (citing *Ulichny v. Merton Cmty. Sch. Dist.,* 249 F.3d 686, 706 (7th Cir. 2001))). The Seventh Circuit recently remarked that "judges 'make poor vice principals.'" *Johnson,* 972 F.3d at 912 (quoting *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir. 2014)). The law does not tether a recipient to a specific action, on behalf of a complainant, such as launching an investigation through its Title IX office, contacting law enforcement, or expelling a student. *Davis,* 526 U.S. at 648; *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 666 (2d Cir. 2012) (noting that, under *Davis,* "victims do not have a right to specific remedial measures."). And all actions taken to protect victims of harassment must consider the rights of the accused. "Federal law gives school officials wide discretion in making disciplinary decisions, especially as they have to balance the interests of all concerned." *Doe v. Galster*, 768 F.3d 611, 621 (7th Cir. 2014). Many funding recipients, including the UW in this case, face Title IX, due process, or equal protection lawsuits brought by respondents. *See, e.g., Doe v. Trustees of Indiana Univ.,* No. 120CV00123JRSDML, 2020 WL 6274816, at *1 (S.D. Ind. Oct. 26, 2020); *Ross v. Ball State Univ.*, No. 118CV01258JRSTAB, 2020 WL 1042623, at *1 (S.D. Ind. Mar. 4, 2020).

Today, *Davis* remains the cornerstone case in analyzing peer-on-peer harassment under Title IX. *See, e.g., Doe v. Bd. of Educ. of City of Chicago,* --- F. Supp. 3d ---, 2020 WL 1445638, at *3 (N.D. Ill. Mar. 24, 2020). The *Davis* standard for peer-on-peer harassment is, according to the Seventh Circuit, is "a high bar." *Doe v. Galster*, 768 F.3d at 617.

**B.    Doe's claims fall short of meeting Title IX's requirements**

The Board of Regents can be liable for peer-on-peer sexual harassment only if there is evidence demonstrating: 1) the Plaintiff suffered from sexual harassment that is severe, pervasive, and objectively offensive, 2) the school had actual knowledge of this harassment, 3) the school was deliberately indifferent to the harassment such that its action or inaction was clearly unreasonable under the circumstances, and 4) the school's "clearly unreasonable" response deprived the victim of access to the school's educational opportunities or benefits. Here, Doe has not alleged any facts upon which a reasonable jury could find in her favor on the required elements.

**1.    Only discrimination and harassment that rises to the level of being severe, pervasive, and objectively offensive is actionable against the Board**

The Supreme Court prohibits Title IX liability unless the plaintiff can prove the harassment she endured was "so severe, pervasive, *and* objectively offensive" that it has deprived her of equal access to education. *Davis*, 526 U.S. at 651 (emphasis added). Title IX borrows from the standard for sexual

13

harassment found in Title VII—whether the harassment "is so severe or pervasive [that it] alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Doe v. Bd. of Educ. of Prince George's Cty.*, 982 F. Supp. 2d 641, 651 (D. Md. 2013), aff'd, 605 F. App'x 159 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). In the educational context, "[t]his standard is both modified and elevated in the context of Title IX." *Id.* "Under Title IX, a private action for damages "will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.* (citing *Davis,* 526 U.S. at 633). Whether conduct meets this standard "depends on a constellation of surrounding circumstances, expectations, and relationships." *Chivers v. Cent. Noble Cmty. Sch.,* 423 F. Supp. 2d 835, 847 (N.D. Ind. 2006) (citing *Oncale v. Sundowner Offshore Serv's, Inc.*, 523 U.S. 75, 82 (1998).

