IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JANE DOE,

                          Plaintiff,                          OPINION AND ORDER

    v.

                                                      20-cv-856-wmc

BOARD OF REGENTS OF THE UNIVERSITY
OF WISCONSIN, and REBECCA BLANK, as
an individual,

                        Defendants.

---

In this civil action, plaintiff Jane Doe asserts claims against the Board of Regents of the University of Wisconsin and its Chancellor Rebecca Blank based on defendants' decision to overturn a prior finding of a Title IX violation against two of her fellow students, both of whom were members of the UW football team during the relevant time period. Specifically, plaintiff asserts Title IX deliberate indifference and erroneous outcome claims against the University and a Fourteenth Amendment Due Process claim against Chancellor Blank under 28 U.S.C. § 1983. Before the court is defendants' motion to dismiss. (Dkt. #27.) For the reasons that follow, the court will grant defendants' motion as to plaintiff's due process claim against defendant Blank, but will deny the motion as to her Title IX claims.

ALLEGATIONS OF FACT[1]

On April 22, 2018, plaintiff Jane Doe alleges that she was sexually assaulted by a

---

[1] For purposes of defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

then male football player and fellow student at UW (identified as "Player 1" in the complaint) and that another then football player and student (identified as "Player 2"), photographed plaintiff. The day after this alleged rape, plaintiff went to the hospital for an examination, contacted her parents, and reported it to the UW. The University's Title IX office conducted an investigation and proceedings consistent with the title's provisions. In June 2019, the UW then concluded that Player 1 sexually assaulted plaintiff and that Player 2 had sexual harassed her. (*See also* Am. Compl. (dkt. #26) ¶¶ 49-64 (detailing administrative process).) The UW then expelled Player 1 from the University, while Player 2 was given probation with a requirement for training on sexual harassment and abuse.

In the fall of 2018, Player 1 was also charged with criminal sexual assault by the Dane County District Attorney. That case went to trial, and the jury found Player 1 not guilty on August 2, 2019. In the wake of the verdict, plaintiff alleges, "a fast-spreading public call to readmit PLAYER 1 to the UW arose, stoked by PLAYER 1's counsel, as well as UW employees, members of the UW football program, and members of the UW community generally." (*Id.* ¶ 9; *see also id.* ¶¶ 72-74.) Plaintiff further alleges, "[m]edia and social media alike were replete with gender-based smears suggesting that [she] was merely an additional example of a promiscuous woman falsely accusing men of rape." (*Id.* ¶ 10; *see also id.* ¶¶ 70, 93.)

On August 6, 2019, Player 1 filed a petition for restoration of rights under Section 17.18 of Chapter 17 of the Wisconsin System Administrative Code, which governs procedures for student nonacademic disciplinary matters. Plaintiff was neither informed of this petition nor provided an opportunity to respond to the petition or purportedly new

evidence included with it. (*Id.* ¶¶ 85-87.) Plaintiff alleges that the "Petition itself extensively focused on gender-based stereotyping and shaming," and it "relied upon gender-based animus in making irrelevant allegations pertaining to Plaintiff's sexual history and sexual preferences, something prohibited in the University's Title IX process." (*Id.* ¶ 89.)

"[A]fter being highly criticized for its prior Title IX finding and discipline," plaintiff alleges that the UW "quickly readmitted PLAYER 1 and allowed him to rejoin the football team before the start of the season." (*Id.* ¶ 11; *see also id.* ¶ 99.) Specifically, on August 19, 2019, the University granted Player 1's petition to return to school and also reversed the underlying Title IX finding of sexual assault. (*Id.* ¶ 101.) At the same time, the University "downgraded" its finding against Player 1 to sexual harassment, but imposed no further sanction. "Defendants claimed their decision was based on 'new information' learned in the criminal trial, despite the fact that UW officials neither attended nor ordered a transcript of the criminal trial." (*Id.* ¶ 17.) "According to one administrator involved in the decision, the rushed nature of the decision was due to the impending start of the football season." (*Id.* ¶ 18.) Plaintiff further alleges that the University opted to reverse the Title IX finding because the UW Student Athlete Discipline Policy requires suspension based on a finding of sexual assault.

