

October 30, 2018

Quintez Cephus
Sent electronically to CEPHUS@WISC.EDU

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017269604

Dear Quintez,

This letter is to inform you of my decision after reviewing an investigative report prepared by UW-Madison Title IX Coordinator Lauren Hasselbacher. Ms. Hasselbacher's letter to you of May 31, 2018 indicated you were being investigated for allegedly engaging in sexual activity with two women while they were incapacitated from alcohol and without their consent on April 22, 2018. That letter indicated you were also being investigated for taking photographs of the two undressed women without their their permission on April 22, 2018. The letter informed you, that for each complainant respectively, such conduct could possibly violate the following provisions of UWS Chapter 17:

1. 17.09(2) Sexual Assault, Second Degree, as defined in Wis. Stat § 940.225(2)(cm) ("sexual contact or sexual intercourse with a person who is under the influence of an intoxicant to a degree which renders that person incapable of giving consent if the defendant has actual knowledge that the person is incapable of giving consent and the defendant has the purpose to have sexual contact or sexual intercourse with the person while the person is incapable of giving consent");

2. 17.09(2) Sexual Assault, Third Degree, as defined in Wis. Stat § 940.225(3)(a) ("Whoever has sexual intercourse with a person without the consent of that person...");

3. 17.09(12) Violation of Criminal Law, as defined in Wis. Stat § 942.09(2)(am)(1) ("Captures an intimate representation without the consent of the person depicted under circumstances in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted does not consent to the capture of the intimate representation."); and

4. 17.09(19) Sexual Harassment, conduct defined in the UW-Madison Policy on Sexual Harassment and Sexual Violence.

This letter reflects my decision for the non-academic misconduct charges relating to Complainant 2. I will send a separate letter regarding my decision for non-academic misconduct charges relating to Complainant 1.

<u>Findings on the Allegations</u>

I have carefully reviewed the information available to me, which includes the investigative report and attachments A-I as referenced in the report. I also had two colleagues from the Office of Student Conduct and Community Standards review this material and provide me with their thoughts. Additionally, I viewed the videos referenced in the report and reviewed the Title IX Office's investigative file. The only information available reflecting your description of the late evening and

**Student Conduct and Community Standards**
Division of Student Life  70 Bascom Hall  Madison, Wisconsin 53706
608/263-5700  Fax: 608/265-5646  E-mail: dean@students.wisc.edu  conduct.students.wisc.edu

Attorneys' Eyes Only

BOR_001333



early morning hours on April 21-22, 2018 are (a) statements attributed to you by the Madison Police indicating that you had sex with both complainants and that it was consensual, i.e. "It was all good. [Complainant 1] was all into it" and "Shit me and [Complainant 2] had sex and [Complainant 1]. All in my room together. (Attachment A of Investigative Report p. 5), and your written statements to the Title IX Coordinator dated September 13, 2018, September 25, 2018, and October 6, 2018 (received October 7, 2018), indicating that the sexual activity was consensual, but not providing further details. I did not draw any adverse inference from your limited participation and based my decision on the information available to me. Based upon this information, and in applying the standard of "preponderance of the evidence," my findings are as follows:

For allegations relating to Complainant 2, I am finding you responsible for violating 17.09(2), Sexual Assault 2nd degree; responsible for violating 17.09(2), Sexual Assault 3rd degree; not responsible for violating 17.09(12), Violation of Criminal law; and responsible for violating 17.09(19), Sexual Harassment. Below I will review the information and explain my decision for each charge in detail.

### For 17.09(2), Sexual Assault 2nd Degree

In evaluating whether there is a preponderance of the evidence to support a finding of responsibility for UWS 17.09(2), Sexual Assault 2nd degree, I examined the information available to determine if Complainant 2 was under the influence of an intoxicant to a degree that she was incapable of giving consent; and if so, did you have actual knowledge that she was incapable of giving consent and have the purpose of having sexual contact or sexual intercourse with Complainant 2 while she was incapable of giving consent.

