


Chancellor's Decision
Regarding Quintez Cephus
Petition for Restoration of Rights
August 19, 2019

I. Background

Chapter 17 of the University of Wisconsin System Administrative Code (UWS 17) governs non-academic misconduct on the University of Wisconsin-Madison campus. Section 17.18 authorizes a student who has been expelled from the University to petition the chancellor for the right to apply for readmission. On August 6, 2019, attorneys representing Quintez Cephus (Petitioner) filed a Petition for Restoration of Rights on his behalf seeking his readmission to the University of Wisconsin-Madison. Per UWS 17.18, as Chancellor of the University of Wisconsin-Madison, I am charged with making the readmission decision.

The Petitioner seeks readmission following his expulsion from the university related to a finding of non-academic misconduct. The University received reports that the Petitioner sexually assaulted two fellow students (Complainants). The allegations were investigated by the University's Title IX Coordinator, who issued the Final Investigative Report on October 9, 2018. Following receipt of the Title IX Coordinator's Report and an opportunity to review the Title IX Coordinator's investigative file, the investigating officer from the University's Office of Student Conduct and Community Standards issued a letter dated October 30, 2018 charging the Petitioner with numerous violations of the University's non-academic misconduct code and recommending a sanction of University Disciplinary Expulsion.

UWS 17.11(4)(c)2 requires that a hearing be held in cases involving the sanction of expulsion unless a respondent waives the right to the hearing. The Petitioner did not waive his right to hearing in this case and, as such, a hearing was held January 15, 2019. The parties were

Chancellor Rebecca M. Blank
Morgridge Friends Distinguished Chair of Leadership
Bascom Hall   University of Wisconsin–Madison   500 Lincoln Drive   Madison, Wisconsin 53706
608-262-8967   Fax: 608-262-8333   TTY 608-263-2473

Attorneys' Eyes Only

informed of the Committee's decision via email following its deliberations on January 15, 2019. A written decision outlining the Committee's rationale was emailed to the parties on January 29, 2019. The Committee unanimously concluded that a preponderance of evidence (more likely than not) existed to find the Petitioner responsible for violating the following provisions of the non-academic misconduct code:

For Complainant 1:  17.09(2) Sexual Assault Third Degree and 17.09(19) Sexual Harassment
For Complainant 2:  17.09(2) Sexual Assault Third Degree and 17.09(19) Sexual Harassment

The Committee also upheld the recommended sanction of expulsion. On January 30, 2019, the Petitioner appealed the Committee's decision to me as provided for in UWS 17.13. I issued a decision on March 13, 2019 upholding the Committee's findings and sanction. On March 13, 2019, the Petitioner requested that the Board of Regents review my decision. The Board of Regents released its decision and order on June 7, 2019 denying the Petitioner's request and upholding my decision.

I think it is important to note that all of these actions followed the guidelines established by Title IX and UWS 17. They were in accordance with appropriate procedures; given the information available, the University acted appropriately. The provision of additional information leading to the decision outlined below does not indicate any mistakes in this earlier procedure.

The Petitioner was also charged criminally for sexual assault against both Complainants. Following a not guilty verdict by a jury on August 2, 2019, the Petitioner filed this Petition for Restoration on August 6. The Petitioner asserts that the non-academic misconduct findings and expulsion must be vacated and his request for readmission be granted based on the recent jury verdict in his favor. The petition consists of a written summary of select pieces of evidence from the trial and several attachments including the jury verdicts, media accounts, credentials for certain expert witnesses, select pages of a medical exam of one Complainant, transcript of a video deposition for one witness, a brief excerpt of a portion of cross examination of one Complainant at trial, select text messages, defense and prosecution

Attorneys' Eyes Only

BOR_021108

investigator interviews with two witnesses, transcript of police interview of one Complainant at hospital, weather data, and multiple prepared video clips. At the University's request, the Petitioner's counsel provided lists of the witnesses who testified at the criminal trial and independently offered notes of closing arguments at trial for one of Petitioner's counsel. Petitioner's counsel subsequently offered a letter they previously provided to the District Attorney's office regarding the Petitioner's background, as well as to two affidavits from an expert witness who did not participate in the trial. Petitioner and his counsel declined to provide other requested information for the review of the petition. The University independently sought additional information that it understood was available at the trial or subject to release upon the trial's conclusion. Despite numerous attempts to obtain a wide variety of materials related to the trial, not all information requested was available for review in a timely manner.

