## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

**JANE DOE,**                                    Case No.: 3:20-CV-00856 - WMC

        Plaintiff,

v.

**BOARD OF REGENTS, THE**
**UNIVERSITY OF WISCONSIN,** and
**REBECCA BLANK**, as an individual.

        Defendants.

---

### PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS

---

Plaintiff, Jane Doe ("Plaintiff"), by and through undersigned counsel responds to Defendant's First Set of Discovery Requests as follows:

### Preliminary Statement & Reservation of Rights

The following objections and answers are based on Plaintiff's current state of knowledge, understanding and belief based on information currently within Plaintiff's possession, custody, or control with respect to the matters addressed in each interrogatory. Plaintiff reserves the right to amend, modify, or supplement her objections and answers as discovery is not yet complete and it is anticipated that additional facts and information may be uncovered during discovery that may require Plaintiff to amend, modify, or supplement her objections and answers to these Interrogatories. Accordingly, the following objections and answers are made without waiving or intending to waive but, on the contrary, intending to preserve and preserving:

1.     Plaintiff's right to raise all questions of relevancy, materiality, privilege, and admissibility concerning the information provided for any purpose that may arise in this action or in any other action;

2.     Plaintiff's right to object to the use of the information provided, and/or the responses or the subject matter thereof, on any ground in this or any other action; and

3.     Plaintiff's right to object on any grounds at any time to other discovery requests or to any other discovery involving the information provided, the documents produced, and/or the subject matter thereof.

**General Objections to All Interrogatories**

Plaintiff makes the following General Objections to the Interrogatories. These General Objections apply to all or so many of the Interrogatories that, for convenience, they are set forth immediately below and are not necessarily repeated after each Interrogatory to which an objection is asserted. The assertion of the same, similar, or additional objections in response to specific Interrogatories, or the failure to assert any additional objections, does not waive any of Plaintiff's General Objections as set forth below:

1.     Plaintiff objects to each interrogatory to the extent that it seeks information protected by the attorney-client privilege, the work-product doctrine, the victim advocate-victim privilege, constitutional right to privacy, or any other privilege or protection recognized by law. Any disclosure of privileged or protected information is inadvertent and shall not be deemed a waiver of any applicable privilege, and Plaintiff further reserves all rights to cure any such disclosure.

2.     Plaintiff objects to each interrogatory to the extent that it is overly broad, unduly burdensome, harassing, or unreasonably cumulative or duplicative, unlikely to lead to the discovery

2

of admissible information, and to the extent that it asks for information that is already in the possession of Defendant or otherwise obtainable from some other source that is more convenient, less burdensome, or less expensive.

      3.    Plaintiff objects to each interrogatory and to each instruction to the extent that it purports to impose obligations or requirements beyond those specified in the Federal Rules of Civil Procedure, the Western District of Wisconsin Local Rules, the stipulations in the parties' Joint Case Management Statement, or this Court's Scheduling Order.

      Each of these general objections is hereby incorporated into the specific objections and responses set forth below. Subject to and without waiving the foregoing general objections, Plaintiff further objects and responds to Defendant's First Set of Written Discovery Requests as set forth below.

## REQUESTS TO ADMIT

      1.    Admit you did not submit your own written statement about the alleged assault to the Title IX investigator.

      **RESPONSE: Plaintiff objects to this Request for Admission Number 1 as vague and ambiguous and appears to presume that a written statement was required. Plaintiff admits that her statements to the Title IX office were not submitted in a written form but were instead done via interview.**

      2.    Admit you did not submit records of your April 22, 2018, hospital examination following the alleged assault to the Title IX investigator. (See Dkt. 26, ¶ 5 ("The day following the rape, Plaintiff went to the hospital for an examination . . . .")

**RESPONSE: Plaintiff objects to this Request for Admission Number 2 as vague and ambiguous as it presumes that plaintiff had possession or control of any such documents. Notwithstanding that objection, Plaintiff admits that she did not submit any records from the examination to the Title IX investigator and has never seen any report regarding her level of intoxication.**

3.      Admit you did not submit a toxicology report or any other report identifying your level of intoxication on April 21, 22, or 23, 2018, to the Title IX investigator.

