Attendance

Generally, students are expected to follow established course attendance policies. However, in this situation, an accommodation to flex the attendance policy may be appropriate. Instructors are encouraged to work directly with the student to find a flexible way for the student to meet course requirements. The following are some guidelines instructors can use when determining whether attendance is an essential function of the course:

1. How much classroom interaction is there between the instructor and students, and among students?
2. Do in-class student contributions constitute a significant component of the learning process?
3. Does the fundamental nature of the course rely upon student participation as an essential method for learning, e.g. foreign language?
4. To what degree does a student's absence constitute a significant loss to the educational experience of other students in the class?
5. How is attendance calculated in the final grade?
6. What is the classroom policy regarding attendance?

Due date/deadline extensions and missed exams

Students may request a due date extension or to reschedule an exam. Professors and students are strongly encouraged to proactively discuss the possibility of the student requesting an extension and/or rescheduling an exam. Items to discuss include:

- How and when the student will notify their instructor
- How the student will make up missed content
- The time frame/deadline for completion

Graduate & Professional Students

Graduate and professional students may have very different types of requests, depending on their program. Please speak with the student about what types of accommodations they are requesting. If you are unsure if you are willing or able to provide what is requested, please contact the sender of this letter or the Title IX Coordinator.

## *Who is ultimately responsible?*

Student Responsibilities
- Meet with instructor as soon as possible to discuss potential accommodations.
- Communicate with instructor regularly throughout the semester to keep them apprised of changes and confirm expectations of the course.

Instructor Responsibilities
- Be available to discuss potential accommodations with the student/representative.
- Discuss how you expect the student to communicate with you when a class will be missed or a postponement is being requested, and the guidelines/deadlines for making up missed work.
- Respect and uphold student privacy to the extent that you are able.
- Keep in mind that each student is different and will have differing needs. Let the student guide you on how you can best support them.

*Document last updated September 2018*

Doe Deposition Exhibit 3 - 676

CONFIDENTIAL                                                                                          DOE 0890



**From:** Catherine Dougherty <catherine.dougherty@wisc.edu>
**Sent:** Thursday, September 12, 2019 3:31 PM
**To:** MICHAEL T LIGHT <mlight@ssc.wisc.edu>
**Cc:** ████████████████████████wisc.edu>
**Subject:** Dean of Students Office Notification Regarding a Student

Hi Professor Light,

My name is Kate Dougherty and I work in the Dean of Students Office, specifically with student assistance. ████ ████ (Campus ID: ██████████) is a student enrolled in your class. ████ has been a victim of a sensitive crime. She is connected to resources and she is receiving the proper care and assistance she currently needs. We are working with her and campus partners to provide additional follow up and support. She has expressed to me that she is committed to being engaged in her course work this semester.

I recognize that academic standards are always the prerogative of each instructor. However, I ask for your understanding during this difficult time. Any assistance you can offer ████ will be greatly appreciated. Moreover, I have attached a letter from our Title IX Coordinator on campus, Lauren Hasselbacher which further details reasonable accommodations.  Please contact me if you have any questions or concerns. This correspondence serves to open the door for her to have a conversation with you to ask for accommodations, as necessary.

Thank you,
Kate


Kate Dougherty
Dean of Students Office (DoSO)
Student Assistance Specialist
UW-Madison
70 Bascom Hall
608-263-5700
catherine.dougherty@wisc.edu


Top Five:
Achiever, Discipline, Learner, Competition, Includer

Concerned about a student? Report it here through the Student of Concern Report

CONFIDENTIAL                                        DOE 0891

**green•dot**
uw-madison

CONFIDENTIAL

DOE 0892

# Message from Campus Title IX Coordinator

To Faculty and Instructors:

My name is Lauren Hasselbacher, and I am the UW-Madison Title IX Coordinator. You are receiving this letter because a student in your course or under your supervision has experienced sexual misconduct (which can include sexual harassment, sexual assault, dating violence or stalking) and is requesting an academic accommodation.

**When we become aware that a student has experienced sexual misconduct, UW-Madison is obligated to comply with the student's request for academic accommodations when those accommodations are reasonably available. We do this to ensure that the student's educational experience is not negatively impacted as a result of the misconduct.**

Accommodations can provide an alternate way for a student to meet essential course requirements and actively participate in the course while also allowing students to feel safe on campus and heal in the aftermath of a traumatic event(s). You may receive notice that a student has requested an accommodation through the Dean of Students Office, UHS Survivor Services, or the Title IX Program.

On the next page, you will find additional information and guidance on this topic, including an explanation as to why we offer accommodations in this context and what might be considered "reasonably available" in the context of attendance, meeting deadlines, extended time for and/or rescheduling of exams. It also describes student and instructor responsibilities.

