

# WISCONSIN
## UNIVERSITY OF WISCONSIN–MADISON

# 2017 | Annual Security Report & Annual Fire Safety Report

DOE 0001

# Table of Contents

Resources at a Glance...................................................................................3
    Safety and Security.............................................................. 3
    Campus Offices..................................................................... 3
    Title IX Contacts.................................................................. 3
    Health Resources .............................................................. 4
    Sexual Assault, Domestic/Dating Violence and Stalking Survivor Resources....4
    Mental Health Resources....................................................4
    Substance Abuse Resources...............................................4
Campus Crime Statistics ...............................................................7
Campus Safety ............................................................................14
    Law Enforcement and Crime Reporting .........................14
        UW-Madison Police Department ..........................14
        General Crime and Emergency Reporting................15
        Off Campus Safety and Security.............................17
    Safety and Security on Campus........................................18
        Safety on Campus..................................................18
        Security on Campus...............................................21
            Access to and Security of University Buildings...................... ....21
            Missing Student Notification..............................22
            General Crime Prevention Tips............................24
    Communication About Campus Crimes and Safety...........25
        WiscAlerts ...........................................................25
        Crime Warnings ..................................................26
        Information About Sex Offenders.........................28
    Crime Prevention and Security Awareness Education ..............29
Sexual Assault, Domestic Violence, Dating Violence, and Stalking .......................30
    Prevention and Awareness Programs...............................31
    Bystander Intervention and Risk Reduction....................33
    Reporting and Resources..................................................35
    Restraining Orders and No Contact Directives.................39
    Notice of Accommodations and Confidential Resources..................44
    Protecting Confidentiality................................................48
    Commonly Asked Questions Regarding Reporting and Resources..................49
UW-Madison Disciplinary Procedures .........................................59
    Student Disciplinary Procedures......................................61
    Employee Disciplinary Procedures..................................70
State of Wisconsin Crime Statutes and Definitions ...................97
Sexual Harassment.........................................................................104
UW-Madison Alcohol and Drug Resource Information, Policy, and Laws ..........111
UW-Madison 2017 Annual Fire Safety Report.............................121
Appendix: 2017 Narrative Report to the UW System ...............157

COVER PHOTO: JAIMEE GILFORD

# RESOURCES AT A GLANCE*

## Safety and Security

**UW-Madison Police Department**
Emergency................................................................... 911
Non Emergency ...............................................(608) 264-2677
1429 Monroe St., Madison, WI 53711
uwpolice@mhub.uwpd.wisc.edu
www.uwpd.wisc.edu

**City of Madison Police Department**
Emergency................................................................... 911
Non Emergency ...............................................(608) 266-4948
Crimestoppers ..................................................(608) 266-6014
211 S. Carroll St., Madison, WI 53703
www.cityofmadison.com/police

**SAFE Nighttime Services**
Free walking escorts for students,
faculty and staff.............................................(608) 262-5000
uwsafe@fpm.wisc.edu
transportation.wisc.edu/transportation/safeservices.aspx

## Campus Offices

**Dean of Students Office**.............................(608) 263-5700
Dean on Call: M-F 8:30 a.m.-4:00 p.m.
500 Lincoln Dr., 70 Bascom Hall, Madison, WI 53706
dean@studentlife.wisc.edu | doso.students.wisc.edu

**Office of Student Conduct
and Community Standards**................................(608) 263-5700
500 Lincoln Dr., 70 Bascom Hall, Madison, WI 53706
dean@studentlife.wisc.edu | conduct.students.wisc.edu

**Office of Compliance**................................................(608) 265-6018
500 Lincoln Dr., 361 Bascom Hall, Madison, WI 53706
uwcomplianceoffice@wisc.edu | compliance.wisc.edu

**Office for Equity and Diversity** .........................(608) 263-2378
Relay Calls Accepted
500 Lincoln Dr., 179-A Bascom Hall, Madison, WI 53706
kate.oconnor@wisc.edu | oed.wisc.edu

**Office of Human Resources** .............................(608) 265-2257
21 North Park Street, #5101 Madison, WI 53715
ohr.wisc.edu
Workforce Relations ohr.wisc.edu/workforce/

**Employee Assistance Office**................................(608) 263-2987
Toll free.............................................................(800) 260-0281
Office of Human Resources
610 Langdon St., 226 Lowell Hall, Madison, WI 53703
eao@mailplus.wisc.edu | eao.wisc.edu

**Ombuds Office**...........................................(608) 265-9992
610 Langdon St., Room 223-225, Madison, WI 53703
uwombuds@mailplus.wisc.edu | ombuds.wisc.edu

**University Housing**.........................................(608) 262-2522
625 Babcock Drive, Madison, WI 53706
www.housing.wisc.edu

**Campus and Visitor Relations** ...........................(608) 263-2400
1308 W. Dayton Street, Suite 329, Madison, WI 53715
askbucky@uwmad.wisc.edu | info.wisc.edu

**Risk Management, International Division**...(608) 262-8925
21 N. Park St., #5301, Madison, WI 53715
bussvc.wisc.edu/risk_mgt/risk_mgt.html
Ron Machoian, International Safety
and Security Director...................................(608) 890-2446
ronald.machoian@wisc.edu | internationaltravel.wisc.edu

**Office of Student Financial Aid**........................(608) 262-3060
333 East Campus Mall #9701, Madison, WI
finaid@finaid.wisc.edu | financialaid.wisc.edu

**International Student Services**........................(608) 262-2044
716 Langdon St., 217 Red Gym, Madison, WI 53706
iss@studentlife.wisc.edu | iss.wisc.edu

**McBurney Disability Resource Center**
Voice calls..........................................................(608)263-2741
Text message.....................................................(608) 225-7956
702 W. Johnson St., #2104, Madison, WI
mcburney@studentlife.wisc.edu | mcburney.wisc.edu

## Title IX Contacts

**Title IX Coordinator**
Lauren Hasselbacher..........................................(608) 890-3788
Office of Compliance
361 Bascom Hall, 500 Lincoln Dr., Madison, WI 53706
lauren.hasselbacher@wisc.edu | titleix_coordinator@wisc.edu

**Deputy Title IX Coordinator**
Fred Fotis..........................................................(608) 262-4456
Assistant Director of University Housing
University Housing
Slichter Hall, 625 Babcock Dr., Madison, WI 53706
fred.fotis@housing.wisc.edu

**Deputy Title IX Coordinator**
Amanda Thwing...............................................(608) 263-1217
Assistant Director of Residence Life
University Housing
Phillips Hall, 1950 Willow Dr., Madison, WI 53706
amanda.thwing@housing.wisc.edu

**Deputy Title IX Coordinator**
Terry Gawlik.................................................. (608) 265-4987
Senior Associate Athletic Director for Sports Administration
Division of Intercollegiate Athletics
1440 Monroe Street, Madison, WI 53711
tlg@athletics.wisc.edu

**Deputy Title IX Coordinator**
Jaimee Gilford..................................................(608) 286-9871
Clery Program Director
University of Wisconsin Police Department
1429 Monroe Street, Madison, WI 53711
jaimee.gilford@wisc.edu

**Deputy Title IX Coordinator**
Tonya Schmidt.................................................(608) 263-5700
Assistant Deand and Director, Office of Student Conduct
and Community Standards
Division of Student Life
500 Lincoln Dr., 70 Bascom Hall, Madison, WI 53706
tonya.schmidt@wisc.edu

DOE 0003

# RESOURCES AT A GLANCE*

**Deputy Title IX Coordinator**
Patrick Sheehan..........................................................(608)262-3927
Director, Director of Workforce Relations
Office of Human Resources
21 N. Park St., Madison, WI 53715
patrick.sheehan@wisc.edu

**Deputy Title IX Coordinator**
Luis Piñero.................................................................(608)263-2378
Relay Calls Accepted
Director, Office for Equity and Diversity
179A Bascom Hall, 500 Lincoln Dr., Madison, WI 53706
luis.pinero@wisc.edu

## Health Resources

**UHS Medical Services**.........................(608) 265-5600 (24 hours)
333 East Campus Mall, 5th & 6th floors, Madison, WI 53715
Urgent medical consultation by phone: advice on treatment
of physical illness or injury (24 hours a day)
uhs.wisc.edu

*Main Clinic - 333 E. Campus Mall*
M,T,Th,F: 8:30a.m.-5:00 p.m.; W: 9:00 a.m. - 5:00 p.m.

*Lakeshore Drop-In Clinic, Dejope Hall*
M-F 10:00 a.m. - 4:30 p.m.

**UnityPoint Health Meriter Hospital** ................(608) 417-6000
202 South Park Street, Madison, WI 53715
http://www.unitypoint.org/madison/default.aspx
    **Forensic Nurse Examiner** ................................(608) 491-5916
    For victims of sexual assault, child abuse, elder abuse and
    domestic violence

## Sexual Assault, Domestic Violence, Dating Violence and Stalking Resources

**UHS Violence Prevention and Survivor Services**....................
.....................................................................(608) 265-5600, Option 3
Confidential on-campus advocacy and support for victims
of sexual assault, domestic violence, dating violence, and/or
stalking.
survivorservices@uhs.wisc.edu
uhs.wisc.edu/survivor

**Domestic Abuse Intervention Services** .........(608) 251-1237
24 hours: (608) 251-4445 or (800) 747-4045
2101 Fordem Ave., Madison, WI 53704
info@abuseintervention.org | www.abuseintervention.org

**Rape Crisis Center (24 hours)** ............................(608) 251-7273
Community Office.................................................(608) 251-5126
2801 Coho Street, Madison, WI 53713
333 East Campus Mall, 7901, Madison, WI 53715 (campus office)
info@danecountyrcc.com | www.danecountyrcc.org

**National Domestic Violence Hotline**..............(800) 799-7233
TTY...........................................................................(800) 787-3224

**RAINN** (Rape, Abuse & Incest National Network)
National Sexual Assault Hotline............................(800) 656-4673
www.rainn.org

**Domestic Violence Program
(Dane County District Attorney's Office)**...........(608)266-9003

**Midwest Domestic Violence Resource Center**.(608)231-3300
313 Price Place, Suite 10, Madison, WI 53705
http://mchumanservices.org/dvrc.htm

**Center for Families Respite Center**......................(608)244-5700
2120 Fordem Ave. Madison, WI
http://www.centerforfamilies.org/Services/respite-center.aspx

**Rainbow Project**...........................................................(608)255-7356
831 E. Washington Ave., Madison, WI
therainbowproject.net

## Mental Health Resources

**UHS Mental Health Services**..............(608) 265-5600 (24 hours)
333 East Campus Mall, 5th & 6th floors, Madison, WI 53715
Crisis Line: (608) 265-5600, Option 9 (24 hours a day)
Access appointments:  (608) 265-5600, Option 2 or MyUHS
M,T,F:  8:30-5:00 pm  |  W:  9:00-5:00 pm  |Th: 9:30-5:00 pm
uhs.wisc.edu/mental-health

**Mental Health Center of Dane County**...............(608) 280-2720
Emergency Crisis Line (24 Hours)............................(608) 280-2600
49 Kessel Court,  Madison, WI 53711
www.journeymhc.org

**National Suicide Prevention Hotline**..................(800) 273-8255
Substance Abuse and Mental Health Services Administration
www.samhsa.gov

**Veteran's Crisis Line**...................................(800) 273-8255 (Press 1)
or text 838255 for immediate help
U.S. Department of Veterns Affairs
www.veteranscrisisline.net

## Substance Abuse Resources

**UHS Mental Health Services**..............(608) 265-5600 (24 hours)
333 East Campus Mall, 5th & 6th floors, Madison, WI 53715
Urgent medical consultation by phone: advice on treatment
of physical illness or injury (24 hours a day)
M,T,Th,F: 8:30a.m.-5:00 p.m.; W: 9:00 a.m. - 5:00 p.m.
uhs.wisc.edu

**Substance Abuse and Mental Health
Services Administration**
National Helpline................................................................(800) 662-4357
www.samhsa.gov

*Relay Calls Accepted For All UW-Madison Resources*

# Chief's Welcome

Dear UW-Madison Community,

Thank you for taking the time to read the 2017 Annual Security Report and Annual Fire Safety Report (ASR). The ASR, provided to you in accordance with the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, is full of useful information about safety and security at UW-Madison. Within this guide you will find crime statistics for the previous three calendar years, statistics for on-campus residential housing fires for the previous three calendar years, campus safety and disciplinary policies, alcohol and drug policies, and policies that specifically address prevention of and response to sexual assault, domestic violence, dating violence and stalking.



While UW-Madison is generally a safe place to study and work, it is not without the challenges that other institutions of similar size and scope face. There are many resources available to help you make informed decisions about your safety. In addition to the annual release of the ASR, UW-Madison uses multiple methods to communicate about campus crime and major events. This video, created by the University of Wisconsin Police Department (UWPD) and the Dean of Students Office, provides a quick and interesting overview of communications about crime and major events on and around campus.

We also have important new developments on campus this year in the areas of crime prevention and campus safety. We have rolled out a brand new violence prevention program called "U Got This" which takes a culture-centered approach to preventing sexual assault, domestic violence, dating violence and stalking. This training, mandatory for all first year and incoming transfer students, focuses on how culture informs unhealthy behavior, and provides practical and relevant information on what students can do to change that culture. These concepts are further explored at in-person workshops that address topics such as healthy sexuality and relationships, how best to provide support to people who experience these crimes and bystander intervention.

By familiarizing yourself with UW-Madison's safety and security policies, procedures, and programs, you are taking a significant step in protecting yourself and your community. The ASR contains a great deal of resources for students and employees who are in crisis, and we encourage you to tell us if you or someone you know needs help.

We all have an important role to play in keeping ourselves, our fellow Badgers and our campus community safe. From all of us at UWPD, we hope you have a safe and successful school year. On Wisconsin!

Sincerely,

Kristen Roman
Associate Vice Chancellor/Chief of Police
UW-Madison Police Department

Doe Deposition Exhibit 4 - 5

DOE 0005

Case: 3:20-cv-00856-wmc     Document #: 98-35     Filed: 04/06/22     Page 6 of 107

# Compilation of the 2017 Annual Security Report and Annual Fire Safety Report

The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act requires the distribution of an Annual Security Report and Annual Fire Safety Report to all current faculty, staff, and students and notice of its availability to prospective students, faculty, and staff. This document, referred to as the "Annual Security Report and Annual Fire Safety Report'" or "ASR," is one of many mechanisms designed to inform current and potential UW-Madison community members of crime, arrest and referral statistics, of current crime response, reporting, prevention and awareness policies, including policies regarding sexual assault, domestic violence, dating violence and/or stalking, of campus disciplinary policies and relevant state laws, and of campus safety and security. This ASR includes crime, arrest, and referral statistics for the previous three calendar years concerning reported crimes that occurred on campus, in certain off-campus buildings or property owned or controlled by the University of Wisconsin–Madison, and on public property within, or immediately adjacent to and accessible from, the campus. The Fire Report at the end the document contains current UW-Madison Housing fire safety protocols and fire statistics for the previous three calendar years.

This report is prepared by the University of Wisconsin-Madison Police Department (UWPD). To gather policies for this report, UWPD collaborated with the Division of Student Life, University Housing, the Office of Human Resources, University Health Services, the Department of Intercollegiate Athletics, the Office of Legal Affairs, the Title IX Coordinator and other divisions and departments on campus. In addition, representatives from University Communications assisted with the compilation this report.

Statistics are gathered through reports to the University of Wisconsin-Madison Police Department (UWPD), the Dean of Students Office, the Office of Student Conduct and Community Standards, University Housing, the Title IX Coordinator, and reports submitted by other Campus Security Authorities. UWPD also requested crime statistics from outside law enforcement agencies that may have jurisdiction over UW-Madison's non-campus property. UWPD and the Office of Student Conduct and Community Standards collaborated in compiling the crime, arrest and referral statistics to ensure statistics are not missed or double counted. A copy of this report is disseminated to faculty, staff, and students in an e-mail sent in late September or early October of each fall semester. Crimes are classified using the FBI Uniform Crime Reporting Handbook, the National Incident Based Reporting System Handbook and The Handbook for Campus Safety and Security Reporting (2016). Wisconsin law is used to define drug, liquor and weapons law violations, as well as incidents of domestic and dating violence.

DOE 0006

# Campus Crime Statistics Charts

In this chapter are statistical charts for calendar years 2016, 2015 and 2014. The past few years have brought many changes to how UW-Madison tracks and reports Clery crimes that occur in and around campus. Differences in categories from year to year are explained in introductions to the charts. Differences in the statistics themselves reflect the number of crimes *reported*, and not necessarily a difference in the rate of crime itself. The data does not reflect prosecutions, convictions or the outcome of disciplinary actions.

Crime statistics published in this document reflect crimes that are reported to have occurred in one of four federally defined locations. Crimes that are reported to have occurred outside of the following locations are not included in this report. The four federally defined locations are:

**On-campus property** is defined as any building or property owned or controlled by an institution within the same reasonably contiguous geographic area and used by the institution in direct support of, or in a manner related to, the institution's educational purposes, including residence halls; and any building or property that is within or reasonably contiguous to campus that is owned by the institution but controlled by another person, frequently used by students, and supports institutional purposes (such as a food or other retail vendor).

**On-campus student housing** is defined as any student housing facility that is owned or controlled by the institution, or is located on property that is owned or controlled by the institution, and is within the reasonably contiguous geographic area that makes up the campus.

**Public property** is defined as all public property, including thoroughfares, streets, sidewalks, and parking facilities, that is within the campus, or immediately adjacent to and accessible from campus.

**Non-campus property** is defined as any building or property owned or controlled by a student organization that is officially recognized by the institution; or any building or property that is owned or controlled by an institution that is used in direct support of, or in relation to, the institution's educational purposes, is frequently used by students and is not within the same reasonably contiguous geographic area of the institution. This category includes property that is outside of Madison, outside of Wisconsin and outside of the United States.

For the definitions of crimes and categories in the charts, please visit www.uwpd.wisc.edu/clery-crime-definitions



## 2016 Campus Crime Statistics

Notes on 2016 statistics:

- Underage drinking is a civil offense in the state of Wisconsin, not a criminal offense, and therefore tickets issued for underage drinking are not classified as "arrests," as per Clery Act regulations.
- In accordance with *The Handbook for Campus Safety and Security Reporting* (2016) and the Comments to the Final Regulations for the Violence Against Women Act (VAWA) (34 CFR Part 668, 2014), crimes committed between roommates or former roommates are not counted in "Domestic Violence" or "Dating Violence" statistics. In order to be counted as "Dating Violence" or "Domestic Violence," "the relationship between the perpetrator and the victim must be more than two people cohabitating together. The people cohabitating together must be current or former spouses or have an intimate relationship." (*Handbook,* 2016*)*

| | On Campus Property | # of On-Campus Incidents That Occurred in Student Housing | Public Property | Non Campus Property |
|---|---|---|---|---|
| **Arrests** | | | | |
| Liquor Law Violation | 0 | 0 | 0 | 0 |
| Drug Law Violation | 8 | 0 | 6 | 0 |
| Weapons Law Violation | 1 | 0 | 2 | 0 |
| **Disciplinary Referrals** | | | | |
| Liquor Law Violation | 1517 | 1183 | 32 | 7 |
| Drug Law Violation | 325 | 301 | 1 | 11 |
| Weapon Law Violation | 0 | 0 | 0 | 0 |
| **Criminal Offenses** | | | | |
| Murder and Non-Negligent Manslaughter | 0 | 0 | 0 | 0 |
| Manslaughter by Negligence | 0 | 0 | 0 | 0 |
| Robbery | 1 | 0 | 3 | 0 |
| Aggravated Assault | 4 | 0 | 4 | 1 |
| Burglary | 34 | 16 | 0 | 3 |
| Motor Vehicle Theft | 3 | 0 | 1 | 0 |
| Arson | 2 | 1 | 0 | 0 |
| **Sexual Assault (Sex Offenses)** | | | | |
| Rape | 7 | 6 | 0 | 0 |
| Fondling* | 28 | 8 | 0 | 2 |
| Incest | 0 | 0 | 0 | 0 |
| Statutory Rape | 0 | 0 | 0 | 0 |

## 2016 Campus Crime Statistics (continued)

| | On Campus Property | # of On-Campus Incidents That Occurred in Student Housing | Public Property | Non Campus Property |
|---|---|---|---|---|
| **VAWA Offenses** | | | | |
| Domestic Violence | 6 | 0 | 0 | 0 |
| Dating Violence | 6 | 4 | 2 | 0 |
| Stalking** | 28 | 13 | 0 | 0 |

### Hate Crimes***

In 2016, there were 20 hate crimes reported that qualified for inclusion in this report:

1.    1 aggravated assault motivated by bias against race occurred on non-campus property
2.    1 intimidation motivated by bias against national origin occurred on public property
3.    1 vandalism motivated by bias against race occurred on on-campus property
4.    1 intimidation motivated by bias against race occurred on on-campus, student housing property
5.    1 vandalism motivated by bias against religion occurred on on-campus property
6.    1 vandalism motivated by bias against religion occurred on on-campus property
7.    1 vandalism motivated by bias against religion occurred on on-campus property
8.    1 vandalism motivated by bias against religion occurred on public property
9.    1 vandalism motivated by bias against religion occurred on on-campus property
10.   1 vandalism motivated by bias against religion occurred on on-campus property
11.   1 vandalism motivated by bias against religion occurred on public property
12.   1 vandalism motivated by bias against religion occurred on public property
13.   1 vandalism motivated by bias against religion occurred on on-campus property
14.   1 vandalism motivated by bias against religion occurred on on-campus property
15.   1 vandalism motivated by bias against religion occurred on on-campus property
16.   1 vandalism motivated by bias against religion occurred on on-campus property
17.   1 vandalism motivated by bias against religion occurred on on-campus, student housing property
18.   1 vandalism motivated by bias against religion occurred on on-campus property
19.   1 intimidation motivated by bias against gender occurred on on-campus property
20.   1 vandalism motivated by bias against race occurred on on-campus property

### Unfounded Crimes

11 reported crimes were unfounded in 2016.

*Note on Fondling statistics:  22 of the 30 incidents of fondling were committed by two suspects.  7 of the incidents were reported to have occurred within the context of a dating relationship between a single offender and a single victim.  15 of the incidents were reported to have been committed by a single offender who was subsequently arrested.

**Note on Stalking statistics: 5 of the 28 stalking incidents were reported to have been committed by a single offender who was subsequently arrested.  This offender is the same individual reported to have committed 15 of the fondling incidents noted above. Another 5 of the 28 incidents were reported to have occurred prior to 2016.

***Note on Hate Crimes statistics: 14 of the 20 reported hate crimes were committed by a single offender, motivated by bias against Judaism, who committed multiple acts of vandalism on and around UW-Madison's campus. The offender was arrested.

## 2015 Campus Crime Statistics

Notes on 2015 statistics:

- Underage drinking is a civil offense in the state of Wisconsin, not a criminal offense, and therefore tickets issued for underage drinking are not classified as "arrests," as per Clery Act regulations.
- In accordance with *The Handbook for Campus Safety and Security Reporting* (2016), dating and domestic violence offenses are now counted separately. Also in accordance with *The Handbook* and the Comments to the Final Regulations for the Violence Against Women Act (VAWA) (34 CFR Part 668, 2014), crimes committed between roommates or former roommates are not counted in "Domestic Violence" or "Dating Violence" statistics. In order to be counted as "Dating Violence" or "Domestic Violence," "the relationship between the perpetrator and the victim must be more than two people cohabitating together. The people cohabitating togther must be current or former spouses or have an intimate relationship." (*Handbook,* 2016*)*
- In accordance with new guidance from the Department of Education, Unfounded Crimes are reported in aggregate.

| | On Campus Property | # of On-Campus Incidents That Occurred in Student Housing | Public Property | Non Campus Property |
|---|---|---|---|---|
| **Arrests** | | | | |
| Liquor Law Violation | 1 | 0 | 0 | 0 |
| Drug Law Violation | 9 | 2 | 15 | 1 |
| Weapons Law Violation | 2 | 1 | 2 | 0 |
| **Disciplinary Referrals** | | | | |
| Liquor Law Violation | 1983 | 1579 | 47 | 13 |
| Drug Law Violation | 504 | 436 | 5 | 2 |
| Weapon Law Violation | 0 | 0 | 0 | 0 |
| **Criminal Offenses** | | | | |
| Murder and Non-Negligent Manslaughter | 0 | 0 | 0 | 0 |
| Manslaughter by Negligence | 0 | 0 | 0 | 0 |
| Robbery | 2 | 1 | 4 | 1 |
| Aggravated Assault | 5 | 1 | 0 | 1 |
| Burglary | 31 | 11 | 0 | 4 |
| Motor Vehicle Theft | 1 | 0 | 0 | 0 |
| Arson | 0 | 0 | 0 | 0 |

DOE 0010

## 2015 Campus Crime Statistics (continued)

| | On Campus Property | # of On-Campus Incidents That Occurred in Student Housing | Public Property | Non Campus Property |
|---|---|---|---|---|
| **Sexual Assault (Sex Offenses)** | | | | |
| Rape | 9 | 9 | 1 | 1 |
| Fondling | 11 | 7 | 0 | 0 |
| Incest | 0 | 0 | 0 | 0 |
| Statutory Rape | 0 | 0 | 0 | 0 |
| **VAWA Offenses** | | | | |
| Domestic Violence | 6 | 1 | 0 | 0 |
| Dating Violence | 8 | 2 | 1 | 0 |
| Stalking | 11 | 8 | 0 | 0 |

### Hate Crimes

In 2015, there were 2 hate crimes reported that qualified for inclusion in this report:

1. 1 vandalism motivated by bias against race occurred on on-campus property.
2. 1 vandalism motivated by bias against race occurred on on-campus property.
3. 1 intimidation motivated by bias against race occurred on public  property.*

### Unfounded Crimes

6 reported crimes were unfounded in 2015.

*Statistic added 2/9/2018*

# 2014 Campus Crime Statistics

Notes on 2014 statistics:
- Underage drinking is a civil offense in the state of Wisconsin, not a criminal offense, and therefore tickets issued for underage drinking are not classified as "arrests," as per Clery Act regulations.
- Dating violence is a form of domestic violence in Wisconsin, therefore, dating violence incidents are included in the domestic violence statistics. In accordance with the Comments to the Final Regulations for the Violence Against Women Act (34 CFR Part 668, 2014), crimes committed between roommates or former roommates are not counted in "Domestic/Dating Violence" statistics. For Clery Act purposes, Dating/Domestic Violence "requires more than just two people living togther; rather the people cohabitating must be spouses or have an intimate relationship." (Comments, 34 CFR Part 668, 2014)
- 2014 statistics include "Unfounded Crimes," as per federal regulations that became effective July 1, 2015. For example: of the 5 total reported motor vehicle thefts, 1 was unfounded. Previous annual statistics do not include this information, but subsequent annual statistics will, beginning with this 2014 chart.

| | On Campus Property | # of On-Campus Incidents That Occurred in Student Housing | Public Property | Non Campus Property | Unfounded Crimes |
|---|---|---|---|---|---|
| **Arrests** | | | | | |
| Liquor Law Violation | 0 | 0 | 0 | 17 | 0 |
| Drug Law Violation | 15 | 8 | 22 | 34 | 0 |
| Weapon Law Violation | 0 | 0 | 3 | 29 | 0 |
| **Disciplinary Referrals** | | | | | |
| Liquor Law Violation | 2639 | 2108 | 98 | 7 | 0 |
| Drug Law Violation | 488 | 434 | 6 | 1 | 0 |
| Weapon Law Violation | 0 | 0 | 0 | 1 | 0 |
| **Criminal Offenses** | | | | | |
| Murder & Non-Negligent Manslaughter | 0 | 0 | 0 | 0 | 0 |
| Negligent Manslaughter | 1 | 0 | 0 | 0 | 0 |
| Robbery | 1 | 0 | 0 | 5 | 0 |
| Aggravated Assault | 4 | 1 | 1 | 12 | 0 |
| Burglary | 41 | 11 | 0 | 17 | 5 |
| Motor Vehicle Theft | 5 | 0 | 0 | 0 | 1 |
| Arson | 1 | 0 | 0 | 1 | 0 |
| **Sexual Assault (Sex Offenses)** | | | | | |
| Rape | 17 | 14 | 1 | 4 | 1 |
| Fondling | 9 | 5 | 3 | 0 | 2 |
| Incest | 0 | 0 | 0 | 0 | 0 |
| Statutory Rape | 0 | 0 | 0 | 0 | 0 |

DOE 0012

## 2014 Campus Crime Statistics (continued)

| | On Campus Property | # of On-Campus Incidents That Occurred in Student Housing | Public Property | Non Campus Property | Unfounded |
|---|---|---|---|---|---|
| **Domestic/Dating Violence** | 10 | 5 | 2 | 4 | 0 |
| **Stalking** | 23 | 14 | 1 | 1 | 0 |

### Hate Crimes

There were 0 hate crimes reported in 2014.

DOE 0013

# Campus Safety

In the Campus Safety chapter, you will find information on policies for safety and security on campus, general crime reporting, access to campus facilities, missing students, communication about emergencies and information about the various units and teams that help keep UW-Madison safe.

## SAFETY AND SECURITY ON CAMPUS: LAW ENFORCEMENT & CRIME REPORTING

### UW-Madison Police Department (UWPD)

The University of Wisconsin–Madison Police Department (UWPD) is a full-service, 24-hour agency with approximately 70 sworn officer positions. Officers are armed and deputized.

All UWPD police officers have the power and authority to make an arrest. Police officers assigned to Patrol use Body Worn Cameras (BWCs) for all contacts with the general public. In addition, UWPD provides services through its own 911 Communications Center and are further supported by a non-sworn security division. Non-sworn security personnel do not have the power or authority to make arrests. UWPD is the only law enforcement agency in the State of Wisconsin to be awarded accreditation by three different accreditation agencies: the Commission on Accreditation for Law Enforcement Agencies (CALEA), the Wisconsin Law Enforcement Accreditation Group (WILEAG), and the International Association of Campus Law Enforcement Administrators (IACLEA).

UWPD has nationally recognized specialty units including Bike Patrol, Police K9 and Motorcycle Units. UWPD was the first campus agency in the state to establish a community police officer position with a satellite office, and has community police officers who are assigned to specific geographical areas of responsibility for community interaction, crime prevention, and problem solving.

UWPD cooperates with local police and other state and federal authorities in the exercise of their responsibilities. In addition, the UWPD offers security services with the primary responsibility of ensuring the security of campus properties. This is done with security consultations, patrols, and other services.

UWPD maintains a strong working relationship with the Madison Police Department and other surrounding law enforcement agencies. Staff participate in local and statewide meetings to share information and resources, as deemed necessary. UWPD does not have a memorandum of understanding with the Madison Police Department or any other law enforcement agency regarding the investigation of criminal incidents, as UWPD has a full investigative division. UWPD's primary jurisdiction and patrol jurisdiction is the University of Wisconsin-Madison. Madison Police Department has primary jurisdiction over the City of Madison, and concurrent jurisdiction on UW-Madison's campus.

UWPD is represented on university, county, and state committees that address sexual assault, domestic and dating violence, stalking, mental health concerns, traffic safety, bike and moped safety, community crime watch, emergency management, alcohol and other drug abuse prevention, and threat assessment addressing campus safety concerns and behavioral interventions.

DOE 0014

UWPD encourages accurate and prompt reporting of all crimes to UWPD or other appropriate police agencies when the victim of the crime elects to do so, or is unable to do so.

## Crime and Emergency Reporting

Crimes and emergencies that occur on campus should be reported to the **University of Wisconsin–Madison Police Department (UWPD)** by dialing 911 in an event of an emergency, by calling the non-emergency number (608) 264-2677, or by visiting the department at 1429 Monroe St., Madison, WI 53711. For the purpose of a making a crime warning evaluation and for potential inclusion of a crime statistic in the Annual Security and Fire Safety Report, criminal offenses should be reported to UWPD, the Dean of Students Office, the Title IX Coordinator or the Office of Workforce Relations in the Office of Human Resources.  UWPD strongly encourages people to report crimes so that they may be evaluated for a crime warning.

Crimes that occur off campus can be reported to the Madison Police Department via the non-emergency number (608) 266-4316, by calling 911 from an off-campus location within Madison, or by going to the department at 211 S. Carroll St., Madison, WI 53709. UW–Madison encourages all campus community members to accurately and promptly report all crimes to UWPD or, if off-campus, to the Madison Police Department.

Crimes/violations of the student code of conduct should be reported to the **Dean of Students Office**  or the **Title IX Coordinator** to seek assistance or to begin a code of conduct investigation.  The Dean of Students Office can be contacted at 70 Bascom Hall, (608) 263-5700.  The Title IX Coordinator can be contacted at 361 Bascom Hall, (608) 890-3788. If requested, the Dean of Students Office or the Title IX Coordinator will provide assistance in notifying law enforcement of sexual assault, domestic violence, dating violence and/or stalking.

Crimes/violations of employment policies should be reported to the **Office of Workforce Relations** in the **Office of Human Resources**, which is located at 21 N. Park St., Suite 5101, Madison, WI, (608) 265-2257.  If requested, the Office of Workforce Relations will provide assistance in notifying law enforcement of sexual assault, domestic violence, dating violence and/or stalking.

Victims of sexual assault, domestic violence, dating violence and/or stalking who do not wish to report the crime to a law enforcement official, the Dean of Students Office, the Title IX Coordinator or the Office of Workforce Relations are still encouraged to get help and support. Please see the Sexual Assault, Domestic Violence, Dating Violence and/or Stalking chapter in this report for more information.

Child abuse should be reported to UWPD or Child Protective Services. For information regarding employees' obligations to report child abuse, please visit the Office for Equity and Diversity's website at: http://oed.wisc.edu/childabuse/.