Here, for the purpose of this motion only, the Defendants acknowledge Doe pled facts that, viewed in the light most favorable to her, demonstrate severe, pervasive, and objectively offensive harassment. Those allegations include the alleged assault, comments made on social media and message boards threatening physical harm upon Doe, and gender-based name calling and other gender-based verbal taunts. These events, however, do not equate to Title IX liability for monetary damages against the Board, because the Board

is responsible only for *its* action or inaction; failing to prevent gender discrimination and harassment perpetrated by other students or the general public is not grounds for liability. Other allegations of harassment, such as PLAYER 1 walking toward Doe during a hearing (Dkt. 1 ¶ 54) and inadvertently running into Davis on campus, (Dkt. 1 ¶¶ 46, 48) do not rise to the level of severe and pervasive harassment. *See Johnson v. Ne. Sch. Corp.,* No. 218CV00068JRSMJD, 2019 WL 4193380, at *6 (S.D. Ind. Sept. 4, 2019), aff'd, 972 F.3d 905 (7th Cir. 2020) ("Plaintiff's contention that the school should have suspended or expelled [the accused] immediately upon a report of sexual assault ignores the demanding standard of Title IX.")

### 2. The Board acted swiftly and appropriately upon learning of the harassment.

Title IX liability against a recipient for peer-on-peer harassment requires evidence the recipient was deliberately indifferent to the known harassment. Doe has pled herself out of court because she alleges "UW spent fourteen months investigating and resolving the reported sexual assaults, conducting an exhaustive Title IX process that afforded numerous rights and due process to all parties" (Dkt. 1 ¶ 6) and that UW imposed discipline on both players, expelling PLAYER 1 and placing PLAYER 2 on probation (Dkt. 1 ¶¶ 51-52.).

After the student misconduct proceedings concluded, a jury determined PLAYER 1 was not guilty of sexual assault, which, according to Doe's Complaint, placed tremendous public pressure on the UW readmit PLAYER 1 and allow him to rejoin the football program. (Dkt. 1 ¶ 71.) Armed with the not-guilty jury verdict and arguments of counsel based on the trial evidence, PLAYER 1 petitioned the UW to restore his rights. Considering the new information, the UW readmitted PLAYER 1 and allowed him to rejoin the football team. (Dkt. 1 ¶¶ 71-76, 89-90, 106.) Doe would like to have been afforded participation in that process, but the administrative code does not so provide. Doe's claim is rooted in her disagreement with the UW's decision to readmit PLAYER 1, but this is exactly the type of decision that Title IX jurisprudence counsels courts to avoid overturning. *Johnson,* 972 F.3d at 912 (holding "we will not second guess a school's disciplinary decisions—even a school's decision not to impose any disciplinary measures—so long as those decisions are not clearly unreasonable.")

Dismissing a Title IX complaint is appropriate when the complaint contains allegations that, when viewed in the light most favorable to the plaintiff, establish that the recipient's response was not clearly unreasonable. *See, Gabrielle M.*, 315 F.3d at 824; *Doe v. Univ. of Notre Dame Du Lac*, No. 3:17CV690-PPS, 2018 WL 6198443, at *2 (N.D. Ind. Nov. 27, 2018) (dismissing the plaintiff's complaint because the allegations demonstrate the funding

16

recipient's response to known sexual harassment was not clearly unreasonable.). Schools do not incur Title IX liability for failing to take the complainant's preferred action, or any particular action, such as suspension, expulsion, or contact with law enforcement, upon receiving actual notice of sexual harassment. *Davis,* 526 U.S. at 648-49.

Title IX "does not require recipients to remedy peer harassment." *Gabrielle M.,* 315 F.3d at 825 (citing *Davis*, 526 U.S. at 648-49). And it follows that Title IX does not require recipients to remedy harassment perpetrated by people in the general public, as the most egregious gender-based taunting was here. In *Gabrielle M.,* the school, "[a]fter each reported or observed instance involving [the harasser] and other students, [the harasser] was disciplined and steps were taken to prevent future inappropriate conduct." 315 F.3d at 824. The school's actions did not remedy the harassment, but, as the court explained, this fact did not render the school's actions "clearly unreasonable." *Id.* at 824-25. The school district took prompt and proportionate measures to address the harasser's behavior. As the behavior escalated, so did the school's response, which ranged from verbal counselling to contact with parents to isolating him from other students for two weeks. *Id.* at 824.