The same day that the University granted Player 1's petition, plaintiff claims to have received notice for the first time that Player 1 had petitioned the school for readmission following the criminal jury's verdict and submitted new evidence to the Chancellor, which she relied on in reversing the Title IX findings of sexual assault. "[D]ue

3

to UW's reversal of the finding of sexual assault," plaintiff further alleges that she "was harassed for what was now labeled a false allegation." (*Id.* ¶ 111.) Specifically, plaintiff alleges that on August 22, 2019, a friend of Player 1 messaged her "threatening that she was lucky that the friend didn't know her real identity until after the trial." (*Id.*)

Due to the timing of the decision revising the Title IX findings against Player 1, plaintiff further alleges that she did not have time to transfer to a new school before the start of that academic year, and that the same day she returned to school for her third year, she ran into Player 2 in her building and was terrified. Plaintiff and her Title IX advisor met with school officials and the UW police department to ask what the school could do if plaintiff ran into one of the players or experienced retaliation from other students. However, plaintiff claims that "[t]he school officials refused to help her in anyway," telling her that if she needed help, plaintiff should call the police. (*Id.* ¶ 116.) Plaintiff also claims that the readmission of Player 1 and reversal of the Title IX findings "created an educational environment for Plaintiff that was extremely hostile." (*Id.* ¶ 119.) Specifically, plaintiff alleges that she was "forced to miss classes, avoid areas of campus, ask friends to escort here while walking to classes or calling her parents to have them on the phone if no one could walk with her." (*Id.* ¶ 120.) Finally, plaintiff further alleges that she was "living in a constant state of stress as a result which required her to work harder and longer hours to attain the same grades and take a lower course-load," resulting in her needing an additional semester to complete her degree. (*Id.*)

With respect to her due process claim against defendant Blank, plaintiff further claims that UW policies, including the UW Policy on Discrimination, Harassment and

Retaliation, the UW-Madison Policy on Sexual Harassment an Sexual Violence, and the UW Code, "constitute contractual obligations and promises by the UW to the Plaintiff to provide meaningful access to education through redress of barriers created by sexual harassment and misconduct." (*Id.* ¶ 132.) In exchange, plaintiff alleges that she "along with many other non-scholarship UW students, with the help of federal student-aid, pays the University substantial monies for her tuition and fees at the University." (*Id.* ¶ 130.) In reversing the University's prior Title IX finding, therefore, plaintiff claims that defendant Blank "excluded Plaintiff entirely from information and participation, violating her contractual right to meaningful access to education." (*Id.* ¶ 139.)

Based on all of these allegations, plaintiff asserts the following causes of action: (1) violation of Title IX-deliberate indifference against the Board of Regents; (2) violation of Title IX-erroneous outcome against the Board of Regents; and (3) violation of due process against defendant Rebecca Blank.

OPINION

In their opening brief, defendants cast their net quite broadly, providing the court with an overview of the law underlying plaintiff's Title IX and due process claims, without clearly identifying the weaknesses in plaintiff's *pleading*. Instead, they highlight possible areas of difficulty plaintiff will face in gathering proof supporting her claims. Of course, at the pleading stage, the court is only concerned with whether plaintiff's complaint contains sufficient factual allegations to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). With that standard in mind, the court reviews defendants' core arguments for dismissal.

5

I. **Title IX Claims**

   A. **Deliberate Indifference Claim**

In *Davis as Next Friend of Lashonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court held that under Title IX, educational institutions may be held liable for "deliberate indifference to known acts of harassment" of one student by another. *Id.* at 643. However, to be held liable, the school must be "deliberately indifferent to sexual harassment, of which [it] had actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650. Because the claim falls under Title IX, the harassment forming the basis of the claim must also be "gender-oriented." *Id.* at 651.