The investigative report includes an interview with Complainant 2 conducted by the Title IX Coordinator. Complainant 2 recounted that on April 21, 2018, after dinner but before going to the Double U bar, she drank possibly 3-4 White Claws, which are described as a hard seltzer that contains 5% ABV per serving. Footnote 17 indicates Complainant 2 is unsure exactly how many White Claws she consumed. (p. 10 Investigative Report). Complainant 2 described that she felt "buzzed" and was possibly walking "a little wobbly" while on the way to the Double U bar. (p. 10 Investigative Report). Complainant 2 recalled arriving at the Double U bar around 10:00 or 10:30 p.m. Complainant 2 described consuming 3-4 large 24 oz. cans of beer, half a shot, and some of "a bunch of other peoples' drinks" while at the Double U bar. (p. 10 Investigative Report). Complainant 1 arrived at the Double U bar around 11:38 p.m. (p. 23 Investigative Report).

During her interview with the Title IX Coordinator, Complainant 2 described that she lacks memory of large parts of the evening, including Complainant 1 arriving at the Double U bar and of being photographed for the pictures of you and her as shown in Attachment D to the Investigative Report. (p. 10 Investigative Report). Complainant 2 described other memory loss, including how long she was at the bar and leaving the bar to go to your apartment. Complainant 2 recalled a memory of being in a car with Complainant 1 and no memory of going into your apartment. Complainant 2's next memory is lying in a bed along with Complainant 1, and asking Complainant 1 "Is this really happening right now?" (p. 10 Investigative Report). Complainant 2 recalled that she and Complainant 1 were possibly not wearing clothes at this point, but has no memory of their clothes coming off. (p. 10-11 Investigative Report). Complainant 2's next memory is running out of the apartment and going home (p. 11, Investigative Report).

Complainant 2 told the Title IX Coordinator that she believed her memory was so fragmented due to being drunk. (p. 10 Investigative Report). I note there is a great deal of information that suggests Complainant 2 did not recall much of what had transpired that night, e.g. Complainant 2 told the Madison Police she "...had no memory of having sex with anyone that night...." (Attachment A of Investigative Report, p. 4).

I next examined other information regarding the intoxication level of Complainant 2. Attachment I to the Investigative Report consists of a string of text messages between Complainant 1 and 2. At 11:39 p.m. on April 21, 2018, Complainant 2 texted that she was "Kndrunk." At 7:08 a.m. the next morning, Complainant 1 texted, "We were both so fucking drunk." Later texts in this series of messages between Complainant 1 and Complainant 2 show Complainant 2 did not recall what had happened in your bedroom and did not remember engaging in sexual activity with you. (Attachment I of

Attorneys' Eyes Only                                                                                                              BOR_001334

Investigative Report).

In an interview with the Title IX Coordinator, Witness 1 described drinking with Complainant 2 on April 21, 2018 and recalled Complainant 2 consuming two or three White Claws and maybe one beer before they went to the Double U bar. Witness 1 did not pay close attention to Complainant 2 while at the Double U bar, but believes Complainant 2 consumed two shots of something mixed and estimated Complainant 2 had one or two beers and maybe more White Claws. (p. 13 Investigative Report). Witness 1 recalled that Complainant 2 appeared "very drunk," but was not "falling down or anything" while at the Double U bar. (p. 13 Investigative Report). Witness 1 indicated she could tell Complainant 2 was very drunk due to observations of how Complainant 2 was leaning against something, her eyes being more shut, her facial expression, and Complainant 2 speaking very slowly. (p. 13 Investigative Report). W1 told the Title IX Coordinator that W1's memory may be slightly impacted by alcohol and/or time, but she believes she remembers the majority of the evening. (p. 13 Investigative Report).

Another student informed the Madison Police he could tell Complainant 2 was drunk at the Double U bar on April 21-22, 2018 due to the way Complainant 2 was carrying herself (Attachment A of Investigative Report, p. 4).