II. **Decision and Analysis**

Pursuant to the University's non-academic misconduct code, the burden of proof in university disciplinary proceedings for sexual assault and sexual harassment is "a preponderance of the evidence." UWS 17.12(4)(f)3. This is a lower burden of proof than the "beyond a reasonable doubt standard" applicable in criminal trials, which is appropriate given the different liberty interests at stake in the two types of proceedings. Accordingly, acquittal in the criminal proceeding is not, by itself, a basis for vacating the University's disciplinary findings and sanctions; I must assess the available information.

Substantial amounts of information were not made available to the University during the University's Title IX investigation and disciplinary proceedings, including information available to and under the Petitioner's control. As UW-Madison officials explained throughout the disciplinary process, the University is legally required to move forward with its disciplinary proceedings even if there is an ongoing criminal case involving the same conduct. Courts have repeatedly held that this does not violate due process or the Fifth Amendment's privilege against self-incrimination. *See e.g., Roe v. Director, Miami University, Office of Community Standards*, 2019 WL 1439585 (S.D. Ohio April 1, 2019); *DOE v. DiStefano*, 2019 WL 2372685 (D. Colo. June 5, 2019).

Attorneys' Eyes Only

BOR_021109

In evaluating the petition, I reviewed the following materials to which the University obtained access: (1) the University's investigatory and hearing record; (2) the materials submitted with the Petition for Restoration and by Petitioner's counsel thereafter; and (3) available police reports. After conducting a thorough review of the available information, I have concluded that the newly supplied information affects the University's prior findings in this matter related to third-degree sexual assault, but not sexual harassment. A review of the available police reports, separate witness statements obtained through interviews with the University's investigators, and video clips supports a conclusion that 1) the Complainants were consistently reported as having consumed alcohol; 2) the Petitioner did not consume any alcohol; 3) witness descriptions of the Complainants' levels of intoxication ranged from "drunk", "very drunk", "buzzed", "tipsy", "hammered", "drunk but acting normal" and "blacked out"; 3) the Complainants were also consistently described by nearly all of the same witnesses, as well as viewed in video evidence, as not exhibiting outward signs of incapacitation such as slurred speech or difficulty walking or standing; and 4) there is great divide in the accounts of the activities that occurred in the Petitioner's apartment and bedroom. The University's ability to assess credibility of witnesses during the initial investigation was impacted by the refusal of numerous individuals with relevant information to participate in the University's process. In addition, the recent receipt of police reports highlights the incompleteness of certain witness statements provided to the University during its investigatory process even though the witnesses could have provided the full information to the University.

The level of ambiguity created by these conflicting accounts is, practically speaking, incapable of resolution. As a result, the evidence falls short of the preponderance of the evidence standard required to find the Petitioner responsible for sexual assault.

That said, I maintain that the information made available at the time to the Title IX investigator, the Hearing Committee, me, and the Board of Regents during the disciplinary process amply supported both findings of sexual assault. The fact that more information available at a later date calls this finding into question does not invalidate the conclusions reached based on available information during the initial disciplinary process. In addition, I

Attorneys' Eyes Only

BOR_021110

affirm the University's decision to follow federal law by proceeding with available information notwithstanding the pending criminal process. It is particularly disappointing that certain individuals with relevant information testified at trial but refused to participate in the University's process even when they were not subject to any criminal prosecution.

I do not make the decision lightly to reverse the sexual assault charges. I am painfully aware of the challenges that complainants face in reporting sexual violence and the additional difficulty of participating in court and administrative proceedings and establishing evidence sufficient to meet the various burdens of proof to hold respondents accountable. My decision in no way suggests that the Complainants in this matter were not telling the truth as they perceived it. The decision simply indicates that the additional information creates a level of ambiguity that precludes a finding of responsibility for third-degree sexual assault.