**RESPONSE: Plaintiff objects to this Request for Admission Number 3 as vague and ambiguous as it presumes that Plaintiff had possession or control of any such documents. Notwithstanding that objection, Plaintiff admits that she did not submit any records from the examination to the Title IX investigator and has never seen any report regarding her level of intoxication.**

4.      Admit Catherine Dougherty emailed you on August 5, 2019, and specifically included in the email, "If there is any support that you need please let me know." (See BOR_001436.)

**RESPONSE: Admit.**

5.      Admit your attorney, Amy Bogost, and Nancy Lynch had a telephone discussion on August 8, 2019. (See BOR_011659)

**RESPONSE: Admit.**

6.      Admit your attorney, Amy Bogost, emailed with Nancy Lynch about the petition

for restoration of rights on August 12, 2019. (See BOR_011659)

**RESPONSE: Admit.**

7.     Admit you received notice and a copy of the decision on the petition for restoration of rights by email from the Office of the Chancellor on August 19, 2019, at 9:31:49. (See BOR_000704 & BOR_000705-711.)

**RESPONSE: Deny.  Though an email could have been sent at that time, Plaintiff did not receive it until later.  Plaintiff received notice of the Chancellor's decision on the petition for restoration of rights via media coverage.**

8.     Admit the decision on the petition for restoration of rights contained the following: "The no-contact directives issued to the Petitioner prohibiting contact with the Complainants remain in effect." (See BOR_000705, at page BOR_000711.)

**RESPONSE: Admit.**

9.     Admit that the previously produced document paginated BOR_000705-711, is a true and correct copy of the chancellor's decision on the petition for restoration that was sent to you on August 19, 2019, at 9:31:49. (See BOR_000705-711; see also, BOR_000704).

**RESPONSE: Plaintiff admits that BOR_00705-711 appears to be a copy of what was sent to her on August 19, 2019.  Plaintiff lacks sufficient information to state whether it is a "true and correct copy" or what is meant by that language.**

## INTERROGATORIES

1.     If your response to the above requests to admit is anything other than an

unequivocal "admit," please state the factual basis for each and every denial, including any portion of the request for admission that you denied.

**RESPONSE: See above.**

2.      State each and every education opportunity, such as classes, on-campus academic resources, and extracurricular activities, that Plaintiff participated in as a student of UW-Madison, including the dates of Plaintiff's participation.

**RESPONSE: Phi Alpha Delta legal fraternity, Kappa Kappa Gamma sorority, libraries, classes, Ogg Residence Hall athletic facility, bookstores, cafeterias, study rooms, theatre at MUT, UW Hockey games.**

3.      State each and every fact in support of your contention that "Plaintiff was cooperative in all stages of the proceedings." (Dkt. 26:6, ¶ 40.)

**RESPONSE:**

- **I cooperated in the report of the assault to UW and the Police.**

- **I cooperated in all interviews requested by the Title IX office.**

- **I provided all information requested from the Title IX office.**

- **I reviewed the draft Title IX report from Dean Cox as requested.**

- **I testified at the Title IX hearing in person and was subject to cross examination.**

- **I testified in the criminal trial.**

- **I was willing to cooperate in the petition for restoration of rights process but was not afforded that opportunity.**

4.      State each and every fact in support of your contention that Plaintiff "withdr[e]w from nonessential education and various societal opportunities due to the hostility and blind support for the football players," including specifically: the date(s) of the decision(s) to withdraw from opportunities, the date(s) the Plaintiff reported or otherwise communicated each incident of withdrawal to a university official, and identify the university official to whom Plaintiff reported it. (Dkt. 26:7, ¶ 46.)

**RESPONSE: After Mr. Cephus returned to campus, I stopped going out much and largely just tried to focus on my school and sorority commitments.  On weekends, I mostly went home to Chicago especially during the football season.  The decisions were just made day to day or week to week and continued throughout the remainder of my time at UW.**

5.      State each and every fact in support of your contention that Plaintiff "began avoiding certain areas of campus and altered her walking route to class to limit the likelihood of running into either man," including specifically: the date(s) Plaintiff avoided certain areas of campus and altered her walking route to class, describe the areas avoided and the alternative routes, the date(s) Plaintiff reported or otherwise communicated each incident of avoidance to a university official, and identify the university official to whom Plaintiff reported it. (Dkt. 26:7, ¶ 47.)