In general, as you navigate this process please remember the following:

- Do not ask the student for details or specifics about the conduct they experienced.
- Trust that the sender of this letter has discussed safety needs with the student and provided the student other important resources on campus. This letter *alone* does not trigger any reporting obligations.
- Talking about this subject may be difficult or uncomfortable with the student; if you have technical questions about your obligations as an instructor, please direct them to the sender of the letter or to the Title IX Coordinator. You can then discuss details and specific expectations with your student.
- If the student's request(s) seems reasonable to you and you feel comfortable granting the accommodation without further discussion, you are not required to consult with anyone before granting the request.

If you have any questions about this document or attached guidance, please feel free to contact me at 608-890-3788 or lauren.hasselbacher@wisc.edu. If you have questions about a particular student's requests or needs, please contact the sender of the letter or email. Thank you for your assistance and cooperation.

Sincerely,

Lauren Hasselbacher
Title IX Coordinator

CONFIDENTIAL                                                                                                   DOE 0893

# Title IX Academic Accommodations Guidance

## Why do we grant accommodations?

Students who have experienced sexual misconduct may ask for accommodations for a variety of reasons.

- Safety
  - Avoiding a particular person or place on campus
- Scheduling reasons
  - A student may need to meet with law enforcement or attend meetings having to do with a criminal or university investigation
- Effects of trauma[1]
  - Students who have experienced trauma(s) have symptoms that may interfere with their ability to achieve their educational goals. It is difficult to predict the onset of symptoms and how long they may last. Experiencing these symptoms may impede a student's academic success and ability to fully participate in the classroom.
  - Symptoms may include, but are not limited to, the following:
    - Changes in thinking, feeling, relating, and functional behaviors
    - Diminished capacity to cope with the demands of daily life
    - Inability to concentrate and focus on the tasks at hand, slower recall and organization of information
    - Lack of energy; fatigue
    - Sleep and eating disturbances
    - Flashbacks (feelings of reliving the event), intrusive memories, and nightmares
    - Depression; anxiety
    - Hypervigilance

## What does "reasonably available" mean?

<u>Test accommodations</u>

Examples of some common test accommodations include extended time, testing alone or in a small group. Accommodations might include an alternative test date or test format.

- *Extended time* may be appropriate for a student who is having difficulty focusing.
- *Testing alone or in a small group* may be appropriate for students who are having difficulty with concentration or who want to avoid a particular student or space during the exam period.
- *Alternative test dates*: may be appropriate when a scheduling conflict occurs (related to their report of misconduct to law enforcement or the university) or when a student experiences an unanticipated impact from a traumatic experience. Students are expected to take exams within a reasonable amount of time from the original test date and to notify the instructor of this request in a timely manner.

---

[1] Information about the effects of trauma provided by UHS Survivor Services.

Doe Deposition Exhibit 3 - 680

Attendance

Generally, students are expected to follow established course attendance policies. However, in this situation, an accommodation to flex the attendance policy may be appropriate. Instructors are encouraged to work directly with the student to find a flexible way for the student to meet course requirements. The following are some guidelines instructors can use when determining whether attendance is an essential function of the course:

1. How much classroom interaction is there between the instructor and students, and among students?
2. Do in-class student contributions constitute a significant component of the learning process?
3. Does the fundamental nature of the course rely upon student participation as an essential method for learning, e.g. foreign language?
4. To what degree does a student's absence constitute a significant loss to the educational experience of other students in the class?
5. How is attendance calculated in the final grade?
6. What is the classroom policy regarding attendance?

Due date/deadline extensions and missed exams

Students may request a due date extension or to reschedule an exam. Professors and students are strongly encouraged to proactively discuss the possibility of the student requesting an extension and/or rescheduling an exam. Items to discuss include:

- How and when the student will notify their instructor
- How the student will make up missed content
- The time frame/deadline for completion

Graduate & Professional Students

Graduate and professional students may have very different types of requests, depending on their program. Please speak with the student about what types of accommodations they are requesting. If you are unsure if you are willing or able to provide what is requested, please contact the sender of this letter or the Title IX Coordinator.

## *Who is ultimately responsible?*

Student Responsibilities
- Meet with instructor as soon as possible to discuss potential accommodations.
- Communicate with instructor regularly throughout the semester to keep them apprised of changes and confirm expectations of the course.

Instructor Responsibilities
- Be available to discuss potential accommodations with the student/representative.
- Discuss how you expect the student to communicate with you when a class will be missed or a postponement is being requested, and the guidelines/deadlines for making up missed work.
- Respect and uphold student privacy to the extent that you are able.
- Keep in mind that each student is different and will have differing needs. Let the student guide you on how you can best support them.