## Response to a Reported Crime

UWPD dispatchers are available 24 hours a day to take reports and answer questions. In response to a call regarding a reported crime, police officers will take the required action to investigate the crime, search for suspects, collect available evidence, file a report, and work with local prosecutors. In response to an emergency, UWPD will respond, evaluate, and summon the appropriate resources to respond to the incident. All of the cases that UWPD generates involving students are forwarded to the Dean of Students Office for review and potential action, such as initiating the student disciplinary process by referring the matter to the Office of Student Conduct and Community Standards when appropriate and/or offering support to student victims. Where applicable, the Title IX Coordinator will also be informed. UWPD investigators will investigate criminal reports and forward additional information obtained via the investigation to the Dean of Students Office. Where applicable, the information will also be forwarded to the Title IX Coordinator.  If assistance is required

from the Madison Police or Fire Departments, or other local, state, or federal law enforcement agencies, UWPD will contact the appropriate agency.

Response to crimes reported to the Dean of Students Office or the Office for Workforce Relations may include initiation of a disciplinary action or notice to law enforcement if the crime involves a minor.

## Voluntary Confidential Crime Reporting

UW-Madison does not provide voluntary, confidential crime reporting for the purposes of including crime statistic disclosures in the ASR. As a matter of policy, UW-Madison directs people to report a Clery crime to UWPD, the Dean of Students Office, the Title IX Coordinator or the Office of Workforce Relations for the purpose of including a statistic in UW-Madison's ASR; though people may report crimes to any Campus Security Authority. However, UW-Madison may be obligated to investigate when there is a report of sexual assault, domestic violence, dating violence and/or stalking.

An online report form is used to collect statistical information for inclusion in the Annual Security Report and Annual Fire Safety Report and for Title IX related incidents. Though most often used by Campus Security Authorities, anyone may report a crime through this publicly available form. For possible follow-up and record keeping purposes, the form requires the name of the submitter. The reporting form is found online at: https://publicdocs.maxient.com/reportingform.php?UnivofWisconsinMadison&layout_id=11.

The report must include sufficient information as to the location and type of incident for inclusion in the ASR. If the crime did not occur on Clery Act designated geography, or it cannot be determined from the report whether the incident(s) occurred on Clery Act designated geography, it will not be included in the ASR, as per federal regulations. For more information on Clery Act geography, please visit the Department of Education's website at http://www2.ed.gov/admins/lead/safety/campus.html.

The Clery staff at UWPD, the Title IX Coordinator and/or the Dean of Students Office review all submissions made through the report form.

Please see the chapter in this ASR entitled Sexual Assault, Domestic Violence, Dating Violence and Stalking for more information regarding resources on and off campus where help can be received confidentially.

## Professional and Pastoral Counselors

Campus "professional counselors," when acting as such, are not considered to be Campus Security Authorities and are not required to report crimes for inclusion in the ASR or for a crime warning evaluation. Any Clery crime can be confidentially discussed with these employees and no crime statistic will be created in the ASR. UW-Madison does not employ pastoral counselors.

Because UW-Madison does not have a mechanism for voluntary, confidential reporting for statistical inclusion in the ASR, UW-Madison does not have a policy to encourage professional counselors to advise their clients of the procedures to report crimes on a voluntary, confidential basis for statistical inclusion in the Annual Security Report and Annual Fire Safety Report.

Please see the chapter in this ASR entitled Sexual Assault, Domestic Violence, Dating Violence, Stalking for more information regarding official reporting and confidential resources for sexual assault, domestic violence, dating violence, sexual assault and/or stalking.

## Off-Campus Safety and Security

The Madison Police Department (MPD) has primary jurisdiction in most areas off campus in the campus area. Other county, state and federal agencies also provide law enforcement services in the Madison area. MPD routinely works with UWPD, campus conduct officers, and the UW-Madison Center for Leadership and Involvement (CfLI) on any serious incidents occurring off campus when a UW–Madison student is involved. MPD has a designated officer liaison to the Langdon Neighborhood, which is the off-campus area that is home to many officially registered student organizations including fraternities and sororities. Under the advisement of the Fraternity and Sorority Advisor, student members of the fraternity and sorority governing boards (Interfraternity Council and Panhellenic Association) are in regular communication with the Langdon Neighborhood Police Officer regarding safety concerns and local ordinances. However, UW-Madison does not ask MPD to monitor criminal activity at off-campus locations of registered student organizations; MPD does so because those residences are within their jurisdiction. UWPD assigns a liaison officer to work with MPD in the Langdon Street neighborhood.

Greek governance council leaders from the Panhellenic Association and Interfraternity Council serve as peer monitors for pre-registered social fraternity and sorority events. The events involving alcohol may be hosted at both off-campus chapter house locations and third-party venues that possess the correct type of liquor license. The peer monitors fill out a checklist with chapter leadership at the event in order to evaluate if the chapter is following the policies set forth by their designated governance council. If the event is deemed unsafe by peer monitors, they have been instructed to immediately contact the local police department. Policy violations are reported to the Interfraternity Council Judicial Board or the Panhellenic Association Judicial Board, which are non-institutional student-run judicial bodies for each respective council. When these reports show potential violations of the Student Organization Code of Conduct, the Committee on Student Organizations (CSO) reviews them and may take action. The CSO is a UW-Madison student organization conduct committee made up of faculty, staff and students.

## Clery Crime and Fire Log

UWPD maintains a Clery Crime and Fire Log of crimes and residence hall fires which occur within UWPD's primary jurisdiction and about which the UWPD Clery staff receives notification. The information presented in the Log includes the Event #, which is an event reporting number by which UWPD may identify an incident. The absence of an Event #, noted as "N/A", indicates that a crime was not reported to UWPD, and that UWPD may consequently not be investigating this crime.

The Log also includes the date and time which a crime was reported to UWPD or the University and the date and time at which a crime occurred, or an estimate thereof. The column labeled Report # may be used by the public to request additional information about a particular incident. The Location column identifies the street address at which the crime was committed. The street address may not be specifically identified when this could compromise the privacy of a victim of sexual or intimate partner violence. The Offense column defines the nature of the crime committed. The Disposition reveals the current stage of UWPD's criminal investigation into the offense, if one is taking place.

Log entries are entered and updated in the crime log within two business days of UWPD receiving the information or within one business day of an update of a disposition. In order to protect an ongoing criminal investigation or the identity of a victim, the chief of police or designee may classify information as confidential and prohibit its release. Log entries are archived from the active log after 60 calendar days. The Log is available at UWPD at 1429 Monroe Street and online at http://uwpd.wisc.edu/crime-data/60-day-crime-log/.

DOE 0017

## SAFETY AND SECURITY ON CAMPUS

### SAFETY ON CAMPUS

#### Emergency Response and Evacuation

The Emergency Management Unit of UWPD, established in 2003 in order to manage Homeland Security terrorism prevention programs for the UW–Madison campus and the UW System schools, has expanded into other areas of emergency preparedness. The Unit coordinates with various university and community entities to ensure that UW–Madison students, faculty, staff, and visitors are prepared to respond to emergencies, recover from them, and mitigate against their impacts. The Emergency Management Unit also works closely with several campus partners to develop and implement UW–Madison's crisis communication plan.

Crisis and disaster events require campuses to not only prepare for such events, but also require an understanding of response capabilities and limitations. It is impossible to predict exactly when a crisis or disaster will occur, or the extent to which it might affect the campus. Through deliberate planning, preparing, and training, UW–Madison can greatly minimize losses from these events.

When an emergency occurs, the University Response Plan (URP) is activated. The URP delineates the response procedures for emergencies and disasters that impact the campus. When the URP is utilized, two response organizations are established: the Emergency Operations Center (EOC) and the Executive Group. The EOC is staffed by pre-identified campus personnel trained to coordinate the campus' response and recovery efforts. EOC members are vetted UW-Madison personnel in middle to upper management positions from the major functional areas of the University, including, but not limited to, Facilities Planning & Management, University Health Services, Division of Student Life, Office of the Registrar, Division of Information Technology, Division of University Housing, Recreational Sports Facilities, Intercollegiate Athletics, UWPD, University Communications, and the Office of Legal Affairs. The EOC facilitates sheltering of evacuees, debris removal, restoration of services, and supports on-scene personnel (list not all-inclusive). The primary EOC location is in the School of Nursing building. Campus leadership, including the Chancellor, Provost, Vice-Chancellors, and Deans comprise the Executive Group. Their primary responsibilities include setting policy and providing support to the EOC and on-scene personnel.

The Emergency Management Unit is also responsible for facilitating the completion of Occupant Emergency Plans (OEP) for each building on campus and coordinating Continuity of Operations Planning (COOP) for all UW System schools. The Unit provides training and information on all four phases of emergency management: preparedness, response, recovery, and mitigation.  There is at least one COOP tabletop drill conducted each year.

Annual emergency response and evacuation tests are planned in coordination with Environment, Health and Safety and are often announced and publicized via campus email and various newsletters in conjunction with the tests themselves.

The Emergency Management Unit has primary responsibility for the development and facilitation of emergency exercises at UW-Madison. An After Action Report - Improvement Plan (AAR-IP) is written following

each exercise that lists the scenario, participants, date, time, location, whether the test was announced or unannouced, areas of strengths, areas of improvement, and corrective actions. The campus is committed to evaluating response capabilities through the exercise and AAR-IP process, with the goal of correcting areas of improvement identified during the exercise. A four year cycle is utilized; within the four year cycle, a tabletop, functional and full-scale exercise is held which include the EOC and Executive Group. The four year exercise cycle may be adjusted due to real-world emergencies that impact the exercise planning efforts.

All buildings that are equipped with fire alarms have at least 1 fire drill each year. All academic buildings have at least 1 fire drill per year and all residence halls have at least 4 fire drills per year. Building evacuation drills are scheduled, documented, contain exercises involving a coordination of efforts, contain follow-through activities, and are designed for assessment and evaluation of emergency plans. A record of whether they are announced or unannounced is kept.  Evacuation maps are posted in every building and on the door of every dorm room. All buildings have a posted evacuation plan, and all building evacuation plans will be tested during the 2017-2018 academic year.  All students and staff should familiarize themselves with the evacuation routes for the buildings they frequent.

For more information about the Emergency Management Unit, please visit: uwpd.wisc.edu/about-uwpd/ emergency-management/.

## Blue Light Emergency Phones
There are over one hundred Blue Light emergency telephones located throughout campus with a direct connection to the UWPD. Blue Light emergency telephones are tested monthly by UWPD and the Physical Plant provides maintenance. All emergency phones (with the exception of emergency phones located inside campus buildings and elevators) have a blue light above them. All emergency phones are labeled "Emergency." For more information about Blue Light emergency phones, please visit www.uwpd.wisc.edu/faqs

## SAFE Nighttime Services
SAFE (Safe Arrival for Everyone) Nighttime Services are UW-Madison's comprehensive late-night transportation system, available to students, faculty, staff, and university guests. Free Buses circulate the campus and outlying areas until 3 a.m. SAFEwalk is also a free nighttime service that is open 7 p.m. to 1 a.m. (October 1 - March 31) and 8 p.m. to 1 a.m. (April 1 - September 30). When SAFEwalk is called, two student workers will meet the caller at their campus location and walk with them to their destination. UWPD has an officer-liaison to the SAFEwalk program, and is involved in the training of staff members. SAFEwalkers have direct communication with a SAFEwalk dispatch staff member via hand-held radios to address safety concerns. For more information about SAFE Services, see transportation.wisc.edu/transportation/safeservices.aspx

## The Campus Threat and Disruption Oversight Group (CTDOG)
The Chief of Police chairs the Campus Threat and Disruption Oversight Group (CTDOG), and members include the Vice Chancellor for Legal Affairs, the Director of University Health Services, the Vice Provost for Student Life and Dean of the Division of Student Life, and the Human Resources Director. The purpose of this group is to ensure credible threats of significant violence are responded to by the highest levels of the University, to reduce the risk of significant violence or death by taking decisive action to respond to credible threats, to provide guidance to the various Teams on campus that are charged with threat prevention and response, and to serve as a review body for proposed campus bans.

## Threat Team

The Director of Threat Intervention Services chairs the University's Threat Team, which assesses and coordinates a response to threat situations at UW-Madison. The team develops strategies to intervene, interrupt, and mitigate threats posed by students, faculty, staff, visitors, and others unaffiliated with the campus. In addition to the Threat Director, the Threat Team has members from the Dean of Students Office, UWPD, the Office of Legal Affairs, University Health Services, Housing, Human Resources, the Employee Assistance Office, and University Communications. The Threat Team receives guidance and oversight from the Campus Threat and Disruption Oversight Group.

## Behavioral Intervention Team

The Behavioral Intervention Team is comprised of staff members from the McBurney Disability Resource Center, University Health Services Mental Health Services, UWPD, Residence Life, Dean of Students Office, the Office of Student Conduct and Community Standards, the Graduate School, International Student Services, and University Apartments. The BIT is co-chaired by an Assistant Dean of Students and the Assistant Director of the McBurney Disability Resource Center. This team discusses situations that involve students who may be struggling with mental health issues including, but not limited to, possible suicidal ideation resulting in disruptive or concerning behavior. The team's purpose is to intervene and support students with referral to campus and community resources and conduct appropriate follow-up.

## International Safety and Security

Please visit UW Madison's International Travel Safety and Security Website for information about resources, policies and support for international travel by UW-Madison students, faculty, and staff, coordinated by the University International Travel Committee (UITC) and the International Safety and Security Director (ISSD), Ron Machoian. Travelers with specific questions should contact their program sponsor, or the ISSD if traveling independently. ISSD online: http://internationaltravel.wisc.edu/



# SECURITY ON CAMPUS
# ACCESS TO AND SECURITY OF UNIVERSITY BUILDINGS

General access to and use of the facilities at UW–Madison is governed by University of Wisconsin System Chapter 21, Wisconsin Administrative Code, and institutional policies on file in the Office of the Chancellor.

## Academic and Administrative Buildings

The UW-Madison campus is open to faculty, staff, students and the general public. The academic and administrative buildings are open to the public during normal business hours. Most facilities have individual hours, and the hours may vary at different times of the year. Access to these buildings is controlled by either key or card access after normal business hours, and all of these buildings have varied levels of access. Most academic and administrative buildings have a UWPD Police officer assigned as a community officer to them. UWPD police and security officers patrol the academic and administrative buildings on a daily basis. For information about the access protocol for a specific building, see the building manager, a department head, or contact UWPD at (608) 264-2677.

## Residence Halls

Authorized access to residence hall residential areas is restricted to residents, their approved guests, and other approved members of the UW-Madison community. Residents gain entry by presenting their WISCARDS to the card access readers 24 hours a day. Through signage and other forms of communication, all residents are cautioned against permitting strangers to enter the buildings and are urged to contact Housing staff or UWPD if they encounter strangers attempting to enter the building or the residence portions of the halls. UWPD police officers routinely patrol the residence halls. Along with routine patrols each residence hall is assigned a UW Police Officer as a liaison.

Housing staff also enforce security measures in the residence halls and work with residents to achieve a community respectful of individual and group rights and responsibilities. Housing Staff and UWPD staff also conduct periodic educational sessions on prevention of various crimes, including sexual assault. UW-Madison's nineteen residence halls are organized into 138 "houses." Safety and security measures are addressed at house meetings by House Fellows (resident assistants) at a minimum of 2 house meetings per semester.

UWPD officers regularly respond to calls in university-owned residence halls. A committee comprised of police officers, residents, student staff, and professional staff of these residence halls meets regularly to address the security concerns of the students occupying these facilities.

## Eagle Heights and University Apartments Student Housing

All apartments are accessed by keys in possession of the resident. The Community Center is open during regular business hours, and is locked after business hours.  UWPD regularly patrols the area and has a Community Officer assigned to University Apartments complex.  The complex has its own key shop and makes its own key cores. Small facility buildings and sheds are locked when not in use.

Additionally, UWPD has a community police officer assigned to the University Apartments complex. This officer meet regularly with building managers, looks at crime trends in these areas, identifies root causes for the criminal activity, and utilizes crime prevention and problem solving techniques to promote campus safety.

## Dairy Cattle Center Living Quarters

The Diary Cattle Center is open from 7:00am-5:00pm each day. After hours, it is accessible through via card reader for approved WISCards. The living quarters hallway is locked via key, and individual resident rooms are accessible only by key.

## Athletic Facilities

Athletic facilities are typically unlocked during regular business hours during the week. After-hours access is controlled using Wiscard Photo ID Cards or Access Control Photo Identification cards, security cameras (Closed Circuit Television) and proximity card readers. Access key pads and associated controls are also used to secure athletic facilities.

## Restricted Access Facilities

UW has several highly regulated research laboratories on campus that require additional, specialized security measures that limit access to only authorized persons at all times.

## Security and Maintenance of Campus Facilities

Security is provided in the maintenance of the UW-Madison's facilities through a number of mechanisms, including limitations on hours of operation, policies on keys, restricting access to those bearing proper identification as university staff or students, and making available outside "blue light" telephone call boxes that are connected directly to the UWPD dispatcher for emergency assistance. Specific security mechanisms may vary with the type of university facility. Each building has a facility manager that report problems. The Electric Shop addresses reports of burnt-out lights. Landscaping impacts on security are addressed during the design phase. UWPD responds to building alarms. Both student unions are also regularly patrolled by uniformed police officers from UWPD.

## MISSING STUDENT NOTIFICATION FOR STUDENTS LIVING IN RESIDENCE HALLS

UW-Madison has on-campus student housing facilities. As a part of the housing assignment process, each prospective residence hall student, regardless of age, is required to provide an emergency contact name and telephone number, for missing person purposes, which the Residence Life staff member will provide to UWPD. Students' contact person information is registered confidentially, the information is accessible only to authorized campus officials, and it may not be disclosed, except to law enforcement personnel in furtherance of a missing persons investigation.

If a student is reported to have been missing for more than 24 hours, a Residence Life staff member should be notified. If a House Fellow is notified initially, they will immediately notify their Residence Life Coordinator. Once a student is reported to be missing, Residence Life and/or University Housing will immediately notify UWPD, who will begin an investigation. UWPD will be informed if the missing person is under 18 and not emancipated. If the missing student is under 18 and not emancipated, UWPD will notify Madison Police Department, custodial parent(s) or guardian, and any additional contact person, if any, designated by the student, within 24 hours of the determination that the student is missing. If a student is over 18 or emancipated, UWPD will notify the emergency contact, if any, and Madison Police Department within 24 hours of the determination that the student is missing. If Madison Police Department was the entity that originally made the determination that the student was missing, there is no need for UWPD to notify Madison Police Department.

While UWPD proceeds, University Housing will take the following steps:

- The Residence Life staff member will ensure UWPD has the information they require
- The Residence Life staff member will file an incident report in the campus database

- The Residence Life staff member will direct House Fellows to gather information on the student
- Dining staff will determine the last time and location the student accessed dining services
- Residence Hall Facilities will confirm the last time and location of building access

All the above is provided immediately to UWPD.

Important phone numbers to know:

- Residence Life Coordinator Duty Phone:  (608) 206-7497
- Residence Life Management Phone:  (608) 225-7118
- UWPD:  (608) 264-2677 or 911

## MISSING STUDENT NOTIFICATION FOR STUDENTS LIVING IN THE DAIRY CATTLE CENTER LIVING QUARTERS

The Department of Dairy Science at UW-Madison provides on-campus student housing within the Dairy Cattle Center.  As part of the housing assignment process, each student living within this facility, regardless of age, is required to provide an emergency contact name and telephone number, for missing person purposes, which Dairy Science staff will provide to UWPD.  Students' contact person information is registered confidentially with the Department of Dairy Science Herd Administrator, and may not be disclosed, except to law enforcement personnel in furtherance of a missing persons investigation.

If a student is reported to have been missing for more than 24 hours, the Dairy Cattle Center Facility Manager and/or the Herd Administrator should be notified.  Once a student is reported to be missing, the facility manager and/or herd administrator will immediately notify UWPD, who will begin an investigation. UWPD will be informed if the missing person is under 18 and not emancipated.  If the missing student is under 18 and not emancipated, UWPD will notify Madison Police Department, custodial parent(s) or guardian, and any additional contact person, if any, designated by the student, within 24 hours of the determination that the student is missing.  If a student is over 18 or emancipated, UWPD will notify the emergency contact, if any, and Madison Police Department within 24 hours of the determination that the student is missing.  If Madison Police Department was the entity that originally made the determination that the student was missing, there is no need for UWPD to notify Madison Police Department.

While UWPD proceeds, the Department of Dairy Science will take the following steps:

- Dairy Science Herd Administrator will ensure that UWPD has the information they require
- Dairy Science Herd Administrator will file an incident report in the campus database
- Dairy Science Herd Administrator will direct the Dairy Cattle Center facility manager to gather information on the student
- Dairy Science Herd Administrator will contact dining staff to determine the last time and location the student accessed dining services
- Dairy Science Herd Administrator will work with facilities to confirm that last time the student used card access to the building

All of the above is provided immediately to UWPD.

DOE 0023

Important contact information for Dairy Science Herd Administrator and Dairy Cattle Center Facility Manager:

| Herd Administrator | Facility Manager | UW-Madison Police Department |
|---|---|---|
| Jessica Cederquist | David Rieman | (608) 264-2677 or 911 |
| Cell: (608)957-5298 | Cell: (608)301-7291 | |
| Home: (231)631-2023 | Home: (815)297-2637 | |

## GENERAL CRIME PREVENTION TIPS

- Call the police at (608) 264-2677 IMMEDIATELY if you see or hear something suspicious. Don't hesitate to dial 911 in an emergency. Be sure to tell them exactly where you are.
- Keep your possessions in sight at all times. Don't leave computers, cell phones, or electronics unattended.
- If you leave your office or room, even for a few minutes, lock the door.
- Be alert to potential danger. Trust your instincts.
- Walk with friends whenever possible or use . If jogging, walking, or biking alone, stay in well-lit and well-traveled areas.
- Shred documents you discard that contain personal information.
- See the section of this document titled "Sexual Assault, Domestic Violence, Dating Violence and Stalking" for protective behaviors regarding those offenses.

## Safety at Home
For information about tenant rights, please visit www.cityofmadison.com/dpced/bi/general-information/102
Per Madison City Ordinance, you have the right to the following:

- Have lights in all entrances.
- Have locks on the entrances to buildings and individual apartments.
- Have locks on the windows and alternate entrances such as balcony doors.
- Have a working smoke detector.

Contact your property manager if you do not have these legally mandated amenities.

## Additional Tips
- Do not put your first name on your mailbox. (Ex., B. Badger rather than Bucky Badger)
- Do not prop open the outside door of a building.
- Always know who is at your door before opening it.

## COMMUNICATION ABOUT
## CAMPUS CRIMES AND SAFETY

Through a variety of methods, UW–Madison provides information to students and employees about campus security procedures and practices and encourages them to be responsible for their own security and the security of others. One method is keeping students and employees informed about crime prevention strategies and by communicating with the campus community about reported crimes or emergenices that pose serious or continuing threats to students and employees. This section highlights some of the ways in which UW-Madison offices communicate information about crime and safety on campus.

### IMMEDIATE (EMERGENCY) NOTIFICATION PROCEDURES

**WiscAlerts**
This section describes the procedures UW-Madison uses to immediately notify the campus community upon the confirmation of a significant emergency or dangerous situation involving an immediate threat to the health or safety of students or employees occurring on the campus.



Upon confirmation of an emergency or dangerous situation, UWPD will, without delay, and taking into account the safety of the community, determine the content of the notification and initiate the notification system, unless issuing a notification will, in the professional judgment of UWPD, compromise efforts to assist a victim or to contain, respond to or otherwise mitigate the emergency. The notification system at UW-Madison is known as WiscAlerts.

UWPD management typically confirms significant emergencies or dangerous situations involving an immediate threat to the health or safety of students or employees on campus with UWPD personnel and in conjunction with key administrative units, such as Facilities Planning & Management, Division of Information Technology, building managers, and/or the local first-responder agencies, and public health agencies.

All UWPD managers are authorized to initate and use the WiscAlert system. During situations in which there is a time-critical threat to campus, a WiscAlert message and messages sent via the other systems listed below are sent immediately on authority of the UWPD Manager on Call (MOC) or other UWPD personnel if the MOC is unavailable. The MOC or the MOC's designee is responsible for drafting the content, which is developed based on the type of emergency, determining the appropriate segment of the community to receive the message based on the affected community, and sending the message to the community using any or all systems listed below except the emergency telephone notification system, which is initiated by the Dane County. If time permits, UW Communications may review media distributions prior to UWPD sending them.

DOE 0025

Situations for sending a WiscAlert include, but are not limited to: active harmer, significant and serious hazardous materials spill, closing a section of campus, significant disruptions to campus infrastructure, multiple building closings, or a mass casualty disaster. All students and staff have a wisc.edu email address, and WiscAlerts are typically sent via email in an effort to notify the largest percentage of students and staff in the fastest way possible.  Usually, WiscAlerts are also sent via text message to those registered with the text system. In addition to, or in the event of an email or text system failure, UW-Madison may also use some or all of the following systems to communicate an immediate threat to the community: voice calls, other warning mechanisms such as the UWPD website (www.uwpd.wisc.edu), WiscGuardian, UWPD Twitter, UWPD Facebook, UW–Madison Facebook and Twitter, Dane County's emergency telephone notification system (in coordination with Dane County), and media distribution.

In the event of an outbreak of a serious illness or other public health emergency, the Executive Director of University Health Services or designee will typically collaborate with UWPD's MOC or desginee to confirm the emergency, draft the language of the warning and distribute the warning to the affected campus community.

Situations requiring a WiscAlert will almost always require ongoing communications support. UWPD will determine what level emergency is present and use the University Response Plan (URP). Once the URP is activated the process of posting information on UW-Madison's homepage and preparing a crisis communications response will begin. Depending on the type of emergency, UWPD, the Joint Information Center and/or University Communications may work together to craft a consistent set of follow-up messages that can be efficiently distributed to update the UW-Madison and larger community, including through additional WiscAlerts or through the UW–Madison homepage (www.wisc.edu), the Parent Program website (www.parent.wisc.edu), and/or the My UW Portal.  UW-Madison may also communicate through email and text message to provide follow-up communication.

The URP Joint Information Center and/or University Communications on-call staff will also provide assistance in responding to media inquiries.

In certain emergency situations, a campus affiliate group, such as UW Hospital may also propose sending a text message via WiscAlerts. Such requests will be evaluated on a case-by-case basis by the UWPD MOC, using the criteria listed above.

Parents and the larger community can receive information pertaining to an emergency situation at the university through some or all the following systems: the UW-Madison homepage (www.wisc.edu), UWPD homepage (uwpd.wisc.edu), alerts.wisc.edu, UWPD Twitter feed (@UWMadisonPolice), UWPD Facebook page, UW–Madison Facebook page, UW-Madison Twitter feed (@UWMadison) and media distribution. In addition, the Parent Program has the ability to communicate with parents who are part of the program.

## Crime Warnings
UW-Madison issues Crime Warnings to warn the campus community about certain crimes that present a continuing threat to the  campus community and to aid in the prevention of similar crimes. Known in the Clery Act as a "timely warning," the intent of a Crime Warning is to warn of a criminal incident so that people will be enabled to protect themselves.  Crime warnings are issued in a manner that is timely, witholds the names of victims as confidential, and that will aid in the prevention of similar occurrences. The Clery Act requires UW-Madison to distribute Crime Warnings regarding certain crimes that occur within UW-Madison's Clery geography and represent a serious or continuing threat to the safety of students or employees.  These crimes are murder/non-negligent manslaughter, manslaughter by negligence, rape, fondling, statutory rape, incest, robbery, aggravated assault, burglary, motor vehicle theft, arson, domestic violence, dating violence

and stalking. Larceny-theft, simple assault, intimidation and vandalism will be assessed for a crime warning if there is evidence they were motivated by hate or bias against a protected party.

UWPD's Manager on Call (MOC) or the MOC's designee has the authority to develop the content of a Crime Warning and authorize distribution using the guidelines listed below. The MOC or designee will consider the type of offense, location, nature of any threat and whether there is a continuing threat to the community or a continuing crime pattern in determining the appropriateness of a Crime Warning. Some information may be withheld if there is a risk of compromising law enforcement efforts to investigate and/or solve the crime. If the victim of the crime is a person, that person will not be identified by name in a Crime Warning. Crime Warnings are issued as soon as the pertinent information is available to the UWPD MOC or designee.

Crimes will be assessed on a case-by-case basis and Crime Warnings will be distributed as deemed necessary. Cases of aggravated assault involving known parties, such as two roommates fighting which results in an aggravated injury, will be evaluated on a case-by-case basis to determine if an individual is believed to be an ongoing threat to the larger UW–Madison community. Cases of sexual assault will be considered on a case-by-case basis to determine whether there is an ongoing threat to the larger UW-Madison community, depending on the facts of the case, when and where the incident occurred, when it was reported, and the amount of information known by UWPD.  Crime Warnings will not typically be issued for property crimes unless there is some evidence of a pattern or a serious, continuing threat to the community.

The following factors will be considered when determining whether to issue a Crime Warning:
- Where the crime occurred
- The nature of the crime (serious/non-serious, violent/non-violent)
- The nature of the threat (general threat versus limited threat to a specific person)
- Whether or not there is a continuing danger to the community or continuing crime pattern

When UWPD becomes aware of a situation that meets the criteria for a Crime Warning, the Manager On Call (MOC) or designee develops the content of the Crime Warning, has the authority to authorize the distribution and distributes the Crime Warning to the community. In the event a Crime Warning is needed, consideration will be given to the most appropriate means to be used to disseminate the information to the UW-Madison community. The primary form of distribution is through a mass email message to the entire university community. This email is sent by the MOC or the MOC's designee, including, but not limited to, UWPD's Public Information Officer. Other forms of communication may be utilized, such as UWPD Facebook and UWPD Twitter. In addition, Crime Warning notices may also be shared by postings on wisc.edu, the UWPD homepage, press releases, postings/notices at appropriate locations, or the use of UWPD electronic signboards.

Other Campus Security Authorities learning of an incident in which a Crime Warning might be appropriate will share the information with the Clery staff at UWPD to determine whether the incident meets the criteria for a Crime Warning.

A Crime Warning notice will typically include the following, unless issuing any of this information would risk compromising law enforcement efforts:
- The date and time or time-frame of the incident;
- A brief description of the incident;
- Information that will promote safety and potentially aid in the prevention of similar crimes (crime prevention or safety tips);
- Suspect description(s)/photo(s) when deemed appropriate and if there is sufficient detail;
- Police agency contact information; and
- Other information as deemed appropriate.

DOE 0027

UWPD does not issue Crime Warning notice for the above listed crimes if:

- The MOC or designee determines there is no serious or continuing threat to the safety of UW-Madison students and employees;
- UWPD apprehends the subject(s) and the threat of imminent danger to members of the UW–Madison community have been mitigated by the apprehension; or
- A report was not filed with UWPD or if UWPD was not notified of the crime in a manner that would allow the department to post a "timely" warning for the community (e.g. a report that was filed more than 7 days after the date of the alleged incident may not allow UWPD to post a "timely" warning to the community). This type of situation will be evaluated on a case-by-case basis.

UWPD will generally not issue crime warnings for crimes occurring beyond the immediate Clery-designated geographical area. The same procedures for determining whether to issue a Clery geography Crime Warning are used for determining whether to issue a non-Clery geography Crime Warning and will be evaluated on a case-by-case basis.

For more information about Crime Warnings, please visit: http://uwpd.wisc.edu/crime-data/clery-act/

## Student and Employee Registration for WiscAlerts and Crime Warnings
Students are automatically enrolled to receive WiscAlerts unless they opt-out. Student cell phone numbers are retrieved from the Local Emergency Contacts form in MyUW. Employees can register to receive WiscAlerts via text message at uwpd.wisc.edu/services/wiscalerts. Once this is completed, WiscAlerts will be able to be sent automatically.

Everyone with a UW-Madison affiliated email address receives WiscAlerts and Crime Warnings and cannot opt-out or unsubscribe. The email database is updated daily with the most current list of email addresses.

Additional emergency contact and local contact information for students and employees can be registered at https://my.wisc.edu/profile/emergencyInfo.

## WiscAlert and Crime Warning System Testing
UWPD's Manager on Call tests emergency notification system on a monthly basis. The Emergency Management Unit tests WiscAlert functions quarterly. UWPD's Public Information Office and University Communications also test the website portion of the WiscAlert system on a monthly basis. The systems are tested campus-wide on an annual basis.

## Information about Sex Offenders
The federal Campus Sex Crimes Prevention Act requires institutions of higher education to issue a statement to the campus community about where to find information on registered sex offenders in the state. It also requires sex offenders who are already required to register with the state to notify that state if they are enrolled, carry on a vocation or are employed in a post-secondary institution.

In Wisconsin, convicted sex offenders must register with the Department of Corrections; a registry can be found at offender.doc.state.wi.us/public. The Wisconsin Department of Corrections supplies information to UWPD regarding registered sex offenders who are enrolled or employed at UW-Madison. This information can also be found on the UWPD website: http://uwpd.wisc.edu/crime-data/sex-offender-registration/.

DOE 0028

## CRIME PREVENTION AND
## SECURITY AWARENESS EDUCATION

Creating a safe campus is everyone's responsibility. The following programs are offered to inform the campus community about campus security procedures and practices, to encourage the campus community to be responsible for their safety and the safety of others, and to inform students and employees about crime prevention.

### Badger Watch

Badger Watch is a crime prevention program for the UW-Madison campus. It is a collaborative effort between over 4,500 volunteers and UWPD to help make the community a safer place. UWPD provides support to volunteers, provides direct access to specific campus personnel, and sends crime-alert information to volunteers. Badger Watch also holds an annual safety conference to provide volunteers updated and additional training such as CPR, self-defense and travel safety.

Badger Watch is modeled after Neighborhood Watch programs, with the focus being on the UW-Madison campus. Students and staff become "extra eyes and ears" volunteers by attending a one-hour, one-time safety training conducted by UWPD. This training involves safety and security awareness, and information on what to do in case of an emergency. UWPD educates volunteers to react appropriately when they notice suspicious behavior or when volunteers themselves are involved in an incident, encouraging participants to be responsible for thier own security and the security of others.

Badger Watch is offered year-round.