Ten years after *Gabrielle M.* was decided, the Eastern District of Wisconsin followed this reasoning in recent Title IX case, *N.K. v. St. Mary's Springs Acad. of Fond du Lac Wis., Inc.*, 965 F. Supp.2d at 1035. In *N.K.,*

17

following allegations of harassment and bullying, the school implemented remedial measures that did not ultimately work to remedy the harassment. Yet, the court found them to be "eminently reasonable." *Id.*

Doe's pleadings lack any allegations of clearly unreasonable action by UW other than the decision to readmit PLAYER 1 and reverse disciplinary findings (which are addressed in Section C., below). Doe alleges she was sexually assaulted on April 22, 2018, and by May of that year, the Title IX office began investigating the allegations. (Dkt. 1 ¶ 38.) She alleges "the tenor around campus was very hostile towards Plaintiff" and that comments on social media and University football message boards were hostile, disgusting, and threatening, and that the university had "no meaningful interim measures" to protect her. (Dkt. 1. ¶¶ 43-44.) She alleges twice running into PLAYER 2 on campus but admitted both PLAYER 1 and PLAYER 2 were restricted from directly contacting her. (Dkt. 1 ¶ 47.) Yet, she does not allege the University had released her name and she does not allege facts sufficient to notify the university of what it should have done in addition to following through with its Title IX adjudication and issuing a no-contact order.

For example, in *Doe v. Glaster*, the plaintiff was subject to repeated gender-smearing name calling, physical violence, and a death threat. 768 F.3d 611, 614-616 (7th Cir. 2014). The school opened an investigation and disciplined the students involved but did not promulgate a formal safety plan

18

or grant the plaintiff's request to transfer to a different school district. *Id.*, 616, 621. Granting summary judgment to the recipient, the court held "*Davis* does not entitle plaintiffs to any specific remedial measure." *Id.* (citing *Zeno*, 702 F.3d at 666).

The UW's actions as alleged in Doe's complaint were not clearly unreasonable. The school issued no-contact orders, (Dkt. 1 ¶ 47) initiated Title IX proceedings, (Dkt. 1 ¶¶ 37-38) and followed through with them despite significant challenges from PLAYER 1's attorneys, who sued the university, Chancellor Blank, the UW's Director of Compliance, and the UW's Title IX Coordinator seeking a preliminary injunction asking this court to halt the university's Title IX proceedings. *See* WIWD Case No. 18-CV-832-wmc. The UW, having successfully defended against the motion for a preliminary injunction, found PLAYER 1 responsible for sexual assault and recommended expulsion. (Dkt. 1 ¶ 7). Following a hearing (in which PLAYER 1 did not testify) the UW upheld the sexual assault finding and expelled him. (Dkt. 1 ¶¶ 7, 57-58.) The UW (according to Doe's complaint) found PLAYER 2 responsible for nonacademic misconduct, placed him on probation, required he refrain from going to bars and consuming alcohol, and required he attend an educational program called RESPECT. (Dkt. 1 ¶¶ 51-52.) These facts, viewed in the light

most favorable to Doe, demonstrate the University's reaction to Doe's sexual assault allegation was not clearly unreasonable.[8] *Zeno,* 702 F.3d at 666.

This is not to diminish Doe's alleged suffering or emotional turmoil, but to assign responsibility upon the university only when the university was deliberately indifferent. As this court recently noted in a case involving severe bullying, "The facts of this case are deeply disturbing, and what happened to [the plaintiff] at the hands of many of his classmates was shameful. But under the legal standard applicable to this case, defendants are liable only if they were deliberately indifferent . . . ." *Bowe v. Eau Claire Area Sch. Dist.,* No. 16-CV-746-JDP, 2018 WL 791416, at *1 (W.D. Wis. Feb. 7, 2018). Many Title IX cases involve physical abuse, unwanted sexual touching, exposing private parts, bullying, and taunting. These deeply disturbing situations should be remedied through all means possible, but the appellate courts have made clear that remedies do not exist where, as here, a recipient's actions were not clearly unreasonable.