Defendants principally contend that plaintiff has failed to allege the University's decision to overturn the prior finding of a violation of Title IX and to allow the readmission of Player 1 *caused* her actionable harassment. As an initial matter, plaintiff's deliberate indifference claim does *not* concern the University's original decision finding a violation of Title IX; nor does it involve the alleged bullying that she experienced on social media or public forums before, during or after that decision, which were beyond the University's control. (Pl.'s Opp'n (dkt. #29) 11.) *See Johnson v. Ne. School Corp.*, 972 F.3d 905, 911 (7th Cir. 2020) (clarifying that the harassment does not refer to the underlying alleged sexual assault, but rather the alleged harassment the plaintiff experienced as a result of the school's actions or inactions). As such, plaintiff's claim turns on whether she has sufficiently alleged being subjected to harassment as a result of the University's "own

6

misconduct," not on the actions of her alleged assailant or other third parties. *Davis*, 526 U.S. at 640-41.

In her brief, plaintiff clarifies that the alleged, actionable harassment she is claiming arose out of her attendance at school "with her perpetrator, a situation that was fully within UW control and which UW had the authority to prevent had it abided by its original Title IX findings." (Pl.'s Opp'n (dkt. #29) 11 n.1.) In support, plaintiff points to cases in which courts have given weight to the language in *Davis* that an educational institution is liable for deliberate indifference under Title IX if it either caused "further actual incidents of sexual harassment" *or* "'make[s] [a student] liable or vulnerable to' sexual harassment." *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1104 (10th Cir. 2019) (quoting *Davis*, 526 U.S. at 645). More specifically, plaintiff directs the court to cases that have held an institution's deliberate indifference to the risk of "student-victim" encountering a harasser or assailant is sufficient to prove causal harm. *See Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 613 (W.D. Tex. 2017) ("[T]he discriminatory harm can include the harm faced by student-victims who are rendered vulnerable to future harassment and either leave school or remain at school and endure an educational environment that constantly exposes them to a potential encounter with their harasser or assailant."); *Joyce v. Wright State Univ.*, No. 3:17-CV-387, 2018 WL 3009105, at *8 (S.D. Ohio June 15, 2018) ("WSU's alleged failure to enforce the expulsion order made Joyce 'vulnerable' to additional incidents of sexual assault and sexual harassment by Walker, even though she never actually encountered him on campus."); *Kelly v. Yale Univ.*, No. CIV.A. 3:01-CV-1591, 2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003) ("Although Yale cannot be held liable for

7

harassment of which it had no notice, . . . Kelly argues that, following the assault, Nolan's presence on campus was harassing because it exposed her to the possibility of an encounter with him. The court agrees that a reasonable jury could conclude that further encounters, of any sort, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a university.").

In response, defendants assert that "[s]everal courts have held that, as a matter of law, an accused student's presence on campus alone does not equate to severe, pervasive, and objectively offensive harassment actionable against universities." (Defs.' Reply (dkt. #30) 6.) The cases cited, however, are distinguishable from the facts alleged here. For example, in *Yoona Ha v. Northwestern University*, No. 14 C 895, 2014 WL 5893292 (N.D. Ill. Nov. 13, 2014), the court concluded that plaintiff failed to state a claim for deliberate indifference under Title IX where "Northwestern immediately conducted an investigation into the allegations and issued a report finding them well taken," *and* "[i]t took remedial action which consisted at least in part by instructing Ludlow not [to] have any contact with Plaintiff." *Id.* at *2. In that case, the court held the university had mitigated any risk or vulnerability that the alleged victim would encounter her assailant or harasser. Defendants also cite to *Johnson v. Northeast School Corporation*, No. 218CV00068JRSMJD, 2019 WL 4193380 (S.D. Ind. Sept. 4, 2019), *aff'd*, 972 F.3d 905 (7th Cir. 2020), for support, but in that case, the court concluded at summary judgment that plaintiff had failed to put forth evidence permitting a reasonable jury to conclude that the alleged assailant's "presence at school" was enough to hold the defendant liable. *Id.* at *6; *see also*

*Butters v. James Madison Univ.*, 208 F. Supp. 3d 745, 760 (W.D. Va. 2016) (rejecting plaintiff's evidence at summary judgment that encounters or threatened encounters with assailants at off-campus events could expose the university to liability).