At 1:13 a.m. on April 22, 2018, Complainant 1 texted "Raped" to a friend via Snapchat. (Attachment C of the Investigative Report), which indicates at least some sexual activity happened before that time.

I evaluated video from your apartment building provided by your attorney and residence hall video held by the UW Police. I found these videos to be as described in the investigative report (p. 21-23 Investigative Report). Complainant 2 is shown quickly walking out of your apartment and down a stairwell at 2:27 a.m. on April 22, 2018. Complainant 2 is shown entering Sellery Residence Hall at 2:35 a.m. In this video, Complainant 2 is walking without aid, but appears slightly unbalanced. Complainant 2 is also seen using her key card to access the residence hall building and her dorm floor. At 2:41 a.m., you and two other students arrive at Comp 2's dorm floor. At 2:43 a.m., Comp 2 emerges from her dorm room, having changed her clothes, and all four of you enter her dorm room. At 2:47 a.m., Complainant 2 leaves her dorm room briefly to go to the bathroom and water fountain area and returns to her room less than a minute later. At 3:11 a.m., you and two other students (not Complaint 2) leave Complainant 2's dorm room and enter the elevator. Between 2:44 a.m. and 3:22 a.m., you and Complainant 2 exchange a few short text messages, including Complainant 2 texting you "Sleeping. If you find my juul lmk [heart emoji, kiss face emoji].

The only information available reflecting your description of the late evening and early morning hours on April 21-22, 2018 are (a) statements attributed to you by the Madison Police indicating that you had sex with both complainants and that it was consensual, i.e. "It was all good. [Complainant 1] was all into it]" and "Shit me and [Complainant 2] had sex and [Complainant 1]. All in my room together (Attachment A of Investigative Report p. 5), and your written statements to the Title IX Coordinator indicating that the sexual activity was consensual.

I find by a preponderance of the evidence that Complainant 2 was incapacitated by alcohol to a degree that rendered her unable to consent to sexual activity with you. I believe the information available indicates you had actual knowledge of Complainant 2's intoxication level and intentionally engaged in sexual contact and sexual intercourse with Complainant 2 while she was too intoxicated to consent. In determining you are responsible for violating 17.09(2), Sexual Assault 2nd degree, I was persuaded by the following:

In evaluating this information, I do believe Complainant 2 was intoxicated to a degree that rendered her unable to consent to sexual activity. I believe the information available indicates you had actual knowledge of Complainant 2's intoxication level. In determining you are responsible for violating 17.09(2) for sexual assault 2nd degree, I was persuaded by the following:

- Complainant 2 was visibly intoxicated according to Witness 1 as described above. Witness 1 indicated that Complainant 2 was speaking to "the players" while Witness 1 observed her in the described intoxicated state. I understand "the players" to be you and another student interviewed by the Madison Police. This other student

- interviewed by the Madison Police observed Complainant 2 was visibly intoxicated and you were with this other student at the time.
- Attachment D to the Investigative Report consists of three pictures of you, Complainant 2, and the other student interviewed by the Madison Police. I believe these photos show Complainant 2 to be in a very intoxicated state, leaning on you with her eyes closed.
- In your statement to Madison Police and written submissions to the Title IX Coordinator, you admit to having engaged in sexual contact and sexual intercourse with Complainant 2 on April 22, 2018.
- Complainant 1 described Complainant 2 as showing signs of incapacitation immediately following the sexual contact, including signs of unconsciousness (i.e., eyes rolling back and arm flopping to bed after being lifted). (Attachment A to Investigative Report, p. 3-4).

In sum, I believe it is more likely than not likely you violated 17.09(2) by having sexual contact and sexual intercourse with Complainant 2 while having actual knowledge that Complainant 2 was under the influence of an intoxicant to the degree she could not consent to sexual activity and that you had the purpose of engaging in sexual activity with Complainant 2 while she was incapable of consent.