As noted above, I do not reverse the University's prior findings of responsibility of Petitioner for sexual harassment. Following Petitioner's original denial to police, the Petitioner eventually admitted in a police interview and at trial that he took steps to document his sexual interaction with the Complainants, including enlisting the assistance of a friend to photograph the women in a vulnerable state and without their consent. Both Complainants were in a vulnerable state and the University's investigation concluded that one of the Complainants was in a state of undress when photographed at the Petitioner's direction. The police report of the interview with the witness who was the photographer confirmed that one Complainant was nude from the waist down when photographed.

The Petitioner's instigation of photographing the women in his bedroom, including one in a state of undress, without their consent represents behavior that violates the non-academic misconduct code prohibiting sexual harassment as defined in Board of Regent policies and the UW-Madison Policy on Sexual Harassment and Sexual Violence. The Petitioner's conduct had the effect of creating a hostile environment for Complainants as defined in the UW-Madison Policy on Sexual Harassment and Sexual Violence. Photographing without consent the women with whom he had just had sex, including one nude from the waist down, for the sole purpose of documenting the sexual interaction constitutes conduct of a sexual nature. By

Attorneys' Eyes Only

BOR_021111

initiating that action, the Petitioner is responsible for the impact of that decision. Taking a photo in the situation as described, even if the photo was deleted, was an invasion of privacy and is hostile, intimidating, and offensive. This type of behavior can have continuing effects on the educational environment for the impacted Complainants.

Notwithstanding my decision to vacate the finding of third-degree sexual assault, the Petitioner's behavior associated with the intact findings of sexual harassment is incompatible with the expectations of students at the University. This suggests that some University disciplinary action is appropriate. Hence, I reduce the sanction from expulsion to University Disciplinary Suspension from the effective date of the Chancellor's Appeal decision (March 13, 2019) through August 19, 2019.

In preparing a response to this petition, I also carefully reviewed the Petitioner's disciplinary history with the University. It is important to note that the incidents that are the subject of the petition are not the only instances of misbehavior by the Petitioner. A review of the University's records of reported incidents of alleged academic and non-academic misconduct by the Petitioner reveals five (5) incidents, in addition to those that are at issue in the petition:

1. June 23, 2016: Harassment/Disruption (Case Closed After Petitioner Attended Required Consultation with Title IX Coordinator)
2. September 20, 2016: Disorderly Conduct (Written Reprimand and Housing Contract Jeopardy)
3. February 23, 2017: Disruption/Violation of University Rules (University Reprimand and Housing Contract Jeopardy)
4. May 3, 2017: Dangerous Conduct/Refusal to Comply with Request/Harassment (Warning Given)
5. December 18, 2018: Academic Misconduct: Credit for Work of Others; Use of Unauthorized Materials in Exam (Lower Exam Score and Warning)

This history and the specific facts underlying these incidents (not recounted here) are of concern. I am also troubled by the fact that the Petitioner lied to police as part of the

Attorneys' Eyes Only

BOR_021112

investigation of the incidents associated with this petition and misrepresented his university disciplinary history in his Chancellor-level appeal by stating "I have never in my life been in any sort of disciplinary trouble." Accordingly, while Petitioner is eligible for readmission to the University, I issue a strong warning that he conduct himself appropriately in the future. Given his full disciplinary history, any future determinations of responsibility for any form of misconduct while a student here is likely to result in serious disciplinary action.

Specifically, I am directing that:

1. The two separate findings of responsibility of Petitioner for third-degree sexual assault are vacated.
2. The two separate findings of responsibility of Petitioner for sexual harassment remain intact.
3. The expulsion sanction imposed on the Petitioner is vacated and replaced with University Disciplinary Suspension effective March 13, 2019 through August 19, 2019.
4. Petitioner is readmitted to the University of Wisconsin-Madison effective August 19, 2019.
5. The no-contact directives issued to the Petitioner prohibiting contact with the Complainants remain in effect.

Finally, let me be clear that this judgment is rendered without regard to the Petitioner's past status as a student athlete. This decision readmits him as a student at the University. His future status as a student athlete depends upon actions by the NCAA and any other applicable governing bodies to readmit him to that status and is not the subject of this letter.

Dated this 19th day of August 2019,

by: *Rebecca Blank*
Rebecca M. Blank, Chancellor

Attorneys' Eyes Only

BOR_021113