**RESPONSE:  It mostly depended on the day and whether I saw male athletes on campus. Whenever I saw male athletes, I got afraid that Mr. Cephus was with them and I would walk the other way.   There was one path that football players used that was closer to Camp Randall and near the psychology building that I always avoided.   When I would have**

to go to the bookstore I would try to get in and out quickly as I would frequently see athletes and specifically football players there particularly at the start of the semester.   I have no idea what dates this occurred as I would normally just decide in the moment depending on my level of fear on the given day.   I did not report this to university officials as I was given the impression that my only recourse if I needed help was to call 911.

6.    State each and every fact in support of your contention that Plaintiff "would occasionally skip certain classes altogether out of fear of encountering the men," including specifically: the date Plaintiff skipped the class, the name of the class skipped, each date (if any) Plaintiff reported or otherwise communicated this information to any university official and identify the university official to whom Plaintiff communicated it. (Dkt. 26:7, ¶ 47.)

**OBJECTION: Plaintiff objects to the interrogatory as it is vague and ambiguous as it pertains to "otherwise communicated this information." The referenced allegation in the complaint is stated as fact and is complete in its assertion.  It is unclear what is being sought in this interrogatory in reference to "each and every fact in support of your contention." Notwithstanding this objection, Plaintiff responds as follows:**

**RESPONSE:  There were days when I felt overwhelmed at the prospect of running into Mr. Cephus.  Some days were better than others, but on the days when I didn't have the strength to risk an encounter, I stayed in my apartment and missed class.  As for the remainder of the interrogatory, I am unaware of the specific dates and names of the classes and kept no records of those.**

7.    State each and every fact that supports your contention that "One day after UW tweeted that it was reviewing PLAYER 1's Petition, Mr. Taffora called the court reporter who

presided over the criminal trial and insisted on a rushed transcript. When the court reporter informed him that a rushed transcript could not be provided, Mr. Taffora next called the Office of the District Attorney, spoke with Deputy District Attorney Bill Brown and demanded that Brown give him a summary of the trial. Mr. Brown refused and indicated Mr. Taffora would have to order and wait for the transcript." (Dkt. 26:16, ¶ 98.)

**OBJECTION: Plaintiff objects to the interrogatory as vague and ambiguous. It is unclear what is being sought in this interrogatory in regard to "each and every fact that supports your contention" but the allegation in the complaint is stated with particularity and is complete in its assertion. Notwithstanding this objection, Plaintiff responds as follows:**

**RESPONSE: This allegation is based upon a statement made by Mr. Brown.**

8. State each and every fact that supports your contention that "Mr. Taffora stated to Mr. Brown that the University could not wait for an actual transcript because football season was about to start." (Dkt. 26:16, ¶ 99.)

**OBJECTION: Plaintiff objects to the interrogatory as vague and ambiguous. The allegation in the complaint is stated as fact and is complete in its assertion. It is unclear what else is being sought in this interrogatory in reference to "each and every fact that supports your contention." Notwithstanding this objection, Plaintiff responds as follows:**

**RESPONSE: This allegation is based upon a statement made by Mr. Brown.**

9. State when (if ever) Plaintiff reported or otherwise communicated to a university official that "On August 22, 2019, a friend of PLAYER 1 messaged Plaintiff threatening that she was lucky that the friend didn't know her real identity until after trial," identify the university

official to whom the Plaintiff reported it and state all facts Plaintiff reported to the university official. (Dkt. 26:19, ¶ 111.)

**RESPONSE:  I am unaware if that message was reported to any university official.**

10.    State each and every fact that supports your contention that "Plaintiff and her Title IX advisor met with school officials and the UW Police Department to ask what the school could do if she again ran into one of the Players or experienced retaliation from other students. The school officials refused to help her in any way. The clear message to Plaintiff was that the school was not there to help her. She was told in that meeting that if she needed help, she should call the police," including specifically: the date of the meeting, the specific information discussed, and identify all attendees of the meeting. (Dkt. 26:19, ¶ 122.)