*Document last updated September 2018*

Doe Deposition Exhibit 3 - 681

CONFIDENTIAL

**From:** Office of the Chancellor <chancellor@wisc.edu>
**Sent:** Monday, August 19, 2019 9:31 AM
**To:** ██████████████████████ <████████wisc.edu>
**Cc:** Amy Bogost <abogost@gmail.com>
**Subject:** Notice of Decision - Petition for Restoration of Student Rights

Dear Ms. ██████

Please find attached here the notice of decision regarding the petition for restoration of student rights, related to your non-academic misconduct matter. You are receiving a redacted version reflecting only the information to which you are entitled. This serves as the notice required to complainants regarding any change to the disciplinary outcome under UWS 17.18.

Sincerely,

Office of the Chancellor

CONFIDENTIAL



**Chancellor's Decision**

**Regarding Quintez Cephus**

**Petition for Restoration of Rights**

**August 19, 2019**

I.      **Background**

Chapter 17 of the University of Wisconsin System Administrative Code (UWS 17) governs non-academic misconduct on the University of Wisconsin-Madison campus. Section 17.18 authorizes a student who has been expelled from the University to petition the chancellor for the right to apply for readmission. On August 6, 2019, attorneys representing Quintez Cephus (Petitioner) filed a Petition for Restoration of Rights on his behalf seeking his readmission to the University of Wisconsin-Madison.  Per UWS 17.18, as Chancellor of the University of Wisconsin-Madison, I am charged with making the readmission decision.

The Petitioner seeks readmission following his expulsion from the university related to a finding of non-academic misconduct. The University received reports that the Petitioner sexually assaulted two fellow students (Complainants). The allegations were investigated by the University's Title IX Coordinator, who issued the Final Investigative Report on October 9, 2018. Following receipt of the Title IX Coordinator's Report and an opportunity to review the Title IX Coordinator's investigative file, the investigating officer from the University's Office of Student Conduct and Community Standards issued a letter dated October 30, 2018 charging the Petitioner with numerous violations of the University's non-academic misconduct code and recommending a sanction of University Disciplinary Expulsion.

UWS 17.11(4)(c)2 requires that a hearing be held in cases involving the sanction of expulsion unless a respondent waives the right to the hearing. The Petitioner did not waive his right to hearing in this case and, as such, a hearing was held January 15, 2019. The parties were

**Chancellor Rebecca M. Blank**

**Morgridge Friends Distinguished Chair of Leadership**

Bascom Hall   University of Wisconsin–Madison   500 Lincoln Drive   Madison, Wisconsin 53706

608-262-8967   Fax: 608-262-8333   TTY 608-263-2473

CONFIDENTIAL                                                                                    DOE 0897

informed of the Committee's decision via email following its deliberations on January 15, 2019. A written decision outlining the Committee's rationale was emailed to the parties on January 29, 2019. The Committee unanimously concluded that a preponderance of evidence (more likely than not) existed to find the Petitioner responsible for violating the following provisions of the non-academic misconduct code:

For Complainant 1:  17.09(2) Sexual Assault Third Degree and 17.09(19) Sexual Harassment
For Complainant 2:  17.09(2) Sexual Assault Third Degree and 17.09(19) Sexual Harassment

The Committee also upheld the recommended sanction of expulsion.  On January 30, 2019, the Petitioner appealed the Committee's decision to me as provided for in UWS 17.13. I issued a decision on March 13, 2019 upholding the Committee's findings and sanction. On March 13, 2019, the Petitioner requested that the Board of Regents review my decision.  The Board of Regents released its decision and order on June 7, 2019 denying the Petitioner's request and upholding my decision.

I think it is important to note that all of these actions followed the guidelines established by Title IX and UWS 17. They were in accordance with appropriate procedures; given the information available, the University acted appropriately. The provision of additional information leading to the decision outlined below does not indicate any mistakes in this earlier procedure.

The Petitioner was also charged criminally for sexual assault against both Complainants. Following a not guilty verdict by a jury on August 2, 2019, the Petitioner filed this Petition for Restoration on August 6. The Petitioner asserts that the non-academic misconduct findings and expulsion must be vacated and his request for readmission be granted based on the recent jury verdict in his favor. The petition consists of a written summary of select pieces of evidence from the trial and several attachments including the jury verdicts, media accounts, credentials for certain expert witnesses, select pages of a medical exam of one Complainant, transcript of a video deposition for one witness, a brief excerpt of a portion of cross examination of one Complainant at trial, select text messages, defense and prosecution

2

CONFIDENTIAL

investigator interviews with two witnesses, transcript of police interview of one Complainant at hospital, weather data, and multiple prepared video clips. At the University's request, the Petitioner's counsel provided lists of the witnesses who testified at the criminal trial and independently offered notes of closing arguments at trial for one of Petitioner's counsel. Petitioner's counsel subsequently offered a letter they previously provided to the District Attorney's office regarding the Petitioner's background, as well as to two affidavits from an expert witness who did not participate in the trial. Petitioner and his counsel declined to provide other requested information for the review of the petition. The University independently sought additional information that it understood was available at the trial or subject to release upon the trial's conclusion. Despite numerous attempts to obtain a wide variety of materials related to the trial, not all information requested was available for review in a timely manner.