### Citizens Academy

UWPD Citizens Academy is a crime prevention and security awareness program that is offered once a year to people interested in how UWPD operates and what UWPD offers to the UW-Madison community. During the seven Citizen's Academy sessions, attendees receive a tour of the police department and detoxification center, education on alcohol and drugs, education on sexual assault response provided by the Dane County Rape Crisis Center, an overview of firearm use, defense and arrest tactics, emergency vehicle operation and control, and a ride-along with a patrol officer. Citizen's Academy also provides insight to those considering a career in law enforcement, social work or other related fields.

### Active Shooter Training

UW-Madison Police Dept. conducts an Active Shooter Response training presentation for students, faculty and staff, designed to provide an overview of an active shooter event. The instructors are experienced law enforcement trainers whose main goal is to share tactics and techniques that can and will help participants survive a crisis----specifically, to survive an active shooter incident. In 2016, UWPD conducted 59 Active Shooter Trainings.

Active Shooter Training is offered monthly and is also available upon request.

### Student Orientation, Advising, and Registration (SOAR)

Every year during Student Orientation, Advising and Registration (SOAR), parents of first year students receive a presentation from UWPD that discusses WiscAlerts, Crime Warnings, and theft deterrence. UWPD hosts a table at the SOAR resource fair where students and parents may speak with UWPD officers to get more information about crime prevention and security awareness.

## Interfraternity Council and Panhellenic Association

The Interfraternity Council (IFC) is the governing council for all North-American Interfraternity Conference (NIC) affiliated fraternities at UW-Madison. The Panhellenic Association (PHA) is the governing council for all National Panhellenic Council (NPC) sororities at UW-Madison. There are some social fraternities and sororities that are not members of IFC or PHA, instead, they fall under the governance umbrellas of the Multicultural Greek Council (MGC) or the National Pan-Hellenic Council (NPHC).

Each semester, Interfraternity Council fraternities and Panhellenic Association sororities are requested to send representatives to monthly workshops. Topics frequently covered include: risk management, alcohol, sexual assault, legal liability and hazing. Members of each chapter receive education about how to host social events safely and securely; training from a Madison Police Department officer about staying safe on and off campus; clear definitions of sexual assault, consent and hazing, and personal choices concerning alcohol use. Additionally, a program is held each spring semester for new chapter officers that outlines specific liabilities and potential consequences relating to hazing, underage drinking, and negligence. The program uses case law and case studies to help students understand the reality of these events.  All programs give students information about risk factors for Greek leaders, liability reduction and creating safer facilities.

## Badgers Step Up!

In order to register as a student organization at UW-Madison, a representative from all student organizations must complete the Badgers Step Up! program.  Badgers Step Up! is an alcohol program that teaches risk reduction, clarifies social norms around alcohol use, challenges perceptions, and teaches bystander intervention techniques.  Content is specific to UW-Madison, including the Wisconsin Idea and the UW-Madison leadership framework competencies. All new members in PHA and IFC  chapters are required to attend a session of Badgers Step Up! within their first two semesters of membership. A version of Badgers Step Up! has been created to integrate the traditional Badgers Step Up! curriculum with rules, policies, and values specific to the Greek community.

## Additional Crime Prevention and Security Awareness Programs

Upon request, personnel from UWPD are available to present to academic classes, departments, student organizations, campus offices, and residence halls regarding campus safety issues around crime prevention and security awareness. Presentations highlight steps to enhance personal safety as well as community responsibility for creating a safer campus. These programs encourage students and employees to be responsible for their own security and the security of others. UW conducts many security awareness and crime prevention programs each year.   Also see the chapter of this document entitled "Sexual Assault, Domestic Violence, Dating Violence and Stalking," for more crime prevention and security awareness programs.

## Chimera Self-Defense

Chimera self-defense teaches verbal assertiveness skills and physical techniques to prevent and stop harassment and assault. There are also Active Bystander courses, Refresher courses and courses for Trans Women available. Chimera self-defense is offered by the Rape Crisis Center and is not a UW-Madison program. Programs are available on campus upon request.

Contact Rape Crisis Center: http://danecountyrcc.org | (608) 251-5126.

DOE 0030

# Sexual Assault, Domestic Violence, Dating Violence, & Stalking

UW-Madison prohibits sexual assault, domestic violence, dating violence, and stalking as they are defined for the purposes of the Clery Act and Wisconsin state law. These crimes will not be tolerated on campus and are a violation of Wisconsin law as well as student and employee conduct policies. UW-Madison pro-actively addresses sexual assault, dating violence, domestic violence, and stalking.

For the legal definitions of sexual assault, domestic violence, dating violence, stalking and consent in UW-Madison's jurisdiction, the State of Wisconsin, please see the chapter in this document entitled, "State of Wisconsin Crime Statutes and Definitions."

For the purposes of the Clery Act, sexual assault, domestic violence, dating violence and stalking are defined as the following:

*Sexual Assault*
- *Sex offense:* any sexual act directed against another person, without the consent of the victim, including instances where the victim is incapable of giving consent.
- *Rape:* the penetration, no matter how slight, of the vagina or anus, with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim. This offense includes both males and females.
- *Fondling:* the touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental incapacity.
- *Statutory Rape:* sexual intercourse with a person who is under the statutory age of consent.
- *Incest:* sexual intercourse between persons who are related to each other within the degrees wherein marriage is probihited by law.

*Domestic Violence*
A felony or misdemeanor crime of violence committed by a current or former spouse or intimate partner of the victim; by a person with whom the victim shares a child in common; by a person who is cohabitating with, or has cohabitated with the victim as a spouse or intimate partner; by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime occured; by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime occurred. *To categorize an incident as domestic violence, the relationship between the perpetrator and the victim must be more than just two people living together as roommates. The people cobahitating must be current or former spouses or have an intimate relationship. (U.S. Department of Education, Office of Postsecondary Education, *The Handbook for Campus Safety and Security Reporting, 2016 Edition,* Washington D.C., 2016, pg. 3-38.)

*Dating Violence*
Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship shall be determined based on the reporting party's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. Dating violence includes, but is not limited to, sexual or physical abuse or threats of such abuse. Dating violence does not include acts covered under the definition of domestic violence.

DOE 0031

*Stalking*
Engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others, or suffer substantial emotional distress. Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device or means, follows, monitors, observes, surveils, threatens or communicates to or about a person, or interferes with a person's property.  Reasonable person means a reasonable person under similar circumstances and with similar identities to the victim. Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily require medical or other professional treatment or counseling.

## UW-MADISON MULTIDISCIPLINARY CAMPUS COMMITTEES

UW-Madison has two campus committees charged with addressing gender based violence through multidisciplinary lenses, the Provost Advisory Group on Sexual Assault and Misconduct and the End Violence on Campus Coordinating Council.

## Provost's Advisory Group on Sexual Assault and Misconduct
The Provost's Advisory Group on Sexual Assault and Misconduct provides overarching leadership on campus efforts to prevent and respond to sexual assault and sexual misconduct (includes but is not limited to:  sexual harassment, intimate partner violence, and stalking). The group advises senior campus leaders and ensures the coordination of campus prevention, response and accountability measures.
Specific responsibilities of the Advisory Group include the following:
- Facilitate the development of a comprehensive strategic plan that addresses the important health, academic, social, and safety issues related to sexual assault and sexual misconduct.
- Ensure the performance of periodic surveys, possibly re-administering the AAU survey, to assess progress.
- Oversee a comprehensive campus-wide strategy for evaluating campus programs and services.
- Support the implementation of evidence-based policies, prevention and intervention programs, services and accountability procedures, including making recommendations regarding resource allocation.
- Charge and support other campus committees of students, faculty, and staff to address sexual assault and sexual misconduct issues on campus.
- Assess alignment of campus communications regarding the philosophy and expectations pertaining to the prevention of sexual assault and sexual misconduct.
- Maintain community partnerships including coalitions to allow coordinated, environmental response to sexual assault and sexual misconduct.

## End Violence on Campus Coordinating Council (EVOC CC)
The EVOC CC is a multidisciplinary committee dedicated to addressing sexual assault, domestic violence, dating violence and stalking at UW-Madison. It is the UW-Madison Community Coordinated Response (CCR) on gender-based violence.  Using collaborative, victim-centered approaches, EVOC CC partners work together to ensure that prevention services are widely available, victims have access to services and accommodations, professionals have adequate training and support to respond effectively, policies designed to discipline perpetrators are clear, equitable, and accessible.  Membership is composed of multiple campus units, three community-based victim services agencies, students, faculty, and staff.  The EVOC CC reports to the Dean of Students and the UHS Executive Director, and among its responsibilities, provides review and consultation about the sexual assault, dating violence, domestic violence, and stalking content in this ASR.

## PREVENTION, AWARENESS & BYSTANDER INTERVENTION

### PRIMARY PREVENTION AND ONGOING AWARENESS PROGRAMS

UW-Madison is dedicated to educational and prevention services. Primary prevention programs means programming, initiatives, and strategies informed by research or assessed for value, effectiveness, or outcome that are intended to stop dating violence, domestic violence, sexual assault, and stalking before they occur through the promotion of positive and healthy behaviors that foster healthy, mutually respectful relationships and sexuality, encourage safe bystander intervention, and seek to change behavior and social norms in healthy and safe directions. Primary prevention and ongoing educational/awareness efforts at UW-Madison contain information about options available to victims, procedures for institutional disciplinary action, risk reduction, and bystander intervention.

University Health Services's Violence Prevention and Survivor Services staff provide primary prevention programs and services, confidential victim advocacy, and training/technical assistance services focused on sexual assault, domestic violence, dating violence and stalking. For more information, see http://uhs.wisc.edu/vpss or contact violenceprevention@uhs.wisc.edu. UHS Violence Prevention and Survivor Services (VPSS) coordinates with campus and community partners to provide the following prevention and educational services:

**Undergraduate Orientation**: At orientation, known as SOAR (Student Orientation, Advising, and Registering), both new undergraduate students and parents are provided with information about sexual assault, consent, and resources available to victims in accordance with the Wisconsin Statutes 36.11(22)(a). Parents and guests of new students are provided with a half-hour presentation about student health and safety co-led by representatives from the UW-Madison Police Department and University Health Services. New undergraduate students are provided with a peer-led discussion that includes basic information about sexual assault. SOAR is offered each summer and winter. SOAR is coordinated by the Center for the First Year Experience in the Division of Student Life; training about sexual assault is provided to SOAR staff by UHS VPSS.

**Parent Handbook:** All parents and guests attending SOAR are provided with a discussion guide on sexual assault and dating violence that provides an overview of resources for victims on campus and in the community, tips for parents on starting conversations about consent and sexual assault with their students, an overview of prevention efforts, and relevant campus policies. To view the handbook, see:
https://www.uhs.wisc.edu/wp-content/uploads/sexual-assault-parent-handbook.pdf

**Undergraduate Online Prevention Program, "U Got This!":** Incoming undergraduate first-year and transfer students who intend to earn degrees from UW-Madison are required to complete an online violence prevention program, called U Got This! Approximately 7800 new students complete the program each year. Students who do not complete the program are not able to register for second-semester classes. U Got This! includes a statement that the institution prohibits the crimes of domestic violence, dating violence, sexual assault and stalking; definitions of sexual assault, domestic violence, dating violence, stalking and consent, in reference to sexual activity, in UW-Madison's jurisdiction; a description of safe and positive options for bystander intervention; and information on risk reduction. For more information about the U Got This! program, including a link to view the program, visit www.uhs.wisc.edu/prevention/firstyear.

DOE 0033

**Undergraduate In-Person GetWIse Programs:** Undergraduate first-year and transfer students who intend to earn degrees from UW-Madison are required to complete an in-person GetWIse violence prevention program. These sessions allow students the opportunity to explore some of the content in the U Got This! program more thoroughly with their peers. Students can choose the format (large event or interactive workshops) and the topics (supporting a survivor, dating in college, hooking up and consent, bystander intervention) that are of most interest to them. Some sessions are specifically designed and intended for students of color, LGBTQ students, and students who enroll at UW-Madison having already survived sexual assault or dating violence. Hundreds of sessions are offered in the Fall semester. Students who do not complete the in-person requirement are not able to register for third-semester classes. For more information, visit https://www.uhs.wisc.edu/wp-content/uploads/ParentSADVHandbook.pdf or r email violenceprevention@uhs.wisc.edu.

**Student-Athletes and Athletics Staff:** In August 2017, the NCAA adopted a requirement that all student-athletes, coaches and staff be educated on sexual violence prevention, intervention and response, to the extent allowable by state law and collective bargaining agreements. UW-Madison is in the process of creating a program to meet the needs of student-athletes, coaches and staff for the 2017-2018 academic year.

**Incoming Graduate and Professional Students:** UW-Madison provides a mandatory online violence prevention program for incoming graduate and professional students at UW-Madison. The program is designed to promote the health and safety of the campus community. The program includes a statement that the institution prohibits the crimes of domestic violence, dating violence, sexual assault and stalking; definitions of sexual assault, domestic violence, dating violence, stalking and consent, in reference to sexual activity, in UW-Madison's jurisdiction; a description of safe and positive options for bystander intervention; and information on risk reduction. For more information, please see: https://www.uhs.wisc.edu/prevention/violence-prevention/grad-students/.

**Employees:** UW-Madison provides an mandatory online violence prevention program for all employees. The program, "Preventing Sexual Harassment and Sexual Violence at UW-Madison" is designed to reflect our institutional commitment to ensuring safe and equitable teaching, learning, and working environments for all members of our campus community. This online training module includes how to recognize, prevent, and respond to sexual assault and sexual violence in the workplace. Information about reporting options and campus and community resources to support individuals who have experienced sexual harrassment or sexual violence are also provided. The training can be found here: https://compliance.wisc.edu/titleix/employee-training/.

**Informational Mailing:** Students living in undergraduate University Housing Residence Halls (approximately 7,700) receive a direct mailing each Fall with information about upcoming prevention programs and the services available for victims of sexual assault, dating violence, domestic violence, and/or stalking.

**PAVE: Promoting Awareness, Victim Empowerment (Student Organization):** PAVE is a registered student organization dedicated to preventing sexual assault, stalking and intimate partner violence through education and activism. All students and student groups may request a free peer-led, hour-long workshop about consent, sexual assault, and dating violence from PAVE. PAVE also hosts many ongoing events, lectures, discussions, and campaigns to raise awareness about sexual assault and dating violence on campus. PAVE receives student segregated fees to provide student services for students, by students. For more information, visit http://pave-uw.com or email chair.pave@gmail.com.

**School of Social Work Elective Courses:** The School of Social Work, in partnership with UHS VPSS, offers a course titled "Greek Men for Violence Prevention (GMVP)", which explores and challenges dominant expressions of masculinity in an effort to prevent sexual violence in social fraternities at UW-Madison. For more information, contact violenceprevention@uhs.wisc.edu or tschroepfer@wisc.edu.

**Educational services offered by community-based victim service providers:** Presentations are available upon request from valued partners to the UW-Madison campus: the Rape Crisis Center, Domestic Abuse Intervention Services (DAIS), and UnityPoint Health Meriter Forensic Nurse Examiner program, three local community organizations that exist to serve victims of sexual assault and domestic violence. The Rape Crisis Center also offers a self-defense program for women (Chimera self-defense). For more information about these community based programs, including how to contact them for an educational program, see https://www.uhs.wisc.edu/prevention/violence-prevention/resources/.

## GENERAL TRAINING SERVICES

Faculty, staff, and students who wish to learn more about sexual assault, dating violence, domestic violence and/or stalking or who wish to schedule professional development in these areas should contact uhs.wisc.edu/vpss and complete a request form for a consultation and list of upcoming events. UHS VPSS staff are available to provide or coordinate training upon request. UHS VPSS staff provide training and technical assistance about prevention strategies, supporting a survivor, and resources available on campus and in the community. They do not provide training about nor enforce policies regarding institutional reporting requirements.

The Title IX Coordinator can provide training upon request about institutional reporting requirements and resources/rights for victims of sexual assault, dating violence, domestic violence, stalking, and/or sexual harassment. Additionally, the Title IX Coordinator will provide focused trainings in areas where patterns or systemic problems arise. For more information, contact lauren.hasselbacher@wisc.edu or titleix_coordinator@wisc.edu.

Staff and faculty may also contact the Office for Equity and Diversity to get information about how to prevent and respond to sexual harassment at http://oed.wisc.edu.

## BYSTANDER INTERVENTION PROGRAMS AND RISK REDUCTION

### Green Dot Bystander Intervention Program
In 2016, UW-Madison adopted the Green Dot College Strategy 2.0, an evidence-based, comprehensive bystander intervention violence prevention program. Components include a 60-90 minute persuasive speech, a 6-hour bystander skills training, large events, and social marketing. The Green Dot College Strategy 2.0 invites people to reconsider their role in prevention; inspires people to believe things can be different and that their contributions matter; engages people in education that will equip them with the motivation, knowledge, and skill needed to take action; strengthens new behaviors through reinforcement, practice, and multiple exposures to key messages; and sustains changes through integrating key messages into permanent infrastructure. In June 2016, nearly 50 UW-Madison faculty and staff were provided with a 4 day training to become Green Dot certified instructors. Green Dot is part of the new UW-Madison in-person primary prevention requirement for all incoming undergraduate students. All new student members of Greek Letter student organizations are expected to participate in a Green Dot overview session. More information about the Green Dot Bystander Intervention program at UW-Madison can be found here: https://www.uhs.wisc.edu/green-dot/.

### Bystander Intervention Tips
Bystander intervention means safe and positive options that may be carried out by an individual or individuals to prevent harm or intervene when there is a risk of dating violence, domestic violence, sexual assault, or stalking. Bystander intervention includes recognizing situations of potential harm, understanding institutional

DOE 0035

structures and cultural conditions that facilitate violence, overcoming barriers to intervening, identifying safe and effective intervention options, and taking action to intervene. Many people assume that sexual assault, domestic violence, dating violence and stalking only affects the crime victim, when in fact entire families, friend groups, and communities are hurt. If you see something, say something:

- Be active in supporting a safe and respectful community. If you see others engaging in disrespectful or inappropriate actions, speak up and get involved, or contact someone to assist.
- Listen for rape jokes and sexist language. You don't have to laugh or participate.
- If you see someone who looks to be in immediate danger, call 911.
- You can intervene even after an assault. Learn what options sexual assault victims have available to them on this campus and be supportive of their choices.
- If you're a bystander and see someone behaving in a way that seems suspicious, be direct and step in and do something about it, such as distracting their attention away from a potential victim. If you don't feel comfortable or safe confronting them, call 911.
- If you sense that something is wrong, don't ignore it, you can help by getting involved. Check-in and ask, "Hey, do you know this person?" or, "Are you OK?" or, "Can I call a friend to walk you home?"
- It can feel awkward to step in and say something if you notice harmful behavior, but often all it takes is a brief introduction. Let the potential perpetrator know that their actions are noticeable with a simple, "Hey, do I know you? Aren't you in Tuesday Chemistry section?"
- When you go out, consider going out as part of a group. People tend to step in and intervene in situations when they have friends who will back them up.

## Protective Behaviors and Risk Reduction: What Everyone Can Do

Risk reduction means options designed to decrease perpetration and bystander inaction, and to increase empowerment for victims in order to promote safety and to help individuals and communities address conditions that facilitate violence.

- Have healthy, open and ongoing conversations with your partner or potential partner about sex and sexual contact. Talk about your boundaries and what behaviors you both feel comfortable, and uncomfortable, engaging in.
- The next time you hear yourself talking about gender or sex in a derogatory way, stop. Speak up when you hear others talk this way—no matter their gender.
- Listen to or read the personal story of a survivor of violence.
- Make sure you have enthusiastic, affirmative and ongoing consent from your partner. Consent is a clear and freely given yes, not the absence of a no.
- Consent to one act does not mean consent to other acts. Communicate and be responsive. You must continually get consent for sex. If someone seems not okay with what's happening, it is your responsibility to check in.
- When you have sex be sure you understand your partner's limits, and communicate your own limits clearly. Don't engage in sexual activities without affirmative consent from your partner.
- Most commonly, sexual assault is perpetrated not by a stranger but by someone the victim knows, typically a date or acquaintance.
- People who are incapacitated by alcohol or drugs cannot give consent. Signs of incapacitation may include—but are not limited to—throwing up, slurring words, stumbling, or not being able to remember conversations.
- Do not pressure others to drink or use drugs and be alert to people pressuring you or others to use.
- Alcohol and drugs are often used to create vulnerability to sexual assault. Studies of sexual assault incidents show a high correlation between sexual assault perpetration, victimization and drug/alcohol usage.

- Some sex offenders target people by using alcohol as a weapon. Get your own drinks; don't let someone continually fill your cup or leave your drink unattended.
- Use and encourage others to have a companion or a safe means of getting home, i.e., a trusted friend, taxi, or SAFEwalk at 608.262.5000.
- If an authority figure pressures you to engage in sexual activity tell someone.
- Understand that crime victims are never responsible for the behavior of perpetrators.
- If you've been sexually assaulted or victimized, tell someone – there are resources available to help.

## Signs of an abusive dating partner may include someone who:

- calls you names, insults you or continually criticizes you.
- does not trust you and acts possessive or jealous.
- tries to isolate you from family or friends.
- takes your possessions to punish you and refuses to return them.
- monitors where you go, who you call, and who you spent time with.
- controls finances or refuses to share money.
- punishes you by withholding affection.
- expects you to ask permission from them to do what you want to do.
- threatens to hurt you, your family, your pets, or your belongings.
- threatens and/or uses a weapon against you.
- has ever forced, coerced, or manipulated you into having sex or performing sexual acts.
- accuses you of cheating or is often jealous of your relationships with others.
- traps you in your apartment or residence hall room and keeps you from leaving.
- social media messages, Facebook messages, tweets, text messages, and/or calls you obsessively to find out where you are and what you are doing.

More information about dating violence can be found at www.uhs.wisc.edu/prevention/violence-prevention/dating-violence/. Remember, sexual assault, domestic violence, dating violence, and stalking are never the fault of the victim; they are the choice of the perpetrator.

## REPORTING & RESOURCES

Students and employees who experience sexual assault, domestic violence, dating violence, and/or stalking have many options and services available to them on and off campus, including mental health counseling, victim advocacy, off-campus legal assistance, employee assistance and access to the criminal and campus disciplinary systems. Many services are available to victims regardless of their choice to report the incident to law enforcement, and several are available at no charge.

The campus and surrounding community have a wide range of services available to help student victims. This information is provided as part of prevention education efforts and is detailed below. For more information visit https://www.uhs.wisc.edu/prevention/violence-prevention/resources/.

When a student or employee reports to UW-Madison that they have been a victim of sexual assault, domestic violence, dating violence and/or stalking, whether the offense occurred on or off campus, UW-Madison will provide the student or employee with written notification of the student or employee's rights and options.

DOE 0037

## PROCEDURES FOR REPORTING

UW-Madison encourages victims of sexual assault, domestic violence, dating violence and/or stalking to report the incident immediately to UWPD at (608) 264-2677 or by calling 911. In addition to law enforcement, individuals may also report sexual assault, domestic violence, dating violence and stalking to UW-Madison through the Dean of Students Office, the Office of Workforce Relations and UW–Madison's Title IX Coordinator. Following a report of sexual assault, domestic violence, dating violence and/or stalking to UW-Madison, whether the offense occurred on or off campus, UW-Madison will provide the student or employee a written explanation of the student's or employee's rights and options.  All victims have the right to be accompanied by a person of their choosing, including a victim advocate, when they file a report and to any meetings related to institutional disciplinary proceedings.

A victim has the right and is encouraged to notify proper law enforcement authorities, including UWPD and local police, to report sexual assault, domestic violence, dating violence and/or stalking. Victims have the right to be assisted by campus authorities in notifying law enforcement if the victim chooses. UW-Madison will comply with a request for assistance in notifying law enforcement. Victims also have the right to decline to notify law enforcement.  If the crime occurred on UW-Madison property, UWPD has jurisdiction. If the crime occurred off campus, the victim can notify the appropriate local law enforcement agency with jurisdiction at

### TO REPORT TO LAW ENFORCEMENT

Sexual assault, sexual harassment, domestic violence, dating violence and/or stalking can be reported to local law enforcement, including UWPD:

**UW-Madison Police Department**
1429 Monroe St., Madison, WI
(608) 264-2677 or 911 (on campus)

**Madison Police Department**
211 S. Carroll St., Madison, WI
(608) 261-9694 or 911 (off campus)



### TO REPORT TO UW-MADISON

For institutional response including investigation of sexual assault, sexual harassment, domestic violence, dating violence and stalking, and for accommodations and resources for victims, incidents can be reported at the following offices:

**For students:**
Dean of Students Office
500 Lincoln Dr., 70 Bascom Hall, Madison, WI
(608) 263-5700 | doso.wisc.edu
dean@studentlife.wisc.edu

**For employees:**
Office of Workforce Relations
21 N. Park St. #5101, Madison, WI
(608)265-2257 | ohr.wisc.edu/workforce
wr@ohr.wisc.edu

**For everyone:**
Title IX Coordinator
Lauren Hasselbacher
500 Lincoln Dr., 361 Bascom Hall, Madison, WI
(608) 890-3788 | lauren.hasselbacher@wisc.edu
titleix_coordinator@wisc.edu

*Relay Calls Accepted*

the location of the crime. UWPD will assist the victim in identifying the correct law enforcement agency and will assist the victim in reporting it to that agency. Victims have the right to NOT notify law enforcement or report the crime if they so choose.

If you choose to report to UWPD, the Dean of Students Office, the Office of Workforce Relations or the Title IX Coordinator, UW-Madison will investigate for a hostile environment and, where applicable, pursue disciplinary action against the person alleged to have committed the offense. The Dean of Students Office, the Office of Workforce Relations and Title IX Coordinator are required to respond appropriately to all reports of sexual violence, and will do so when they receive notice of a possible hostile environment.

UW-Madison provides training and information to many staff members to respond to and support victims, however, many victims do not feel comfortable talking to law enforcement, campus administrators, professors, or advisors. Healing can look different for everyone. Additional services available to victims of crime occurring both on and off campus are listed in this chapter, including confidential options that will not result in criminal or university investigation.

When reporting sexual assault, domestic violence, dating violence and/or stalking, please note the following:

- The preservation of evidence may strengthen investigations, which may result in a better chance of holding the accused responsible or obtaining a restraining order. (Evidence may include the clothing worn at the time, a record of threatening text messages and e-mails, and bodily fluids). The UnityPoint Health Meriter Forensic Nurse Examiner can provide no-cost forensic medical exams, even if a victim chooses not to report to law enforcement. For more information please visit: https://www.unitypoint.org/madison/sexual-assault-nurse-examiner-program.aspx
- Although it is best not to shower, even if a victim has showered and changed clothes, a police report can be filed and/or medical exam can be obtained.
- Campus officials are required to provide information about options and assist in making contact with law enforcement personnel if requested.
- Filing a report will generally involve an interview with law enforcement officer or an investigating officer from the Title IX office (or both, if you choose to report to both agencies). With UWPD, you may request an officer with the gender you feel most comfortable with to take your statement.

## RESTRAINING ORDERS AND NO CONTACT ORDERS

### Civil Restraining Orders

The following section is information provided by the Dane County District Attorney's Office website and is accurate as of September 2017. The following information can also be located at https://www.countyofdane.com/da/restraining_order.aspx, by visiting the Legal Resource Center in the Dane County Courthouse, Room L1007, 215 S. Hamilton St., Madison, WI or calling 608-266-4311

### What is a Restraining Order?

A Restraining Order is a court order limiting defined potential conduct of someone who has abused or harassed you, ordering them not to abuse or contact you. The District Attorney's Office cannot provide legal advice or assistance in filing restraining orders. Domestic Abuse Intervention Services (DAIS) employs legal advocates who can assist with paperwork, questions, and attend court hearings with you. The DAIS phone number is (608) 251-1237.

DOE 0039

There are three types of restraining orders:

## 1. Domestic Abuse Restraining Order

There is no filing fee for Domestic Abuse Restraining Orders. The petitioner must show the respondent engaged in physical abuse, sexual assault, impairment of physical condition, criminal damage to property, or a threat to do one of these. The respondent must be:

    -A current or former spouse, adult family member, or domestic partner.
    -A person the petitioner has a child with.
    -A person the petitioner has dated.
    -A person who provides in-home or community care for the petitioner.
    -A guardian of an incompetent petitioner; guardian fits above categories.

## 2. Harassment Restraining Order

The filing fee for Harassment Restraining Orders is $164.50. The petitioner must show the respondent has been harassing, intimidating, subjecting the victim to physical contact, or has threatened to do so. The court commissioner can waive fees based upon what is written in the Statement of Facts if there are threats or acts of physical violence, non-consensual sexual contact, or stalking behaviors.

## 3. Child Abuse Restraining Order

There is no fee for Child Abuse Restraining orders. The petitioner must be a child victim, parent, stepparent or legal guardian of the victim. The petitioner must show emotional, physical or sexual abuse of the child committed by the respondent.

### How to File for a Restraining Order

Restraining Order paperwork is available in the Legal Resource Center in the Dane County Courthouse, Room L1007. Once victims have filled out the Restraining Order packet, go to the Records Center in Room 1000 to sign the Petition in front of a notary (Records Center staff will perform the Notary Act). Records Center staff will summon a Court Commissioner via email. Once a Court Commissioner has reviewed the material, and assuming they have approved the same, Records Center staff will make all necessary copies. File all papers with the Clerk of Courts in Room 1000 of the Dane County Courthouse, and follow the next step regarding serving the restraining order. The Commissioner will schedule an injunction hearing and issue a Temporary Restraining Order (TRO) if appropriate. The TRO is in effect until the injunction hearing. This hearing must be held within fourteen days of the TRO being issued.

### Serving a Restraining Order

The TRO must be served (officially delivered) to make it enforceable. It also must be served to let the respondent (alleged abuser) know about the court date for the injunction hearing. Take the papers next door to the Public Safety Building (Dane County Jail) and give them to the Sheriff's Department, where they will serve these papers on the defendant for a fee. Call the Sheriff's Department at (608) 284-6800 to see if the respondent has been served or to give the Sheriff new information about where the respondent can be found. A private process server may also serve the papers for a fee.

If the respondent contacts you after being served, call the police immediately. Keep a copy of your restraining order with you at all times. If the police arrive and discover the respondent has not yet been served, an officer can serve one of your extra copies. If you need the police to serve your papers, ask the officer to write the following on the copy you are going to keep:

DOE 0040

-The date and the police officer's name and badge number
-Abuser or harasser's name and type of papers served.
-Ask the officer to notify the Sheriff's Department by phone and/or in writing that the respondent has been served.

### Injunction Hearings

This is the court hearing to grant your long-term Restraining Order. You may bring an attorney if you wish. Please be on time!! If your case is called and you do not show, the restraining order will be dropped. If you are running late, call the Probate Office at (608) 266-4331. The date and time of your hearing will not be changed. If you miss your court date, you may need to show that there has been a new incident of violence in order to file papers again. If you and the respondent appear in court, both of you will testify. If the respondent has been served with a Notice to Appear but does not come to court, the hearing will be based on your testimony alone. You will be under oath. Take your time, admit if you don't remember something, if you are afraid, have defended yourself, called the police, if the respondent has been arrested, and if they have violated the Restraining Order. Be polite and don't interrupt the respondent's testimony. You will have a chance to respond or ask the respondent questions.

Focus on the following issues when you testify in court:

- When and where the abuse took place - location, time and date of each incident starting with the most recent.
- Physical abuse – hitting, choking, slapping, kicking, forcing sex, etc.
- Threats of physical harm or violence – threatening to kill you, burn down the house, etc.
- Injuries or pain – bruises, scratches, pain from being punched, etc.
- Weapons – guns, knives, broomsticks, any object used to hurt you.
- Evidence – pictures, medical records, police reports, etc.
- Witnesses – anyone who has seen or heard the respondent threaten or harm you.
- Harassment – unwanted and repeated phone calls, visits and/or contact which you have asked this person to stop. In Wisconsin, the term "harassment" describes unwanted contact, physical abuse or threats of violence.

If the commissioner finds that domestic abuse, harassment, or child abuse has occurred, they may order an injunction (long-term Restraining Order) for as long as the petitioner requests, but not to exceed four years for domestic abuse and two years for harassment or child abuse. A restraining order helps to protect you, but it does not guarantee your safety. Follow a safety plan, especially if you believe that being arrested is not going to stop the respondent from trying to hurt you.

### Enforcing a Restraining Order

If the respondent violates the Restraining Order, call the police immediately. The respondent has just committed a crime. Ask the police to have the District Attorney's office review the case for charges even if no arrest is made. If the respondent is on probation or parole, give a copy of the Restraining Order to the parole agent and report any violations. To find out who their probation agent is, call the Department of Corrections Central Records at (608) 240-3750 and provide the person's name or birthday.

### UW-Madison and Restraining Orders

UW-Madison and UWPD will enforce active restraining orders issued by a court of law, including tribal courts, when provided notice of the order. Students who have a court-issued restraining order and wish to inform

the University should contact the Dean of Students office or UWPD. Students who need to be provided additional accommodations regarding a restraining order should contact the Dean of Students Office, the Title IX Coordinator or UWPD. Employees who have a court issued restraining order should notify the Office of Human Resources, the Title IX Coordinator or UWPD. Please be aware that notification to the University of an existing court-ordered restraining order may require the Title IX Coordinator to follow up as prescribed by Title IX.

**UWPD**
1429 Monroe St., Madison, WI
(608) 262-2957
uwpolice@mhub.uwpd.wisc.edu
uwpd.wisc.edu

**Dean of Students Office**
500 Lincoln Dr., 70 Bascom Hall, Madison, WI
(608) 263-5700
students.wisc.edu
dean@studentlife.wisc.edu

**Title IX Coordinator, Office of Compliance**
Lauren Hasselbacher
500 Lincoln Dr., 354 Bascom Hall, Madison, WI
(608) 890-3788
lauren.hasselbacher@wisc.edu
titleix_coordinator@wisc.edu

**Office of Workforce Relations, Human Resources**
21 N. Park St. #5101, Madison, WI
(608) 265-2257
wr@ohr.wisc.edu

If your restraining order is being violated, regardless of whether or not you have informed UW-Madison, please call 911 immediately.