---

[8] *See also Jauquet v. Green Bay Area Catholic Educ.,* No. 20-C-647, 2020 WL 5016817, at *6 (E.D. Wis. Aug. 25, 2020) appeal filed by, *Michelle Jauquet v. Green Bay Area Catholic Edcu.* (7th Cir., Sept. 18, 2020):

To be sure, assuming Plaintiff's allegations are true, the conduct of Student B was deplorable and deserving of condemnation. The court is sympathetic to students and parents who face bullying issues. But a federal court is rarely the proper forum for addressing and resolving disputes over the proper level of school discipline.

## C.    Reinstating PLAYER 1 following the not guilty jury verdict was reasonable

Doe's erroneous outcome claim asserts the Board violated Title IX by reversing PLAYER 1's expulsion and the UW's original finding of responsibility for sexual assault, converting it to a finding of "incapable of resolution." (Dkt. 1 ¶ 112.) The erroneous outcome theory under Title IX is used "where the plaintiff was innocent and wrongly found to have committed an offense." *Doe. v. Ind. Univ. – Bloomington*, No. 18-cv-3713, 2019 WL 341760, *8 (S.D. Ind. Jan. 28, 2019) (citing *Yusuf v. Vassar Coll.,* 35 F. 3d 709, 715 (2nd Cir. 1994)). *Yusuf*, which is widely cited as the seminal erroneous outcome case, held "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf*, 35 F.3d at 715.

> A plaintiff making an erroneous outcome claim must first allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. A plaintiff may allege, for example, particular evidentiary weaknesses behind the finding of an offense such as a motive to lie, particularized strengths of the defense, particular procedural flaws affecting the proof. Once the plaintiff has established doubt concerning the accuracy of the proceeding, he must next allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. The Yusuf court noted that such allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.

*Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 953 (N.D. Ill. 2017), aff'd, 933 F.3d 849 (7th Cir. 2019) (citing *Yusuf,* 35 F.3d at 715) (quotations omitted).

The erroneous outcome theory is not applicable here, because Doe did not plead facts to suggest the Board or Chancellor Blank were in any way motivated by gender bias in making the decision to revisit the original disciplinary decision and readmit PLAYER 1 to the university.[9] On the contrary, Doe alleged the Board was "receiving pressure from the media and broader UW community including pressure from at least one significant donor to readmit the star football player." (Dkt. 1 ¶ 93). While Doe pled that PLAYER 1's petition for restoration of rights was "extensively focused on gender-based stereotyping and shaming" and that gender-based slurs were rampant on social media and in the public sphere, there are no facts to suggest the UW's readmittance decision was in any way influenced by those forces. Imputing public sentiment of gender discrimination on to the Board and the Chancellor, without any facts showing the Board was acting discriminatorily, is the type of mere speculation that cannot survive a motion to dismiss. *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d at 953 (holding "general allegations about public pressure to resolve sexual assault complaints are insufficient to show that gender bias was the motivating factor in the erroneous result.").

---

[9] Ultimately, whether styled "'erroneous outcome' or 'selective enforcement' or 'deliberate indifference' or 'archaic assumptions' the claims all ask the same question: whether the alleged facts, if true, raise a plausible inference that the university discriminated ... 'on the basis of sex'?" *Doe v. Columbia Coll. Chi.*, 933 F.3d at 854–55 (citations and quotations omitted).

The other flaw with Doe's erroneous outcome theory is the undisputed fact that, after the Title IX proceedings, a jury found PLAYER 1 not guilty of sexual assault. (Dkt. 1 ¶ 70.) This is not the situation where an investigator "made a 'drastic change' in their findings late in the investigation" with little explanation. *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d at 953 (citing *Prasad v. Cornell Univ.*, No. 5:15-CV-322, 2016 WL 3212079, at *17 (N.D.N.Y. Feb. 24, 2016)). Chancellor Blank received a request for restoration of rights, following a jury verdict, that she reviewed according to the procedure set out in Wis. Admin. Code § UWS 17.18. These undisputed facts, included in Doe's complaint, foreclose her claim. *Tamayo,* 526 F.3d at 1086 (holding "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims.") (citation omitted).