Here, while the court agrees that the University of Wisconsin cannot be liable for the alleged assault by Player 1, the harassment by Players 1 and 2, or for the harassment she experienced more broadly by the public, plaintiff has adequately pleaded *actionable* harassment on the part of UW by alleging that she was forced to attend school with her perpetrator.² At the pleading stage, this is sufficient. As such, the court rejects this basis for dismissal.

## B. Erroneous Outcome Claim

For an erroneous outcome claim, the plaintiff must "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 953 (N.D. Ill. 2017), *aff'd* 933 F.3d 849 (7th Cir. 2019) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)) (quotation marks omitted). As an initial point, defendants argue that these claims are "reserved for students accused of sexual misconduct." (Defs.' Reply (dkt. #30) 10.) Putting aside that this argument was not articulated fully until their reply, the fact that the majority of these cases involve claims by accused students, as opposed to their alleged

---

² At the same time, the court agrees with defendants that plaintiff cannot *establish* a Title IX claim by proving simply that UW failed to follow its own procedures in overturning its prior decision and readmitting Player 1, although this evidence *may* be relevant to a jury determination as to the adequacy of its efforts to address her obvious, potential vulnerability and feelings of vulnerability resulting in both sexual harassers being allowed back on campus. Regardless, it is not a basis to dismiss plaintiff's Title IX claims.

9

victims, does not foreclose such a claim here. Defendants do point out that one district court judge in *Borkowski v. Baltimore County, Maryland*, 492 F. Supp. 3d 454, 489 (D. Md. 2020), has held that an alleged victim was barred from bringing such a claim after the parties failed to cite any erroneous outcome case *not* brought by alleged perpetrators. At the pleading stage at least, the court declines to follow this holding. Not only is there nothing in the plain language of Title IX that would foreclose an alleged victim from bringing such a claim, but the *Borkowski* court failed to articulate any explanation for its holding, other than simply making an *observation* about the nature of a plaintiff in a typical erroneous outcome claim, including those brought to her attention by the parties.

Setting this initial argument aside, to state a viable erroneous outcome Title IX claim, plaintiff must "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Columbia Coll. of Chi.*, 299 F. Supp. 3d at 953 (quoting *Yusuf*, 35 F.3d at 715) (quotation marks omitted). In contrast, "general allegations about public pressure to resolve sexual assault complaints are insufficient to show that gender bias was the motivating factor in the erroneous result." *Id.* (citing district court cases in support); *see also id.* at 954 (citing other cases where "courts have similarly rejected erroneous outcome claims based upon allegations of general anti-male bias resulting from public and government pressure").

Here, plaintiff is alleging that UW was motivated by Player 1's status as a football player in overturning its prior decision finding a violation of Title IX and in readmitting Player 1. At least at the pleading stage, plaintiff's allegations about the UW's unique response to Player 1's petition in light of his role on a male dominated, football team

distinguishes the allegations in this case from those in *Columbia College of Chicago*. In that case, the district court dismissed plaintiff's erroneous outcome claim because his allegations gave rise to an inference that the harassing actions (namely, actions of friends of the plaintiff's alleged victim) "were motivated by their belief that Doe sexually assaulted their friend" *and* the "alleged campaign of harassment targeted Doe and Doe alone not because he is a male, but because Roe told her friends that Doe had sexually assaulted her and because they thus had personal animus toward Doe individually." *Id.* at 952. Unlike in *Columbia College of Chicago*, the plaintiff here has adequately alleged that UW's actions to overturn its previous decision and readmit Player 1 were motivated by his role as a star member of the UW football team. Again, at the pleading stage, given that college football is far and away a male sport, if not exclusively so, this gives rise to a reasonable inference that the alleged harassment on the part of UW was gender-based.[3]