### For 17.09(2), Sexual Assault 3rd Degree

In evaluating whether your conduct violated 17.09(2), Sexual Assault 3rd degree, I examined the available information to determine if it was more likely than not likely you engaged in sexual intercourse with Complainant 2 without her consent. Sexual intercourse "includes the meaning assigned under s. 939.22 (36) as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction. The emission of semen is not required." Wis. Stats. § 940.225(5)(c). Consent "means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact." Wis. Stats. § 940.225(4).

I evaluated information from Complainant 2's interviews with the Madison Police on April 23, 2018 and with the Title IX Coordinator on August 9, 2018. Complainant 2 told the Madison Police she had "snapshots" of being in your car and of running out of your apartment crying. (Attachment A of the Investigative Report, p. 4). Complainant 2 informed the Title IX Coordinator the memory she has of being on a bed with Complainant 1 in the apartment was triggered by the texts from Complainant 1. (p. 11 Investigative Report). Neither interview contains any information that suggests Complainant 2 gave verbal or physical indicia of consent to have sexual intercourse with you.

I also evaluated the information provided by Complainant 1. Complainant 1 has consistently reported that you engaged in sexual activity with both Complainant 1 and Complaint 2 without their consent on April 22, 2018, including penetrating Complainant 2's vagina with your penis and finger(s). Complainant 1 recalled Complainant 2 saying something to the effect of "I am too tired" and then you started having sex with Complainant 2. (p. 5 Investigative Report; Attachment A to the Investigative Report, p. 2).

You told the Madison Police and the Title IX Coordinator that the sexual activity with Complainant 2 was consensual, but did not describe what words or overt actions by Complainant 2 demonstrated consent.

I find by a preponderance of the evidence that you engaged in sexual intercourse with Complainant 2 without her consent. In determining you are responsible for violating 17.09(2), Sexual Assault 3rd degree, I was persuaded by the following:

- You indicated to the Madison Police and the Title IX Coordinator that you had sexual intercourse with Complainant 2 on April 22, 2018, although you stated that the sexual activity was consensual.
- There is no information available in any of the materials indicating there was any discussion of sexual activity with Complainant 2, that Complainant 2 verbally consented to engaging in sexual activity with you, or that Complainant 2 initiated sexual activity with you or gave other physical indicia of consent to sexual activity with

Attorneys' Eyes Only

BOR_001336

you.
- Complainant 1 witnessed Complainant 2 tell you she was "too tired," which reflects a lack of consent, and then you proceed to have sexual intercourse with Complainant 2 anyway.

In sum, I find it more likely than not likely you violated 17.09(2), Sexual Assault 3rd degree by engaging in sexual intercourse without consent of Complainant 2.

### For 17.09(12), Violations of Criminal Law

The investigative report indicates Complainant 1 recalled waking up naked on a bedroom floor in an off-campus apartment where you were present and seeing flashes from a cell phone camera being operated and hearing the artificial shutter sounds from the phone (p. 5 & 8 Investigative Report). Complainant 1 reported you and another student were involved in taking the pictures and were laughing. Complainant 1 indicated you left the bedroom with the other student when you became aware Complainant 1 was awake and knew you were taking the pictures. Complainant 1 indicated she was very intoxicated and had some difficulty getting up, but eventually followed you to the living room, covering her nudity with a blanket. Complainant 1 indicated that she then confronted you and the other student about the photos. Complainant 1 indicated she observed on a phone pictures of herself and of Complainant 2. (Attachment A p. 3 & p. 8 Investigative Report). Complainant 1 indicated multiple photos were taken of her and Complainant 2 and that she as the photos were deleted from the phone. (p. 8 Investigative Report).

Complainant 2 did not mention in her interview with the Madison Police or the Title IX Investigator recalling anyone taking pictures of her while she was at your apartment on April 22, 2018. As described above, Complainant 1 recalls photos being taken of her and Complainant 2. Complainant 1, however, cannot recall whether Complainant 2 was covered or uncovered in the photos (p. 8 Investigative Report).

Information in the investigative report indicates the other student admitted to taking a picture, which was deleted when Complainant 1 confronted both of you. The other student stated you had asked him to come to your room and take the picture. (p. 12 Investigative Report). The other student also described taking this photograph to an Athletics Department official, saing that "no one was naked" (p. 20, Investigative Report). You initially stated to the Madison Police on April 22, 2018 that "Shit I did not take no pictures." (Attachment A of Investigative Report, p. 5). You then stated that one picture was taken and subsequently deleted when Complainant 1 confronted you and the other student. You added the picture was taken on the other student's phone. (Attachment A of Investigative Report, p. 5).

In evaluating whether there is a preponderance of the evidence to support a finding of responsibility for UWS 17.09(12), Violation of Criminal Law , I examined Wis. Stat § 942.09(2)(am)(1) and associated statutory definitions. Wis. Stat § 942.09(2)(am)(1) prohibits capturing "an intimate representation without the consent of the person depicted under circumstances in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted does not consent to the capture of the intimate representation." Wis. Stats. § 942.09(1)(ag) defines "intimate representation" as including, among other things, "[a] representation of a nude or partially nude person." Wis. Stats. § 942.09(1)(am) defines "nude or partially nude person" as "any human being who has less than fully and opaquely covered genitals, pubic area or buttocks, any female human being who has less than a fully opaque covering over any portion of a breast below the top of the nipple, or any male human being with covered genitals in a discernibly turgid state." A finding of responsibility for violating UWS 17.09(12) does not require criminal charges or prosecution.

Based upon the information available, it is not clear whether any photos of Complainant 2 captured an "intimate representation" as defined above. Complainant 1 told the police she saw a photo of "Complainant 2 lying on the bed under the covers..." (Attachment A of Investigative Report, p. 3). Complainant 1's written statement does not mention Complainant 2 when describing the picture taking. Complainant 1 in her interview with the Title IX Coordinator indicated she did not recall if Complainant 2 was naked or covered (p.8 Investigative Report).

Attorneys' Eyes Only

BOR_001337

3/23/22, 8:27 AM
Case: 3:20-cv-00856-wmc   Document #: 94-4   Filed: 04/06/22   Page 6 of 8
BOR_001338_Cephus.mturg.C2.pdf.pdf

Additionally, Complainant 2 during her interview with Title IX Coordinator did not mention anything about pictures being taken while she was in your apartment (p. 9-12, Investigative Report).

Therefore, the available information does not show it is more likely than not likely this law was violated regarding Complainant 2, and, therefore, I am finding you not responsible for violating 17.09(12) in relation to Complainant 2.

### For 17.09(19), Sexual Harassment

In evaluating whether your conduct violated 17.09(19), Sexual Harassment, I had to determine if you engaged in conduct of a sexual nature that had the purpose or effect of unreasonably interfering with Complainant 2's work or academic performance or created an intimidating, hostile, or offensive working or learning environment. First, I will note there is no information in the investigative report suggesting there is or was a work environment affected by this incident. Therefore, I am focusing my analysis on Complainant 2's educational environment.

While the investigative report does not demonstrate you had the "purpose" of sexually harassing Complainant 2, I believe your conduct did have the "effect" of negatively affecting Complainant 1's learning environment as a student at UW-Madison. Complainant 2 reported leaving campus and going home right after the incident to study for finals and finish the semester remotely. Additionally, Complainant 2 was unable to finish one class by the end of the semester and needed to request an incomplete in that class. By having engaging in sexual activity without Complaint 1's consent, I believe your conduct as a fellow student created an intimidating, offensive, and hostile learning environment such that Complainant 2 would feel extremely uncomfortable sharing a campus with you. I believe that another reasonable person in Complainant 2's position would feel the same.

On the basis of the information obtained during the investigation, I find a "preponderance of the evidence" supports a finding that you are responsible for violating 17.09(19), Sexual Harassment.

### Recommended Sanction

Engaging in sexual intercourse with another student without that student's consent and while that person is incapacitated is incompatible with membership in the UW community. Your conduct had a profound impact on Complainant 2's academic environment, and I believe your continued presence on campus would have a significant negative impact on her educational experience. Accordingly, I am recommending a sanction of University Disciplinary Expulsion. Written notice of the expulsion will be permanently noted on your University transcripts, you will not be allowed to enroll at another UW institution, except as provided in UWS 17.18, and you would not be allowed on the UW-Madison campus without the written consent of this office. Please refer to the below information sheet for specific details about and effects of expulsion for nonacademic misconduct.

### Right to a Hearing

Since I am recommending University Disciplinary Expulsion we will proceed to a hearing before a Nonacademic Misconduct Hearing Committee, unless you choose to waive that right, in writing, or we enter into a settlement agreement per UWS 17.15. You are allowed to remain a student until this matter is resolved, i.e., the conclusion of a hearing and any appeal to the Chancellor, you waive your right to a hearing, or we enter into a settlement. If you would like to waive your right to a hearing or wish to discuss a settlement, please let me know in writing. Detailed information about the disciplinary and hearing procedures can be found in Chapter UWS 17. Included in your hearing rights is the right to be assisted by one advisor of your choice. However, for an advisor to assist you, you must yourself attend the hearing. I will be in contact with you and your attorney regarding dates and times for this hearing.

Please be advised that University policies prohibit acts of retaliation taken against a person because they reported any form of sex discrimination, filed a complaint, participated in the investigation of a complaint, or assisted others who raised a complaint. Retaliation is a serious offense that can result in disciplinary action.

Attorneys' Eyes Only

BOR_001338

If you have any questions about this letter or the disciplinary and hearing process, or if I can be of any further assistance, please contact me. I can be reached at 608/263-5700 or ervin.cox@wisc.edu. Finally, you are encouraged to print or save a copy of this letter for your records.

Sincerely,

Ervin Cox
Assistant Dean/Director, Division of Student Life

Attorneys' Eyes Only

BOR_001339



Expulsion from the UW System for Nonacademic Misconduct

As defined by University of Wisconsin System Administrative Code Chapter 17, expulsion means a termination of student status, with resultant loss of student rights and privileges.

Specific limitations due to expulsion include but are not limited to the following:

- You may not enroll in another UW System institution unless you successfully petition for reinstatement as outlined in UWS 17.18
- You may not be present on the UW-Madison campus or any other UW System campus. This includes but is not limited to:
    - Attendance at Camp Randall or other sports venues.
    - Presence at the Union Terrace
    - Presence in the Arboretum
    - Presence at or participation in any University event regardless of location; and
    - Presence at or participation in any private or public event being hosted on the University campus
- Additionally, as an expelled student you may not:
    - Volunteer for or be employed by the University in any capacity as a student
    - Be on campus for reasons related to your employment or association with a non-University entity
    - Participate in any academic activity of the University on or off campus
    - Employment as a non-student employee (e.g., university staff, academic staff, employee-in-training) or temporary employee (TE) may be impacted as determined by the relevant employment rules and processes

Should you have any questions regarding limitations, please contact the Office of Student Conduct & Community Standards (OSCCS) at (608) 263-5700 and ask to speak with the Assistant Dean/Director or Assistant Director. UW-Madison may, but is not required to, grant permission for you to be on campus for a specific meeting or purpose, such as attending disciplinary proceedings, wrapping up employment, or moving out. Should you seek such permission, please contact OSCCS. Should you seek permission to be present on another UW campus, please contact OSCCS at UW-Madison before contacting the chancellor's office of the other institution. Failure to abide by these limitations will result in additional conduct action. Additionally, University police will be notified and you may be cited for unlawful presence if you fail to abide by these conditions.

**Division of Student Life**
University of Wisconsin-Madison    70 Bascom Hall    500 Lincoln Drive    Madison, Wisconsin 53706
608-263-5700    Fax: 608-265-5646    Email: dean@studentlife.wisc.edu

Attorneys' Eyes Only

BOR_001340