**OBJECTION: Plaintiff objects to the interrogatory as vague and ambiguous.  The allegation in the complaint is stated as fact and is complete in its assertion.  Notwithstanding that objection, Plaintiff responds as follows:**

**RESPONSE: My attorney, Amy Bogost, and I met with Assistant Dean Cox and UWPD Director of Threat Intervention Services Christopher Cole in early September 2019. It was communicated to me, Ms. Bogost, and Rachel Sattler that the school would not do anything to keep Mr. Cephus away from me.  The school seemed unmotivated to meaningfully enforce the no contact provision of the Chancellor's Decision on Restoration of Rights.  They advised me that I should just avoid Mr. Cephus when I  could and call the police if anything else occurred.**

11.    Identify who told Plaintiff "the school would do nothing to help her." (Dkt. 16:20,

¶ 117.)

**RESPONSE: This was not a direct quote and those were not the words used.  I got the general message from the meeting as provided in the answer to RFP 10.**

12.    State each date Plaintiff "call[ed] her parents to have them on the phone if no one could walk with her," and the specific reason why Plaintiff called her parents for each date listed. (Dkt. 26:20, ¶ 120.)

**RESPONSE:  I do not know the specific dates I made these calls.  Each time I called, I did so with the belief that any retaliation against me was less likely if any would be assailant knew I was already talking to someone on the phone.**

13.    State each and every fact that supports your contention the decision on the petition of restoration of rights and readmission of Player 1 created an "intimidating, offensive, and hostile learning environment," including specifically: each date(s) Plaintiff reported or otherwise communicated an intimidating, offensive, and hostile learning environment to any university official, the information Plaintiff reported to the university official, and identify the university official to whom Plaintiff reported it.

**RESPONSE: As acknowledged by Dean Cox in his findings, Player 1's very presence on campus created an intimidating, offensive, and hostile learning environment.  In addition, the knowledge that the school would not offer any protections on campus and directed me to call the police with problems indicated that they were done helping me.  Most importantly though, I never knew when I might run into Mr. Cephus on campus.  He had already raped me once and was not only significantly bigger and stronger than I am, but he was also likely**

now angry with me for interfering with his football career. I was constantly on the lookout for him and would occasionally think that I saw him and my anxiety would rise dramatically. I don't even know if it was him or not that I saw but I had panic attacks when that would happen.

Also, while at the Title IX hearing in January 2019, Mr. Cephus deliberately came at me by walking directly toward me looking at me in the eye. My attorney had to step in front of me or he would have made physical contact with me. This was reported to all of the UW personnel at the hearing. Mr. Cephus had a no contact order in place at that time so I had no reason to believe that I was safe from him on campus in the fall of 2019 just because the school told him to not contact me.

Also, when I returned back to campus after Mr. Cephus was readmitted, I was there for only a day before I ran into Mr. Davis at the Hub which was a reminder that I could run into either of these men anywhere.

14.    State all "education opportunities, such as classes, on campus academic resources, and extracurricular activities" Plaintiff chose to forego because of the decision on the petition for restoration of rights and readmission of Player 1 and identify each university official to whom Plaintiff reported or otherwise communicated her decision to forego for each activity/opportunity. (Dkt. 26:25, ¶ 148.)

RESPONSE: I missed classes, did not visit the library or student union or other study areas and avoided public events on campus in general. Also, I withdrew from my philosophy course in the semester following the decision to allow Mr. Cephus back into UW.

15.    State each and every fact that supports your contention that gender bias was a motivating factor in the decision on the petition for restoration of rights.

**RESPONSE: Following the not guilty verdict at trial, there was immense pressure in the Madison community to permit Ms. Cephus to return to school. A significant part of this pressure was from fans of the men's football team. Fans were telling people to leave messages for the Chancellor while she was deciding the outcome. Also, there was significant gender stereotypes being circulated about me and Complainant 1 in the UW community as being liars and promiscuous which was part of the narrative submitted by Mr. Cephus's counsel to the Chancellor.**

16.    State each and every fact that supports your contention "that UW's actions to overturn its previous decision and readmit Player 1 were motivated by his role as a star member of the UW football team." (Dkt. 47:11.)

**RESPONSE: As stated above, there was significant pressure from the community in social media, comments to media articles, and media coverage in general that Mr. Cephus needed to be allowed back on the football team. In addition, Football coach Paul Chryst indicated publicly that he would welcome Mr. Cephus back. Also, Vice Chancellor for Legal Affairs told Assistant DA Bill Brown that UW couldn't wait for the transcripts of the criminal trial because football season was starting.**

17.    List all medical, psychiatric, psychological, or physical or mental health treatment (including, consultations, counseling, therapy, etc.) you received between April 22, 2018, and August 19, 2019, including the clinic, hospital, or other facility at which you received the treatment and identify the provider of the treatment.

13

**OBJECTION: Plaintiff objects that this interrogatory is overbroad and not proportional to the needs of the case.   Notwithstanding this objection, Plaintiff responds as follows:**

**RESPONSE:  My mental health treatment included therapist Christine Gartler of Madison and psychiatrist Dr. Robert Bloom of Glenview, IL.**

18.     List all medical, psychiatric, psychological, or physical or mental health treatments (including, consultations, counseling, therapy, etc.) you received from August 19, 2019, to present, including the clinic, hospital, or other facility at which you received the treatment and identify the provider of the treatment.

**OBJECTION: Plaintiff objects that this interrogatory is overbroad and not proportional to the needs of the case.   Notwithstanding this objection, Plaintiff responds as follows:**

**RESPONSE: My mental health treatment counseling included therapist Christine Gartler of Madison and visits with psychiatrist Dr. Robert Bloom of Glenview, IL.**

19.     State and describe any and all victim advocate and/or survivor services you received from University Health Services (UHS) from April 20, 2018, to the present and identify the individual provider(s) of the services.

**RESPONSE: I don't believe I received any such services from UHS.**

20.     State each internet-based social networking site you have used during the past five years (e.g., Ask.fm, Blogspot, BuzzFeed, CafeMom, Class mates, DeviantArt, Facebook, Flickr,

Foursquare, Google +, Habbo, Instagram, LinkedIn, LiveJournal, Meet Me, Meetup, MyLife, MySpace, MyYearbook, Periscope, Pinterest, Quora, Reddit, Reunion, Snapchat, Tagged, Tumblr, Twitter, Vine, VK, Windows Live Spaces, YouTube, Tiktok etc.). For each identified site, include the name and address of the service provider, the name and address of the account holder, your username or avatar, the URL where the account was/is available, and the dates during which you used the account.

**OBJECTION:  Plaintiff objects to this request as overbroad and not proportional to the needs of the case.  Plaintiff also objects to the extent the interrogatory as vague and ambiguous as to "the name and address of the service provider, the name and address of the account holder.  Plaintiff is also unaware of the "dates of usage" or what that may reference.  Notwithstanding this objection, Plaintiff responds as follows:**

**RESPONSE: I had the following social networks:**

1. **Instagram:**    ██████████

2. **Snapchat**    ██████████

3. **Facebook**    ██████████

4. **TikTok**    ██████**5005**

5. **Twitter**    **LYDLEE_IZZ**

6. **Pinterest**    ██████████

7. **LinkedIn**    ██████████

**8. GroupMe**     ███████████

**9. Reddit**     U\Specialist_Can9494

**10. Quora**     ███████████

21.     State each text messaging and/or instant messaging service (e.g., AT&T BlackBerry Messenger, C Spire Wireless, DTC Wireless, Facebook Messenger, Kik, MobileNation, QQ Mobile, Skype, SouthernLINC, Sprint, Telegram, T-Mobile, U.S. Cellular, Verizon, Viber, WeChat, Weibo, WhatsApp, YikYak, etc.) upon which you received or transmitted any information which is related in any way to your claim, your injuries and/or your damages. For each identified service, include the name and address of the service provider, the name and address of the account holder, your username or avatar, and the dates during which you used the service.

**RESPONSE:  Facebook Messenger, SnapChat, AT&T Text, iMessage, Instagram**

22.     Provide a computation of each category of damages you claim you sustained because of the Defendant's actions in this case and identify all documents supporting your computation of damages. (See Plaintiff's Initial Disclosures)

**RESPONSE: I was delayed in entering the job market and estimate that my lost earnings of one year due to this delay is approximately $80,500 per year.  I am also seeking emotional distress damages to be determined at trial.**

23.     Identify the "administrator" you referred to in paragraph 18 of your amended complaint. (Dkt. 26:4, ¶ 18 ("According to one administrator involved in the decision, the rushed

nature of the decision was due to the impending start of the football season.")

**RESPONSE: Raymond Taffora.**

## REQUESTS FOR PRODUCTION

1.      Produce copies of all documents you reviewed, consulted, referred to, or relied on when responding to any of the above requests for admission and interrogatories.

**RESPONSE:  Plaintiff agrees to produce non-privileged records.**

2.      Produce copies of all documents that you contend substantiate your responses to each of the above requests for admission and interrogatories.

**RESPONSE: Plaintiff agrees to produce non-privileged records.**

3.      Produce copies of all text messages, personal notes, emails, calendar entries, or any other documentation that you contend substantiate your claim that you forwent educational or social opportunities because of the decision on the petition for restoration of rights and readmission of Player 1.

**RESPONSE: Plaintiff agrees to produce non-privileged records to the extent any records exist,.**

4.      Produce copies of all journals, notes, diaries, blogs, or other documents or correspondence you have in your possession or control that have any reference to the allegations in this lawsuit and/or the injuries you claim you have sustained.

**RESPONSE: No such records exist other than in response to Request for Production**

**#3.**

5.     Produce copies of all documents on which you relied for your computation of each category of damages in response to Interrogatories No. 22.

**RESPONSE: Plaintiff agrees to produce non-privileged records.**

6.     Produce all email correspondence between university officials and Plaintiff related to the allegations in this lawsuit, including all emails discussing the alleged assault, the Title IX investigation, the petition for restoration of rights, and any accommodations or support received related to the alleged assault. (See Plaintiff's Initial Disclosures)

**RESPONSE: Plaintiff agrees to produce.**

7.     Produce all email, text message, or instant/direct message correspondence between Plaintiff and Complainant 1 from April 20, 2018, to present that mention or relate to the alleged assault, the allegations in this lawsuit, or your injuries and damages.

**RESPONSE: Plaintiff objects to this request to the extent it infringes on the attorney client privilege and the common interest or joint party privilege.  Plaintiff agrees to produce nonprivileged responsive records.**

8.     Produce all email, text message, or instant/direct message correspondence between Plaintiff and Jaime Sathasivam from April 22, 2018, to present that mention or relate to the alleged assault, the allegations in this lawsuit, or your injuries and damages.

**RESPONSE: Plaintiff objects to this request as it infringes on the victim advocate-victim privilege.**

9.      Produce all email, text message, or instant/direct message correspondence between Plaintiff and any person, other than Plaintiff's attorney, that mention or relate to the alleged assault, the allegations in this lawsuit, or your injuries and damages.

**RESPONSE: Plaintiff objects to the extent that this request infringes on the therapist-patient privilege, the victim advocate-victim privilege, and the common interest or join party privilege. Those objections notwithstanding Plaintiff agrees to produce any non-privileged document.**

10.     For any and all expert witnesses retained for this lawsuit, produce the expert's report and the expert's file, including all information provided to the expert and/or reviewed by the expert. (See Plaintiff's Initial Disclosures)

**RESPONSE: Plaintiff will complete her expert disclosures consistent with the deadlines agreed to by the parties.**

11.     Produce certified copies of all records associated with your hospital examination on April 22, 2018, following the alleged assault. (See Dkt. 26, ¶ 5 ("The day following the rape, Plaintiff went to the hospital for an examination . . . .")

**RESPONSE: Plaintiff does not have any certified copies in her possession or control. Plaintiff will produce any records provided by the hospital as they are provided by the hospital.**

12.     Produce any toxicology report or any other report identifying your level of intoxication on April 21, 22, or 23, 2018.

**RESPONSE: Plaintiff is not in possession or control of any toxicology reports.**

13.    For each social network account identified in Interrogatory No. 20, produce a copy of each page and each photograph that includes your image from April 20, 2018, to present, that relate to the alleged assault, the allegations in this lawsuit, or to damages.

**RESPONSE: Plaintiff objects to this request as it is vague and ambiguous as to the meaning of "each page."  That objection outstanding, Plaintiff agrees to produce those records that relate to the alleged assault, the allegations in this lawsuit, or to damages.**

14.    Download and produce all electronically stored Facebook data, in accordance with the instructions attached hereto as Exhibit A, for any Facebook account identified in Interrogatory No. 20 for the time period of April 20, 2018, to present, that relate to the alleged assault, the allegations in this lawsuit, or to damages.

**RESPONSE: See Response to RFP 13 regarding social network accounts.**

15.    Produce certified, true, and accurate copies of all your medical and mental health care provider records for the providers identified in response to Interrogatories Nos. 17 and 18, from April 20, 2017, to present. In the alternative, please provide and sign the appropriate authorization for each medical and mental health care provider you saw from April 20, 2017, to present.

**RESPONSE: Plaintiff objects that this request is overbroad and not proportional to the needs of the case and infringes on the therapist-patient and doctor-patient privileges. Plaintiff's general emotional distress damages have not injected her mental health into this matter and as such, those records remain privileged.**

16.    Produce a copy of your official or unofficial transcript from UW-Madison.

**RESPONSE: Plaintiff agrees to produce.**

17.    Produce copies of any and all records that Plaintiff turned over to the Dane County District Attorney's Office.

**RESPONSE: No such records exist.**

18.    For each and every text messaging and/or instant messaging service identified in response to Interrogatory No. 21, produce copies of any and all texts or messages that mention or relate to the alleged assault, the allegations in this lawsuit, or your injuries and damages for April 20, 2018 to the present.

**RESPONSE: Plaintiff agrees to produce.**

19.    Produce copies of all Plaintiff's cell phone logs, cell phone carrier bills including any itemization of texts and calls, and/or any records of text messages or calls, made or received, from April 20, 2018 until December 31, 2020.

**RESPONSE: Plaintiff objects that this request is overbroad and not proportional to the needs of the case.   If Defendant would like to narrow this request to something relevant to the case, Plaintiff will reconsider her objection.**

20.    Please sign the attached UHS authorization for release of health records (Exhibit B) for any and all services you identified in response to Interrogatory Number 19 for April 20, 2018, to the present.

**RESPONSE: See response to Interrogator Number 19.**

Dated:  February 18, 2022

Respectfully submitted,

HUTCHINSON BLACK AND COOK, LLC

By:   */s/ John Clune*
     John Clune
     Christopher Ford
     921 Walnut Street, Suite 200
     Boulder, CO  80302
     (303) 442-6514
     clune@hbcboulder.com
     ford@hbcboulder.com

DAVIS & PLEDL, SC

By: */s/ Robert Theine Pledl*
     Robert (Rock) Theine Pledl
     Victoria Davis Davila
     1433 N. Water Street – Suite 400
     Milwaukee, WI 53202
     Telephone: (414) 488-1354
     rtp@davisandpledl.com
     vldd@davisandpledl.com

     *Attorneys for Plaintiff*

Doe Deposition Exhibit 2 - 22

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on February 18, 2022, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS** was served upon the following via email:

Rachel L. Bachhuber, Esq.
Ann M. Peacock, Esq.
Wisconsin Department of Justice
Office Box 7857
Madison, Wisconsin 53707-7857
bachhuberrl@doj.state.wi.us
peacockam@doj.state.wi.us

Attorneys for Defendants


By:   */s/ John Clune*
        John Clune

**VERIFICATION**

I, Jane Doe, declare and state:

     I am the Plaintiff in the matter *Jane Doe v. Board of Regents, The University of Wisconsin,* *et* al. I have read Defendant's First Interrogatories to Plaintiff and know its contents. To the best of my knowledge, all of the information contained in these answers is true and correct.

     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: ___2/18_____, 2022.

                                       _____
                                       Jane Doe