II.    **Decision and Analysis**

Pursuant to the University's non-academic misconduct code, the burden of proof in university disciplinary proceedings for sexual assault and sexual harassment is "a preponderance of the evidence." UWS 17.12(4)(f)3. This is a lower burden of proof than the "beyond a reasonable doubt standard" applicable in criminal trials, which is appropriate given the different liberty interests at stake in the two types of proceedings. Accordingly, acquittal in the criminal proceeding is not, by itself, a basis for vacating the University's disciplinary findings and sanctions; I must assess the available information.

Substantial amounts of information were not made available to the University during the University's Title IX investigation and disciplinary proceedings, including information available to and under the Petitioner's control. As UW-Madison officials explained throughout the disciplinary process, the University is legally required to move forward with its disciplinary proceedings even if there is an ongoing criminal case involving the same conduct. Courts have repeatedly held that this does not violate due process or the Fifth Amendment's privilege against self-incrimination. *See e.g., Roe v. Director, Miami University, Office of Community Standards*, 2019 WL 1439585 (S.D. Ohio April 1, 2019); *DOE v. DiStefano*, 2019 WL 2372685 (D. Colo. June 5, 2019).

3

CONFIDENTIAL

In evaluating the petition, I reviewed the following materials to which the University obtained access: (1) the University's investigatory and hearing record; (2) the materials submitted with the Petition for Restoration and by Petitioner's counsel thereafter; and (3) available police reports. After conducting a thorough review of the available information, I have concluded that the newly supplied information affects the University's prior findings in this matter related to third-degree sexual assault, but not sexual harassment. A review of the available police reports, separate witness statements obtained through interviews with the University's investigators, and video clips supports a conclusion that 1) the Complainants were consistently reported as having consumed alcohol; 2) the Petitioner did not consume any alcohol; 3) witness descriptions of the Complainants' levels of intoxication ranged from "drunk", "very drunk", "buzzed", "tipsy", "hammered", "drunk but acting normal" and "blacked out"; 3) the Complainants were also consistently described by nearly all of the same witnesses, as well as viewed in video evidence, as not exhibiting outward signs of incapacitation such as slurred speech or difficulty walking or standing; and 4) there is great divide in the accounts of the activities that occurred in the Petitioner's apartment and bedroom. The University's ability to assess credibility of witnesses during the initial investigation was impacted by the refusal of numerous individuals with relevant information to participate in the University's process. In addition, the recent receipt of police reports highlights the incompleteness of certain witness statements provided to the University during its investigatory process even though the witnesses could have provided the full information to the University.

The level of ambiguity created by these conflicting accounts is, practically speaking, incapable of resolution. As a result, the evidence falls short of the preponderance of the evidence standard required to find the Petitioner responsible for sexual assault.

That said, I maintain that the information made available at the time to the Title IX investigator, the Hearing Committee, me, and the Board of Regents during the disciplinary process amply supported both findings of sexual assault. The fact that more information available at a later date calls this finding into question does not invalidate the conclusions reached based on available information during the initial disciplinary process. In addition, I

CONFIDENTIAL                                                                                     DOE 0900

affirm the University's decision to follow federal law by proceeding with available information notwithstanding the pending criminal process. It is particularly disappointing that certain individuals with relevant information testified at trial but refused to participate in the University's process even when they were not subject to any criminal prosecution.

I do not make the decision lightly to reverse the sexual assault charges. I am painfully aware of the challenges that complainants face in reporting sexual violence and the additional difficulty of participating in court and administrative proceedings and establishing evidence sufficient to meet the various burdens of proof to hold respondents accountable. My decision in no way suggests that the Complainants in this matter were not telling the truth as they perceived it. The decision simply indicates that the additional information creates a level of ambiguity that precludes a finding of responsibility for third-degree sexual assault.

As noted above, I do not reverse the University's prior findings of responsibility of Petitioner for sexual harassment. Following Petitioner's original denial to police, the Petitioner eventually admitted in a police interview and at trial that he took steps to document his sexual interaction with the Complainants, including enlisting the assistance of a friend to photograph the women in a vulnerable state and without their consent. Both Complainants were in a vulnerable state and the University's investigation concluded that one of the Complainants was in a state of undress when photographed at the Petitioner's direction. The police report of the interview with the witness who was the photographer confirmed that one Complainant was nude from the waist down when photographed.

The Petitioner's instigation of photographing the women in his bedroom, including one in a state of undress, without their consent represents behavior that violates the non-academic misconduct code prohibiting sexual harassment as defined in Board of Regent policies and the UW-Madison Policy on Sexual Harassment and Sexual Violence. The Petitioner's conduct had the effect of creating a hostile environment for Complainants as defined in the UW-Madison Policy on Sexual Harassment and Sexual Violence. Photographing without consent the women with whom he had just had sex, including one nude from the waist down, for the sole purpose of documenting the sexual interaction constitutes conduct of a sexual nature. By

5

Doe Deposition Exhibit 3 - 687

CONFIDENTIAL

DOE 0901

initiating that action, the Petitioner is responsible for the impact of that decision. Taking a photo in the situation as described, even if the photo was deleted, was an invasion of privacy and is hostile, intimidating, and offensive. This type of behavior can have continuing effects on the educational environment for the impacted Complainants.

Notwithstanding my decision to vacate the finding of third-degree sexual assault, the Petitioner's behavior associated with the intact findings of sexual harassment is incompatible with the expectations of students at the University. This suggests that some University disciplinary action is appropriate. Hence, I reduce the sanction from expulsion to University Disciplinary Suspension from the effective date of the Chancellor's Appeal decision (March 13, 2019) through August 19, 2019.



6

CONFIDENTIAL                                                                      DOE 0902



Specifically, I am directing that:

1. The two separate findings of responsibility of Petitioner for third-degree sexual assault are vacated.
2. The two separate findings of responsibility of Petitioner for sexual harassment remain intact.
3. The expulsion sanction imposed on the Petitioner is vacated and replaced with University Disciplinary Suspension effective March 13, 2019 through August 19, 2019.
4. Petitioner is readmitted to the University of Wisconsin-Madison effective August 19, 2019.
5. The no-contact directives issued to the Petitioner prohibiting contact with the Complainants remain in effect.

Finally, let me be clear that this judgment is rendered without regard to the Petitioner's past status as a student athlete. This decision readmits him as a student at the University. His future status as a student athlete depends upon actions by the NCAA and any other applicable governing bodies to readmit him to that status and is not the subject of this letter.

Dated this 19th day of August 2019,

by: _Rebecca Blank_

Rebecca M. Blank, Chancellor

7

Doe Deposition Exhibit 3 - 689

CONFIDENTIAL

DOE 0903

**From:** LAUREN HASSELBACHER <lauren.hasselbacher@wisc.edu>
**Sent:** Thursday, May 31, 2018 10:46 AM
**To:** Jaime Sathasivam <jaime.sathasivam@thercc.org>
**Cc:** ██████████████████ <████wisc.edu>
**Subject:** RE: Notice of Charge

Hello Jaime and ███████
I apologize for the confusion with the dates. Attached are Amended Notices of Charge that were issued today.

Additionally, Jaime has indicated that ███████ has retained an attorney to represent her in this case. I have not yet been contacted by this person, and I will therefore continue to communicate with the two of you until you instruct me otherwise. ███████ if you would like me to direct my communication to the attorney, please indicate so an email (so that I have written permission).

Thank you,
Lauren

**Lauren Hasselbacher**
Campus Title IX Coordinator
University of Wisconsin-Madison
354 Bascom Hall
608-890-3788
Lauren.Hasselbacher@wisc.edu

**From:** Jaime Sathasivam <jaime.sathasivam@thercc.org>
**Sent:** Wednesday, May 30, 2018 10:05 AM
**To:** LAUREN HASSELBACHER <lauren.hasselbacher@wisc.edu>
**Subject:** Re: Notice of Charge

███████ just pointed out that the date of the assault is wrong- it was April 22, not May.
Jaime

Get Outlook for iOS

**From:** LAUREN HASSELBACHER <lauren.hasselbacher@wisc.edu>
**Sent:** Tuesday, May 29, 2018 5:35:35 PM
**To:** Jaime Sathasivam
**Cc:** ████████████████ ███████
**Subject:** RE: Notice of Charge

Hello ███████ and Jaime,

CONFIDENTIAL                                                    DOE 0904

Attached are the Notices of Charge that were issued today.

It is University protocol to inform the Athletics Department when a student athlete is subject to a formal investigation of student misconduct, as the department has its own misconduct policy that all student athletes must follow. Your identifying information will not be disclosed. Please let me know if you have any concerns about us sharing this information or if you have any other questions.

Regards,
Lauren

**Lauren Hasselbacher**
Campus Title IX Coordinator
University of Wisconsin-Madison
354 Bascom Hall
608-890-3788
Lauren.Hasselbacher@wisc.edu

---

**From:** LAUREN HASSELBACHER
**Sent:** Tuesday, May 29, 2018 4:16 PM
**To:** 'Jaime Sathasivam' <jaime.sathasivam@thercc.org>
**Cc:**
**Subject:** RE: Notice of Charge

Hello Jaime and
Thank you for getting back to me. Because I have sufficient information to initiate the investigation, I will send out the Notices of Charge today.             thank you for agreeing to provide more information in the future. To hopefully avoid having to speak with you more than once about the allegations, I think it might make sense for me to wait until Ive had a chance to review the Madison Police Report and/or speak with witnesses, and then ask you follow-up questions at that point. However, if you prefer to speak sooner we can work something out.

I will send you a copy of the Notice of Charge once it has been distributed. At this point, I will include you on communications unless I hear otherwise from either of you (in which case I can continue to route through Jaime).

Regards,
Lauren

**Lauren Hasselbacher**
Campus Title IX Coordinator
University of Wisconsin-Madison
354 Bascom Hall
608-890-3788
Lauren.Hasselbacher@wisc.edu

---

**From:** Jaime Sathasivam <jaime.sathasivam@thercc.org>
**Sent:** Tuesday, May 29, 2018 3:13 PM
**To:** LAUREN HASSELBACHER <lauren.hasselbacher@wisc.edu>
**Cc:**
**Subject:** RE: Notice of Charge

I just spoke with          She said that she saw          written statement and is unsure what

CONFIDENTIAL                                                          DOE 0905

more she could add because she has little memory from the night but she is willing to speak with you and answer any questions. She did also say that what she read was factual and accurate. In regards to this portion below, she is uncertain if photos were taken of her or not. Is there a good time for you and ▮▮▮▮ to speak over the phone so she can answer any questions you might have? ▮▮▮▮ would like to have either myself or Amy Bogust on the call as well so if you can send some time options that would be great.
Thank you,

Jaime Sathasivam, MSW
Director of Client Programming

Rape Crisis Center
2801 Coho Street, Suite 301
Madison, WI 53713
Phone: 608.251.5126
**Helpline: 608.251.7273**
En Español: La Linea de Ayuda: (608)25-VALOR (82567)
Fax: 608.251.6229
Website: www.TheRCC.org

*hopehelphealingsince 1973*

---

**From:** LAUREN HASSELBACHER [mailto:lauren.hasselbacher@wisc.edu]
**Sent:** Tuesday, May 29, 2018 10:40 AM
**To:** Jaime Sathasivam
**Subject:** Notice of Charge

Hello Jaime,
Could you please confirm with ▮▮▮▮ that the below summary and list of charges seems accurate in regards to her experiences with Quintez Cephus and Danny Davis, and whether she has any edits or additions. This is otherwise the language that will be included in the Notice. If new information is learned in the future, we can also send an amended charge. Please let me know if you wont be able to confirm by end of day. Thank you.

Quintez Cephus:

*It is reported that on or around May 22, 2018, you engaged in sexual activity with ▮▮▮▮ Raynal and ▮▮▮▮ ▮▮▮▮ undergraduate students, despite the fact that they were incapacitated from alcohol and unable to provide consent. Specifically, it is reported that you digitally penetrated Ms. ▮▮▮▮ and Ms. ▮▮▮▮ touched Ms. ▮▮▮▮ breast, then engaged in sexual intercourse (by inserting your penis into the vagina) multiple times with both Ms. ▮▮▮▮ and Ms. ▮▮▮▮ It is also reported that you took photos of Ms. ▮▮▮▮ and Ms. ▮▮▮▮ while they were undressed and without their permission.*

You are currently being investigated for possible violations of the following provisions of the Wisconsin Administrative Code.

*In regards to Ms. ▮▮▮▮*
1.    17.09(2) Sexual Assault, Second Degree, as defined in Wis. Stat § 940.225(2)(cm)

CONFIDENTIAL                                                                 DOE 0906

(sexual contact or sexual intercourse with a person who is under the influence of an intoxicant to a degree which renders that person incapable of giving consent if the defendant has actual knowledge that the person is incapable of giving consent and the defendant has the purpose to have sexual contact or sexual intercourse with the person while the person is incapable of giving consent).

2.    17.09(2) Sexual Assault, Third Degree, as defined in Wis. Stat § 940.225(3)(a) (Whoever has sexual intercourse with a person without the consent of that person)

3.    17.09(12) Violation of Criminal Law, as defined in Wis. Stat § 940.09(2)(am)(1) (Captures an intimate representation without the consent of the person depicted under circumstances in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted does not consent to the capture of the intimate representation.)

4.    17.09(19) Sexual Harassment, conduct defined the UW-Madison Policy on Sexual Harassment and Sexual Violence.

Danny Davis III:

*It is reported that on or around May 22, 2018, you took photos of* ▮▮▮▮ *Raynal and* ▮▮▮▮ ▮▮▮▮ *undergraduate students, while they were undressed and without their permission.*

You are currently being investigated for possible violations of the following provisions of the Wisconsin Administrative Code.

*In regards to Ms.* ▮▮▮▮

5.    17.09(12) Violation of Criminal Law, as defined in Wis. Stat § 940.09(2)(am)(1) (Captures an intimate representation without the consent of the person depicted under circumstances in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted does not consent to the capture of the intimate representation.)

6.    17.09(19) Sexual Harassment, conduct defined the UW-Madison Policy on Sexual Harassment and Sexual Violence.

**Lauren Hasselbacher**
Campus Title IX Coordinator
University of Wisconsin-Madison
354 Bascom Hall
608-890-3788
Lauren.Hasselbacher@wisc.edu

CONFIDENTIAL                                  DOE 0907



**Office of Compliance**
UNIVERSITY OF WISCONSIN–MADISON

## <u>Amended Notice of Charge</u>

May 31, 2018

Quintez Cephus
*via Maxient*

Dear Mr. Cephus,

The Office of Compliance has received information alleging that you may have violated the University of Wisconsin Administrative Code (UWS Chapter 17).[1] The specific allegations against you are as follows:

*It is reported that on or around April 22, 2018, you engaged in sexual activity with ▇▇ ▇▇ and ▇▇ ▇▇ undergraduate students, despite the fact that they were incapacitated from alcohol and unable to provide consent. Specifically, it is reported that you digitally penetrated Ms. ▇▇ and Ms. ▇▇ and then engaged in sexual intercourse (by inserting your penis into their vaginas) multiple times with both Ms. ▇▇ and Ms. ▇▇ It is also reported that you took photos of Ms. ▇▇ and Ms. ▇▇ while they were undressed and without their permission.*

You are currently being investigated for possible violations of the following provisions of the Wisconsin Administrative Code.

*In regards to Ms. ▇▇*

1. 17.09(2) Sexual Assault, Second Degree, as defined in Wis. Stat § 940.225(2)(cm) ("sexual contact or sexual intercourse with a person who is under the influence of an intoxicant to a degree which renders that person incapable of giving consent if the defendant has actual knowledge that the person is incapable of giving consent and the defendant has the purpose to have sexual contact or sexual intercourse with the person while the person is incapable of giving consent").

2. 17.09(2) Sexual Assault, Third Degree, as defined in Wis. Stat § 940.225(3)(a) ("Whoever has sexual intercourse with a person without the consent of that person…")

3. 17.09(12) Violation of Criminal Law, as defined in Wis. Stat § 942.09(2)(am)(1) ("Captures an intimate representation without the consent of the person depicted under circumstances in which he or she has a reasonable expectation of privacy, if

---

[1] https://docs.legis.wisconsin.gov/code/admin_code/uws/17

CONFIDENTIAL

DOE 0908

the person knows or has reason to know that the person who is depicted does not consent to the capture of the intimate representation.")

4. 17.09(19) Sexual Harassment, conduct defined in the UW-Madison Policy on Sexual Harassment and Sexual Violence.[2]

   *In regards to Ms.* ▮▮▮▮

5. 17.09(2) Sexual Assault, Second Degree, as defined in Wis. Stat § 940.225(2)(cm) ("sexual contact or sexual intercourse with a person who is under the influence of an intoxicant to a degree which renders that person incapable of giving consent if the defendant has actual knowledge that the person is incapable of giving consent and the defendant has the purpose to have sexual contact or sexual intercourse with the person while the person is incapable of giving consent").

6. 17.09(2) Sexual Assault, Third Degree, as defined in Wis. Stat § 940.225(3)(a) ("Whoever has sexual intercourse with a person without the consent of that person…")

7. 17.09(12) Violation of Criminal Law, as defined in Wis. Stat § 942.09(2)(am)(1) ("Captures an intimate representation without the consent of the person depicted under circumstances in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted does not consent to the capture of the intimate representation.")

8. 17.09(19) Sexual Harassment, conduct defined the UW-Madison Policy on Sexual Harassment and Sexual Violence.

The Office of Compliance is initiating an investigation into these allegations. **Please note that no conclusions have been reached as to the truth of any of the allegations described above.** You can learn more about the student nonacademic misconduct disciplinary process here: https://conduct.students.wisc.edu/nonacademic-misconduct/.

I would like to schedule a meeting with you to discuss the information referenced above and to give you an opportunity to respond to the allegations. **Please contact me by telephone at 608-890-3788 or by email at lauren.hasselbacher@wisc.edu no later than Friday, June 1, 2018 in order to schedule a meeting with me**. You may also provide a written statement about or response to the alleged misconduct, or additional materials you deem relevant for the Office of Compliance to consider during its investigation. If you provide a written statement, response, or additional materials, they will become part of the official record. You also may have an advisor or support person with you during the disciplinary process; however, that person has no formal role in the meeting. If this person is an attorney, you are encouraged to have them read the "Information for Attorneys" section on the website of the Office of Student Conduct and Community Standards (OSCCS).

Once the Office of Compliance has completed its investigation, it will the share the results with OSCCS, which will determine what, if any, nonacademic misconduct occurred (i.e., a finding

---

[2] https://compliance.wiscweb.wisc.edu/wp-content/uploads/sites/102/2018/01/UW-Madison-Policy-on-Sexual-Harassment-And-Sexual-Violence-January-2018.pdf

CONFIDENTIAL                                                   DOE 0909

of "responsible" or "not responsible" for each charge) and whether or not to recommend one or more disciplinary sanctions.[3] A finding of nonacademic misconduct for sanctions UWS 17.10(1)(a) to (g) and all sexual assault, sexual harassment, and Title IX cases, regardless of sanction, shall be based on a "preponderance of the evidence" (i.e., more probably true than not true). The sanctions of probation, suspension, and expulsion are noted on a student's transcripts.

## No Contact Directive:

As described in written communications from April 30, 2018 and May 1, 2018, *you are prohibited from having any contact with* ████ ████ *and* ████ ████ Contact refers to any intentional words or actions including, but not limited to: telephone calls, text messages, instant messages, emails, Facebook, Twitter, Snapchat, or other forms of social media; destruction or vandalism of the named individual's property; verbal abuse or personal harassment both on and off-campus; and use or threats of physical violence both on and off-campus.

Incidental contact is not a violation of this order. Incidental contact may include unintentionally passing the named individual or unexpectedly seeing the named individual in a campus building, residence hall, or off-campus location. If you have incidental contact, it is your responsibility to remove yourself from the situation as quickly as possible under the circumstances, to take means to separate, and to avoid further contact. Failure to do so could give reasonable inference of intentional, rather than incidental, contact and be a violation of this order.

It is a violation of this order for third parties acting on your behalf to make contact which seeks to harass or retaliate against the above-named individual. You are prohibited from requesting or facilitating friends, family members, or anyone else to make contact with the above-named individual in order to harass or retaliate. This order is not intended to inhibit your effective legal representation and does not prohibit contact by your attorney or their agents with the named individual. However, any harassing or retaliatory contact by attorneys or their agents acting on your behalf is a violation of this order.

Harassing contact means unwelcome contact that is sufficiently severe, persistent, or pervasive that it unreasonably interferes with or limits the above-named individual from participating in or benefiting from the university's programs or activities. Retaliatory contact means an adverse action because the above-named individual filed, supported, or provided information in connection the allegations of misconduct and includes direct and indirect intimidation, threats, and harassment.

This order remains in effect until you are otherwise notified by the Title IX Coordinator. Any violation of this no contact order is actionable under UWS Chapter 17 (Student Nonacademic Disciplinary Procedures) and may result in additional university charges. The University of Wisconsin Police Department (UWPD) have been notified of this directive.

If the No Contact Directive will affect your participation in your academics or University related activities and you would like to request modifications, please contact me.

---

[3] The sanctions that can be recommended are listed in UWS 17.10(1).

CONFIDENTIAL                                                                DOE 0910

**Support and Assistance:**

We understand that it can be concerning to receive this notice. The University has a variety of resources available to you including:

• Dean of Students Office at 608-263-5700. The Dean of Students Office supports student success on campus and its staff is familiar with the student disciplinary process, and can work with you to help manage your participation in the process.

• University Health Services (UHS) at 608-265-5600. UHS provides confidential, no-cost mental health services. UHS also provides a 24-hr on-call crisis line at 608-265-5600, ext.

If you have questions or concerns about this directive or would otherwise like to speak with me, you can contact me at lauren.hasselbacher@wisc.edu or 608-890-3788.

Sincerely,

Lauren Hasselbacher
Title IX Coordinator
354 Bascom Hall
608-890-3788
Lauren.Hasselbacher@wisc.edu

CONFIDENTIAL