### No Contact Directives Issued by UW-Madison

One tool the University of Wisconsin-Madison uses to support a safe, respectful, and responsible educational and working environment, either as a proactive measure or in response to and prevention of additional incidents, is a no contact directive.

A no contact directive is a university-issued directive that prohibits the recipient from having contact with -in any form- the individual or individuals named in the directive. The no contact directive is different than a restraining order/civil injunction issued by a court of law and may be issued independent of campus investigatory/disciplinary processes.

A no contact directive is issued when an authorized University employee determines that an individual should be prohibited from having contact with another person or persons. The individuals listed in a no contact directive can include, but might not be limited to: complainants, respondents and witnesses. No contact directives are often issued during the course of investigating cases which involve allegations of sexual assault, dating/domestic violence, and/or stalking.

A no contact directive may include the following language: "Be advised that you are not to have contact with First Name, Last Initial of any kind, direct or indirect, until further notice. This includes, but is not limited to: face-to-face/in-person, telephone, e-mail, text message, social networking sites, written communication, video and other electronic communication, and contact through third parties. Any attempt to contact this person might be considered harassment and could result in disciplinary action."

DOE 0042

### Students

No contact directives can be issued by the Dean of Students Office, and by the Title IX Coordinator when there are allegations of sexual harassment or sexual violence. A no contact directive is issued in writing via a student's university email, and when possible, verbally. Recipients of the no contact directive are informed that future contact with the individual or individuals named in the directive may be considered harassment and could result in a disciplinary investigation. If the individuals involved are in student organizations or classes together, the parameters of the no contact directive will be discussed and additional expectations for minimizing contact may be added to the written correspondence. Students will be provided with an opportunity to ask questions about the terms of the no contact directive issued to them. No contact directives issued by an Associate Dean of Students will include a written notification of the right and process to appeal.

Notice of the no contact directive is sent to the Title IX Coordinator, an Assistant Dean of Students, a UWPD Lieutenant, and when there is a connection to University Housing, an Associate Director of Residence Life. When issued, a no contact directive does not have an end date. The no-contact directive can also be modified or terminated with the agreement of the parties. Any changes to a no-contact directive will be communicated to the parties in writing.

Students who violate a no contact directive risk being charged and investigated through the nonacademic misconduct process for UWS 17.09(4) Harassment and/or UWS 17.09(11) False Statement or Refusal to Comply Regarding a University Matter.

Information regarding the no contact directive is maintained in a student database and does not appear on an internal or external transcript.

### Employees

Supervisors, in consultation with Human Resources staff, have the authority to regulate workplace behavior of Academic and University staff, and the Provost may regulate faculty, as long as there is a work-related reason for doing so. The Title IX Coordinator may also issue a no contact directive for any employee. No contact directives are typically issued in a letter to the recipient. UW-Madison may issue no contact directives to employees when appropriate circumstances arise. Circumstances under which a no contact directive may be issued include, but are not limited to, pending disciplinary investigations. A no contact directive may limit an employee's contact with another employee, a student, or other member of the University community or limit an employee's contact with a work location for a length of time determined by the employee's supervisor or the Provost. The following types of contact may be prohibited by a no contact directive: face-to-face/in-person, telephone, e-mail, text message, social networking sites, written communication, video and other electronic communication, and contact through third parties. Violation of a no-contact directive issued by UW-Madison may result in disciplinary action up to and including dismissal. Employees may have the ability to challenge a no contact directive by using the grievance process for their employment category.

### Requesting a No Contact Directive

Requests for no contact directives will be reviewed on a case-by-case basis and will take into account factors such as safety, alleviating a hostile environment, and educational and employment needs. Victims may request a no contact directive by contacting one of the following offices: the Dean of Students, the Title IX Coordinator, the Office of Student Conduct and Community Standards or the Office of Human Resources.

DOE 0043

*Enforcing a No Contact Directive*

If your no contact directive is being violated, please contact the office that issued it. If you are in immediate danger, contact 911.

# NOTICE OF ACCOMMODATIONS AND CONFIDENTIAL RESOURCES

## NOTICE OF ACCOMMODATIONS

Students and employees who report sexual assault, domestic violence, dating violence and/or stalking to UW-Madison will receive written notification about existing counseling, health, mental health, victim advocacy, legal assistance, visa and immigration assistance, student financial aid, and other services available for victims, both within the institution and in the community. This information is also provided to all students and employees in this ASR.

UW-Madison will provide written notification to victims about options for, available assistance in, and how to request changes to academic, living, transportation, and working situations or protective measures. This will be provided whether the offense occurred on or off campus. UW-Madison is obligated to comply with the above and will make such accommodations or provide such protective measures if the victim requests them and if they are reasonably available, regardless of whether the victim chooses to report the crime to campus police or local law enforcement. This information is also provided to all students and employees in this ASR.

UW-Madison will maintain as confidential any accommodations or protective measures provided to the victim, to the extent that maintaining such confidentiality would not impair the ability of UW-Madison to provide accommodations or protective measures.

When determining what measures to grant, factors considered might include, but are not limited to: the specific need requested by the complainant, the age of the people involved, the severity or pervasiveness of the allegations, any continuing effects on the complainant, whether the complainant and alleged perpetrator share the same residence hall, dining hall, job location, classes, extra curricular activities or whether judicial measures have already been taken to protect the complainant. Typically, the individual affected units determine whether or not to provide an accommodation, though the Title IX Coordinator, Office of Workforce Relations and/or Dean of Students Office may also provide direction and assistance.

The following offices (listed on the next page) can provide information and assistance to those requesting accommodations and changes to academic, living, transportation, working situations and other protective measures:

**Dean of Students Office**
500 Lincoln Dr., 70 Bascom Hall
Madison, WI
(608) 263-5700
students.wisc.edu
dean@studentlife.wisc.edu

**Office of Human Resources**
**Workforce Relations**
21 N. Park Street
Madison, WI
(608) 265-2257
ohr.wisc.edu
wr@ohr.wsic.edu

**Office for Equity and Diversity**
500 Lincoln Dr., 179-A Bascom Hall
Madison, WI
(608) 263-2378
Relay Calls Accepted
oed.wisc.edu

**University Housing**
625 Babcock Drive, Slichter Hall
Madison, WI
(608) 262-2522
housing.wisc.edu

**UHS Violence Prevention and**
**Survivor Services**
333 East Campus Mall
Madison, WI
(608) 265-5600 (Option 3)
survivorservices@uhs.wisc.edu

**Title IX Coordinator**
Lauren Hasselbacher
500 Lincoln Dr., 361 Bascom Hall
Madison, WI
(608) 890-3788
lauren.hasselbacher@wisc.edu
titleix_coordinator@wisc.edu

## CONFIDENTIAL RESOURCES

For victims who choose to not report to law enforcement and/or to a campus office, there are several options available. These options allow a victim who is 18 or older to get help without having their name or information shared with campus officials, third parties or law enforcement to the extent permissible by law. Please be aware that exceptions to confidentiality include reports of child abuse (victims 17 or younger), elder abuse, and threats of imminent harm to self or others.

### *On-Campus Confidential Resources*

*FOR STUDENTS*

**UHS Violence Prevention and Survivor Services** provides confidential victim advocacy including emotionally supportive counseling, case management, support groups, and information/referral.

For appointments:
608-265-5600 (option 3)
survivorservices@uhs.wisc.edu
https://uhs.wisc.edu/survivor

**UHS Mental Health Services** provides mental health services including individual, group, couples/partner counseling, psychiatric services, and a 24 hour crisis support phone line.

Crisis Line: 608-265-5600 (select option 9)
General Information and Appointments: Option 2
https://www.uhs.wisc.edu/mental-health/

DOE 0045

**UHS Medical Services** provides medical services including physical exams (not medical forensic exams), sexually transmitted infection (STI) screen, emergency contraception, and pregnancy testing. For medical and mental health appointments:

333 East Campus Mall, Madison, WI
(608) 265-5600 (After Hours Nurse Line, option 1)
http://uhs.wisc.edu/medical/

**McBurney Disability Resource Center** provides services to students with disabilities to insure accessibility to university programs. McBurney offers accommodations counseling, evaluation referral, disability-related information, adaptive technology counseling and equipment, and interpreter services for academically related purposes.

702 W. Johnson St., #2104, Madison, WI
Phone:  (608) - 263-7956
Text:  (608)265-2998
mcburney@studentlife.wisc.edu  |  http://mcburney.wisc.edu/

*FOR EMPLOYEES*

**Employee Assistance Office, Office of Human Resources** is a resource provided by the University of Wisconsin to assist employees and their immediate family members or significant others who are finding it difficult to successfully cope with personal or work related issues and concerns.

610 Langdon Street, Lowell Center, Room 226, Madison, WI 53703
(608) 263-2987
eao@mailplus.wisc.edu  |  eao.wisc.edu

### *Off-Campus Confidential Resources*

**UnityPoint Health Meriter Forensic Nurse Examiner** provides emotional support, physical examination and wellness checks, collection of medical-forensic evidence, assistance with reporting to police when requested (mandatory reporting for children), assistance with concerns about sexually transmitted infection and pregnancy, assistance with safety planning and development of a medical follow-up plan.

202 S. Park Street, Madison, WI, 53715  |  (608) 417-5916
https://www.unitypoint.org/madison/sexual-assault-nurse-examiner-program.aspx

**Domestic Abuse Intervention Services (DAIS)** works to ensure the safety and well-being of domestic violence survivors and their families, and to change societal attitudes that perpetuate violence and the abuse of power.

24-hour line:  (608) 251-4445 or toll-free (800)747-4045  |  www.abuseintervention.org

**Rape Crisis Center (RCC)** works within Dane County to promote hope, help and healing for those harmed by sexual violence and strives through education and outreach to create social change to end sexual violence.

2801 Coho Street #301, Madison, WI, 53703
333 E. Campus Mall #7901, Madison, WI | M-F, hours vary. Appointments can be made using 24 hour line.
24-hour line: 608–251-RAPE (7273) | info@danecountyrcc.org | www.danecountyrcc.org

**Deaf Unity** provides services and advocates to Deaf victims of sexual assault and domestic violence.

Text helpline: 608-466-2881 M-F 9am-10pm | http://deafunitywi.org | help@deafunitywi.org

**UNIDOS Against Domestic Violence** provides victim advocacy, support groups and legal advocacy for victims of domestic violence in addition to community education and programming.

1-800-510-9195 | http://www.unidosagainstdv.org

**Freedom, Inc.** engages low- to no-income communities of color and works to end violence against people of color, women, those that non-traditionally gender identify, and our youth, to promote healthy lifestyle.

601 Bay View, Madison, WI, 53715
608-661-4089 M-F 9am-5pm | refugeeproject@hotmail.com | www.freedom-inc.org

**Room to be Safe** is a collaborative anti-violence program that provides support and resouces to LGBTQ people who are experiencing or have experienced dating, long-term or intimate partner violence. Room to be Safe also provides support and resources for family members of LGBTQ people who are experiencing or have experienced dating, long-term or intimate partner violence.

Resource Line (not 24-hours):  (414) 856-5428
ipv.diverse@gmail.com | www.roomtobesafe.org

**Midwest Center for Human Services, Domestic Violence Resource Center** is a comprehensive program of treatment and social change which offers services to both abusers and survivors of domestic violence, including children and teenagers.
313 Price Place, Madison, WI
(608) 231-3300 | info@mchumanservices.org | mchumanservices.org

**The Rainbow Project** provides counseling to children and families who experience trauma.

831 East Washington, Madison, WI
(608) 255-7356 | info@therainbowproject.net | therainbowproject.net

**Center for Families, Respite Center** provides respite and crisis child care 24 hours a day, 7 days a week to families experiencing high levels of stress. Services are availble for both planned child care and emergency and crisis child care.  Children stay an average of 4-16 hour in a single visit.

2120 Fordem Ave, Madison, WI
(608) 244-5700 | info@centerforfamilies.org | http://www.centerforfamilies.org/Services/respite-center.aspx

DOE 0047

## UW-Madison and Protecting Victim Confidentiality

When a student or employee victim reports to a university office or official who is not explicitly designated as confidential, UW-Madison takes every precaution to protect victim privacy and confidentiality by sharing information only with university officials who have a legitimate educational interest and/or those who need to know for the purposes of providing an institutional response.

In an effort to protect victim safety and privacy, UW-Madison maintains information about sexual violence in a secure manner. If the University has notice of an incident, UW-Madison will balance the victim's request to keep identifying information confidential with Title IX's mandate to investigate hostile environments.

To the extent permissible by law, UW-Madison will endeavor to keep victim and necessary party information private. However, once a report is made to the University, or the University has notice of an incident of sexual assault, sexual harassment, domestic violence, dating violence, or stalking, confidentiality cannot be guaranteed unless that information is reported directly to one of the confidential resources listed. UW-Madison will strive to maintain as confidential any accommodations or protective measures provided to the victim, but keeping victim information confidential may limit UW-Madison's ability to provide accommodations or protective measures.

For victims aged 18 and older who report to non-confidential sources, reports of sexual assault, domestic violence, dating violence and/or stalking are directed to the Title IX Coordinator, who will share relevant information only with those who need to know, such as Deputy Title IX Coordinators, complaint investigators, and other individuals who are responsible for handling the school's response to incidents, or as necessary to comply with the Wisconsin Public Records law, a valid subpoena, a lawful discovery request, or a governmental inquiry or investigation. UW-Madison follows applicable Title IX guidance and the requirements of the federal Family Educational Rights and Privacy Act, 20 U.S.C. s. 1232g, when evaluating whether to disclose student information. In the case of minors, UW-Madison employees must report child abuse to Child Protective Services or local law enforcement.

For Clery Act reporting and disclosures, a victim's name or identifying information will never appear in a Crime Warning, on the Daily Crime Log or in the ASR. UW-Madison will redact a victim's identifying information when responding to requests for information pursuant to the Wisconsin Public Records law. The University also will not disclose identifiable information about research subjects if prohibited by an NIH-issued Certificate of Confidentiality, HIPAA regulations and state laws pertaining to the privacy of health information or promises of confidentiality made to research subjects pursuant to the federally required consent form and authorization form. UW-Madison must respond to valid subpoenas that are not prohibited by other applicable law, and may not be able to redact information when responding to a subpoena.

There are confidential resources available such as UHS Mental Health Services, UHS Survivor Services, UHS Clinical Medicine, UW-Madison Ombuds and the Employee Assistance Office. Other licensed healthcare providers, counselors and social workers employed by the University follow the confidentiality requirements of their profession when they are providing care to a patient or a client. Additionally, staff from the McBurney Disability Resource Center, campus Disability Coordinators, Divisional Disability Representatives and interpreters do not disclose reports of prior victimization that they become aware of as part of the disability accommodation process or when providing translation services.

For information about off-campus and non-UW affiliated confidential resources, please see the "Off-Campus Confidential Resources" section of this chapter.

## ON-CAMPUS AND OFF-CAMPUS RESOURCES
## Commonly Asked Questions

This section discusses commonly asked questions regarding on and off campus resources in regards to domestic violence, dating violence, sexual assault and stalking. It also includes various protective measures UW-Madison may take to assist individuals who report domestic violence, dating violence, sexual assault and stalking, such as providing changes to academic, working and living situations.  For information regarding no contact orders issued by UW-Madison, please see the "Reporting and Resources" section of this chapter.

### What happens if I decide to report sexual assault, domestic violence, dating violence and/or stalking to UWPD?

You always have the option to report to law enforcement and UW-Madison encourages you to report sexual assault, domestic violence, dating violence and/or stalking to UWPD. You can call 911 from on campus, call (608) 264-2677, come into UWPD at 1429 Monroe Street or you can call and request to have an officer come to you. An officer from UWPD can meet you in your residence hall, apartment or anywhere else you feel safe. In all cases, the first thing a responding officer will do will be to establish your safety. Officers will then evaluate your need for medical attention, and discuss the option of going to the hospital. If you decide to go to the hospital, the officer will transport you, wait for you and take you home. You are also welcome to bring a friend, for support. All UWPD officer and detectives are trained in trauma-informed practices.

In the event of a sexual assault, an advocate from Dane County Rape Crisis will be contacted to assist you through this difficult time. The responding officer will conduct a basic interview about what happened, and a detective will be assigned to your case. UWPD has both female and male detectives, who are specially trained to investigate sexual assault, domestic violence, dating violence and/or stalking. You may request an officer with the gender you feel most comfortable with to take your statement.

UWPD will not pressure you to engage in a lengthy discussion right away. The main goal is to establish your safety, assist you with obtaining medical attention, preservation of evidence, and a safety plan. UWPD detectives have extensive training on trauma, and appreciate that it is best to conduct a more extensive interview after at least 24 hours.  At your initial meeting, your detective will set up a different time to meet, when you feel comfortable.

After meeting with the Detective, they will begin an investigation - keep in mind there is no pressure to proceed with any charges at this time. UWPD will conduct a thorough investigation, and at the conclusion, will discuss with you, your options. The detective will ask you questions about what happened, create a safety plan with you and will explain how the investigation, judicial process and, if the offender is a student, how the student disciplinary processes work. At the conclusion of the investigation, if you decide to request UWPD to proceed with the charges, the detective will thoroughly explain the process, and will keep you updated on the proceedings. You are not in this alone, your detective and UWPD are here for you.

In regard to a stalking or domestic violence case, your safety and security is key. UWPD will help you obtain a restraining order, if warranted, or a no contact directive. UWPD will assist you in accessing local resources, including advocacy and the crime response program.

If you live in UW-Madison housing and need a housing accommodation, your detective can work with University Housing to arrange it, if it is reasonably available. If you want UWPD to reach out to your parents, UWPD will do that, too – but only if you decide that is what you want.

## Will UWPD be able to keep my personal information private?

Although police reports are subject to public records laws, redactions may be made prior to release. Personal information such as street address, phone number and date of birth (except age or year of birth) are usually removed from most responses to public record requests. Additional information may be redacted, including taking the name to initials only, based on the balancing test of the public right to know versus privacy rights of the individual.

If you request that UWPD proceed with charges, UWPD will typically forward an unredacted police report and other investigation information to the Dane County District Attorney's Office for review by the prosecutor. Note that an accused person's Attorney will likely also have access to the unredacted report. However in cases of violence, the District Attorney's Office has made some exceptions and redacted reports. This decision is made on a case-by-case basis by the District Attorney's Office, and not by UWPD.

There are laws in place to protect victims of sex crimes who testify in court. Evidence concerning your past sexual conduct, other people's opinions of your past sexual conduct, and any reputation as to prior sexual conduct are typically inadmissible in court, subject to exceptions. If you request UWPD to proceed with charges, UWPD can give you more information regarding these "rape shield" laws as they apply in Wisconsin. For more information about these laws, please see Wisconsin Statutes 972.11(2).

## I want to formally report sexual assault, domestic violence, dating violence or stalking to UW-Madison. Where do I go?

Aside from UWPD, you can also report to:

**Dean of Students Office**
500 Lincoln Drive, 70 Bascom Hall, Madison, WI
(608) 263-5700 | dean@studentlife.wisc.edu
https://www.students.wisc.edu/doso/reporting-allegations-of-sexual-assault-datingdomestic-violence-and-stalking/

**Title IX Coordinator, Office of Compliance**
Lauren Hasselbacher
500 Lincoln Dr., 361 Bascom Hall, Madison, WI
(608) 890-3788 | lauren.hasselbacher@wisc.edu | titleix_coordinator@wisc.edu

The Deputy Title IX Coordinators identified on pages 3 and 4 of this ASR are also available to answer questions and provide information about the reporting and complaint investigation processes.

**Office of Workforce Relations, Office of Human Resources**
21 N. Park St., # 5101, Madison, WI
(608) 265-2257 | wr@ohr.wisc.edu | ohr.wisc.edu/workforce

## What if I just want to talk to someone confidentially to get more information or emotional support?

There are many offices, both on and off campus, that can maintain as confidential any information you share with them about your experience. To the extent permissible by law, these offices do not share information provided by adult clients with campus authorities or law enforcement. A complete listing of these offices can be found at https://www.uhs.wisc.edu/prevention/violence-prevention/resources/

**UHS Violence Prevention and Survivor Services** provides campus-based confidential victim advocacy and support services to any UW-Madison student who has experienced sexual assault, domestic violence, dating violence and/or stalking. Staff members provide emotional support, information about resources and reporting options, facilitate support groups, accompany students to appointments and hearings, and can provide consultation to faculty, staff and/or parents.

333 East Campus Mall, Madison, WI
(608) 265-5600 (Option 3) | survivorservices@uhs.wisc.edu
uhs.wisc.edu/survivor

**University Health Mental Health Services** is the student mental health resource, providing individual and group counseling, crisis intervention, and psychiatric services. They offer a 24-hour mental health line for students and short-term counseling by appointment.  Schedule an Access Consultation via MyUHS or phone to get connected.

333 East Campus Mall, Madison, WI
24-hour line: (608) 265-5600, Option 9 | General Information and Appointments: Option 2
uhs.wisc.edu/mental-health/

**The UW-Madison Employee Assistance Office** in the Office of Human Resources assists faculty and staff with maintaining and enhancing both their personal and professional lives, and offers services to promote emotional well-being. All individuals are treated in a respectful manner. The Employee Assistance Office has resources to assist staff with family violence, sexual abuse, emotional problems and many other issues.

610 Langdon Street, Lowell Center, Room 226, Madison, WI
(608) 263-2987 or toll-free (877) 260-0281, 8:00 a.m - 4:30 p.m.  | eao@mailplus.wisc.edu | eao.wisc.edu

**The Rape Crisis Center (RCC)** is a community agency that has a satellite office located on campus. RCC provides free services for survivors of all forms of sexual violence, including medical and legal advocacy, support groups, short-term counseling, and community education. Chimera self-defense classes are available at a low cost and scholarships are available. Students may use either the campus or community office. Their 24-hour hotline can provide general support, access to RCC services (like legal advocacy or counseling), and/or access to information about reporting options. A support group is offered on campus.

2801 Coho Street, Madison, WI
333 E. Campus Mall #7901, Madison, WI | M-F, hours vary. Appointments can be made using 24-hour line.
(608) 251-7273 (24 hours) | info@danecountyrcc.org | www.danecountyrcc.org

**Domestic Abuse Intervention Services, (DAIS) Inc.** is a community agency that provides services for survivors of dating/ domestic violence, including emergency shelter, legal advocacy, community education, and support groups.

2101 Fordem Ave., Madison, WI
Office:  (608) 251-1237
24 hours: (608) 251-4445 or toll-free (800) 747- 4045 | info@abuseintervention.org | www.abuseintervention.org

DOE 0051

**Midwest Center for Human Services, Domestic Violence Resource Center** is a comprehensive program of treatment and social change which offers services to both abusers and survivors of domestic violence, including children and teenagers.

313 Price Place, Madison, WI
(608) 231-3300 | info@mchumanservices.org | mchumanservices.org

**The Rainbow Project** provides counseling to children and families who experience trauma.

831 East Washington, Madison, WI
(608) 255-7356 | info@therainbowproject.net | therainbowproject.net

**Center for Families, Respite Center** provides respite and crisis child care 24 hours a day, 7 days a week to families experiencing high levels of stress. Services are availble for both planned child care and emergency and crisis child care.  Children stay an average of 4-16 hour in a single visit.

2120 Fordem Ave, Madison, WI
(608) 244-5700 | info@centerforfamilies.org | http://www.centerforfamilies.org/Services/respite-center.aspx

## Where can I go for a physical exam, sexually transmitted infection (STI) testing, pregnancy testing, or a follow-up exam?

**UnityPoint Health Meriter Forensic Nurse Examiner** (FNE) program provides medical and forensic examinations for sexual assault and domestic and dating violence victims. This service will provide follow-up medical care and medication to guard against sexually transmitted infections and pregnancy, and collect evidence if the victim desires.  FNE can coordinate with the Rape Crisis Center to make an advocate available at the time of the exam.  A visit to FNE does not require a report to law enforcement or UW-Madison.

202 South Park Street, Madison, WI 53715
(608) 417- 5916 | http://www.unitypoint.org/madison/sexual-assault-nurse-examiner-program.aspx

**University Health Services (UHS) Medical Clinics** provide a wide range of medical care services for UW–Madison students, including Forensic Nurse Examiner follow-up exams, pregnancy testing, emergency contraception, sexually transmitted infection (STI) testing, and STI treatment. Medical personnel in the Women's Clinics are specifically trained to respond to the needs of sexual assault victims who are getting annual exams.

University Health Services Medical Clinics
333 East Campus Mall, Madison, WI
For appointments: (608) 265-5600 | uhs.wisc.edu

## What if I'm struggling with my classes because of the stress of sexual assault, domestic violence, dating violence or stalking, or because the perpetrator is in one of my classes?

Victims of sexual assault, domestic violence, dating violence and/or stalking can request and get academic accommodations, if reasonably available.   UW-Madison is obligated to comply with a victim's request for an academic situation change following a disclosure of sexual assault, domestic violence, dating violence or stalking if it is reasonably available, regardless of whether a victim chooses to report the crime to campus law enforcement or local law enforcement. Students should know that requesting academic accommodations, such as asking for a deadline extension or to be moved out of a class, may be sufficient to put UW-Madison "on notice" of a hostile environment and obligate UW-Madison to investigate as mandated by Title IX. Students may reach out directly to a professor or a TA to request accommodations.   There are also offices on campus who can help students with a request. These offices are listed below:

**UHS Violence Prevention and Survivor Services** provides confidential information to students about their rights to request accommodations and assists students with those requests, such as changing classes or sections, or requesting an extension or requesting to drop a course.

333 East Campus Mall, Madison, WI
(608) 265-5600 (option 3) | evoc@uhs.wisc.edu
https://www.uhs.wisc.edu/vpss/

**The Dean of Students Office** provides assistance to student victims, including providing information about available academic accommodations. Students who seek help from the Dean of Students Office should know that staff in the Dean of Students Office are required to report all known incidents of sexual assault, domestic violence, dating violence and/or stalking to the Title IX Coordinator for potential investigation.

500 Lincoln Drive, 70 Bascom Hall, Madison, WI
(608) 263-5700 | https://students.wisc.edu/doso/services/sexual-assault-dating-and-domestic-violence/

## What do I do if I don't feel safe in my residence hall or apartment any longer?

**University Housing:** for students who live in UW-Madison owned facilities, University Housing can offer different housing accommodations upon request when it is reasonable to do so. UW-Madison is obligated to comply with a victim's request for a living situation change following an alleged sex offense if it is reasonably available, regardless of whether a victim chooses to report the crime to campus or local law enforcement. For more information, contact your House Fellow or a professional Housing staff member. Please be aware that University Housing staff are required to report all known incidents of sexual assault, domestic violence, dating violence and/or stalking to the Title IX Coordinator for potential investigation.

| | |
|---|---|
| University Apartments | University Housing |
| 611 Eagle Heights | 625 Babcock Drive, Slichter Hall |
| Madison, WI | Madison, WI |
| (608) 262-3407 | (608) 262-2522 |
| housing.wisc.edu/apartments | housing.wisc.edu |

**The Dean of Students Office** can provide you with assistance in working with your property manager if you live in a non-UW-Madison owned property. The Dean of Students Office cannot control whether or not a property manager agrees to requests for accommodation, but can assist you in making those requests. Please be aware that Dean of Students Office staff are required to report all known incidents of sexual assault, domestic violence, dating violence and/or stalking to the Title IX Coordinator for potential investigation. See above for Dean of Students Office contact information.

## Do I have to report this to law enforcement?

No. If you are a victim, you are under no obligation to report the crime to law enforcement or any other campus professional. Many victims feel that reporting the crime, or simply disclosing it to another person, such as a family member, friend, or confidential advocate helps with healing, but only you can make this decision. You may also choose to report the incident to the Office for Student Conduct and Community Standards which can initiate a campus disciplinary investigation that does not have to involve law enforcement. UW-Madison may be required to investigate incidents of sexual assault, domestic violence, dating violence and/or stalking of which it is aware. You will not be denied access to any resources if you choose not to report to law enforcement. UW-Madison employees have an obligation to report to law enforcement or child protective services if a victim is under the age of 18.

## What can the campus disciplinary processes do? How can I get more information?

You have the right to ask questions about and learn about the campus disciplinary procedures before engaging the reporting process.  Victims are entitled to certain rights under state and federal law. For more information, see: https://www.uhs.wisc.edu/wp-content/uploads/evoc-bill-of-rights.pdf

**The Office of Student Conduct and Community Standards** administers the student misconduct procedure as codified in the Wisconsin Administrative Code  as the University of Wisconsin System (UWS) Chapter 17. Chapter 17 authorizes the following sanctions for violations of the student code:  written reprimand, denial of specified university privileges, imposing reasonable terms and conditions on continued student status, restitution, removal of the student from the course in progress, disciplinary probation, suspension, and expulsion. Please see the Campus Disciplinary Procedures section of this document for further information. You may also contact the Office of Student Conduct and Community Standards for more information about the investigation process on campus when the accused is a UW student. For more information: conduct.students.wisc.edu

For information regarding campus disciplinary procedures for employees, please see the Employee Disciplinary Procedures section of this document.

## If I report to law enforcement or to UW-Madison, will anyone tell my parents or will this appear in my student record?

Generally, no. UW-Madison follows applicable laws and regulations regarding the protection of student privacy and will not disclose victimization to parents or note it on your academic record. In accordance with the Family Educational Rights and Privacy Act of 1974 (FERPA), staff members in the Dean of Students Office and University Housing may involve a parent if the student's behavior has posed or may continue to pose a significant risk to the health, safety, or well-being of themselves or others, including suicidal comments and/or attempts.

## I am an employee. Where can I get help? What if I want a change in my working situation?

Victims have the option to contact their supervisor, departmental Human Resources staff, campus Office of Human Resources, or the Title IX Coordinator directly to request a change in working situations or have an advocate make such a request on their behalf.  UW-Madison will endeavor to comply with a request for a working situation change following an alleged incident of sexual assault, domestic violence, dating violence stalking, or sexual harassment, if it is reasonably available, regardless of whether you choose to report the crime to campus or local law enforcement.  There are also offices on campus that can assist you in requesting a change in your working situation:

**The Office of Workforce Relations** within the **Office of Human Resources** is available to provide information and assistance to faculty and staff victims seeking options for changing their work situations, if reasonably available. OWR and OHR can provide information about resources, services, and rights, including the right to be assisted in notifying law enforcement and the right to decline to notify law enforcement.

21 N. Park St., #5101, Madison, WI
(608) 265-2257 | http://ohr.wisc.edu/ | wr@ohr.wisc.edu

**The Office for Equity and Diversity (OED)**, in conjunction with the **Office of Human Resources**, is available to provide information and assistance to faculty and staff victims seeking options for changing their work situations, if reasonably available. OED can provide information about resources, services, and rights, including the right to be assisted in notifying law enforcement and the right to decline to notify law enforcement.

500 Lincoln Drive, Room 179-A, Bascom Hall, Madison, WI
(608) 263-2378; Fax: (608) 263-5562
Relay Calls Accepted
http://oed.wisc.edu

**The Employee Assistance Office** within the Office of Human Resources assists faculty and staff with maintaining and enhancing both their personal and professional lives, and offers services to promote emotional well-being. All individuals are treated in a respectful manner. The Employee Assistance Office has resources to assist staff with family violence, sexual abuse, emotional problems and many other issues. The Employee Assistance Office is a confidential resource.

610 Langdon Street, Lowell Center, Room 226, Madison, WI
(608) 263-2987 or toll-free (877) 260-0281
eao@mailplus.wisc.edu | http://eao.wisc.edu

**UW-Madison Ombuds Office** facilitates understanding, communication, and resolution of conflict among members of the faculty, academic, and classified staff. The office serves as an impartial and confidential means of promoting dialogue among parties on campus. Ombuds work independently from University administrative offices; discussing a matter with an ombud is confidential. The Ombuds Office is not authorized to accept notice of claims against the University. Please call and leave a message; phone calls are generally returned within a day.

610 Langdon St., Madison, WI
(608) 265-9992 | uwombuds@mailplus.wisc.edu | ombuds.wisc.edu

**The Dean of Students Office** can assist student-employee victims in providing them with information about and assistance in requesting work accommodations. Students who seek help from the Dean of Students Office should know that staff in the Dean of Students Office are required to report all known incidents of sexual assault, domestic violence, dating violence and/or stalking to the Title IX Coordinator for potential investigation.

500 Lincoln Drive, 70 Bascom Hall, Madison, WI
(608) 263-5700 | dean@studentlife.wisc.edu | doso.wisc.edu

## What if I want legal help?

UW-Madison does not provide attorneys or legal assistance to victims or alleged perpetrators of sexual assault, domestic violence, dating violence or stalking. There are legal resources available in the Madison community.

**Domestic Abuse Intervention Services (DAIS)** has a legal advocacy program for victims of sexual assault, domestic violence, dating violence and/or stalking, and they can be reached here:

Office: (608) 251-1237
24 Hours: (608) 251-4445 or toll-free (800) 747- 4045
info@abuseintervention.org | www.abuseintervention.org

**RISE Law Center** is a non-profit law office that provides culturally relevant legal representation in the following areas: family law, immigration law, civil injunctions/restraining orders, and immigration needs including U-Visas, T-Visas and VAWA self-petitions.

1245 E. Washington Ave. #102, Madison, WI
(608) 256-1089 | www.riselawcenter.org

**The Dane County District Attorney's Office Victim Witness Unit** assists victims and witnesses throughout the criminal court process by answering questions, keeping victims and their families informed of case development, providing information and referrals to community service providers, assisting with restitution, and offering personal assistance when possible.

215 S. Hamilton St. #3000, Madison, WI 53703-3297
Phone: (608) 266-9003 | Fax: (608) 261-9766 | www.countyofdane.com/da/victim_witness.aspx

**Survivors Legal Program** offers pro bono, confidential legal services for UW students and staff who have experienced sexual violence or sexual harassment. Survivors Legal Program is not associated with UW-Madison.

Phone: (608) 204-9642
Be sure to mention the Survivors Legal Program

**State Bar of Wisconsin Lawyer Referral and Information Service** is offered by the State Bar of Wisconsin and is a public service that helps identify the most appropriate resource for people with a legal problem. A legal assistant who is experienced in analyzing potential legal problems assists in locating the best source of help and provides references to area attorneys who have indicated an interest in the relevant legal situation. Legal assistants do not provide legal advice. There may be a fee for attorney services.

(800) 362-9082 or (608) 257-4666 | http://www.wisbar.org/forpublic/ineedalawyer/pages/lris.aspx

## What if I need Visa or immigration assistance?

**International Student Services (ISS)** offers a wide variety of services and programs to international students at UW-Madison. The ISS staff provides information and programs to international students about the campus and community and provides support and assistance concerning visa and related immigration issues. ISS is not a confidential service and staff are required to report all known incidents of sexual assault, domestic violence, dating violence and/or stalking to the Title IX Coordinator for potential investigation.

716 Langdon St., 217 Red Gym, Madison, WI
(608) 262-2044 | iss.wisc.edu

DOE 0056

**The Office of International Faculty and Staff Services (IFSS)** in the **Office of Human Resources** provides comprehensive assistance to the University of Wisconsin-Madison on all aspects of non-student immigration. The office acts as the liaison between the University and all government agencies involved in immigration matters, and assists both the institution and individuals in complying with immigration laws and regulations. IFSS advises University departments and processes immigration-related documents for employment-based non-immigrant and immigrant statuses, offers regular workshops on processing permanent resident petitions and the proper procedures for completing the I-9 Employment Eligibility Verification form, and administers the University's J scholar Exchange Visitor Program, which includes issuing J scholar documents, advising departments and visiting scholars, and providing bi-weekly J scholar orientation sessions.

21 N. Park St., Suite 5101, Madison, WI
(608)265-2257 | ischolars@ohr.wisc.edu | www.ohr.wisc.edu/ifss/index.htm

**RISE Law Center** is a non-profit law office that provides culturally relevant legal representation in the following areas: family law, immigration law, civil injunctions/restraining orders, and immigration needs including U-Visas, T-Visas and VAWA self-petitions.

1245 E. Washington Ave. #102, Madison, WI
(608) 256-1089 | www.riselawcenter.org

## What if I need student financial aid assistance?
**The Office of Student Financial Aid** can provide information regarding the availability of short-term emergency loans and general student financial aid. Staff in the Office of Student financial aid may be required to report all known incidents of sexual assault, domestic violence, dating violence and/or stalking to the Title IX Coordinator for potential investigation.

333 East Campus Mall #9701, Madison, WI
608-262-3060 | finaid@finaid.wisc.edu | finaid.wisc.edu



# UW-Madison Disciplinary Procedures for Sexual Assault, Domestic Violence, Dating Violence, & Stalking

UW-Madison prohibits sexual assault, domestic violence, dating violence and/or stalking. The University of Wisconsin System and UW–Madison have policies and procedures to respond to behavior of students and employees that interfere with the University's educational and work environment.

UW-Madison determines the type of disciplinary proceeding to use based on the status of the accused. Complaints against students for disciplinary code violations should be reported to the Dean of Students Office, or the Title IX Coordinator. Where the accused person is a student, the student disciplinary process will be utilized. Complaints can be submitted via email, phone or in person. Complaints against employees should be reported to the Office of Workforce Relations or the Title IX Coordinator. Where the accused person is an employee, the appropriate employee disciplinary process will be used based on the employee's category.

**Dean of Students Office**
500 Lincoln Drive, 70 Bascom Hall, Madison, WI
(608) 263-5700
students.wisc.edu
dean@studentlife.wisc.edu

**Office of Workforce Relations**
Office of Human Resources
21 N. Park St. #5101, Madison, WI
(608) 265-2257
ohr.wisc.edu/workforce/
wr@ohr.wisc.edu

**Title IX Coordinator,** Office of Compliance
Lauren Hasselbacher
500 Lincoln Dr., 361 Bascom Hall, Madison, WI
(608) 890-3788
lauren.hasselbacher@wisc.edu or
titleix_coordinator@wisc.edu

UW-Madison works to ensure that disciplinary investigations and procedures are prompt, fair, and impartial. Student disciplinary process timeframes are outlined by Chapter 17.  Employee disciplinary processes will be completed as promptly as possible while maintaining the integrity of the process.  While UW-Madison works to avoid delays, circumstances that cause a delay may include, but are not limited to, a parallel criminal investigation, school breaks, availability of witnesses, reasonable requests by either party for an extension, the complexity of the investigation, and the severity of the alleged conduct. Such delays will be evaluated by UW-Madison on a case-by-case basis, and both parties will receive updates throughout the process.

## Rights of Victims of Sexual Assault, Domestic Violence, Dating Violence and/or Stalking in UW-Madison Disciplinary Proceedings

Victims of sexual assault, domestic violence, dating violence and/or stalking are entitled to the following rights:

- Disciplinary proceedings that provide a prompt, fair, and impartial investigation and resolution.
- Disciplinary proceedings that are conducted by panel members who receive annual training on the issues related to domestic violence, dating violence, sexual assault and stalking and how to conduct

DOE 0059

an investigation and hearing process that protects the safety of victims and promotes accountability.

- The same opportunity to have others present throughout disciplinary proceedings as the accused, including the opportunity to be accompanied to any related meeting or proceeding by an advisor of their choice. UW-Madison will not limit the choice of advisor for either the victim or the accused in any meeting for disciplinary proceeding.
- Both parties shall be simultaneously informed, in writing, of the outcome of any disciplinary proceeding that arises from an allegation of sexual assault, domestic violence, dating violence and/or stalking; of the procedures for either party to appeal the outcome; of any change to the results that occurs prior to the time that such results become final; and of when such results become final. At no time can a victim be required to keep the outcome confidential, or be prohibited from discussing the case.
- Victims have equitable rights to the accused to appeal the outcome of a disciplinary proceeding.
- Victims shall be informed of their options to notify law enforcement.
- Students and employees will be provided written notification about existing counseling, health, mental health, victim advocacy, legal assistance, visa and immigration assistance, student financial aid and other services available to victims, both within the institution and in the community.
- Victims shall be notified, in writing, of options for changing academic, transportation, work, living situations and protective measures.
- Victims can obtain a free forensic exam from a Forensic Nurse Examiner without filing a police report or involving the police in any way. If additional treatment is sought, other hospital charges may apply.
- For more information, visit:  https://www.uhs.wisc.edu/assault/documents/evoc-bill-of-rights.pdf.

In addition to the rights given by federal and state law, UW-Madison is committed to ensuring that victims of violence also have the following rights:

- The right to a victim advocate of their choosing. (For additional information and resources about victim advocacy, services on campus, and in the community, see the UHS Violence Prevention and Survivor Services website at https://www.uhs.wisc.edu/victim-advocacy/).
- The right to access sexually transmitted infection (STI) testing and treatment, emergency contraception, and pregnancy testing.
- The right to be informed of and have access to their own medical, mental health, Forensic Nurse Examiner, campus disciplinary, and/or victim advocacy services.
- The right to not be punished for underage drinking if reporting a sexual assault or other crime per UW–Madison's Responsible Action Guidelines. "In those cases where a student has been a victim of sexual assault and/or a violent crime while under the influence of alcohol, neither the Dean of Students, University Housing nor UW–Madison Police will pursue disciplinary actions against the student victim (or against a witness) for his or her improper use of alcohol (e.g., underage drinking). A student victim who is under the influence of alcohol at the time of a sexual assault is entitled to university and community assistance and encouraged to seek help." For more information, visit: http://students.wisc.edu/alcoholinfo.
- The right to have options for offering their testimony in a campus disciplinary hearing, including via phone or video conference.
- UW-Madison will disclose to the victim of a crime of violence or sex-offense, the results of any disciplinary hearing conducted by UW-Madison against a student who is an alleged perpetrator of such crime or offense. If the victim is deceased as a result of the crime or offense, UW-Madison will provide the results of the disciplinary hearing to the next of kin of the victim if the victim is deceased as a result of the crime, if requested in writing.

## Protective Measures

There are a range of protective measures UW-Madison offers to victims who report sexual assault, domestic violence, dating violence and/or stalking. UW-Madison will accommodate changes to academic, working, transportation and living situations if requested by the victim and reasonably available. UW-Madison may also issue a directive ordering the alleged offender(s) and victim not to have contact with each other. Protective measures can be ongoing, are not necessarily tied to the outcome of a disciplinary action and will be developed on a case-by-case basis in response to the request and concerns of the victim. UWPD can help victims develop a safety plan, if requested by the victim. UHS can assist students in developing a safety plan as well. For more information about institutional no-contact orders and how to request accommodations, please see the "Reporting and Resources" section of this document.

## CAMPUS STUDENT DISCIPLINARY PROCEDURES FOR NONACADEMIC MISCONDUCT INCLUDING SEXUAL ASSAULT, DOMESTIC VIOLENCE, DATING VIOLENCE, & STALKING

## University of Wisconsin System Chapter 17

UWS Chapter 17 is a part of the University of Wisconsin Administrative Code and was adopted by the Board of Regents as a set of disciplinary procedures for the University of Wisconsin System. It defines conduct by students that may result in University discipline and also describes the sanctions which may be imposed and the procedures for carrying out disciplinary actions. Due process for students accused of misconduct is an important part of these procedures. (Note: Academic misconduct is covered in UWS Chapter 14. UWS Chapters 17 and 18 apply to nonacademic student misconduct; faculty and academic staff are governed by UWS Chapters 4, 7, and 11.)

Nonacademic misconduct policies cover a broad spectrum of conduct involving students' behavior wherever it takes place. A student may be subject to discipline for conduct that is or already has been the subject of criminal action. This means that a student ticketed or arrested by law enforcement may also be subject to misconduct proceedings.

### UWS 17.09 Conduct subject to disciplinary action.

UWS 17.09 Conduct subject to disciplinary action. In accordance with s. UWS 17.08, the university may discipline a student for engaging in, attempting to engage in, or assisting others to engage in any of the following types of nonacademic misconduct:

(1) **Dangerous conduct.** Conduct that endangers or threatens the health or safety of oneself or another person.
(2) **Sexual assault.** Conduct defined in s. 940.225, Stats. (See the State of Wisconsin Crime Statutes and Definitions section of this document.)
(3) **Stalking.** Conduct defined in s. 940.32, Stats. (See the State of Wisconsin Crime Statutes and Definitions section of this document.)
(4) **Harassment.** Conduct defined in s. 947.013, Stats. (5) Hazing. Conduct defined in s. 948.51, Stats. (See the State of Wisconsin Crime Statutes and Definitions section of this document.)

DOE 0061

(5) **Hazing.** Conduct defined in s. 948.51, Stats.
(6) **Illegal use, possession, manufacture, or distribution of alcohol or controlled substances.** Use, possession, manufacture, or distribution of alcoholic beverages or of marijuana, narcotics, or other controlled substances, except as expressly permitted by law or university policy.
(7) **Unauthorized use of or damage to property.** Unauthorized possession of, use of, moving of, tampering with, damage to, or destruction of university property or the property of others.
(8) **Disruption of university-authorized activities**. Conduct that obstructs or impairs university-run or university-authorized activities, or that interferes with or impedes the ability of a person to participate in university-run or university-authorized activities.
(9) **Forgery or falsification.** Unauthorized possession of or fraudulent creation, alteration, or misuse of any university or other governmental document, record, key, electronic device, or identification.
(10) **Misuse of computing resources.** Conduct that involves any of the following:
(a) Failure to comply with laws, license agreements, and contracts governing university computer network, software, and hardware use.
(b) Use of university computing resources for unauthorized commercial purposes or personal gain.
(c) Failure to protect a personal password or university-authorized account.
(d) Breach of computer security, invasion of privacy, or unauthorized access to university computing resources.
(11) **False statement or refusal to comply regarding a university matter.** Making a knowingly false oral or written statement to any university employee or agent of the university regarding a university matter, or refusal to comply with a reasonable request on a university matter.
(12) **Violation of criminal law.** Conduct that constitutes a criminal offense as defined by state or federal law.
(13) **Serious and repeated violations of municipal law.** Serious and repeated off-campus violations of municipal law. (14) Violation of ch. UWS 18. Conduct that violates ch. UWS 18, including, but not limited to, provisions regulating fire safety, theft, and dangerous weapons.
(15) **Violation of university rules.** Conduct that violates any published university rules, regulations, or policies, including provisions contained in university contracts with students.
(16) **Noncompliance with disciplinary sanctions.** Conduct that violates a sanction, requirement, or restriction imposed in connection with previous disciplinary action.
(17) **Dating violence.** Violence committed by a student against another person with whom they are in a "dating relationship" as defined in s. 813.12(1)(ag) Stats. (See the State of Wisconsin Crime Statutes and Definitions section of this document.)
(18) **Domestic violence.** Conduct defined as "domestic abuse" in ss. 813.12(1)(am) and 968.075 Stats. (See the State of Wisconsin Crime Statutes and Definitions section of this document.)
(19) **Sexual Harassment.** Conduct defined in s. 111.32(13) Stats or as defined in Board of Regent Policy that addresses sexual harassment. (See the Sexual Harassment chapter of this document.)

**UWS 17.10 Disciplinary sanctions.**

(1) The disciplinary sanctions that may be imposed for nonacademic misconduct, in accordance with the procedures of ss. UWS 17.11 to 17.13, are any of the following:
(a) A written reprimand.
(b) Denial of specified university privileges.
(c) Payment of restitution.
(d) Educational or service sanctions, including community service.
(e) Disciplinary probation.
(f) Imposition of reasonable terms and conditions on continued student status.
(g) Removal from a course in progress.

    (h)  Enrollment restrictions on a course or program.
    (i)  Suspension.
    (j)  Expulsion.

Notes on disciplinary sanctions: Suspension may be up to 2 years and is typically imposed in academic term increments (i.e.1 summer term, 1 semester, 2 semesters or up to 2 years). Upon completion of a suspension period, a student who is academically eligible may re-enroll, provided all conditions from previous disciplinary sanctions have been met. Denial of specified university privileges may include such sanctions as restrictions on participation in extra-curricular activities, depending on the facts of the case and the status of the parties. Educational or service sanctions can include, but is not limited to, participating in prevention programming, taking a drug and alcohol abuse assessment and following up with mandatory counseling, taking a counseling assessment and following up with mandatory counseling, or mandatory alcohol education. Such sanctions, if imposed, will be determined on a case-by-case basis.

## The Student Disciplinary Process

In addition to UWS Chapter 17, UW-Madison has implemented supplemental disciplinary procedures for investigations and hearings involving sexual assault, domestic violence, dating violence and/or stalking, pursuant to federal law and UWS 17.03. Sexual assault, domestic violence, dating violence and/or stalking cases receive a prompt, fair, and impartial investigation and resolution. The process described below provides a summary of what can be expected from the student disciplinary process. After the summary, the relevant language from UWS Chapter 17 itself is provided for reference.

*Investigation*

If a report is received alleging that a student has engaged in conduct that may violate UWS Chapter 17 as it applies to Title IX, including sexual assault, domestic violence, dating violence, and/or stalking, the information will be provided to the Title IX Coordinator within the Office of Compliance.

If the alleged misconduct includes sexual assault, domestic violence, dating violence, and/or stalking and UW-Madison proceeds with the disciplinary process, the Title IX Coordinator will begin an investigation. The University's Title IX coordinator serves as the primary investigator in student discipline cases involving allegations of sexual assault, dating violence, domestic violence and/or stalking. The Title IX coordinator receives extensive annual and ongoing training on the approaches and techniques for conducting comprehensive and impartial investigations, including training on how to gather and weigh evidence, trauma-informed interviewing techniques, and recognizing and adjusting for potential conflicts of interest. The Title IX coordinator also receives training on how to conduct investigations that are aligned with the University's student discipline process. In some cases, the University uses additional investigators who are hired on a contract basis. These investigators receive similar training.

Investigations and resolutions of these cases proceed regardless of any criminal investigation or proceeding. An investigation may be temporarily delayed while law enforcement gathers evidence, then will be promptly resumed and completed within time lines set by the Department of Education, generally 60 calendar days. Any delays or extensions will be communicated to the complainant and student respondent.

Prior to the start of an investigation, the Dean of Students Office or University Housing Staff (if the student complainant lives in University Housing) will provide the complainant, if known, with written notification of existing counseling, health, mental health, victim advocacy, legal assistance and other services available both on campus and in the community, along with written explanation of the complainant's rights and options. The

complainant does not have to agree to participate in the disciplinary process to receive resources. Both the complainant and student respondent have the right to be accompanied to interviews, meetings and hearings by a support person of their choosing, and UW-Madison will not limit the choice of support person.

If the complainant agrees to be interviewed, the complainant may be accompanied by a person of their choosing and will meet with the assigned investigator. Once the complainant interview is complete, the investigator will send a letter to the student respondent that includes the allegations and an invitation to meet. The student respondent may be accompanied by a support person of their choosing at the meeting.

The investigator will also interview relevant witnesses and/or review relevant witness statements, if any, and review any documentary evidence provided by the complainant, the student respondent or other sources, including witnesses.

Once the investigation is complete, the investigator will prepare a report outlining the information gathered in the investigation. The report will be submitted to an Assistant Dean in the Division of Student Life (DSL). The Assistant Dean assigned to the case will review the information in the report to determine if the evidentiary standard, preponderance of the evidence, has been met and whether any violation of UWS Chapter 17 occurred. Assistant Deans involved in cases related to sexual assault, domestic violence, dating violence and/or stalking receive annual training related to those issues. In most cases, the Assistant Dean consults with at least two other members of the Office of Student Conduct and Community Standards (OSCCS) in making this determination. Once a decision has been reached, the Assistant Dean sends a letter to both the complainant and the student respondent outlining the findings and, where applicable, the recommended sanction(s). At all steps of the process, regardless of whether there is a finding of responsibility against the student respondent, reasonable measures will be taken to ensure mitigation of any hostile environment for the complainant.

If the Assistant Dean determines the student respondent is not responsible for the alleged misconduct by a preponderance of the evidence, the complainant may appeal the Assistant Dean's determination. The appeal must be made, in writing, within fourteen days of receiving written notification of the Assistant Dean's "no preponderance" determination. The appeal should be sent to the Office of the Chancellor at: chancellor@news.wisc.edu. The chancellor's or designee's decision shall be based upon the record gathered during the investigation. The decision of the Assistant Dean will be upheld unless the chancellor or designee finds:
   (a) The information in the record does not support the findings or decision;
   (b) Appropriate procedures were not followed which resulted in material prejudice to the student respondent or complainant; or
   (c) The decision was based on factors proscribed by state or federal law.

Upon receiving a timely written appeal of a "no preponderance" determination, the Office of the Chancellor or designee will notify the student respondent. The chancellor or designee shall issue a written decision within thirty days. The written decision will be simultaneously sent to the complainant and the student respondent.

If the determination of "no preponderance" is reversed, the chancellor or designee may: send the case back for further investigation, send the case back for hearing, or order other appropriate relief not inconsistent with the Wisconsin Administrative Code (UWS) Chapter 17. If the determination of "no preponderance" is upheld, the complainant may appeal to the Board of Regents of the University of Wisconsin System. The Board of Regents, in its discretion, may consider an appeal based on the written record. The appeal must be made, in writing, within fourteen days of receiving the written decision from the chancellor or designee. The timeline for the resolution of the appeal to the Board of Regents is at the discretion of the Board of Regents. The appeal should be sent to Jess Lathrop at the Office of the Board of Regents at: board@uwsa.edu Appealing parties should submit a written position statement that addresses the following: (1) whether the case involves

substantial constitutional claims, (2) whether there is a serious concern that the chancellor has abused his/her discretion or exceeded his/her authority, (3) whether the decision made at the institutional level could have systemwide implications, or (4) whether the final institutional decision is based upon facts not supported by the record, resulting in material prejudice to the individual seeking the review. If the Board grants review, the subcommittee may receive additional information for consideration, including oral presentations, and then makes a recommendation to the full Board.

*Hearing*

If the Assistant Dean determines that misconduct occurred, the student respondent has the right to a formal hearing to contest the determination that the student respondent engaged in misconduct, contest the disciplinary action recommended, or both. At UW-Madison, hearings for sexual assault, dating/domestic violence, and stalking are conducted only via hearing committee. The hearing may be scheduled at the student respondent's request or may be scheduled automatically, depending on the recommended sanction. In cases where the recommended discipline includes suspension or expulsion, UWS Chapter 17 provides for the hearing to be scheduled automatically unless the student respondent waives the right to the hearing in writing via a settlement agreement.

Separate academic and nonacademic misconduct hearing committees are appointed by the chancellor or designee and include faculty, academic staff, and student members. Members are nominated for appointment by their respective governing bodies. The Faculty Senate nominates Faculty, the Academic Staff Assembly nominates Academic Staff, and the Associated Students of Madison nominates students. Appointments to the panel vary in length of time and are typically 1-4 years. The committee for a specific case is composed of at least three members with at least one student member. Committee members for all academic misconduct and non-academic misconduct are trained on various topics, including but not limited to UWS Chapters 17 and 18, the hearing outline, weighing information, assessing credibility, confidentiality, and recusal. Committees that hear cases regarding sexual assault, domestic violence, dating violence and/or stalking are required to attend a sensitive-case training on an annual basis led by a forensic nurse. The training is trauma informed and covers victim response, sensitive interviewing of victims of sexual violence, consent, the role alcohol and other drugs can play in obtaining and giving consent, and the "preponderance of the evidence" standard.

The Office of Student Conduct and Community Standards will take action to schedule the hearing, typically within 15 days of the completion of the investigator's written report or receipt of the student-respondent's request for a hearing.  The hearing itself is typically scheduled within 45 days of the completion of the investigator's written report or receipt of the student-respondent's request for a hearing. No less than 5 days before the hearing, the investigating officer provides to the hearing committee, in writing, a full explanation of the facts upon which the determination of misconduct was based, and also provides the respondent and complainant with access to or copies of the investigating officer's explanation, together with any other materials provided to the committee by the investigating officer.  Information about the complainant or respondent's past disciplinary history, if any, will not be shared with the opposite party unless permitted by the Family Educational Rights and Privacy Act (FERPA).

In any hearing (whether by student request or automatically scheduled) the complainant and the respondent maintain the right to be accompanied by a support person, including the right to be advised by counsel at their own expense, the right to question witnesses, and the right to obtain a copy of the audio recording of the hearing. As per UWS Chapter 17.12(4)(b), at all times, the student respondent shall have the opportunity to hear and respond to the information presented against them and be afforded the opportunity to present questions to adverse witnesses, including the complainant. Hearing procedures may be modified to allow the complainant to provide information in a manner that prevents a hostile environment. Such modifications may

DOE 0065

include, but are not limited to, having the complainant and respondent pose questions to each other through their respective advisors or through the hearing committee.

Witnesses may address a hearing committee and the hearing commitee may limit the number of character witnesses permitted to address the commitee. A support person is permitted to speak at the hearing only if the sanction recommended is suspension, expulsion, or if there is a concurrent criminal case. The committee determines, by majority vote, whether or not the respondent is responsible for violating the code of conduct based on a preponderance of the evidence standard.

*Post-Hearing and Appeal*

If the complainant or student respondent want a written transcript of the proceedings, they may have one prepared at their own expense.

UW-Madison provides simultaneous notification, in writing, to both the complainant and respondent of the result of the disciplinary hearing, the procedures for appeal, any change in the result and when the results become final.

Both the complainant and respondent may appeal in writing to the chancellor within 14 days of the date of the decision of the hearing committee. The appeal is based upon the record. The other party will be notified of the appeal by the chancellor's office.

The chancellor or designee has 30 days from receipt of an appeal to respond and will uphold the decision unless the chancellor or designee finds any of the following: the information in the record does not support the findings or decision, appropriate procedures were not followed which resulted in material prejudice to the respondent or complainant, or the decision was based on factors proscribed by state or federal law. If the chancellor or designee finds one of those factors exist, the chancellor or designee may return the matter for consideration, or may invoke an appropriate remedy of their own. The decision will be communicated simultaneously to the respondent and the complainant.

Decisions by the chancellor or designee are final, except that the Board of Regents may, at its discretion, grant a review upon the record, upon written request submitted by any party within 14 days of the final institutional decision. The non-appealing party will receive notice of the appeal. The Board of Regents, in its discretion, may consider an appeal based on the written record. The timeline for the resolution of the appeal to the Board of Regents is at the discretion of the Board of Regents. The appeal should be sent to Jess Lathrop at the Office of the Board of Regents at: board@uwsa.edu. Appealing parties should submit a written position statement that addresses the following: (1) whether the case involves substantial constitutional claims, (2) whether there is a serious concern that the chancellor has abused his/her discretion or exceeded his/her authority, (3) whether the decision made at the institutional level could have systemwide implications, or (4) whether the final institutional decision is based upon facts not supported by the record, resulting in material prejudice to the individual seeking the review. If the Board grants review, the subcommittee may recieve additional information for consideration, including oral presentations, and then makes a recommendation to the full Board.

Retaliation against a complainant or student respondent for exercising his or her rights under these procedures is prohibited and may be conduct subject to separate disciplinary action pursuant to UWS Chapter 17.09. A complainant or student respondent who has experienced retaliation should notify the investigating officer, the Title IX Coordinator and/or the Dean of Students Office.

**Relevant Excerpts from UWS Chapter 17**

The process described above provides a summary of what people can expect from the student disciplinary process. Below you will find additional sections of UWS Chapter 17 upon which the process described above is based:

**UWS 17.11 Disciplinary procedure.**

(1)    **Process.** The investigating officer may proceed in accordance with this section to impose, subject to hearing and appeal rights, one or more of the disciplinary sanctions listed in s. UWS 17.10 (1).

(2)    **Conference with respondent.** When the investigating officer concludes that proceedings under this section are warranted, the investigating officer shall promptly contact the respondent in person, by telephone, or by electronic mail to offer to discuss the matter, review the investigating officer's basis for believing that the respondent engaged in nonacademic misconduct, and to afford the respondent an opportunity to respond. If the respondent fails to respond to the investigating officer's offer to discuss the matter, the investigating officer may proceed to make a determination on the basis of the available information. A complainant shall have all the rights provided to the respondent in this subsection.

(3)    **Determination by the investigating officer that no disciplinary sanction is warranted.** If, as a result of a discussion under sub. (2) or review of available information, the investigating officer determines that nonacademic misconduct did not in fact occur, or that no disciplinary sanction is warranted under the circumstances, the matter will be considered resolved without the necessity for further action. The investigating officer shall simultaneously notify the respondent and the complainant of this outcome and offer to discuss it separately with either one. If the investigating officer determines that nonacademic misconduct did not occur or that no disciplinary sanction is warranted, the complainant may appeal this decision in accordance with s. UWS 17.13.

(4)    **Process following determination by the investigating officer that nonacademic misconduct occurred.**
(a) If, as a result of a discussion under sub. (2) or review of available information, the investigating officer determines that nonacademic misconduct did occur and that one or more of the disciplinary sanctions listed under s. UWS 17.10 (1) should be recommended, the investigating officer shall prepare a written report which shall contain all of the following:
        1. A description of the alleged misconduct.
        2. A description of all information available to the university regarding the alleged misconduct. Such information shall be available to the complainant and the respondent, except as may be precluded by applicable state or federal law.
        3. Specification of the sanction sought.
        4. Notice of the respondent's right to a hearing.
        5. A copy of this chapter and of the institutional procedures adopted to implement this section.
(b) The written report shall be delivered simultaneously to the respondent and complainant, excluding any information that may be precluded by applicable state or federal law.
(c) A respondent who receives a written report under this section has the right to a hearing under s. UWS 17.12 to contest the determination that nonacademic misconduct occurred, the choice of disciplinary sanctions, or both.
        1. Where the disciplinary sanction sought is one of those listed in s. UWS 17.10 (1) (a) to (g), and if the respondent desires a hearing, the respondent shall file a written request with the student affairs officer within 10 days of the date the written report is delivered to the student. If the respondent does not request a hearing within this period, the determination of

nonacademic misconduct shall be regarded as final, and the disciplinary sanction sought shall be imposed.

2. Where the disciplinary sanction sought is one of those listed in s. UWS 17.10 (1) (h) to (j), the investigating officer shall forward a copy of the written report under par. (b) to the student affairs officer. The student affairs officer shall, upon receipt of the written report, proceed under s. UWS 17.12 to schedule a hearing on the matter. A hearing shall be conducted unless the respondent waives, in writing, the right to such a hearing.

## UWS 17.12 Hearing.

(1)    A respondent who requests a hearing, or for whom a hearing is scheduled under s. UWS 17.11 (4) (c) 2., shall have the right to decide whether the matter will be heard by a hearing examiner or a hearing committee. In cases of sexual assault, dating violence, domestic violence, stalking or sexual harassment the university shall have the right to decide whether the matter will be heard by a hearing examiner or a hearing committee.

(2)    If a respondent requests a hearing under s. UWS 17.11 (4) (c) 1., or a hearing is required to be scheduled under s. UWS 17.11 (4) (c) 2., the student affairs officer shall take the necessary steps to convene the hearing and shall schedule it within 15 days of receipt of the request or written report. The hearing shall be conducted within 45 days of receipt of the request or written report, unless a different time period is mutually agreed upon by the respondent and investigating officer, or is ordered or permitted by the hearing examiner or committee.

(3)    No less than 5 days in advance of the hearing, the hearing examiner or committee shall obtain from the investigating officer, in writing, a full explanation of the facts upon which the determination of misconduct was based, and shall provide the respondent and complainant with access to or copies of the investigating officer's explanation, together with any other materials provided to the hearing examiner or committee by the investigating officer, including any additional available information of the type described in s. UWS 17.11 (4) (a) 2.

(4)    The hearing shall be conducted in accordance with the following guidance and requirements:

(a) The hearing process shall further the educational purposes and reflect the university context of nonacademic misconduct proceedings. The process need not conform to state or federal rules of criminal or civil procedure, except as expressly provided in ch. UWS 17.

(b) The respondent shall have the right to question adverse witnesses, the right to present information and witnesses, the right to be heard on his or her own behalf, and the right to be accompanied by an advisor of the respondent's choice. The advisor may be a lawyer. In cases where the recommended disciplinary sanction is identified in s. UWS 17.10 (1) (a) to (h), the advisor may counsel the respondent, but may not directly question adverse witnesses, present information or witnesses, or speak on behalf of the respondent except at the discretion of the hearing examiner or committee. In cases where the recommended disciplinary sanction is identified in s. UWS 17.10 (1) (i) or (j), or where the respondent has been charged with a crime in connection with the same conduct for which the disciplinary sanction is sought, the advisor may question adverse witnesses, present information and witnesses, and speak on behalf of the respondent. In accordance with the educational purposes of the hearing, the respondent is expected to respond on his or her own behalf to questions asked of him or her during the hearing. The complainant shall have all the rights provided to the respondent in this subsection.

(c) The hearing examiner or committee:

1. Shall admit information that has reasonable value in proving the facts, but may exclude immaterial, irrelevant, or unduly repetitious testimony.

2. Shall observe recognized legal privileges.

3. May take reasonable steps to maintain order, and to adopt procedures for the ques-

DOE 0068

tioning of a witness appropriate to the circumstances of that witness's testimony, provided, however, whatever procedure is adopted, the respondent and complainant are allowed to effectively question the witness.

(d) The hearing examiner or committee shall make a record of the hearing. The record shall include a verbatim record of the testimony, which may be a sound recording, and a file of the exhibits offered at the hearing. The respondent and the complainant may access the record except as may be precluded by applicable state or federal law.

(e) The hearing examiner or committee shall prepare written findings of fact and a written statement of its decision based upon the record of the hearing.

(f) A hearing examiner's or committee's finding of nonacademic misconduct shall be based on one of the following:

1. Clear and convincing evidence, when the sanction to be imposed is one of those listed in s. UWS 17.10 (1) (h) to (j).

2. A preponderance of the evidence, when the sanction to be imposed is one of those listed in s. UWS 17.10 (1) (a) to (g).

3. A preponderance of the evidence, regardless of the sanction to be imposed, in all cases of sexual harassment, sexual assault, dating violence, domestic violence or stalking.

(g) The hearing examiner or committee may impose one or more of the disciplinary sanctions listed in s. UWS 17.10 (1) (a) to (g) that differs from the recommendation of the investigating officer. Sanctions under s. UWS 17.10 (1) (h) to (j) may not be imposed unless previously recommended by the investigating officer.

(h) The hearing shall be conducted by the hearing examiner or committee, and the university's case against the respondent shall be presented by the investigating officer or his or her designee.

(i) The decision of the hearing examiner or committee shall be prepared within 14 days of the hearing, and delivered simultaneously to the respondent and the complainant, excluding information that may be precluded by state or federal law. The decision shall become final within 14 days of the date on the written decision, unless an appeal is taken under s. UWS 17.13.

(j) If a party fails to appear at a scheduled hearing and to proceed, the hearing examiner or committee may issue a decision based upon the information provided.

(k) Disciplinary hearings are subject to the Wisconsin open meetings law and may be closed if the respondent or complainant requests a closed hearing or if the hearing examiner or committee determines that it is necessary to hold a closed hearing, as permitted under the Wisconsin open meetings law. Deliberations of the committee shall be held in closed session, in accordance with s. 19.85, Stats. As such, proper notice and other applicable rules shall be followed.

## UWS 17.13 Appeal to the chancellor.

(1)    Where the sanction prescribed by the hearing examiner or committee is one of those listed in s. UWS 17.10 (1) (h) to (j), the respondent may appeal to the chief administrative officer within 14 days of the date of the written decision to review the decision of the hearing examiner or committee, based upon the record. In cases involving sexual assault, dating violence, domestic violence, stalking or sexual harassment, the complainant shall be notified of the appeal.

(2)    In cases involving sexual assault, dating violence, domestic violence, stalking or sexual harassment, the following appeal rights shall be provided:

(a) The complainant may appeal in writing to the chief administrative officer within 14 days of the date of the decision of the investigating officer pursuant to s. UWS 17.11(3), the hearing committee,

DOE 0069

or examiner pursuant to s. UWS 17.12(i). The appeal shall be based upon the record. The respondent shall be notified of the appeal.

(b) The respondent may appeal in writing to the chief administrative officer within 14 days of the date of the decision of the hearing committee, or examiner pursuant to s. UWS 17.12(i). The appeal shall be based upon the record. The complainant shall be notified of the appeal.

(3)    The chief administrative officer has 30 days from receipt of an appeal to respond and shall sustain the decision unless the chief administrative officer finds any of the following:

(a) The information in the record does not support the findings or decision.

(b) Appropriate procedures were not followed which resulted in material prejudice to the respondent or complainant.

(c) The decision was based on factors proscribed by state or federal law. (4) If the chief administrative officers makes a finding under sub. (3), the chancellor may return the matter for consideration, or may invoke an appropriate remedy of his or her own. The chief administrative officer's decision shall be communicated simultaneously to the respondent and the complainant.

**UWS 17.14 Discretionary appeal to the Board of Regents.**
Institutional decisions under ss. UWS 17.11 to 17.13 shall be final, except that the Board of Regents may, at its discretion, grant a review upon the record, upon written request submitted by any party within 14 days of the final institutional decision. In cases involving sexual assault, dating violence, domestic violence, stalking or sexual harassment, the non-appealing party shall receive notice of the appeal.

**UWS 17.15 Settlement.**
The procedures set forth in this chapter allow the university and a respondent to enter into a settlement agreement regarding the alleged misconduct, after proper notice has been given. Any such agreement and its terms shall be in writing and signed by the respondent and the investigating officer or student affairs officer. The case is concluded when a copy of the signed agreement is delivered to the respondent. The investigating officer shall confer with the complainant regarding the proposed settlement and provide notice of the outcome.

*Note: UWS Chapters 17 and 18 covers nonacademic student misconduct. Faculty and staff are subject to other university policies and procedures. The policies and procedures for student academic misconduct are contained in UWS Chapter 14. UWS Chapters 17 and 14 are available online at: http://docs.legis.wisconsin-gov/code/admin_code/uws/14.pdf and http://docs.legis.wisconsin.gov/code/admin_code/uws/17.pdf

## EMPLOYEE DISCIPLINARY PROCEDURES

UW-Madison has three major categories of employees: Faculty, Academic Staff and University Staff. Each of these categories of employees has distinct procedures for discipline and dismissal, which are provided below. In addition, UW-Madison has various types of at-will employees, including limited appointees, teaching assistants (TA), project assistants (PA), postdoctoral trainees, other employees-in-training and student hourlies. All employees may subject to one or more of the following disciplinary responses: letter of expectations, written reprimand, unpaid suspension, dismissal, demotion, revocation of responsibilities, reassignment, and retraining.

On July 1, 2016, revisions to the administrative rules known as UWS Chapter 4, Wis. Admin. Code, "Procedures for Dismissal of Faculty," UWS Chapter 7, Wis. Admin. Code, "Dismissal of Faculty in Special Cases," and UWS

Chapter 11, Wis. Admin. Code, "Dismissal of Academic Staff for Cause" went into effect. These rule revisions were initiated in 2014 to comply with the directives outlined in Title IX, the 2011 Dear Colleague Letter issued by the U.S. Department of Education Office for Civil Rights, and the Violence Against Women Act.

All University of Wisconsin system institutions develop individual procedures for discipline and dismissal based on the Wisconsin Administrative Code provisions mentioned above. The discipline and dismissal procedures for Faculty and Academic Staff members are developed through shared-governance processes. The discipline and dismissal procedures for University Staff employees are based upon standards developed under the State classified civil service requirements and currently remain in effect. Based on the changes that went into effect in July 2016, UW-Madison is in the process of updating its campus disciplinary and dismissal procedures.

UW-Madison will ensure that all employee disciplinary procedures are compliant with federal law on an ad hoc basis until such revisions to the UW-Madison campus written procedures are completed. All employee disciplinary actions originating from a complaint of sexual assault, domestic violence, dating violence and/or stalking will include the following components:

- Proceedings will be prompt, fair and impartial.
- Proceedings will be conducted by officials who receive, at minimum, annual training on issues related to sexual assault, domestic violence, dating violence and/or stalking, and on how to conduct an investigation and hearing process that protects the safety of victims and promotes accountability.
- A hearing examiner's or committee's finding of misconduct will be based on a preponderance of the evidence standard.
- The complainant will have the same opportunity as the respondent to have others present during a disciplinary proceeding, including the opportunity to be accompanied to any related meeting or proceeding by the support person of their choice.
- UW-Madison will not limit the choice of support person or presence of support person for either the respondent or the complainant in any meeting or institutional disciplinary proceeding; however UW-Madison may establish restrictions regarding the extent to which the support person may participate in the proceedings that apply equally to both parties.
- The complainant and respondent will receive simultaneous notification of
  1. The result of any institutional disciplinary proceeding that arises from an allegation of sexual assault, domestic violence, dating violence and/or stalking.
  2. UW-Madison's procedures for the complainant and respondent to appeal the result, if available.
  3. Any change to the result.
  4. When the result becomes final.
- Proceedings will be completed with reasonably prompt timeframes and will include a process that allows for extension of the frames for good cause with written notice to the complainant and respondent of the delay and reason for delay.
- The complainant and respondent will be provided timely notice of any meeting at which the respondent or complainant or both may be present.
- The complainant, respondent and appropriate officials will be provided timely and equal access to any information that will be used during informal and formal disciplinary meetings and hearings.
- Proceedings will be conducted by officials who do not have a conflict of interest or bias for or against the complainant or respondent.

More information regarding employee discipline can be found at the Office of Human Resources at www.ohr.wisc.edu or by visiting the Office of Human Resources:

Office of Human Resources
21 N. Park Street, #5101
Madison, WI 53715
608-265-2257 | ohr.wisc.edu | wr@ohr.wisc.edu

DOE 0071

## Faculty

### UWS Chapter 4, Wis. Admin. Code, "Procedures for Dismissal of Faculty"
https://docs.legis.wisconsin.gov/code/admin_code/uws/4

UWS 4.01    DISMISSAL FOR CAUSE

(1)    Any faculty member having tenure may be dismissed only by the board and only for just cause and only after due notice and hearing. Any faculty member having a probationary appointment may be dismissed prior to the end of his/her term of appointment only by the board and only for just cause and only after due notice and hearing. A decision not to renew a probationary appointment or not to grant tenure does not constitute a dismissal.

(2)    A faculty member is entitled to enjoy and exercise all the rights and privileges of a United States citizen, and the rights and privileges of academic freedom as they are generally understood in the academic community. This policy shall be observed in determining whether or not just cause for dismissal exists. The burden of proof of the existence of just cause for a dismissal is on the administration.

UWS 4.02    RESPONSIBILITY FOR CHARGES

(1)    Whenever the chancellor of an institution within the University of Wisconsin system receives a complaint against a faculty member which he or she deems substantial and which, if true, might lead to dismissal under s. UWS 4.01, the chancellor, or designee, shall within a reasonable time initiate an investigation and shall, prior to reaching a decision on filing charges, offer to discuss the matter informally with the faculty member. For complaints of sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the chancellor, or designee, shall appoint the Title IX Coordinator, or designee, to initiate an investigation in accordance with applicable policies. The chancellor, or designee, shall also offer to discuss the matter informally with the complainant, and provide information regarding rights under this chapter. Both the faculty member and the complainant shall have the right to be accompanied by an advisor of their choice at any meeting or proceeding that is part of the institutional disciplinary process. A faculty member may be dismissed only after receipt of a written statement of specific charges from the chancellor as the chief administrative officer of the institution and, if a hearing is requested by the faculty member, in accordance with the provisions of this chapter. If the faculty member does not request a hearing, action shall proceed along normal administrative lines but the provisions of ss. UWS 4.02, 4.09, and 4.10 shall still apply.

(2)    Any formal statement of specific charges for dismissal sent to a faculty member shall be accompanied by a statement of the appeal procedures available to the faculty member.

(3)    The statement of charges shall be served personally or by certified mail, return receipt requested. If such service cannot be made within 20 days, service shall be accomplished by first class mail and by publication as if the statement of charges were a summons and the provisions of s. 801.11 (1) (c), Stats., were applicable. Such service by mailing and publication shall be effective as of the first insertion of the notice of statement of charges in the newspaper. If the statement of charges includes sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the statement shall be provided to the complainant upon request, except as may be precluded by applicable state or federal law.

DOE 0072

UWS 4.03    STANDING FACULTY COMMITTEE

The faculty of each institution shall provide a standing committee charged with hearing dismissal cases and making recommendations under this chapter. This standing faculty committee shall operate as the hearing agent for the board pursuant to s. 227.46 (4), Stats., and conduct the hearing, make a verbatim record of the hearing, prepare a summary of the evidence and transmit such record and summary along with its recommended findings of law and decision to the board according to s. UWS 4.07.

UWS 4.04    HEARING.

If the faculty member requests a hearing within 20 days of notice of the statement of charges (25 days if notice is by first class mail and publication), such a hearing shall be held not later than 20 days after the request except that this time limit may be enlarged by mutual written consent of the parties, or by order of the hearing committee. The request for a hearing shall be addressed in writing to the chairperson of the standing faculty committee created under s. UWS 4.03.

UWS 4.05    Adequate due process.

(1)    A fair hearing for a faculty member whose dismissal is sought under s. UWS 4.01 shall include the following:
(a) Service of written notice of hearing on the specific charges at least 10 days prior to the hearing;
(b) A right to the names of witnesses and of access to documentary evidence upon the basis of which dismissal is sought;
(c) A right to be heard in his/her defense;
(d) A right to an advisor, counsel, or other representatives, and to offer witnesses;
(e) A right to confront and cross-examine adverse witnesses. If the complaint involves sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the hearing committee may reasonably restrict the faculty member or the complainant from questioning each other;
(f) A verbatim record of all hearings, which might be a sound recording, provided at no cost;
(g) Written findings of fact and decision based on the hearing record;
(h) Admissibility of evidence governed by s. 227.45 (1) to (4), Stats.
(2)    If the complaint involves sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the complainant shall have all the rights provided to the faculty member in sub. (1) (a) to (h), except as may be precluded by applicable state or federal law.

UWS 4.06    PROCEDURAL GUARANTEES.

(1)    Any hearing held shall comply with the requirements set forth in s. UWS 4.05. The following requirements shall also be observed:
(a) The burden of proof of the existence of just cause is on the administration or its representatives;
(am) For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the standard of proof shall be a preponderance of the evidence;
(b) No faculty member who participated in the investigation of allegations leading to the filing of a statement of charges, or in the filing of a statement of charges, or who is a material witness shall be qualified to sit on the committee in that case;
(c) The hearing shall be closed unless the faculty member under charges requests an open hearing, in which case it shall be open (see subch. V of ch. 19, Stats., Open Meeting Law);
(d) The faculty hearing committee may, on motion of either party, and, if the complaint involves sexual harassment, sexual assault, dating violence, domestic violence, or stalking, on the motion of

DOE 0073

the complainant, disqualify any one of its members for cause by a majority vote. If one or more of the faculty hearing committee members disqualify themselves or are disqualified, the remaining members may select a number of other members of the faculty equal to the number who have been disqualified to serve, except that alternative methods of replacement may be specified in the rules and procedures adopted by the faculty establishing the standing committee under s. UWS 4.03;

(e) The faculty hearing committee shall not be bound by common law or statutory rules of evidence and may admit evidence having reasonable probative value but shall exclude immaterial, irrelevant, or unduly repetitious testimony, and shall give effect to recognized legal privileges;

(f) If the faculty hearing committee requests, the chancellor shall provide legal counsel after consulting with the committee concerning its wishes in this regard. The function of legal counsel shall be to advise the committee, consult with them on legal matters, and such other responsibilities as shall be determined by the committee within the provisions of the rules and procedures adopted by the faculty of the institution in establishing the standing faculty committee under s. UWS 4.03;

(g) If a proceeding on charges against a faculty member not holding tenure is not concluded before the faculty member's appointment would expire, he/she may elect that such proceeding be carried to a final decision. Unless he/she so elects in writing, the proceeding shall be discontinued at the expiration of the appointment;

(h)  If a faculty member whose dismissal is sought has requested a hearing, discontinuance of the proceeding by the institution is deemed a withdrawal of charges and a finding that the charges were without merit;

(i) Nothing in this section shall prevent the settlement of cases by mutual agreement between the administration and the faculty member, with board approval, at any time prior to a final decision by the board;

(j) Adjournment shall be granted to enable the parties, including the complainant, to investigate evidence as to which a valid claim of surprise is made.

## UWS 4.07    RECOMMENDATIONS: TO THE CHANCELLOR: TO THE REGENTS

(1)    The faculty hearing committee shall send to the chancellor and to the faculty member concerned, as soon as practicable after conclusion of the hearing, a verbatim record of the testimony and a copy of its report, findings, and recommendations. The committee may determine that while adequate cause for discipline exists, some sanction less severe than dismissal is more appropriate. Within 20 days after receipt of this material the chancellor shall review it and afford the faculty member an opportunity to discuss it. The chancellor shall prepare a written recommendation within 20 days following the meeting with the faculty member, unless his/her proposed recommendation differs substantially from that of the committee. If the chancellor's proposed recommendations differ substantially from those of the faculty hearing committee, the chancellor shall promptly consult the faculty hearing committee and provide the committee with a reasonable opportunity for a written response prior to forwarding his/her recommendation. If the recommendation is for dismissal, the recommendation shall be submitted through the president of the system to the board. A copy of the faculty hearing committee's report and recommendations shall be forwarded through the president of the system to the board along with the chancellor's recommendation. A copy of the chancellor's recommendation shall also be sent to the faculty member concerned and to the faculty committee. For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the complainant shall have all rights provided to the faculty member in this paragraph, including the right to receive a copy of the chancellor's recommendation, except as may be precluded by applicable state or federal law.

(2)    Disciplinary action other than dismissal may be taken by the chancellor, after affording the faculty member an opportunity to be heard on the record, except that, upon written request by the faculty

member, such action shall be submitted as a recommendation through the president to the board together with a copy of the faculty hearing committee's report and recommendation. For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the complainant shall have all the rights provided to the faculty member in this paragraph.

UWS 4.08   BOARD REVIEW.

(1)     If the chancellor recommends dismissal, the board shall review the record before the faculty hearing committee and provide an opportunity for filing exceptions to the recommendations of the hearing committee or chancellor, and for oral arguments, unless the board decides to drop the charges against the faculty member without a hearing or the faculty member elects to waive a hearing. This hearing shall be closed unless the faculty member requests an open hearing (see subch. V of ch. 19, Stats., Open Meeting Law). For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the complainant shall have the same opportunity for filing exceptions to the recommendations of the hearing committee or chancellor, and for oral arguments, as the faculty member.

(2)     If, after the hearing, the board decides to take action different from the recommendation of the faculty hearing committee and/or the chancellor, then before taking final action the board shall consult with the faculty hearing committee and/or the chancellor, as appropriate.

(3)     If a faculty member whose dismissal is sought does not request a hearing pursuant to s. UWS 4.04 the board shall take appropriate action upon receipt of the statement of charges and the recommendation of the chancellor.

(4)     For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the faculty member and complainant shall be simultaneously notified of the board's final decision.

UWS 4.09     SUSPENSION FROM DUTIES

Pending the final decision as to his/her dismissal, the faculty member shall not normally be relieved of duties; but if, after consultation with appropriate faculty committees the chancellor finds that substantial harm to the institution may result if the faculty member is continued in his/her position, the faculty member may be relieved immediately of his/her duties, but his/her pay shall continue until the board makes its decision as to dismissal, unless the chancellor also makes the determinations set forth in s. UWS 7.06 (1) in which case the suspension from duties may be without pay and the procedures set forth in s. UWS 7.06 shall apply.

**UWS Chapter 7, Wis. Admin. Code, "Dismissal of Faculty in Special Cases"**
https://docs.legis.wisconsin.gov/code/admin_code/uws/7

UWS 7.01     DECLARATION OF POLICY

University faculty members are responsible for advancing the university's missions of teaching, research and public service. The fulfillment of these missions requires public trust in the integrity of the institution and in all members of the university community. The university's effectiveness, credibility, and ability to maintain public trust are undermined by criminal activity that poses a substantial risk to the safety of others, that seriously impairs the university's ability to fulfill its missions, or that seriously impairs the faculty member's fitness or ability to fulfill his or her duties. Situations involving such serious criminal misconduct by faculty members must be addressed and resolved promptly to ensure that public trust is maintained and that the university

DOE 0075

is able to advance its missions. The Board of Regents therefore adopts the procedures in this chapter for identifying and responding to those instances in which a faculty member has engaged in serious criminal misconduct.

## UWS 7.02    SERIOUS CRIMINAL MISCONDUCT

(1)    In this chapter, "serious criminal misconduct" means:
       (a) Pleading guilty or no contest to, or being convicted of a felony, in state or federal court, where one or more of the conditions in par. (b), (c), (d) or (e) are present, and the felony involves any of the following:
             1. Causing serious physical injury to another person.
             2. Creating a serious danger to the personal safety of another person.
             3. Sexual assault.
             4. Theft, fraud or embezzlement.
             5. Criminal damage to property.
             6. Stalking or harassment.
       (b) A substantial risk to the safety of members of the university community or others is posed.
       (c) The university's ability, or the ability of the faculty member's colleagues, to fulfill teaching, research or public service missions is seriously impaired.
       (d) The faculty member's fitness or ability to fulfill the duties of his or her position is seriously impaired.
       (e) The opportunity of students to learn, do research, or engage in public service is seriously impaired.
(2)    Conduct, expressions, or beliefs which are constitutionally protected, or protected by the principles of academic freedom, shall not constitute serious criminal misconduct.
(3)    Except as otherwise expressly provided, a faculty member who has engaged in serious criminal misconduct shall be subject to the procedures set forth in ss. UWS 7.03 to 7.06.
(4)    Any act required or permitted by ss. UWS 7.03 to 7.06 to be done by the chancellor may be delegated to the provost or another designee pursuant to institutional policies approved by the Board of Regents under s. UWS 2.02.

## UWS 7.03    DISMISSAL FOR CAUSE

(1)    Any faculty member having tenure may be dismissed only by the board and only for just cause and only after due notice and hearing. Any faculty member having a probationary appointment may be dismissed prior to the end of his or her term of appointment only by the board and only for just cause and only after due notice and hearing.
(2)    Just cause for dismissal includes, but is not limited to, serious criminal misconduct, as defined in s. UWS 7.02.

## UWS 7.04    REPORTING RESPONSIBILITY

Any faculty member who is charged with, pleads guilty or no contest to, or is convicted of a felony of a type listed in s. UWS 7.02 (1) (a), in state or federal court, shall immediately report that fact to the chancellor.

## UWS 7.05    EXPEDITED PROCESS

(1)    Whenever the chancellor of an institution within the University of Wisconsin System receives a report under s. UWS 7.04 or other credible information that a faculty member has pleaded guilty or no contest to, or has been convicted of a felony of a type listed in s. UWS 7.02 (1) (a), in state or federal court, the chancellor shall:
       (a) Within 3 working days of receipt of the report or information, inform the faculty member of its

receipt and, after consulting with appropriate institutional governance representatives, appoint an investigator to investigate the report or information and to advise the chancellor as to whether to proceed under this section or ch. UWS 4. In cases involving sexual assault, dating violence, domestic violence, or stalking, the complainant shall be notified by the chancellor of the receipt of the report or information at the same time as the faculty member.

(b) Upon appointing an investigator and notifying the faculty member, afford the faculty member 3 working days in which to request that the investigator be disqualified on grounds of lack of impartiality or other cause. In the event that the chancellor determines that a request for disqualification should be granted, the chancellor shall, within 2 working days of the determination, appoint a different investigator. The faculty member shall have the opportunity to request that any second or subsequent investigators be disqualified on grounds of lack of impartiality or other cause. In cases involving sexual assault, dating violence, domestic violence, or stalking, the complainant shall have the disqualification rights that are afforded to the faculty member in this subsection.

(2)    The investigator shall complete and file a report with the chancellor not later than 10 working days following the investigator's appointment.

(3)    Within 3 working days of receipt of the investigator's report, the chancellor shall consult with appropriate institutional governance representatives and decide whether to seek dismissal of the faculty member pursuant to this chapter, to seek dismissal of the faculty member pursuant to ch. UWS 4, to seek an alternative disciplinary sanction, or to discontinue the proceedings. The charges shall be served on the faculty member in the manner specified in s. UWS 4.02 (3).

(a) If the chancellor decides to seek dismissal of the faculty member pursuant to this chapter, the chancellor shall file charges within 2 working days of reaching the decision.

(b) If the chancellor decides to seek dismissal of the faculty member pursuant to ch. UWS 4, the chancellor shall file charges and proceed in accordance with the provisions of that chapter and implementing institutional policies. If, during the course of such proceedings under ch. UWS 4, the chancellor receives a report under s. UWS 7.04 or other credible information that the faculty member has pleaded guilty or no contest to or has been convicted of a felony of a type listed in s. UWS 7.02 (1) (a), and one or more of the conditions listed in s. UWS 7.02 (1) (b) through (e) are present, the chancellor may, at that point, elect to follow the procedures for dismissal pursuant to this chapter.

(c) If the chancellor decides to seek an alternative disciplinary sanction, the procedures under ch. UWS 6, and implementing institutional policies, shall be followed.

(4)    If charges seeking dismissal are filed under sub. (3) (a), the faculty member shall be afforded a hearing before the institutional standing committee charged with hearing dismissal cases and making recommendations under s. UWS 4.03. The hearing shall provide the procedural guarantees enumerated under ss. UWS 4.05 to 4.06, except that the hearing shall be concluded, and written findings and a recommendation to the chancellor shall be prepared, within 15 working days of the filing of charges.

(5)
(a) Within 3 working days of receipt of the findings and recommendation of the committee under sub. (4), the chancellor shall prepare a written recommendation on the matter.

(b) If the recommendation is for dismissal, the chancellor shall transmit it to the board for review.

(c) Disciplinary action other than dismissal may be taken by the chancellor, whose decision shall be final, unless the board at its option grants a review on the record at the request of the faculty member. The faculty member shall receive a copy of the chancellor's final decision. In cases involving sexual assault, dating violence, domestic violence, or stalking, the complainant shall receive a copy of the chancellor's final decision at the same time as the faculty member and shall have the same right to a review on the record as the faculty member.

(6)    Upon receipt of the chancellor's recommendation, the full board shall review the record before the institutional hearing committee, and shall offer an opportunity for filing exceptions to the

DOE 0077

recommendation, and for oral argument. In cases involving sexual assault, dating violence, domestic violence, or stalking, the complainant shall have all the rights provided to the faculty member in this paragraph. The full board shall issue its decision on the matter within 15 working days of receipt of the chancellor's recommendation.

(7)   If a faculty member whose dismissal is sought under sub. (3) (a) does not proceed with the hearing before the institutional hearing committee as provided in sub. (4), the board shall take appropriate action within 10 working days of receipt of the statement of charges and the recommendation of the chancellor.

(8)   The administration or its representatives shall have the burden of proof to show that just cause exists for dismissal under this chapter. The administration must demonstrate by clear and convincing evidence that the faculty member engaged in serious criminal misconduct, as defined in s. UWS 7.02, except in cases involving sexual assault, dating violence, domestic violence, or stalking, in which the evidentiary standard shall be by a preponderance of the evidence.

(9)   The chair of the faculty hearing body, subject to the approval of the chancellor, may extend the time limits set forth in this section if the parties are unable to obtain, in a timely manner, relevant and material testimony, physical evidence or records, or where due process otherwise requires.

UWS 7.06    TEMPORARY SUSPENSION WITHOUT PAY

(1)   The chancellor, after consulting with appropriate faculty governance representatives, may suspend a faculty member from duties without pay pending the final decision as to his or her dismissal where:
(a) The faculty member has been charged with a felony of a type listed in s. UWS 7.02 (1) (a) and the chancellor, after following the provisions of s. UWS 7.05 (1) through (3), finds, in addition, that there is a substantial likelihood 1) that one or more of the conditions listed in s. UWS 7.02 (1) (b) through (e) are present, and 2) that the faculty member has engaged in the conduct as alleged; or
(b) The faculty member is unable to report for work due to incarceration, conditions of bail or similar cause; or
(c) The faculty member has pleaded guilty or no contest to or been convicted of a felony of a type listed in s. UWS 7.02 (1) (a) and one or more of the conditions listed in s. UWS 7.02 (1) (b) through (e) are present.

(2)   If the chancellor finds that the conditions in sub. (1) are present, he or she shall immediately notify the faculty member, in writing, of the intent to impose a suspension without pay, and shall, within 2 working days, provide the faculty member with an opportunity to be heard with regard to the matter. The faculty member may be represented by counsel or another at this meeting.

(3)   If, after affording the faculty member the opportunity to be heard, the chancellor determines to suspend without pay, the chancellor shall inform the faculty member of the suspension, in writing. The chancellor's decision to suspend without pay under this section shall be final, except that:
(a) If the chancellor later determines that the faculty member should not be dismissed, the chancellor may discontinue the proceedings, or may recommend a lesser penalty to the board, and, except as provided in par. (c), shall order the payment of back pay for any period of the suspension for which the faculty member was willing and able to report for work.
(b) If the board later determines that the faculty member should not be dismissed, the board may order a lesser penalty and shall order the payment of back pay for any period of the suspension for which the faculty member was willing and able to report for work.
(c) If the chancellor or board later determines, under par. (a) or (b), to recommend or impose as a lesser penalty the suspension of the faculty member without pay, then any period of suspension without pay so recommended or ordered shall be offset by the period of any suspension without pay actually served by the faculty member.

(4)   If, after affording the faculty member the opportunity to be heard, the chancellor determines that

the conditions in sub. (1) are not present or that a suspension without pay is otherwise not warranted, the provisions of s. UWS 4.09 shall apply.

## FPP Chapter 9: Discipline and Dismissal of Faculty for Cause

Faculty Policies and Procedures (FPP) can also be found at:
http://www.secfac.wisc.edu/FPP_ch_9.htm

### 9.02. CAUSE FOR DISCIPLINE

No faculty member shall be subject to discipline except for just cause, based upon a determination that the faculty member has violated a university rule or policy or has engaged in conduct which adversely affects the faculty member's performance of his/her responsibilities to the university but which is not serious enough to warrant dismissal. As used in this chapter, discipline means any sanction except dismissal imposed by the administration against a faculty member for misconduct, including but not limited to an official reprimand, reduction in salary or reduction of a departmentally recommended increase in salary, or reduction in rank.

### 9.03. CAUSE FOR DISMISSAL (See UWS 4.01.)

No faculty member shall be subject to dismissal except for just cause, based upon a determination that the faculty member's conduct directly and substantially affects adversely, to a degree greater than that reserved for disciplinary action, the ability to carry out satisfactorily his/her responsibilities to the university. Examples of conduct that may warrant dismissal include, but are not limited to, fraud or intentional misrepresentation of facts for personal benefit, gross abuse of authority or influence (e.g.,discriminatory or retaliatory actions, particularly where a pattern is evident), or willful and protracted violations of university rules or policies. Layoff and termination for reasons of financial emergency are not dismissals for cause, and such actions are taken pursuant to Chapter 10 of these rules.

### 9.04. COMPLAINTS ABOUT FACULTY MEMBERS

Complaints against faculty members alleging facts which, if true, might constitute adequate cause for discipline under UWS 6 or dismissal under UWS 4 shall be in writing and shall be filed with the vice chancellor for academic affairs and provost.

### 9.05. ACTION BY PROVOST ON COMPLAINTS

A.  On receiving a complaint concerning a faculty member, the provost shall determine whether the complaint deals with scholarly misconduct and/or other misconduct.
B.  Complaints alleging scholarly misconduct shall be dealt with according to Faculty Document 867a and FPP 9.14. A formal allegation of misconduct in scholarly research will be referred to the chair of the department (or functional equivalent) or to the corresponding academic dean or, in the case of conflict of interest on the part of the chair or academic dean, to the Vice Chancellor of Research and Graduate Education.
C.  If the complaint alleges misconduct other than scholarly misconduct, the provost shall determine whether a prima facie case exists for the imposition of discipline or for dismissal. The provost shall also consider the timeliness of the complaint, particularly in light of related state and federal limitations statutes. As used in this section, a prima facie case for discipline exists whenever the information submitted in support of the complaint would warrant disciplinary action, if considered on its face to be true and not subject to refutation or exculpatory explanation. A prima facie case for dismissal

exists whenever this standard is met, but with the additional requirement that the information submitted in support of the complaint be of such substantial character that the magnitude of the alleged conduct warrants contemplation of dismissal if determined to be true. If a prima facie case does not exist or if the complaint is not considered timely, the complaint shall be dismissed.

D.  Whenever the provost receives a complaint against a faculty member which he/she deems substantial and which, if true, might lead to dismissal under UWS 4, the provost shall proceed under UWS 4 and the provisions of this chapter of FPP.

## 9.06. INVESTIGATION AND FURTHER ACTION

A.  If the provost determines that a prima facie case exists for imposition of discipline or dismissal and the case is timely, he/she shall institute an investigation by appointing an investigator or investigators of his/her choosing. The provost shall also offer to discuss the matter with the faculty member concerned, giving the faculty member an opportunity to speak to the matter, and shall provide the faculty member with a written statement of the matter(s) to be investigated. The faculty member shall also receive a copy of the original signed complaint, subject to the possible need to redact information pertaining to third parties that will not be considered part of the investigation. The faculty member concerned shall have the right to be advised and represented by counsel or other representative at his/her expense throughout the investigation and thereafter.

B.  The faculty member can state objections to the provost's selection of investigator(s). The investigator(s) shall investigate the complaint as soon as practicable and provide an oral and/or written report to the provost. Following the investigation the provost shall consult with recent past chairs of the University Committee and the Committee on Faculty Rights and Responsibilities who shall advise the provost as to the actions that should be taken as enumerated in C. below.

C.  Actions that the provost may take are:
    1.  Dismiss the case; or
    2.  Refer the complaint to the department(s) or the equivalent functional unit(s) in which the faculty member concerned holds membership if the investigation indicates that the case involves a matter which should be resolved at the departmental level and in which disciplinary action by the provost is not warranted; or
    3.  Prepare to invoke an appropriate disciplinary action. In doing so, the provost will present the faculty member with a written summary of all evidence obtained both for and against each charge brought forward for disciplinary action or dismissal. The provost shall then invite the faculty member to participate in voluntary and confidential settlement negotiations which could involve, with agreement of both parties, formal mediation.
        If formal mediation is invoked, the parties shall agree on the appointment of a mediator or mediators. Formal mediation must be completed within 30 days of the appointment of the mediator(s), unless both parties agree to an extension of no more than 30 days. At any time, either party may withdraw from the mediation process.
    4.  If settlement is not achieved by negotiation or mediation, invoke appropriate discipline or dismissal. When the provost invokes either discipline or dismissal, he/she shall provide the faculty member with a copy of any investigatory report produced and a copy of any written recommendation as provided above. The provost shall also inform the faculty member of his/her right to appeal to the Committee on Faculty Rights and Responsibilities (CFRR).

## 9.07. COMMITTEE ON FACULTY RIGHTS AND RESPONSIBILITIES.

A.  When a faculty member appeals a disciplinary action to the committee, the committee shall:
    1.  Conduct fact-finding hearings if requested by the faculty member or by the provost or if deemed

    necessary by the committee;

    2.  Make recommendations to the chancellor concerning the validity of the appeal.

B.  When a faculty member appeals dismissal, the committee shall under UWS 4.03 serve as the standing committee to hear and act on the case, except for cases involving allegations of misconduct in scholarly research in which the Hearing Committee on Misconduct in Scholarly Research shall be the standing committee, under Faculty Document 867a.

## 9.08. CFRR HEARINGS

When CFRR is holding a fact-finding hearing in a discipline case or is acting as a hearing body in a dismissal case, it shall operate as provided in UWS 4.05 and 4.06. Additionally, the faculty member shall have a right to:

A.  service of notice of hearing with specific charges in writing at least twenty days prior to the hearing;

B.  notification of the name(s) of the complainant(s);

C.  be heard by all bodies passing judgment or making recommendations;

D.  refrain from testifying without such omission being used as formal evidence of guilt; and

E.  a stenographic record of all hearings and transcripts thereof at no cost to him/her.

## 9.09. FINDINGS BY CFRR

A.  A finding of just cause for the imposition of discipline or just cause for dismissal must be based on clear and convincing evidence in the hearing record.

B.  A finding by the committee of just cause for discipline or just cause for dismissal requires a majority vote with not more than two dissenting votes. Otherwise, the committee shall report that just cause for discipline or just cause for dismissal has not been established. The vote shall be reported in every case.

## 9.10. SUSPENSION

The faculty committee to be consulted by the chancellor in considering suspension under UWS 4.09 is the University Committee.

## 9.11. TRANSMITTAL OF CFRR FINDINGS IN DISCIPLINE CASES

A.  CFRR shall transmit its findings of fact and recommendations in discipline cases in writing to the chancellor, with copies to the provost, to the faculty member involved, and to the complainant within ten days of the conclusion of its proceedings.

B.  Within ten days of the transmittal of the committee's findings and recommendations to the chancellor, the faculty member concerned or the original complainant may file written objections with the chancellor.

C.  The chancellor shall, as soon as practicable after the expiration of this ten-day period, render his/her decision and transmit such decision to the committee, the provost, the faculty member concerned, the original complainant, and the University Committee.

## 9.12. CFRR TRANSMITTAL OF FINDINGS IN DISMISSAL CASES

CFRR shall transmit its findings of fact and recommendations in dismissal cases in accordance with UWS 4.07.

## 9.13. NO FURTHER JEOPARDY.

DOE 0081

Following recommendations of CFRR and a decision by the chancellor, or following action by the provost if the committee is not involved, the faculty member concerned shall not be subject again under these rules to the same charges arising from the original complaint.

# Academic Staff

## UWS Chapter 11, Wis. Admin. Code, "Dismissal of Academic Staff for Cause"
https://docs.legis.wisconsin.gov/code/admin_code/uws/11

UWS 11.01    DISMISSAL FOR CAUSE - INDEFINITE ACADEMIC STAFF APPOINTMENTS

(1)    A member of the academic staff holding an indefinite appointment may be dismissed only for just cause under ss. UWS 11.02 through 11.106 or for reasons of budget or program under ch. UWS 12.
(2)    The board's policy is that members of the academic staff are entitled to enjoy and exercise all rights of United States citizens and to perform their duties in accordance with appropriate professional codes of ethics. This policy shall be observed in determining whether or not just cause for dismissal exists. The burden of proof of the existence of just cause for a dismissal is on the administration.
(3)    Just cause for dismissal includes, but is not limited to, serious criminal misconduct, as defined in s. UWS 11.102.

UWS 11.02    RESPONSIBILITY FOR CHARGES

(1)    Whenever the chancellor of an institution receives an allegation which concerns an academic staff member holding an indefinite appointment which appears to be substantial and which, if true, might lead to dismissal under s. UWS 11.01, the chancellor shall request within a reasonable time that the appropriate dean, director, or designee investigate the allegation. For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the chancellor shall direct the Title IX Coordinator, or designee, to initiate an investigation in accordance with applicable policies. The dean, director, or designee shall offer to discuss it informally with the academic staff member, and, if the allegation involves sexual harassment, sexual assault, dating violence, domestic violence, or stalking, with the complainant and provide information of rights under this chapter. Both the academic staff member and the complainant shall have the right to be accompanied by an advisor of their choice at any meeting or proceeding that is part of the institutional disciplinary process. If such an investigation and discussion does not result in a resolution of the allegation and if the allegation is deemed sufficiently serious to warrant dismissal, the dean, director, or designee shall prepare a written statement of specific charges. A member of the academic staff may be dismissed only after receipt of such a statement of specific charges and, if a hearing is requested by the academic staff member, after a hearing held in accordance with the provisions of this chapter and the subsequently adopted procedures of the institution. If the staff member does not request a hearing, dismissal action shall proceed along normal administrative lines but the provisions of ss. UWS 11.02, 11.08, and 11.09 shall apply. In those cases where the immediate supervisor of the academic staff member concerned is a dean or director, the chancellor shall, to avoid potential prejudice, designate an appropriate administrative officer to act for the dean or director under this section.
(2)    Any formal statement of specific charges shall be served personally or by certified mail, return receipt requested. If such service cannot be made within 20 days, service shall be accomplished by first class mail and by publication as if the statement of charges were a summons and the provisions of s. 801.11 (1) (c), Stats., were applicable. Such service by mailing and publication shall be effective as of the first insertion of the notice of statement of charges in the newspaper. If the formal statement of specific

charges involves sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the formal statement shall be provided to the complainant upon request, except as may be precluded by applicable state or federal law.

## UWS 11.03    HEARING BODY

(1)    The chancellor of each institution shall provide for a hearing body charged with hearing dismissal cases and making a report and recommendations under this chapter. Throughout this chapter, the term "hearing body" is used to indicate either a hearing committee or a hearing examiner as designated in the institutional procedures. This hearing body shall operate as the hearing agent for the chancellor pursuant to s. 227.46 (4), Stats., and conduct the hearing, make a verbatim record of the hearing, prepare a summary of the evidence and transmit such record and summary along with its recommended findings of fact and decision to the chancellor according to s. UWS 11.07.

(2)    With the concurrence of the faculty and the academic staff advisory committee of each institution, the chancellor may provide that dismissal for cause of a member of the academic staff having teaching responsibilities may be heard by the hearing body specified in s. UWS 4.03. If so provided, the hearing shall be held pursuant to the provisions of ch. UWS 11.

## UWS 11.04    HEARING

If the staff member requests a hearing within 20 days from the service of the statement of charges (25 days if notice is by first class mail and publication), such hearing shall be held not later than 20 days after the request, except that this time limit may be extended by mutual consent of the parties or by order of the hearing body. The request for a hearing shall be addressed in writing to the hearing body established pursuant to s. UWS 11.03. Service of written notice of hearing on the specific charges shall be provided at least 10 days prior to the hearing.

## UWS 11.05    ADEQUATE DUE PROCESS

(1)    Each institution shall develop policies and procedures to provide for a fair hearing upon request in the event of dismissal. A fair hearing for an academic staff member whose dismissal is sought under s. UWS 11.01 shall include the following:
(a) A right to the names of witnesses and of access to documentary evidence upon the basis of which dismissal is sought;
(b) A right to be heard in his or her defense;
(c) A right to  an advisor, counsel, or other representative, and to offer witnesses;
(d) A right to confront and cross-examine adverse witnesses. For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the hearing committee may reasonably restrict the academic staff member and the complainant from questioning each other;
(e) A verbatim record of all hearings, which might be a sound recording, provided at no cost;
(f) Written findings of fact and decision based on the hearing record;
(g) Admissibility of evidence governed by s. 227.45 (1) to (4), Stats.

(2)    For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the complainant shall have all the rights provided to the academic staff member in s. UWS 11.05 (1) (a) to (g), except as may be precluded by applicable state or federal law.

## UWS 11.06    PROCEDURAL GUARANTEES

(1)    The following requirements shall also be observed:

(a) Any person who participated in the investigation of allegations leading to the filing of a statement of charges, or in the filing of a statement of charges, or who is a material witness shall not be qualified to participate as a member of the hearing body;

(b) The hearing shall be closed unless the staff member under charges requests an open hearing, in which case it shall be open (see subch. V of ch. 19, Stats., Open Meeting Law);

(c) The hearing body shall not be bound by common law or statutory rules of evidence and may admit evidence having reasonable probative value but shall exclude immaterial, irrelevant, or unduly repetitious testimony, and shall give effect to recognized legal privileges;

(d) The burden of proof of the existence of just cause is on the administration or its representatives;

(dm) For complaints of sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the standard of proof shall be a preponderance of the evidence;

(e) If a staff member whose dismissal is sought has requested a hearing, discontinuance of the proceeding by the institution is deemed a withdrawal of charges and a finding that the charges were without merit;

(f) Nothing in this section shall prevent the settlement of cases by mutual agreement between the administration and the staff member, with the chancellor's approval, at any time prior to a final decision by the chancellor; or when appropriate, with the board's approval prior to a final decision by the board;

(g) Adjournments shall be granted to enable either party to investigate evidence as to which a valid claim of surprise is made.

(2)    If the institutional policies and procedures provide that dismissal cases be heard by a hearing committee, the following requirements shall be observed:

(a) The committee may, on motion of either party, and, if the complaint involves sexual harassment, sexual assault, dating violence, domestic violence, or stalking, on the motion of the complainant, disqualify any one of its members for cause by a majority vote. If one or more of the hearing committee members disqualify themselves or are disqualified, the remaining members may select a number of replacements equal to the number who have been disqualified to serve, except that alternative methods of replacement may be specified in the policies and procedures adopted by the institution;

(b) If the hearing committee requests, the chancellor shall provide legal counsel after consulting with the committee concerning its wishes in this regard. The function of legal counsel shall be to advise the committee, consult with them on legal matters, and such other responsibilities as shall be determined by the committee within the provisions of the policies and procedures adopted by the institution.

## UWS 11.07    RECOMMENDATIONS: TO THE CHANCELLOR

The hearing body shall send to the chancellor and to the academic staff member concerned, as soon as practicable after conclusion of a hearing, a verbatim record of the testimony and a copy of its report, findings, and recommendations. After reviewing the matter on record and considering arguments if submitted by the parties, the chancellor shall issue a decision. In that decision, the chancellor may order dismissal of the academic staff member, may impose a lesser disciplinary action, or may find in favor of the academic staff member. The academic staff member shall be notified of the chancellor's decision in writing. In cases involving sexual assault, dating violence, domestic violence, or stalking, the complainant shall be notified of the chancellor's decision at the same time as the academic staff member. This decision shall be deemed final unless the board, upon request of the academic staff member, grants review based on the record. For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the complainant shall have all rights provided to the academic staff member in this paragraph.

UWS 11.08    SUSPENSION FROM DUTIES

Pending the final decision as to dismissal, the academic staff member with an indefinite appointment shall not be relieved of duties, except where, after consulting with the appropriate administrative officer, the chancellor finds that substantial harm may result if the staff member is continued in his or her position. Where such determination is made, the staff member may be relieved of his or her position immediately, or be assigned to another administrative unit, but his or her salary shall continue until the chancellor makes a decision as to dismissal, unless the chancellor also makes the determinations set forth in s. UWS 11.105 (1) in which case the suspension from duties may be without pay and the procedures set forth in s. UWS 11.105 shall apply.

UWS 11.09    DATE OF DISMISSAL

A decision by the chancellor ordering dismissal shall specify the effective date of the dismissal.
UWS 11.10    BOARD REVIEW

A member of the academic staff on indefinite appointment who has been dismissed for cause by the chancellor following a hearing may appeal this action to the board. Any appeal must be made within 30 days of the date of the decision of the chancellor to dismiss. Upon receiving an appeal the board shall review the case on the record. Following such review the board may confirm the chancellor's decision, or direct a different decision, or approve a further hearing before the board with an opportunity for filing exceptions to the hearing body's recommendations or the chancellor's decision and for oral argument on the record. If further review with opportunity for oral argument on the record is provided, this review shall be closed unless the staff member requests an open hearing. (See subch. V of ch. 19, Stats., Open Meeting Law.) All decisions of the board, whether after review on the record or after oral argument, shall be expressed in writing and shall indicate the basis for such decision. For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking, the complainant shall have the same opportunity to appeal, file exceptions to the recommendations of the hearing committee or chancellor, and oral arguments, as provided to the academic staff member.

UWS 11.101    DISMISSAL FOR CAUSE IN SPECIAL CASES - INDEFINITE ACADEMIC STAFF APPOINTMENTS

A member of the academic staff holding an indefinite appointment may be dismissed for serious criminal misconduct, as defined in s. UWS 11.102.
History:  CR 06-078: cr. Register May 2007 No. 617, eff. 6-1-07.

UWS 11.102    SERIOUS CRIMINAL CONDUCT

(1)    In this chapter, "serious criminal misconduct" means:
       (a) Pleading guilty or no contest to, or being convicted of a felony, in state or federal court, where one or more of the conditions in par. (b), (c), (d), or (e) are present, and the felony involves any of the following:
              1. Causing serious physical injury to another person.
              2. Creating a serious danger to the personal safety of another person.
              3. Sexual assault.
              4. Theft, fraud or embezzlement.
              5. Criminal damage to property.
              6. Stalking or harassment.
       (b) A substantial risk to the safety of members of the university community or others is posed.
       (c) The university's ability, or the ability of the academic staff member's colleagues, to fulfill teaching,

research or public service missions is seriously impaired.

(d) The academic staff member's fitness or ability to fulfill the duties of his or her position is seriously impaired.

(e) The opportunity of students to learn, do research, or engage in public service is seriously impaired.

(2)     Conduct, expressions, or beliefs which are constitutionally protected, or protected by the principles of academic freedom, shall not constitute serious criminal misconduct.

(3)     Except as otherwise expressly provided, an academic staff member who has engaged in serious criminal misconduct shall be subject to the procedures set forth in ss. UWS 11.103 to 11.106.

(4)     Any act required or permitted by ss. UWS 11.103 to 11.106 to be done by the chancellor may be delegated to the provost or another designee pursuant to institutional policies forwarded to the Board of Regents under s. UWS 9.02.

## UWS 11.103     REPORTING RESPONSIBILTY

Any academic staff member who is charged with, pleads guilty or no contest to, or is convicted of a felony of a type listed in s. UWS 11.102 (1) (a), in state or federal court, shall immediately report that fact to the chancellor.

## UWS 11.104     EXPEDITED PROCESS

(1)     Whenever the chancellor of an institution within the University of Wisconsin System receives a report under s. UWS 11.103 or other credible information that an academic staff member holding an indefinite appointment has pleaded guilty or no contest to, or has been convicted of a felony of a type listed in s. UWS 11.102 (1) (a), in state or federal court, the chancellor shall:

(a) Within 3 working days of receipt of the report or information, inform the academic staff member of its receipt and, after consulting with appropriate institutional governance representatives, appoint an investigator to investigate the report or information and advise the chancellor as to whether to proceed under this section or ss. UWS 11.02 to 11.10. For cases involving sexual assault, dating violence, domestic violence, or stalking, the complainant shall be notified by the chancellor of the receipt of the report or information at the same time as the academic staff member.

(b) Upon appointing an investigator and notifying the academic staff member, afford the academic staff member three working days in which to request that the investigator be disqualified on grounds of lack of impartiality or other cause. In the event that the chancellor determines that a request for disqualification should be granted, the chancellor shall, within 2 working days of the determination, appoint a different investigator. The academic staff member shall have the opportunity to request that any second or subsequent investigators be disqualified on grounds of lack of impartiality or other cause. For cases involving sexual assault, dating violence, domestic violence, or stalking, the complainant shall have the disqualification rights that are afforded to the academic staff member in this subsection..

(2)     The investigator shall be complete and file a report with the chancellor not later than 10 working days following the investigator's appointment.

(3)     Within 3 working days of receipt of the investigator's report, the chancellor shall consult with appropriate institutional governance representatives and decide whether to seek dismissal of the academic staff member pursuant to ss. UWS 11.101 to 11.106, to seek dismissal of the academic staff member pursuant to ss. UWS 11.02 to 11.10, to seek an alternative disciplinary sanction, or to discontinue the proceedings. The charges shall be served on the academic staff member in the manner specified in s. UWS 11.02 (2).

(a) If the chancellor decides to seek dismissal of the academic staff member pursuant to ss. UWS 11.101 to 11.106, the chancellor shall file charges within 2 working days of reaching the decision.

(b) If the chancellor decides to seek dismissal of the academic staff member pursuant to ss. UWS 11.02 to 11.10, the chancellor shall file charges and proceed in accordance with the provisions of those sections of this chapter and implementing institutional policies. If, during the course of proceedings

under ss. UWS 11.02 to 11.10, the chancellor receives a report under s. UWS 11.103 or other credible information that the academic staff member has pleaded guilty or no contest to or has been convicted of a felony of a type listed in s. UWS 11.102 (1) (a), and one or more of the factors listed in s. UWS 11.102 (1) (b) through (e) are present, the chancellor may, at that point, elect to follow the procedures for dismissal pursuant to this section.

(c) If the chancellor decides to seek an alternative disciplinary sanction, the procedures under ch. UWS 3, and implementing institutional policies, shall be followed.

(4)    If charges seeking dismissal are filed under sub. (3) (a), the academic staff member shall be afforded a hearing before the institutional standing committee charged with hearing dismissal cases and making recommendations under s. UWS 11.03. The hearing shall provide the procedural guarantees enumerated under ss. UWS 11.05 to 11.06, except that the hearing must be concluded, and written findings and a recommendation to the chancellor must be prepared, within 15 working days of the filing of charges.

(5)    Within 3 working days of receipt of the findings and recommendation of the committee under sub. (4), the chancellor shall prepare a written decision on the matter. In the decision, the chancellor may order dismissal of the staff member, may impose a lesser disciplinary action, or may find in favor of the staff member. The staff member shall be notified of the chancellor's decision in writing. In cases involving sexual assault, dating violence, domestic violence, or stalking, the complainant shall be notified of the chancellor's decision at the same time as the staff member. This decision shall be deemed final unless the board, upon request of the academic staff member, grants a review based on the record. In cases involving sexual assault, dating violence, domestic violence, or stalking, the complainant shall have the same right to a review on the record as the academic staff member.

(6)    The administration or its representatives shall have the burden of proof to show that just cause exists for dismissal under this chapter. The administration must demonstrate by clear and convincing evidence that the academic staff member engaged in serious criminal misconduct, as defined in s. UWS 11.102, except in cases of sexual assault, dating violence, domestic violence, or stalking, in which the evidentiary standard shall be by a preponderance of the evidence.

(7)    The chair of the academic staff hearing body, subject to the approval of the chancellor, may extend the time limits set forth in this section if the parties are unable to obtain, in a timely manner, relevant and material testimony, physical evidence or records, or where due process otherwise requires.

UWS 11.105    TEMPORARY SUSPENSION OF DUTIES WITHOUT PAY

(1)    The chancellor, after consulting with appropriate academic staff governance representatives, may suspend an academic staff member holding an indefinite appointment from duties without pay pending the final decision as to his or her dismissal where:

(a) The academic staff member has been charged with a felony of a type listed in s. UWS 11.102 (1) (a) and the chancellor, after following the provisions of s. UWS 11.104 (1) through (3), finds, in addition, that there is a substantial likelihood 1) that one or more of the conditions listed in s. UWS 11.102 (1) (b) through (e) are present, and 2) that the academic staff member has engaged in the conduct as alleged; or

(b) The academic staff member is unable to report for work due to incarceration, conditions of bail or similar cause; or

(c) The academic staff member has pleaded guilty or no contest to or been convicted of a felony of the type listed in s. UWS 11.102 (1) (a) and one or more of the conditions in s. UWS 11.102 (1) (b) through (e) are present.

(2)    If the chancellor finds that the conditions in sub. (1) are present, he or she shall immediately notify the academic staff member, in writing, of the intent to impose a suspension without pay, and shall, within 2 working days, provide the academic staff member with an opportunity to be heard with regard

to the matter. The academic staff member may be represented by counsel or another at this meeting.

(3)

(a) If, after affording the academic staff member the opportunity to be heard, the chancellor determines to suspend without pay, the chancellor shall inform the academic staff member of the suspension, in writing. The chancellor's decision to suspend without pay under this section shall be final, except that:

(b) If the chancellor later determines that the academic staff member should not be dismissed the chancellor may discontinue the proceedings, or may impose a lesser penalty, and except as provided in par. (c), shall order the payment of back pay for any period of the suspension for which the academic staff member was willing and able to report for work;

(c) If the chancellor later determines, under par. (a) or (b), to recommend or impose as a lesser penalty the suspension of the academic staff member without pay, then any period of suspension without pay so recommended or ordered shall be offset by the period of any suspension without pay actually served by the academic staff member.

(4)     If, after affording the academic staff member the opportunity to be heard, the chancellor determines that the conditions in sub. (1) are not present or that a suspension without pay is otherwise not warranted, the provisions of s. UWS 11.08 shall apply.

## UWS 11.106     BOARD REVIEW

A member of the academic staff on an indefinite appointment who has been dismissed for serious criminal misconduct may appeal this action to the board as provided in s. UWS 11.10.

## UWS 11.11     DISMISSAL FOR CAUSE - FIXED TERM OR PROBATIONARY ACADEMIC STAFF APPOINTMENTS

A member of the academic staff holding a probationary appointment, or a member of the academic staff holding a fixed term appointment and having completed an initial specified period of time, may be dismissed prior to the end of the contract term only for just cause or for reasons of budget or program under ch. UWS 12. A nonrenewal of such an appointment is not a dismissal under this section. A dismissal shall not become effective until the individual concerned has received a written notification of specific charges and has been offered an opportunity for a hearing before the appropriate dean or director or his/her designee. If such hearing is requested, a determination of just cause and notification of dismissal shall be made by the dean or director or designee. If no hearing is requested the dismissal is effected by the specifications in the original notification of charges. The hearing before the dean, director, or designee shall provide the academic staff member with an opportunity to present evidence and argument concerning the allegations. Dismissal shall be effective immediately on receipt of written notification of the decision of the dean or director or designee unless a different dismissal date is specified by the dean or director. Dismissals for cause shall be appealable by filing an appeal with the hearing body established under s. UWS 11.03. The burden of proof as to the existence of just cause on appeal shall be on the administration or the authorized official. The provisions of s. UWS 11.04, procedural guarantees, contained in ss. UWS 11.05 and 11.06 and the review provisions of s. UWS 11.07, shall be applicable to the appeal proceeding. In no event, however, shall a decision favorable to the appellant extend the term of the original appointment. If a proceeding on appeal is not concluded before the appointment expiration date, the academic staff member concerned may elect that such proceeding be carried to a final decision. Unless such election is made in writing, the proceeding shall be discontinued at the expiration of the appointment. If the chancellor ultimately decides in favor of the appellant, salary lost during the interim period between the effective date of dismissal and the date of the chancellor's decision or the end of the contract period, whichever is earlier, shall be restored. In those cases where the immediate supervisor of the academic staff member concerned is a dean or director, the chancellor shall, to avoid potential prejudice, designate an appropriate administrative officer to act for the dean or director under this section. For complaints involving sexual harassment, sexual assault, dating violence, domestic violence, or stalking,

the complainant shall have all procedural rights provided to the academic staff member in this section and the standard of proof shall be by a preponderance of the evidence.

UWS 11.12    DISMISSAL FOR CAUSE - TEACHING MEMBERS OF THE ACADEMIC STAFF

The policies and procedures of each institution may provide that dismissal for cause of a member of the academic staff having teaching responsibilities and holding a probationary appointment or a fixed term appointment may proceed under ss. UWS 11.02 to 11.10. If the institutional policies and procedures do not specifically make such provisions, dismissal for cause shall be made pursuant to s. UWS 11.11.

**ASPP Chapter 6: Discipline and Dismissal**

Academic Staff Policy and Procedures (ASPP) can also be found at:
http://acstaff.wisc.edu/policy_documents/ASPP-Chapter-6.pdf

This chapter describes policies and procedures for discipline and dismissal to be used in cases of unsatisfactory performance or misconduct. Just-cause standards (see 6.03.3.b) apply to all disciplinary actions involving loss of pay and dismissal actions taken under the provisions of this chapter.

Lapses in performance or misconduct do not necessarily lead to discipline or dismissal. If performance reviews, counseling, or other communication between the employer and the employee alleviate the problem to the employer's satisfaction, there is no necessity to proceed to formal sanctions. However, if lapses in performance or misconduct continue, discipline or dismissal shall be considered. In egregious situations, the employer may proceed directly to discipline or dismissal.

6.01    GROUNDS FOR DISCIPLINE AND DISMISSAL

A.  *Unsatisfactory Performance.* An academic staff employee shall be subject to discipline or dismissal for unsatisfactory performance…
B.  *Misconduct.* An academic staff employee who has violated a university rule or policy or has engaged in conduct that adversely affects the staff member's performance of his or her obligations to the university shall be subject to discipline or dismissal for misconduct.

6.02    DISCIPLINE

A.  *Definition.* Discipline refers to any sanction short of dismissal imposed by the university against an academic staff member for unsatisfactory performance or misconduct, including but not limited to a letter specifically identified as a reprimand, reduction in salary, change of appointment status, or suspension without pay. Performance reviews, letters of counseling, administrative leave with pay, merit pay determinations, and the like are not considered discipline and should normally precede any disciplinary actions by an employer, unless the unsatisfactory performance or misconduct is egregious or intolerable in the workplace.
B.  *Disciplinary Procedures*
    1.  *Investigation.* Prior to taking disciplinary action, the employer shall conduct an investigation to determine whether the allegations of inappropriate performance or conduct have substance. The length and scope of the investigation shall be at the discretion of the employer. The employer may place the employee on administrative leave with pay during the investigation. Just-cause standards apply (see 6.03.3.b) for disciplinary actions involving loss of pay. The employer may meet with the employee to ask questions about the allegations as part of the investigation. If the employer

concludes that there is no basis for disciplinary action, the employer shall inform the employee immediately.

2. *Predisciplinary Meeting.* If, after the investigation, the employer believes that grounds for discipline may exist, the employer shall meet with the employee. Prior to the meeting the employer shall provide the employee with notice in writing of the grounds for possible discipline, the range of discipline being considered, the time and place of the predisciplinary meeting, and the employee's right to respond to the allegations and possible disciplinary sanction at the meeting. After taking into account the employee's response at the predisciplinary meeting, the employer will determine whether to proceed with disciplinary action. The employer may conclude (1) that discipline is warranted, (2) that discipline is not warranted, or (3) that further investigation is required in which case, another predisciplinary meeting must be held after completing the additional investigation if the employer believes discipline is appropriate.

3. *Notification of Disciplinary Action.* When the employer determines that discipline is appropriate, the employer, upon approval by the dean, director, or designee, shall inform the employee in writing. This notification shall clearly state that it is a letter of discipline, shall include a description of the employee's unsatisfactory performance or misconduct, shall state what discipline is imposed, shall inform the employee of his or her appeal rights, and shall include a copy of ASPP 6, 7, and 9.

C. *Appeal Process for Disciplinary Actions.* Disciplinary actions may be grieved using the procedure described in ASPP 7. The Academic Staff Appeals Committee shall use the tests provided in 6.03.3.b to determine whether just-cause exists in cases of disciplinary action involving loss of pay.

## 6.03     DISMISSAL

A. *Dismissal for Cause of Academic Staff with Fixed Term and Probationary Appointments (see also UWS 11.11 and 11.12)*

1. *Grounds for Dismissal.* No academic staff member shall be subject to dismissal except for just-cause based upon a determination of either unsatisfactory performance or misconduct (see 6.01.1 and 6.01.2). Layoffs (ASPP 5) and nonrenewals (ASPP 3) are not dismissals for cause.

2. *Investigation.* The employer shall conduct an investigation to determine whether allegations of unsatisfactory performance or misconduct have substance. The length and scope of the investigation shall be at the discretion of the employer. The employer may place the employee on administrative leave with pay during the investigation. Just-cause standards apply (see 6.03.3.b). The employer may meet with the employee to ask questions about the allegations as part of the investigation. If the employer concludes that there is no basis for dismissal, the employer shall inform the employee immediately.

3. *Predismissal Meeting.* If, after the investigation, the employer believes that grounds for dismissal may exist, the employer shall meet with the employee. Prior to the meeting the employer shall provide the employee with notice in writing of the grounds for possible dismissal, the time and place of the predismissal meeting, and the employee's right to respond to the allegations and level of disciplinary sanction at the meeting. After taking into account the employee's response at the predismissal meeting, the employer will determine whether to proceed with dismissal. The employer may conclude (1) that dismissal is warranted; (2) that dismissal is not warranted, but a disciplinary action is; (3) that neither dismissal nor discipline is warranted; or (4) that further investigation is required, in which case another predismissal or predisciplinary meeting must be held after completing the additional investigation if the employer believes grounds exist for either dismissal or discipline.

4. *Notification.* When the employer decides dismissal is necessary, he or she must obtain approval of the dean, director, or designee to proceed with the dismissal. If the dean, director, or designee approves the dismissal, the academic staff member shall be notified in writing of the effective

date of the dismissal, with a copy to the department chair or unit head and the Secretary of the Academic Staff, 270 Bascom Hall. This notification shall include a statement of the grounds for dismissal, inform the employee that he or she has the right to request a review by the dean, director, or designee, and include a copy of ASPP 6 and 9. Notification shall be served personally or by certified mail, return receipt requested. If service cannot be made within 15 working days, service shall be accomplished by first class mail and by publication as if the statement of charges were a summons and the provisions of section 262.06(1)(c), Wis. Stats., were applicable. Dismissal may occur only after the academic staff member has received written notification.

5. *Review by Dean or Director.* Upon receipt of dismissal notification the employee shall have 20 working days to submit a written request to the dean or director for a review, including a summary of the facts and circumstances concerning the allegations. The academic staff member shall have the opportunity to make a personal presentation to the dean, director, or designee. The dean, director, or designee shall make a determination of just cause for dismissal and notify the employee of the decision in writing within 15 working days after the receipt of the request for a review or 15 working days after the personal presentation, whichever is later. If the dismissal is upheld by the dean, director, or designee, the notification shall inform the employee of his or her right to appeal to the Academic Staff Appeals Committee under 6.03.3. If there is no response by the dean or director to the written request for a review within the designated time period, the employee may appeal to the Academic Staff Appeals Committee within 20 working days of the expiration of the designated period.

6. *Effective Date of Dismissal.* If the academic staff member does not submit a request for a review by the dean or director within 20 working days, the dismissal shall be effective on the date specified in the original notification letter with no further appeal rights. If the academic staff member submits a request for review within 20 working days and the dismissal is upheld, the dean, director, or designee shall determine the effective date of dismissal and inform the employee in writing of the date.

7. *Time Limits.* Steps in the appeal process must be initiated and completed within the designated time periods except when modified by mutual consent. If the employee fails to initiate the next step in the appeal process within the designated time period, the appeal will be considered resolved by the decision at the last completed step.

8. *Suspension of Duties.* The dean, director, or designee may suspend an academic staff member with a fixed term or probationary appointment with or without pay even if the review is in process.

B. *Dismissal for Cause of Academic Staff with Indefinite Appointments (see also UWS 11.01-11.10)*

1. *Grounds for Dismissal.* No academic staff member holding an indefinite appointment shall be subject to dismissal except for just cause, based upon a determination that the academic staff member's conduct or performance directly and substantially affects adversely the ability to carry out satisfactorily his or her responsibilities to the university. Layoff (ASPP 5) is not dismissal for cause. In contrast to the procedure for fixed term academic staff in 6.03.1, only the chancellor, in consultation with the appropriate dean or director, has the authority to begin the dismissal process.

2. *Investigation.* When the chancellor receives an allegation concerning an academic staff member holding an indefinite appointment which appears to be substantial and which, if true, might lead to dismissal, an investigation shall be conducted within a reasonable time by the appropriate dean or director or other chancellor's designee. The employer may place the employee on administrative leave with pay during the investigation. Prior to initiating a dismissal, the dean or director, in consultation with the chancellor, shall investigate the allegation, offer to discuss it informally with the individual, and provide information of rights to which members of the academic staff are entitled under this chapter and UWS 11. Just-cause standards apply (see 6.03.3.b). In those cases where the immediate supervisor of the academic staff member concerned is a dean or director, the chancellor shall, to avoid potential prejudice, designate an appropriate administrative

DOE 0091

officer to act for the dean or director under this section.

3. *Predismissal Meeting.* If, after the investigation, the dean or director believes that grounds for dismissal exist, the dean or director shall provide the employee with a written statement of the specific charges, the possibility of dismissal, the time and place of the predismissal meeting, and the employee's opportunity to respond to the allegations and possible disciplinary sanction at the meeting. After taking into account the employee's response at the predismissal meeting, the dean or director will determine whether to proceed with dismissal. The dean or director may conclude (1) that dismissal is warranted; (2) that dismissal is not warranted, but a disciplinary action is; (3) that neither dismissal nor discipline is warranted; or (4) that further investigation is required, in which case another predismissal or predisciplinary meeting must be held after completing the additional investigation if the dean or director believes grounds exist for either dismissal or discipline.

*Notification.* When the dean or director decides dismissal is warranted, he or she shall notify the academic staff member in writing of the effective date of the dismissal with a copy to the department chair or unit head, the Academic Personnel Office Secretary of the Academic Staff, and the chancellor. The notification shall include a statement of the grounds for dismissal, inform the employee that he or she has 20 working days in which to request a hearing before the Academic Staff Appeals Committee, and include copies of ASPP 6 and 9. Notification shall be served personally or by certified mail, return receipt requested. If service cannot be made within 15 working days, service shall be accomplished by first-class mail and by publication as if the statement of charges were a summons and the provisions of section 262.06(1)(c), Wis. Stats., were applicable. Dismissal may occur only after the academic staff member has received written notification.

4. *Effective Date of Dismissal.* If the academic staff member does not submit a timely appeal under 6.03.3.a, the dismissal shall be effective on the date specified in the original notification letter with no further right of appeal. If the academic staff member submits a timely appeal and the dismissal is upheld, the effective date of the dismissal will be determined by the chancellor and shall be stated in his or her decision.

5. *Suspension of Duties.* Pending the final decision as to dismissal, an academic staff member with an indefinite appointment shall not be relieved of duties unless the chancellor determines that substantial harm may result if the staff member is continued in his or her position. If such determination is made, the staff member may be relieved of his or her duties immediately or be assigned to another administrative unit, but his or her salary shall continue until the chancellor makes a decision as to dismissal.

C. *Appeal Process for Dismissals of Fixed Term, Probationary, and Indefinite Appointees*

1. *Hearing Before the Academic Staff Appeals Committee.* The academic staff member shall have 15 working days from receipt of the notification (20 working days if notice is by first-class mail and publication) to file an appeal with the Secretary of the Academic Staff, which will forward the files to the Academic Staff Appeals Committee, the Academic Personnel Office, and the dean or director within five working days. The dean or director shall provide the employing department and employee's supervisor with a copy of the academic staff member's request for a hearing by the Academic Staff Appeals Committee. The Academic Staff Appeals Committee shall conduct a hearing in accordance with ASPP 9.

   a. *Access to the Evidence.* An academic staff member who files an appeal shall have the right to review all evidence the employer used to make the dismissal decision. All additional information the employer uses or plans to use to support the decision shall also be provided to the appellant in a reasonable time prior to a hearing. Likewise, the employer shall have the right to review all materials to be presented by the appellant. The exchange shall take place within a reasonable time prior to a hearing.

    b. *Representation.* The presence of a representative or other third party designated by the employee is permitted at any stage during the appeal process.

    c. *Burden.* The employer has the burden to show by a preponderance of the evidence that each of the seven tests of just cause listed below in 6.03.3.b has been met.

2. *Tests of Just Cause.* For purposes of this chapter, there are seven tests of just cause to be considered by the Academic Staff Appeals Committee.

    a. *Notice.* Was the employee aware or should the employee have been aware of the possible or probable consequences of the employee conduct or performance?

    b. *Reasonable Rule or Expectation.* Were the employer's rules or expectations reasonably related to a) the orderly, efficient and safe operation of the work unit and b) the performance that the employer might properly expect of the employee?

    c. *Investigation.* Did the employer, before taking disciplinary action or dismissing the employee, make an effort to discover whether the employee did in fact engage in the conduct or performance in question?

    d. *Fair Investigation.* Was the employer's investigation conducted fairly and objectively?

    e. *Proof.* At the investigation, did the employer obtain substantial evidence or proof that the employee did engage in the conduct or performance in question?

    f. *Equal Treatment.* Has the employer applied the rules, orders and penalties evenhandedly?

    g. *Penalty.* Was the employer's action reasonably related to a) the seriousness of the employee's proven conduct or performance deficiencies and b) the record of the employee during his or her service to the university?

3. *Notification and Disposition.* The Academic Staff Appeals Committee shall forward its findings of fact with a recommendation to the chancellor or designee and shall send a copy to the Secretary of the Academic Staff, dean or director, department chair or unit head, and employee. Within 30 working days of receipt of the Committee's recommendation, the chancellor or designee shall implement the recommendation or give the appellant and the Committee written reasons for any decision to modify the recommendation. The employee, department chair or unit head, dean or director, Secretary of the Academic Staff, and the Committee shall be notified of the decision of the chancellor or designee, which is final. If the decision of the chancellor or designee has not been issued within 30 working days, the recommendation of the Academic Staff Appeals Committee becomes final. As an exception, an indefinite appointee may request a review by the Board of Regents under UWS 11.10.

4. *Time Limits.* Steps in the appeal process must be initiated and completed within the designated time periods except when modified by mutual consent. If the employee fails to initiate the next step in the appeal process within the designated time period, the appeal will be considered resolved by the decision at the last completed step.

## University Staff

In 2015, the University of Wisconsin transitioned those employees termed Classified Personnel to a new employee category:  University Staff. The University is in the process of editing all policies and procedures to reflect this new designation. Disciplinary procedures now in place that refer to Classified Personnel are applicable to those employees now serving as University Staff.

UW-Madison will review provisions of the University Staff employee disciplinary procedures and make modifications to relevant policies to ensure that they are compliant with federal law.

DOE 0093

## CPPP Chapter 18: Discipline, Including Dismissal

Classified Personnel Policies and Procedures (CPPP) can be found at:
http://www.ohr.wisc.edu/polproced/cppp/cppp_chapter18.pdf
18.01 Corrective Progressive Discipline Policy

It is expected that managers and supervisors will use multiple strategies to establish a climate in which employees willingly follow established policies and procedures. Such strategies may include clear communication, feedback and leading by example. When such actions are not successful, additional strategies may be necessary. One such strategy is corrective progressive discipline. Corrective discipline principles, described below, apply to all permanent classified employees.

*Definition*

Progressive discipline is a formal process to give employees opportunities to correct unacceptable behavior that violates the University of Wisconsin Classified Employees Work Rules. Progressive discipline is the application of increasingly serious consequences for repeated failure to change behavior that violates one of the work rules.

Classified employees may be disciplined for violation of Work Rules for Classified Employees if there is just cause (see section titled Just Cause Checklist). Contact your employing unit personnel representative to find out who is authorized in your work unit to conduct investigations, pre-disciplinary meetings and make the final decision to discipline. The rest of this section describes the steps of the procedure.

*Investigation*

When the employer becomes aware that a work rule or policy/procedure related to a work rule may have been violated, it is necessary to gather information. Pertinent written information, such as applicable policies, records and/or written communications, should be collected. Who was involved, when, where, and any extenuating circumstances, as well as any witnesses, should be identified. It may be necessary to conduct investigatory meetings with witnesses and the employee(s) who allegedly violated the rules to obtain information.

Classified employees may have a representative of their own choosing present at an investigatory meeting. If the representative is a campus employee, they may attend the investigatory meeting without loss of pay if the meeting occurs during the representative's normally scheduled work hours. The representative must follow leave scheduling protocol for the scheduling of absences for this purpose. Investigatory meetings will be scheduled to accommodate the attendance of the personal representative, however, this will not involve the unreasonable delay of the meeting. Prior to the meeting, campus employees will be provided with a reasonable amount of time to meet with the representative in order to prepare for the meeting.

Notes should be taken by management to record the information learned at any interviews and kept with other factual records that are being considered while management decides whether or not a work rule infraction occurred. It is recommended that any witnesses date and sign any pertinent statements attesting that the written information accurately reflects the information they have provided.

If, after review of the record which resulted from the investigation, it is tentatively determined that there is just cause for discipline (see section titled **Just Cause Checklist**), a pre-disciplinary meeting is scheduled to give the employee an opportunity to respond. Classified employees may have a representative of their own choosing present at the pre-disciplinary meeting. If the representative is a campus employee, they may

DOE 0094

attend the pre-disciplinary meeting without loss of pay if the meeting occurs during the representative's normally scheduled work hours. The representative must follow leave scheduling protocol for the scheduling of absences for this purpose. Pre-disciplinary meetings will be scheduled to accommodate the attendance of the personal representative, however, this will not involve the unreasonable delay of the meeting. Prior to the meeting, campus employees will be provided with a reasonable amount of time to meet with the representative in order to prepare for the meeting.

Typically, at the pre-disciplinary meeting, management gives a verbal summary of the reasons management has tentatively decided to take disciplinary action. The employee and representative may then present additional information, refute the facts, explain mitigating circumstances, etc. Further investigation may be necessary before a final decision is made if new information is obtained. If no new information is obtained, management proceeds to self-check to see if there is just cause for the discipline. If the answer is yes, a letter of discipline is issued.

Prior to using these steps the employee must have received notice of possible consequences for improper conduct. This could be accomplished verbally, in writing or by receiving a copy of the Classified Employee work rules.

**Non-exempt Employees** - Typically the progression is:   written reprimand, progressively increasing suspensions without pay (one-day, three-day, five-day), discharge.

**FLSA exempt employees -** Due to a court ruling, employees who are subject to disciplinary suspensions without pay for periods of less than a full work week (that is, five work days) must be considered to be "non-exempt" employees under the Fair Labor Standards Act (FLSA) and therefore must be paid premium pay (time and one-half) for overtime hours worked. Because of this ruling, classified employees who are "exempt" should not be docked pay for less than five days. Five-day suspensions must be in consecutive five-day blocks and must coincide with the employee's work week. If a one- or three-day suspension is merited, the letter should state something similar to: "Although we believe your conduct would merit a [one- or three-day] suspension without pay, this [second or third] letter of reprimand is being issued instead of a [one- or three-day] suspension in order to maintain the FLSA exempt status of your position. However, you are advised that any future violations of the work rules may result in a full work-week suspension without pay or other discipline up to and including discharge."

After the decision is made to take disciplinary action, the employee must be notified in writing. The letter of discipline must include the following: The type of action to be taken (e.g. This is a letter of reprimand or This is a letter of suspension.) and, if a suspension is identified, state the date(s) the employee is suspended and the date s/he is expected to return to work.

**Just Cause Checklist**

The Just Cause checklist is used to review whether disciplinary action is appropriate in coordination with an investigation and/or pre-disciplinary meeting. The checklist is used to determine whether the employee is responsible for the allegation, and if so, whether corrective action is an appropriate consequence for the alleged infraction. The checklist also helps guide the institution's response if the decision is appealed, as the guidelines are an important factor for the WERC (Wisconsin Employment Relations Commission) and other appeals bodies to use to assess whether the corrective action taken by the University was appropriate.

1.  Did the employer give the employee warning about the possible discipline?

     The employee must have been forewarned that the particular behavior would result in discipline.

DOE 0095

This may have occurred verbally, or by means of a policy which stated the consequences of noncompliance or the Work Rules for Classified Employees.

2.  Was the employer's order or rule related to the safe and efficient operation of the work unit or institution?

    The broken rule or disobeyed directive must be reasonably related to the University's mission or business.

3.  Did an investigation take place to find out if the employee actually violated the order or rule, and if so, the reasons for it?

    Refer to the *Investigation* section above.

4.  Was the employer's investigation fair and objective?

    The employer should interview all witnesses and consider all available information not just information that supports the discipline. In case of conflicting accounts, the employer may have to make credibility determinations.

5.  Was substantial evidence present to establish that a violation took place?

    The evidence cannot be mere rumor or unsupported accusations.

6.  Did the employer apply its rules equally?

    If it appears that other similarly situated employees have been treated differently, the employer must be able to provide reasonable explanations for what appears to be unequal treatment.

7.  Was the penalty reasonable?

    The degree of discipline must be related to the seriousness of the offense and to the employee's record of progressive discipline. Typically, the employer's failure to take corrective discipline earlier will not be viewed by an arbitrator as justification for skipping a disciplinary step and taking more severe discipline.

## Grievances /Appeals

University Staff employees may file grievances through the grievance process outlined in HR policies. This is a four-step process. The first step is in the employing unit. The second step is the Office of Human Resources. The third step is at the Impartial Hearing Panel/Campus Hearing Officer or (for employees hired prior to July 1, 2015) Wisconsin Employment Relations Commission. The next step, in cases of dismissal which have been appealed to the Impartial Hearing Panel/Campus Hearing Officer is the Chancellor or designee.  Finally, the employee may appeal the Chancellor's  or designee's decision to the Board of Regents.

# State of Wisconsin Crime Statutes and Definitions

The Clery Act and the Violence Against Women Act mandate that UW-Madison provide domestic violence, dating violence, sexual assault and stalking definitions applicable in its jurisdiction. Wisconsin statutes recognize that sexual assault, domestic violence, dating violence, and stalking are serious criminal offenses. It is important for all members of the UW-Madison community to understand how these offenses are defined in law and to be aware of the penalties. Excerpted below are the definitions and penalties of sexual assault, domestic/dating violence and stalking.  Also included are the definitions of consent, sexual contact, and sexual intercourse.

For more information on Wisconsin state law, visit:  http://legis.wisconsin.gov/rsb/stats.html or http://docs.legis.wisconsin.gov/statutes/prefaces/toc

Clery Act definitions of sexual assault, domestic violence, dating violence and stalking can be found at: https://www.gpo.gov/fdsys/pkg/CFR-2015-title34-vol3/xml/CFR-2015-title34-vol3-sec668-46.xml.

## SEXUAL ASSAULT – Wis. Stat. s. 940.225:

### First Degree Sexual Assault
Whoever does any of the following is guilty of a Class B felony. A person who commits a Class B felony can be imprisoned for up to 60 years:

- Has sexual contact or sexual intercourse with another person without consent of that person and causes pregnancy or great bodily harm to that person.
- Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon.
- Is aided or abetted by one or more other persons and has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

### Second Degree Sexual Assault
Whoever does any of the following is guilty of a Class C felony. A person who commits a Class C felony is subject to a fine of up to $100,000 and/or imprisonment for up to 40 years:

- Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.
- Has sexual contact or sexual intercourse with another person without consent of that person and causes injury, illness, disease or impairment of a sexual or reproductive organ, or mental anguish requiring psychiatric care for the victim.
- Has sexual contact or sexual intercourse with a person who suffers from mental illness or deficiency which renders that person temporarily or permanently incapable of appraising the person's conduct, and the defendant knows of such condition.

DOE 0097

- Has sexual contact or sexual intercourse with a person who is under the influence of an intoxicant to a degree which renders that person incapable of giving consent if the defendant has actual knowledge that the person is incapable of giving consent and the defendant has the purpose to have sexual contact or sexual intercourse with the person while the person is incapable of giving consent.
- Has sexual contact or sexual intercourse with another person who the defendant knows is unconscious.
- Is aided or abetted by one or more other persons and has sexual contact or sexual intercourse with another person without consent of that person.
- Is an employee of a facility or program under s. 940.295 (2) (b)[an adult family home], (c)[a community based residential facility], (h)[an inpatient health care facility] or (k)[a state treatment facility] and has sexual contact or sexual intercourse with a person who is a patient or resident of the facility or program.
- Has sexual contact or sexual intercourse with an individual who is confined in a correctional institution if the actor is a correctional staff member. This paragraph does not apply if the individual with whom the actor has sexual contact or sexual intercourse is subject to prosecution for the sexual contact or sexual intercourse under this section.
- Has sexual contact or sexual intercourse with an individual who is on probation, parole, or extended supervision if the actor is a probation, parole, or extended supervision agent who supervises the individual, either directly or through a subordinate, in his or her capacity as a probation, parole, or extended supervision agent or who has influenced or has attempted to influence another probation, parole, or extended supervision agent's supervision of the individual. This paragraph does not apply if the individual with whom the actor has sexual contact or sexual intercourse is subject to prosecution for the sexual contact or sexual intercourse under this section.
- Is a licensee, employee, or nonclient resident of an entity, as defined in s. 48.685 (1) (b) [referring to child welfare agencies, guardians, care centers, custody, etc.] or 50.065 (1) (c) [agency providing direct care or treatment to clients such as a hospital, home health agency, etc.], and has sexual contact or sexual intercourse with a client of the entity.

**Third Degree Sexual Assault**
Whoever does any of the following is guilty of a Class G felony.  A person who commits a Class G felony is subject to a fine of up to $25,000 and/or imprisonment for up to 10 years.

- Has sexual intercourse with a person without consent of that person.
- Has sexual contact in the manner described in sub. (5) (b) 2 [Intentional penile ejaculation of ejaculate or intentional emission of urine or feces by the defendant or, upon the defendant's instruction, by another person upon any part of the body clothed or unclothed of the complainant if that ejaculation or emission is either for the purpose of sexually degrading or sexually humiliating the complainant or for the purpose of sexually arousing or gratifying the defendant] or 3 [For the purpose of sexually degrading or humiliating the complainant or sexually arousing or gratifying the defendant, intentionally causing the complainant to ejaculate or emit urine or feces on any part of the defendant's body whether clothed or unclothed] with a person without the consent of that person.

**Fourth Degree Sexual Assault**
Whoever has sexual contact with a person without the consent of that person is guilty of a Class A misdemeanor, except for sexual contact meeting the definition of Third Degree Sexual Assault. A person who commits a Class A misdemeanor can be fined up to $10,000 and/or imprisoned for up to 9 months.

    **NOTES ON SEXUAL ASSAULT**
    Marriage is not a defense to sexual assault.  A person may be prosecuted for sexually assaulting their spouse.  (Wis. Stat. 940.225 (6))

DOE 0098

## CONSENT - WIS. STAT. 940.225(4)

"Consent" means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact. Consent is not an issue in alleged violations of 940.225 sub. (2) (c), (cm), (d), (g), (h), and (i) [relating to subsections of Second Degree Sexual Assault]. The following persons are presumed incapable of consent but the presumption may be rebutted by competent evidence:

    (b)    A person suffering from a mental illness or defect which impairs capacity to appraise personal conduct.

    (c)    A person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act.

## SEXUAL CONTACT - Wis. Stat. s. 940.225(5)(b)

"Sexual contact" means any of the following:

1. Any of the following types of intentional touching, whether direct or through clothing, if that intentional touching is either for the purpose of sexually degrading; or for the purpose of sexually humiliating the complainant or sexually arousing or gratifying the defendant or if the touching contains the elements of actual or attempted battery under 940.19(1):
   a. Intentional touching by the defendant or, upon the defendant's instruction, by another person, by the use of any body part or object, of the complainant's intimate parts.
   b. Intentional touching by the complainant, by the use of any body part or object, of the defendant's intimate parts or, if done upon the defendant's instructions, the intimate parts of another person.
2. Intentional penile ejaculation of ejaculate or intentional emission of urine or feces by the defendant or, upon the defendant's instruction, by another person upon any part of the body clothed or unclothed of the complainant if that ejaculation or emission is either for the purpose of sexually degrading or sexually humiliating the complainant or for the purpose of sexually arousing or gratifying the defendant.
3. For the purpose of sexually degrading or humiliating the complainant or sexually arousing or gratifying the defendant, intentionally causing the complainant to ejaculate or emit urine or feces on any part of the defendant's body, whether clothed or unclothed.

## SEXUAL INTERCOURSE - Wis. Stat. s. 940.225(5)(c)

"Sexual intercourse" includes the meaning assigned under s. 939.22 (36) (requiring only vulvar penetration and not emission) as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction. The emission of semen is not required.

## INCEST– Wis. Stat. s. 944.06

Whoever marries or has nonmarital sexual intercourse with a person he or she knows is a blood relative and such relative is in fact related in a degree within which the marriage of the parties is prohibited by the law of this state is guilty of a Class C felony. A person who committes a Class C felony can be fined up to $100,000 and/or imprisoned for up to 40 years.

### NOTES ON INCEST

People who are nearer of kin than 2nd cousins may not marry, except that marriage may be contracted between first cousins where the female has attained the age of 55 years or where either party, at the time of the application for a marriage license, submits an affidavit signed by a physician stating that either party is permanently sterile. (Wis. Stat. s. 765.03)

DOE 0099

## SEXUAL ASSAULT OF A CHILD - Wis. Stat. s. 948.02

### First Degree Sexual Assault
- Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years and causes great bodily harm to the person is guilty of a Class A felony.  A person who commits a Class A felony can be imprisoned for life.
- Whoever has sexual intercourse with a person who has not attained the age of 12 years is guilty of a Class B felony.  A person who commits a Class B felony can be imprisoned up to 60 years.
- Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony. A person who commits a Class B felony can be imprisoned up to 60 years.

### Second Degree Sexual Assault
- Whoever has sexual contact or sexual intercourse with a child who has not attained the age of 16 years is guilty of a Class C felony.  A person who commits a Class C felony may be fined up to $100,000 and/or imprisoned for up to 40 years.

## SEXUAL INTERCOURSE WITH A CHILD AGE 16 OR OLDER - Wis. Stat. s. 948.09
Whoever has sexual intercourse with a child who is not the defendant's spouse and who has attained the age of 16 or older is guilty of a Class A misdemeanor. A person who commits a Class A misdemeanor may be fined up to $10,000 and/or imprisoned for up to 9 months.

## DOMESTIC ABUSE; Domestic Abuse Restraining Orders and Injunctions - Wis. Stat. s. 813.12(1)
"Domestic abuse" means any of the following engaged in by an adult family member or an adult household member against another adult family member or adult household member, by an adult caregiver against an adult who is under the caregiver's care, by an adult against his or her adult former spouse, by an adult with whom the individual has or had a dating relationship, or by an adult against an adult with whom the person has a child in common:

1. Intentional infliction of physical pain, physical injury or illness.
2. Intentional impairment of physical condition.
3. A violation of s. 940.225 (1), (2) or (3). [Sexual assault]
4. A violation of s. 940.32. [Stalking]
5. A violation of s. 943.01, involving property that belongs to the individual. [Damage to property]
6. A threat to engage in the conduct under subd. 1., 2., 3., 4., or 5. (See 1-5 above)

- "Family member" means a spouse, a parent, a child or a person related by blood or adoption to another person.
- "Household member" means a person currently or formerly residing in a place of abode with another person.
- "Caregiver" means an individual who is a provider of in-home or community care to an individual through regular and direct contact.
- "Dating relationship" means a romantic or intimate social relationship between 2 adult individuals but "dating relationship" does not include a casual relationship or an ordinary fraternization between 2 individuals in a business or social context. A court shall determine if a dating relationship existed by considering the length of the relationship, the type of the relationship, and the frequency of the interaction between the adult individuals involved in the relationship.

DOE 0100

## DOMESTIC ABUSE INCIDENTS; Arrest and Prosecution - Wis. Stat. s. 968.075

"Domestic abuse" means any of the following engaged in by an adult person against his or her spouse or former spouse, against an adult with whom the person resides or formerly resided or against an adult with whom the person has a child in common:

1. Intentional infliction of physical pain, physical injury or illness.
2. Intentional impairment of physical condition.
3. A violation of s. 940.225 (1) [first degree sexual assault], (2) [second degree sexual assault] or (3) [third degree sexual assault].
4. A physical act that may cause the other person to fear imminent in the conduct described in 1, 2 or 3.

## STALKING - Wis. Stat. s. 940.32

(1)    In this section:

    (a)    "Course of conduct" means a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose, including any of the following:

        1.    Maintaining a visual or physical proximity to the victim.

        2.    Approaching or confronting the victim.

        3.    Appearing at the victim's workplace or contacting the victim's employer or coworkers.

        4.    Appearing at the victim's home or contacting the victim's neighbors.

        5.    Entering property owned, leased, or occupied by the victim.

        6.    Contacting the victim by telephone or causing the victim's telephone or any other person's telephone to ring repeatedly or continuously, regardless of whether a conversation ensues.

        6m.    Photographing, videotaping, audiotaping, or, through any other electronic means, monitoring or recording the activities of the victim. This subdivision applies regardless of where the act occurs.

        7.    Sending material by any means to the victim or, for the purpose of obtaining information about, disseminating information about, or communicating with the victim, to a member of the victim's family or household or an employer, coworker, or friend of the victim.

        8.    Placing an object on or delivering an object to property owned, leased, or occupied by the victim.

        9.    Delivering an object to a member of the victim's family or household or an employer, coworker, or friend of the victim or placing an object on, or delivering an object to, property owned, leased, or occupied by such a person with the intent that the object be delivered to the victim.

        10.    Causing a person to engage in any of the acts described in subds. 1. to 9.

(2)    Whoever meets all of the following criteria is guilty of a Class I felony:

    (a)    The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household.

    (b)    The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.

    (c)    The actor's acts cause the specific person to suffer serious emotional distress or induce

DOE 0101

fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

(2e)   Whoever meets all of the following criteria is guilty of a Class I felony:

(a)   After having been convicted of sexual assault under s. 940.225 [sexual assault], 948.02 [sexual assault of a child], 948.025 [repeated acts of sexual assault to the same child], or 948.085 [sexual assault of a child placed in substitute care] or a domestic abuse offense, the actor engages in any of the acts listed in sub. (1) (a) 1. to 10. [see above] if the act is directed at the victim of the sexual assault or the domestic abuse offense.

(b)   The actor knows or should know that the act will cause the specific person to suffer serious emotional distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.

(c)   The actor's act causes the specific person to suffer serious emotional distress or induces fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

(2m)   Whoever violates sub. (2) is guilty of a Class H felony if any of the following applies:

(a)   The actor has a previous conviction for a violent crime as defined in s. 939.632(1)(e)1., or a previous conviction under this section or s. 947.013 (1r), (1t), (1v), or (1x) [harassment].

(b)   The actor has a previous conviction for a crime, the victim of that crime is the victim of the present violation of sub. (2), and the present violation occurs within 7 years after the prior conviction.

(c)   The actor intentionally gains access or causes another person to gain access to a record in electronic format that contains personally identifiable information regarding the victim in order to facilitate the violation.

(d)   The person violates s. 968.31 (1) [interception and disclosure of wire, electronic or oral communications] or 968.34 (1) [use of pen register or trap and trace device] in order to facilitate the violation.

(e)   The victim is under the age of 18 years at the time of the violation.

(3)   Whoever violates sub. (2) is guilty of a Class F felony if any of the following applies:

(a)   The act results in bodily harm to the victim or a member of the victim's family or household.

(b)   The actor has a previous conviction for a violent crime defined in s. 939.632(1)(e)1., or a previous conviction under this section or s. 947.013 (1r), (1t), (1v) or (1x) [harassment], the victim of that crime is the victim of the present violation of sub. (2), and the present violation occurs within 7 years after the prior conviction.

(c)   The actor uses a dangerous weapon in carrying out any of the acts listed in sub. (1) (a) 1. to 9 [see above].

(3m)   A prosecutor need not show that a victim received or will receive treatment from a mental health professional in order to prove that the victim suffered serious emotional distress under sub. (2) (c) or (2e) (c).

(4)

(a)   This section does not apply to conduct that is or acts that are protected by the person's right to freedom of speech or to peaceably assemble with others under the state and U.S. constitutions, including, but not limited to, any of the following:

1.   Giving publicity to and obtaining or communicating information regarding any subject, whether by advertising, speaking or patrolling any public street or any place where any person or persons may lawfully be.

2.   Assembling peaceably.

3.   Peaceful picketing or patrolling.

- For the purposes of this statute, "member of a family" means a spouse, parent, child, sibling, or any other person who is related by blood or adoption to another.
- For the purposes of this statute, "member of a household" means a person who regularly resides in the household of another or who within the previous 6 months regularly resided in the household of another.
- Whoever commits a Class F felony is subject to a fine of up to $25,000 and/or imprisonment up to 12 years and 6 months.
- Whoever commits a Class H felony is subject to a fine of up to $10,000 and/or imprisonment up to 6 years.
- Whoever commits a Class I felony is subject to a fine of up to $10,000 and/or imprisonment up to 3 years and 6 months.

DOE 0103

# Sexual Harassment

UW-Madison policy as well as state and federal law prohibit sexual harassment. Some acts may constitute both sexual assault and sexual harassment. Unwelcome sexual advances, requests for sexual favors, and verbal or physical conduct of a sexual nature constitute sexual harassment when:

- Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or educational experience or their participation in a University program or activity;
- Submission to or rejection of such conduct by an individual is used as the basis for employment, academic or program-related decisions affecting such an individual; or
- Such conduct has the purpose or effect of substantially interfering with an individual's work or academic performance or their participation in a University program or activity or creating an intimidating, hostile, or offensive working, learning, or program-related environment.

When sexual harassment occurs, it degrades the quality of work and education at UW-Madison. It erodes the dignity and productivity of the individuals involved and diminishes the quality, effectiveness and stature of the institution. Any one of us may experience harassment, be accused of harassment, or be consulted by someone who thinks they have been harassed.

Sexual harassment can occur in any setting: in the workplace, the learning environment or university programs. Each of us has a duty not to harass others and to act responsibly when confronted with the issue of sexual harassment. Principal investigators, supervisors, managers, department chairs, directors and deans have additional responsibilities: individuals in positions of authority must not engage in sexual harassment, must take reasonable measures to prevent sexual harassment and take immediate and appropriate action when they learn of allegations of sexual harassment, including by contacting UW-Madison's Title IX coordinator.

Sexual harassment includes conduct directed by a person at another person of the same or opposite gender and also includes conduct directed at someone based on their gender identity or gender expression.

**Unwelcome** means the behavior was not requested or invited and that the person subjected to the behavior found the behavior undesirable or offensive. In determining whether behavior is unwelcome, it is important to take power differen
tials into account. When the person engaging in the behavior is in a position of power relative to the person being subjected to the behavior, it may be difficult for the person being subjected to the behavior to object to it. Therefore, in some cases, even acquiescence to the behavior will not be interpreted to mean the behavior was welcome.

**Verbal or physical conduct of a sexual nature** includes but is not limited to: objectively offensive touching; kissing; sexual intercourse; sexual advances; indecent exposure; fondling; repeated requests for dates; explicit references to sex; describing a person's feelings for another; sexually derogatory comments; posting of sexually explicit drawings or pictures; sexually derogatory taunts; sexual innuendo; vulgar language and obscenities; and other types of sexual statements and personal attention.

### Tangible Action or Quid Pro Quo (This for That) Sexual Harassment

Occurs when employment, academic or program-related decisions resulting in a significant change in status are based on a person's submission to or rejection of unwelcome verbal or physical conduct of a sexual nature.

### Hostile Environment Sexual Harassment

Occurs when verbal, non-verbal and/or physical conduct is:

1. Sexual in nature (including when based on gender)
2. Unwelcome, and
3. Substantially interferes with an individual's work or academic performance or their participation in a University program or activity or creates an intimidating, hostile or offensive working, learning or program-related environment.

A determination of sexual harassment is made on a case-by-case basis looking at the totality of the circumstances including the nature of the sexual conduct, the context in which the conduct occurred, the type, frequency, and duration of the conduct, the relationship between the parties, and the impact of the conduct on the affected individual(s). Some behaviors which may be acceptable in certain contexts are inappropriate in the workplace or classroom, particularly if an objection is expressed.

### Key Points About Sexual Harassment

- Differences in power or status can be a significant component in sexual harassment cases. In cases where such differences exist, the fact that a person does not object or seems to acquiesce to sexual conduct does not mean they welcomed the conduct. In such cases, a person may still experience tangible action harassment or hostile environment harassment. In addition, behavior by someone in a position of power over the person who is subjected to the behavior may create a hostile environment more quickly than if the behavior is engaged in by someone where no such power differential exists.
- Sexual harassment can occur between men and women or between members of the same gender and can also be based on gender identity or gender expression.
- Sexual harassment may or may not involve a tangible injury (e.g., economic loss, lowered grades).
- Sexual harassment must be addressed and corrected regardless of the position or status of the harasser or the person being harassed.
- Conduct is not always offensive or unwelcome to the same degree when perceived by different people. UW-Madison uses a "reasonable person" standard to determine whether the contested behavior constitutes sexual harassment that violates UW-Madison policies.
- Individuals in positions of authority are responsible for ensuring that employees, students, and others do not harass. In an academic or program setting, offenders can be faculty, instructors, lecturers, teaching assistants, coaches, tutors, fellow students or program participants. In the workplace, offenders can be supervisors, coworkers or non-employees such as vendors, customers and suppliers.
- The person filing a sexual harassment charge does not have to be the person harassed but could be anyone significantly harmed by the harassing conduct.
- Harassment does not have to be reported immediately, but a significant delay may be a factor in the evaluation of a complaint. Under Wisconsin law, a report alleging that a UW-Madison engaged in harassment must be filed within 300 days of the most recent act of alleged harassment.
- Allegations involving expression in instructional settings will be assessed using UW-Madison's Prohibited Harassment Policy as it applies to academic speech (Faculty Document 1402c, as amended on March1, 1999.)

- Some behavior that is not in violation of UW-Madison policies may, nonetheless, be unprofessional under the circumstances. Consequences of such unprofessional behavior may include poor performance evaluations or possible discipline.
- Retaliation against persons who make a complaint of sexual harassment, participate in the investigation of a complaint of sexual harassment or assist others who raise a concern about sexual harassment is strictly prohibited.
- Extensive information on the sexual harassment policies and procedures on campus can be found on the Office of Compliance website (www.compliance.wisc.edu) Office for Equity and Diversity website (www.oed.wisc.edu) and the website of the Dean of Students Office (www.students.wisc.edu)

### Services and Resources on Campus to Assist Victims of Sexual Harassment

UW-Madison has a network of people trained to assist with questions and concerns about sexual harassment. You should feel free to contact any one of them (listed below). Call 911 immediately if your safety is at risk.

UW-Madison is committed to preventing sexual harassment and will take prompt and appropriate corrective action whenever it learns that sexual harassment has occurred. Employees are encouraged to report incidents or concerns to a supervisor, manager, department chair, director, or dean for appropriate action and resolution. These administrators are expected to consult with the Title IX coordinator when responding to such reports. For students, sexual harassment (and other prohibited harassment or discrimination) also may be reported directly to the Title IX Coordinator, the Office of Compliance, the Office for Equity and Diversity, or the Dean of Students Office.

*Title IX Coordinator*

The Title IX Coordinator is responsible for overseeing UW-Madison's efforts to comply with the requirements of Title IX of the Education Amendments of 1972, a federal law that prohibits discrimination on the basis of sex, including sexual harassment, in educational programs and activities that receive federal financial assistance. The provisions of this law apply to all of the programs and activities sponsored by UW-Madison.  The Title IX Coordinator assists with the development and implementation of polices adopted by UW-Madison to prevent and respond to acts of sex discrimination, including sexual harassment.  At UW-Madison, the Title IX Coordinator oversees UW-Madison's complaint investigation and resolution processes in cases raising allegations of sex discrimination.  The Title IX Coordinator also assists with the development and implementation of UW-Madison's programs to raise awareness about and prevent sex discrimination.

Complaints alleging sex discrimination, including sexual harassment, can be filed directly with the Title IX Coordinator.  The Title IX Coordinator is also available to answer questions and provide information about sexual harassment and other forms of sex discrimination.  The Title IX Coordinator also presents professional development and training sessions for faculty, staff, and students focusing on sexual harassment and other forms of sex discrimination.

Lauren Hasselbacher, Title IX Coordinator
Office of Compliance
361 Bascom Hall, 500 Lincoln Dr., Madison, WI
(608) 890-3788
lauren.hasselbacher@wisc.edu or titleix_coordinator@wisc.edu

## Office of Compliance

UW-Madison provides the opportunity for complaint reporting, investigation and resolution through the Office of Compliance (OC). OC is available to receive complaints of sexual harassment and other forms of prohibited discrimination or harassment. The OC houses the Title IX Coordinator and the Equal Opportunity Complaint Investigator. The determination regarding who conducts the investigation is made based on the status of the complainant and the respondent at the time the alleged discrimination occurred.

- When an allegation of sexual harassment is made against a student, the OC Title IX Coordinator will investigate the allegation in coordination with the Office of Student Conduct and Community Standards.
- When an allegation of sexual harassment is made against someone who is not a student (e.g., employees, visitors, contractors and others who are not university employees but who participate in university programs and activities), the investigation will be conducted independently by OC through the Equal Opportunity Complaint Investigator with consultation provided as needed by the Title IX Coordinator. This also includes students accused of sexual harassment while acting in the capacity of an employee (e.g., teaching assistant, research assistant, etc.).

In all cases where formal complaints are filed, OC will conduct prompt, thorough and impartial investigations. If informal resolution is an appropriate alternative, OC will work with individuals to facilitate a resolution that assures that sexual harassment is corrected and does not recur.

OC collaborates with the Office for Equity and Diversity to provide professional development and training sessions for faculty, staff, and students focusing on sexual harassment and other forms of sex discrimination.

Cathleen Trueba, Director
361 Bascom Hall, 500 Lincoln Dr., Madison, WI 53706
(608) 265–6018 (voice)
(608) 263-4725 (fax)
compliance.wisc.edu │ uwcomplianceoffice@wisc.edu

Lauren Hasselbacher, Title IX Coordinator
361 Bascom Hall, 500 Lincoln Dr., Madison, WI
(608) 890-3788
lauren.hasselbacher@wisc.edu or titleix_coordinator@wisc.edu

Letissa Reid, JD
Equal Opportunity Complaint Investigator
352 Bascom Hall, 500 Lincoln Dr., Madison, WI 53706
(608) 262-3254 (voice)
letissa.reid@wisc.edu or complaint_investigator@wisc.edu

## Office for Equity and Diversity (OED)

OED is available to receive inquiries about sexual harassment and other forms of prohibited discrimination or harassment. OED will provide information about complaint processes, available resources for support and assistance and available training opportunities. OED presents professional development and training sessions for faculty, staff, graduate assistants and limited appointees focusing on sexual harassment and consensual relationships, on an ongoing basis. This includes presentations for English language learners and for second and third-shift employees.