Doe's well-pled facts doom her claim. After the UW expelled PLAYER 1, a jury found him not guilty of sexual assault. Following the verdict, there was a "massive local outcry" to readmit PLAYER 1, public pressure from the football team and the players, and "UW was being openly criticized by students, alumni, donors and the media for expelling [PLAYER 1] and ending his football tenure at UW." (Dkt. 1 ¶ 75). PLAYER 1's attorneys sought restoration of his rights and submitted, among other things, a "lengthy written argument from [PLAYER 1's] attorney in support of the petition." (Dkt. 1 ¶¶ 80, 90.)

23

Doe admitted "the only way that Defendants could end the pressure being placed on them" was to readmit PLAYER 1 and return him to the football team. (Dkt. 1 ¶ 98.) Further, Doe suggests that readmitting PLAYER 1 was in her interest as well, because it "was implemented to quell rampant gender-based animus and return [PLAYER 1] to the men's football program." (Dkt. 1 ¶ 167.) Bias toward college athletics, bending to public pressure, or readmitting PLAYER 1 as a means to *stop* public gender-based shaming of the plaintiff that occurred after the jury's verdict, do not amount to actionable gender discrimination under Title IX. *See, e.g., Doe v. Columbia Coll. Chi*,, 299 F. Supp. 3d at 953 (citing *Doe v. University of Cincinnati*, 173 F.Supp. 3d 586, 606 (S.D. Ohio 2016) and explaining that court "rejected the plaintiff's erroneous outcome claim finding the plaintiff had not alleged an indication of gender bias and instead, 'at worst, [the university's] actions were biased in favor of alleged victims of sexual assault.'"). The *Doe v. Columbia College* case cited several other cases rejecting erroneous outcome claims based on "general anti-male bias resulting from public and government pressure." *Id.* at 954 (collecting cases).

The threats and gender-based epithets Doe endured—mostly, according to the Complaint—after the criminal trial, as despicable as they were, were beyond the UW's control. According to Doe's Complaint, the only way to relieve the public pressure to reinstate PLAYER 1 *and* quell the threats against Doe

24

was to readmit PLAYER 1 and return him to the team. (Dkt. 1 ¶¶ 157, 167.) The allegations, viewed in the light most favorable to Doe, demonstrate the decision to readmit PLAYER 1 was reasonable under the circumstances.

Doe's complaint conclusively establishes the UW did not discriminate against Doe on the basis of sex and likewise demonstrates the UW was not deliberately indifferent to Doe. Her Title IX claims must be dismissed.

## II. Doe did not state a due process claim

The Fourteenth Amendment prohibits states from depriving persons of liberty or property without due process of law. U.S. Const. amend. XIV, § 1. Procedural due process claims first ask "whether there exists a liberty or property interest which has been interfered with by the State." If so, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

### A. Doe does not have a property interest in general university policies, rules, and handbooks.

Seventh Circuit case law dictates that a college education itself does not create a property interest; to state a claim, a plaintiff must allege a specific entitlement under state law or contract. *Doe v. Purdue Univ.*, 928 F. 3d 652, 660 (7th Cir. 2019) (holding the Seventh Circuit has rejected the view that "the Due Process Clause protects a generalized property interest in higher

25

education, irrespective of any specific state entitlement.") Here, Doe asserts property rights stemming from UW application materials, Title IX policies, UW's policy on discrimination, harassment, and retaliation, and UW's policy on sexual harassment and sexual violence. (Dkt. 1 ¶¶ 128-135.) But Doe did not "point to an identifiable contractual promise that the [university] failed to honor." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 574 (1972)). Doe's due process claim is unclear because she does not point to an express or implied contract that "establishes an entitlement to a tangible continuing benefit." *Id.* (quoting *Id.*). Doe's allegations fall short.

"[A] university student must do more than show that he has a contract with the university; he must establish that the contract entitled him to the specific rights that the university allegedly took, '"such as the right to a continuing education or the right not to be suspended without good cause."' *Doe v. Purdue Univ.*, 928 F.3d at 660 (quoting *Bissessur,* 581 F. 3d at 601). To state a valid due process claim, "the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.* (quoting *Charleston v. Bd. of Trs. Of Univ. of Ill. At Chi.*, 741 F. 3d 769, 773 (7th Cir. 2013.)). "Generalities won't do." *Id.*

The same specificity is required to state a valid due process claim based on denial of a liberty interest. A liberty interest is established when the plaintiff alleges the defendant "inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held." *Doe v. Purdue Univ.*, 928 F.3d at 661 (citing *Mann v. Vogel*, 707 F.3d 872, 878 (7th Circ. 2013)) (additional citations omitted). For example, in the *Doe v. Purdue University* case, the plaintiff adequately stated a liberty interest (or "stigma plus" claim) because he alleged the defendant's action in suspending him resulted in him being expelled from his ROTC program, which in turn deprived him of his ability to pursue the occupation of his choice. *Id.* at 662-63.

In the present case, Doe alleges the UW's application materials and policies that contain equal opportunity, harassment, and discrimination provisions provide contractual rights that, when violated, create a cause of action under the Constitution. But as explained above, the Seventh Circuit does not recognize a legally protected property right in general contractual terms contained in policies absent a specific entitlement to a tangible benefit. To survive a motion to dismiss, "the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, *and the promises the student made in return.*" *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013) (emphasis added).

27

### B.     Doe does not have a property interest in adherence to the nonacademic misconduct procedures.

Doe also asserts property interests in the non-academic misconduct hearing procedures outlined in the Wisconsin Administrative Code, § UWS 17.11(2), related to presentation of evidence, the right to respond to evidence, present witness, and question witnesses.[10] Here, too, she fails to state a due process claim because statutory "entitlement to a fair procedure" does not establish entitlement to an enforceable right under the Constitution. *Williams v. Wendler*, 530 F.3d 584, 590 (7th Cir. 2008). The Seventh Circuit has long "rejected similar claims of an 'interest in contractually-guaranteed university process'" and admonished:

> [W]e will be clear once more: a plaintiff does not have a federal
> constitutional right to state-mandated process. Process is not an
> end in itself. The State may choose to require procedures but in
> making that choice the State does not create an independent
> substantive right. As we tirelessly but unavailingly remind
> counsel in this court, a violation of state law (for purposes of this
> case the student judicial code may be treated as a state law) is not
> a denial of due process, even if the state law confers a procedural
> right.

*Charleston*, 741 F.3d at 773–74 (quotations and citations omitted).

---

[10] Doe's Complaint also alleges the UW did not adhere to athletic department policies in allowing PLAYER 1 to return to the football team. (Dkt. 1 ¶¶ 97-103.) These allegations do not appear to support Doe's claims, but to the extent she alleges they do, the analysis with respect to the university policies and administrative code apply to foreclose any claim Doe has with respect to the athletic department's policies.

Here, Doe fails to state a due process claim because the allegations mirror those this circuit has rejected. The Wisconsin Administrative Code's non-academic misconduct procedures, whether followed or not, confer no substantive rights.

## C.    Doe does not have a property right in maintaining the disciplinary decision originally handed to PLAYER 1.

Doe also seems to imply she has a protectable property interest in the Chancellor's decision that followed the Administrative Code's non-academic misconduct proceedings. (*See* Dkt. 1 ¶¶ 82-83, 85.) In particular, she alleges the university's decision to "reverse its prior Title IX factual findings without providing both parties with the right to receive a written report summarizing all of the evidence collected by the university and the right to a hearing on that evidence" violated her due process rights. (Dkt. 1 ¶ 86.) There are three problems with this argument. First, a complainant does not have a property right in a discretionary decision made by the Chancellor. Second, the Wisconsin Administrative Code provision utilized to restore PLAYER 1 to the university was Section UWS 17.18, which, unlike 17.11 – 17.14, does not provide complainants participation in the process. Third, even if Doe was entitled to information the Chancellor relied upon to restore PLAYER 1, Doe pled that she already had access to most of the information, either because she

already received it or because the information was presented during trial. (Dkt. 1 ¶ 89.)

Doe alleged the Title IX misconduct proceedings "afforded numerous rights and due process to all parties," (Dkt. 1 ¶ 6) so the due process allegations are limited to whether Doe identified a state law that afforded complainants in chapter 17 proceedings rights to participate in the respondent's request for restoration. Wis. Admin. Code § UWS 17.18 states in relevant part:

> A respondent who has been expelled may petition for the right to apply for readmission. The petition shall be in writing and directed to the chief administrative officer of the institution from which the respondent was suspended or expelled or of a different University of Wisconsin institution to which the respondent seeks admission. The chief administrative officer shall make the readmission decision. In cases of sexual harassment, sexual assault, dating violence, domestic violence, and stalking cases, the readmission decision should be made in consultation with the Title IX coordinator, and the complainant should be notified of any change to the disciplinary outcome.

Instead of granting complainants rights to participate in readmission decisions, the administrative code only requires consultation with the Title IX coordinator, and by its plain language, the complainant is entitled only notice of change to the disciplinary outcome. Because the UW provided Doe requisite notice under Section UWS 17.18 (*see* Dkt. 1 ¶ 114), Doe's complaint establishes she received the process due. The plain language of Section UWS 17.18 forecloses Doe's due process claim.

In sum, the due process clause protects people "from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Here, even if Doe could identify a property interest protected under state law, she has not pled deprivation of a right recognized by the due process clause.

> ### D.    Individuals aggrieved by a final agency decision may appeal the decision under Chapter 227 of the Wisconsin Statutes

Doe's procedural due process claim must be dismissed on another ground: she has not exhausted available state procedures. "The whole idea of a procedural due process claim is that the plaintiff is suing because the state failed to provide adequate remedies." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003).

The exclusive remedy for challenging such a State agency's action is by a petition for judicial review under Wis. Stat. § 227.52, *et seq.*, which provides "the exclusive method for judicial review of agency determinations." *Turkow v. DNR*, 216 Wis. 2d 273, 281, 576 N.W.2d 288 (Ct. App. 1998) (citing *Kosmatka v. DNR*, 77 Wis. 2d 558, 567, 253 N.W.2d 887 (1977). "[W]here a statute sets forth a procedure for review of administrative action and court review of the administrative decision, such remedy is exclusive and must be employed before other remedies are used." *Clean Water Action Council of Ne. Wis. v. Wis. Dep't of Nat. Res.,* 2014 WI App 61, ¶ 4, 354 Wis. 2d 286, 848 N.W.2d 336 (citation

omitted). "[W]here a statute relating to an administrative agency provides a direct method of judicial review of agency action, such method of Judicial review "is generally regarded as exclusive, especially where the statutory remedy is plain, speedy, and adequate." *Kegonsa Joint Sanitary Dist. v. City of Stoughton*, 87 Wis. 2d 131, 145-46, 274 N.W.2d 598 (1979) (citation omitted).

Wisconsin Stat. § 227.52 provides, in relevant part: "Administrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter . . . ." "The remedy available to a person aggrieved by an agency decision is set forth in § 227.53(1), STATS., which states, 'Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.52 shall be entitled to judicial review thereof as provided in this chapter . . . .'" *Turkow*, 216 Wis. 2d at 282 (quoting Wis. Stat. § 227.53(1)). Thus, a civil action challenging an administrative agency decision is properly dismissed when chapter 227 judicial review has not been pursued. *Turkow*, 216 Wis. 2d at 283.

Doe's due process claim challenges Chancellor Blank's decision to readmit PLAYER 1 and reverse prior findings. Even assuming this action deprived Doe of a legally protected interest such that she was an aggrieved person, her exclusive means to seek relief is under Chapter 227. Conversely, if

Chancellor Blank's decision to readmit PLAYER 1 did not aggrieve Doe, she cannot prove a legally protectible interest under the Fourteenth Amendment.

Wisconsin's administrative procedure act, Wis. Stat. ch. 227, affords constitutionally adequate post-deprivation procedures. *See* Wis. Stat. § 227.57 (allowing a court to set aside or modify, or remand a state administrative decision if the agency's decision "has been impaired by a material error in procedure or a failure to follow prescribed procedure," if the agency misinterpreted the law, if its decision is not supported by the evidence, or if it abused its discretion). Thus, the mere availability of state procedures, whether utilized or not, makes federal judicial intervention inappropriate. *See, e.g., Leavell v. Ill. Dep't of Nat. Res.,* 600 F.3d 798, 805 (7th Cir. 2010) (holding failure to avail oneself of available post-deprivation procedures does not equate to a constitutional denial of procedure.).

**III.    Chancellor Blank is entitled to qualified immunity because no case clearly establishes a person granting a petition for restoration of rights violates due process**

"Qualified immunity protects government officials from damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Campbell v. Kallas,* 936 F.3d 536, 545 (7th Cir. 2019) (citation omitted). Although qualified immunity is "an affirmative defense," once it's raised, "the burden shifts to the plaintiff to defeat it." *Leiser v. Kloth,* 933 F.3d 696, 701

(7th Cir. 2019). To do so, a "plaintiff must show two elements: first, that the facts show 'a violation of a constitutional right,' and second, that the 'constitutional right was clearly established at the time of the alleged violation.'" *Id.* (citation omitted).

The clearly established requirement is based on the "principle of fair notice." *Campbell*, 936 F.3d at 545. Clearly established thus "means that, at the time of the [official's] conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful." *Dist. of Columbia v. Wesby*, ___U.S. ___, 138 S. Ct. 577, 589 (2018) (citation omitted). "In other words, existing law must have placed the constitutionality of the [official's] conduct 'beyond debate.'" *Id.* (citation omitted). A legal principle is beyond debate only when it has a "sufficiently clear foundation in then-existing precedent." *Id*. That means the "rule must be 'settled law,'" i.e., "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id.* at 589–90 (citation omitted).

Even more, the law must be clearly settled in the context of the alleged constitutional violation. In *Doe v. Purdue University*, the Seventh Circuit found qualified immunity applied and dismissed the plaintiff's due process claim because the court had never before held a university student can bring a stigma-plus procedural due process claim against a university official. 928 F. 3d at 666.

While qualified immunity is often determined at summary judgment, addressing qualified immunity at the motion to dismiss stage is appropriate where, as here, it is "clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law." *Doe v. Purdue Univ.,* 928 F.3d at 665. Under these circumstances, qualified immunity is not a factual but "a 'purely legal question' that the court can address on a motion to dismiss." *Id.* (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000)).

To overcome qualified immunity here, Doe would need to point to cases establishing that there is a violation of procedural due process when a university official decides to readmit a student after the student was acquitted in the criminal proceedings. Plaintiff will be unable to do so. The allegations forming the basis for the criminal proceedings were the same allegations that formed the basis for the initial expulsion. Once the criminal proceedings returned a not guilty verdict and the Chancellor reviewed the information submitted in conjunction with the Wis. Admin. Code § UWS 17.18 restoration of rights request, the Chancellor was well within her authority to readmit PLAYER 1.

## CONCLUSION

The UW adhered to Title IX's mandate to adjudicate sexual violence allegations per the Wisconsin Administrative Code's nonacademic misconduct

procedures. Following the not guilty verdict, PLAYER 1 petitioned for reinstatement pursuant to the administrative code's rules. Reviewing the not guilty verdict, the UW readmitted PLAYER 1. Doe's complaint alleged facts demonstrating the UW's response to the alleged sexual assault was appropriate under the circumstances, she alleged facts explaining the conundrum the UW faced in reevaluating PLAYER 1's status as a student following the not guilty verdict, thus negating her erroneous outcome claim, and she did not identify a clearly established legally cognizable interest under the due process clause.

Doe's complaint fails to state a claim upon which relief can be granted. It should be dismissed in its entirety.

Dated: November 17, 2020.

Respectfully submitted,

JOSHUA L. KAUL
Wisconsin Attorney General

/s/ Anne Bensky
ANNE M. BENSKY
Assistant Attorney General
State Bar #1069210

ANN M. PEACOCK
Assistant Attorney General
State Bar #1046175

Attorneys for the Defendants

Wisconsin Department of Justice

36

Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9451 (Bensky)
(608) 266-9230 (Peacock)
(608) 267-8906 (Fax)
benskyam@doj.state.wi.us
peacockam@doj.state.wi.us