**II. Due Process Claim**

In *Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019), the Seventh Circuit considered a due process claim raised in the context of disciplinary proceedings, although again the plaintiff was the disciplined student, not the alleged victim here. The court explained that a property interest in a "college education" standing alone is "not 'property' in the usual sense of the word." *Id.* at 659. Instead, the court must consider "'whether the student has shown that he has a *legally protected entitlement* to his continued education at

---

[3] Defendants do not appear to argue that plaintiff's deliberate indifference Title IX claim fails as a matter of law because she has not alleged adequately that defendants' deliberate indifference was motivated by her sex (or by Player 1's sex), but if they had, this argument would have failed for the same reasons as defendants' argument to dismiss plaintiff's erroneous outcome claim.

11

the university.'" *Id.* (quoting *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013)) (emphasis in *Charleston*). The court further explained that "in the context of higher education, any property interest is a matter of contract between the student and the university," meaning the student must ultimately "establish that the contract entitled him to the specific right that the university allegedly took" in order to prevail on a due process claim against the university. *Id.* at 660. Moreover, in pleading a due process claim based on such a property interest, "[g]eneralities won't do; 'the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return.'" *Id.* (quoting *Charleston*, 741 F.3d at 773). Indeed, the Seventh Circuit affirmed the district court's order dismissing the due process claim on the pleadings because "his complaint does not point to any specific contractual promise that Purdue allegedly broke." *Id.*

Here, plaintiff attempts to point to "contractual promises," but the sources cited all fall short of alleging exact promises made by the UW and her that would support the inference of a property interest sufficient to sustain a due process claim as a matter of law.[4] Instead, plaintiff generally identifies the following "UW policies, regulations, and other materials":

- UWS Code statement that "[t]he missions of the University of Wisconsin System and its individual institutions can be realized only if the university's teaching, learning, research and service activities occur in living and learning environments that are safe and free from violence, harassment . . . . In

---

[4] Because the court concludes that plaintiff has failed to identify a property interest underlying a due process claim against defendant Blank, it need not consider defendant's alternative bases for dismissal, including a failure to exhaust state procedures by appealing her decision under Chapter 227 and qualified immunity.

> promoting such environments, the university has a responsibility to address student nonacademic misconduct." (Pl.'s Am. Compl. (dkt. #26) ¶ 126.)

- UW application materials received by plaintiff state, "[n]o student may be denied admission to, participation in, or the benefits of, or be discriminated against in any service, program, course or facility of the system or its institutions because of the student's . . . sex." (*Id.* ¶ 122.)

- The UW Policy on Discrimination, Harassment, and Retaliation expressed the University's "commitment to providing an environment free of discrimination, harassment and retaliation." (*Id.* ¶ 123.)

- The UW Policy on Sexual Harassment and Sexual Violence states that UW commits "to creating and maintaining a campus community that is free from sexual harassment and sexual violence." (*Id.* ¶ 125.)

On their face, none of these promises afforded plaintiff the opportunity to participate in Player 1's petition for readmission or otherwise granted her a contractual right to "meaningful access to education," whatever that term may mean in this context. (*Id.* ¶ 139.) Perhaps plaintiff may have been able to allege more specific promises, but as currently pleaded none of the language identified in UW's policies and recruitment material identify a contract between the UW and plaintiff giving rise "to the specific right that the university allegedly [under]took." *Purdue University*, 928 F.3d at 660. Accordingly, the court will grant defendants' motion to dismiss plaintiff's due process claim against defendant Blank.

ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss (dkt. #27) is GRANTED IN PART as to plaintiff's due process claim against Rebecca Blank AND DENIED IN PART as to her Title IX claims against the Board of Regents.

2) The clerk's office is directed to terminate Rebecca Blank as an active defendant in the caption and enter final judgment in her favor at the close of this case.

Entered this 3rd day of November, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge