JANE DOE  Volume II
March 18, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JANE DOE,                       )
       Plaintiff,           )
       vs                   ) Case No.  20 C 856
BOARD OF REGENTS OF THE         )
UNIVERSITY OF WISCONSIN         )
SYSTEM,                         )
       Defendant.           )

DEPOSITION OF JANE DOE

APPEARING REMOTELY FROM

CHICAGO, ILLINOIS

MARCH 18, 2022

4:00 P.M.

REPORTED BY:

ROBIN HEJNAR, CSR, RPR

CSR NO. 084-004689

APPEARING REMOTELY FROM DUPAGE COUNTY, ILLINOIS

JANE DOE   Volume II
March 18, 2022

Page 165

1  APPEARANCES:
2
3        HUTCHINSON, BLACK & COOK, LLC., by
         JOHN CLUNE & CHRIS FORD
4        921 Walnut Street, Suite 200
         Boulder, Colorado 80302
5        (303) 442-6514
6            - and -
7        DAVIS & PLEDL, by
         ROCK PLEDL
8        1661 North Water Street, Suite 410
         Milwaukee, Wisconsin 53202
9        (412) 667-0390
              Representing the plaintiff;
10
11
12
         WISCONSIN DEPARTMENT OF JUSTICE, by
13       RACHEL BACHHUBER, CATHERINE MALCHOW & JON
         WHITNEY
14       17 West Main Street
         Madison, Wisconsin 53703
15       (608) 266-0188
         bachhuberrl@doj.state.wi.us.
16            Representing the Defendant;
17
18
19
20
21
22
23
24

Page 166

1                I N D E X
2  WITNESS                            EXAMINATION
3  JANE DOE
4       By Ms. Bachhuber              166
5       By Mr. Clune                  178
6
7
8
9
10
11
12
13           E X H I B I T S
14  NUMBER                       MARKED FOR ID
15       (No exhibits marked.)
16
17
18
19
20
21
22
23
24

Page 167

1            (direct-examination continued.)
2  BY MS. BACHHUBER:
3    Q.  Okay.  Had you been given an opportunity to
4  submit additional evidence when Mr. Cephus filed his
5  petition for restoration, what would you have submitted?
6        MR. CLUNE:  Objection to the form.
7        THE WITNESS:  I'm not exactly sure what I
8  would have submitted, but relevant stuff to the case
9  that I got was in my favor.
10 BY MS. BACHHUBER:
11   Q.  Why didn't you submit that during the original
12 investigation?
13       MR. CLUNE:  Objection to the form.
14       THE WITNESS:  Maybe it wasn't -- it didn't
15 occur yet, like, the threat I received.  That would have
16 been something.
17 BY MS. BACHHUBER:
18   Q.  From the woman on Instagram?
19   A.  Yes.
20   Q.  And that woman lives in Atlanta.  Did you know
21 that?
22   A.  No, but now I know it.
23   Q.  Okay.  What else besides that threat?
24       MR. CLUNE:  Same objection to form.

Page 168

1        THE WITNESS:  I'm not sure at this time.
2  BY MS. BACHHUBER:
3    Q.  Would you have submitted your forensic nurse
4  report?
5    A.  Possibly.
6    Q.  Under what circumstances would you not have
7  submitted it?
8        MR. CLUNE:  Objection to the form,
9  foundation.
10       THE WITNESS:  Under what circumstances would
11 I not have submitted it?
12 BY MS. BACHHUBER:
13   Q.  Right.
14   A.  I'm not sure.  It would depend on the situation.
15   Q.  What new evidence did you have for the university
16 that you did not have at the time of the non-academic
17 misconduct proceeding, other than that Instagram message
18 from --
19   A.  Not entirely sure what extra evidence I had.
20   Q.  Why are you not sure?
21   A.  I'm not sure because it was a long time ago, and
22 I'm not entirely sure which exact evidence.
23   Q.  Okay.  Let's go to Exhibit 2, page 16, and
24 Interrogatory No. 22, which I'm going to share.

JANE DOE   Volume II
March 18, 2022

Page 169
1    Okay.  Provide a computation of each category of
2 damages you claim you sustained because of the
3 defendant's actions in this case, and identify all
4 documents supporting your computation of damages; and
5 your response was, "I was delayed entering the job
6 market, and estimate that my lost earnings of one year,
7 due to this delay, is, approximately, $80,500 per year.
8 I'm also seeking emotional distress damages to be
9 determined at trial."
10    Where did you come up with that $80,500 number?
11    A.  That was from an average Loyola graduate
12 computation of salary.
13    Q.  And that's for both public and private attorney
14 jobs?
15    A.  I think it was just an average charge.
16    Q.  All jobs?
17    A.  I think so.
18    Q.  What are your emotional distress damages?  Please
19 describe those for me.
20    A.  So my emotional distress damages would probably
21 be that I was extremely fearful on campus.  I was very
22 worried a lot.  I was very anxious about running into
23 either my rapist or the person that was taking pictures,
24 and that caused me a lot of anxiety, and caused me to

Page 170
1 discontinue from educational opportunities, as well as
2 social events; and, overall, made my life much worse.
3    Q.  And how did you mitigate your emotional distress
4 damages?
5    A.  During which time period, 2019?
6    Q.  Yep, during 2019.
7    A.  I would see my therapist.
8    Q.  Anything else?
9    A.  I would seek support from my friends,
10 distractions.
11    Q.  And it sounds like you have a very supportive
12 family; is that accurate?
13    A.  I forgot to say that.  Yes.  Sorry.
14    Q.  No worries.
15    Anything else?
16    A.  At this time I don't have or recall any
17 mitigation strategies I had.
18    Q.  What do you mean by "at this time?"
19    A.  At this current moment, I'm not remembering.
20    Q.  And so, right now is the time that I get to ask
21 you questions, and you're legally obligated to answer.
22 So what can I show you, or what is it out there that
23 could help you remember at this time?
24    A.  For that specific question?

Page 171
1    Q.  Yep.
2    A.  I'm not sure.
3    Q.  Who is cbuggy5@gmail.com?
4    A.  A family friend.
5    Q.  Who?
6    A.  Connor Buggy.
7    Q.  Who's Connor Buggy?
8    A.  He's a family friend.
9    Q.  Is he, like, a friend of your parents or a friend
10 of yours?
11    A.  His parents are friends with my parents, and he's
12 also a friend of mine.
13    Q.  Have you talked to Connor Buggy about the case?
14    MR. CLUNE:  Objection to the form.
15    THE WITNESS:  Yes.
16 BY MS. BACHHUBER:
17    Q.  And what have you and Connor talked about?
18    A.  Just my emotional distress from what had happened
19 to me.
20    Q.  And how did you communicate with Connor?
21    A.  In person.
22    Q.  Did you ever text Connor about it?
23    A.  No.
24    Q.  Did you ever email Connor about it?

Page 172
1    A.  It's possible.
2    Q.  Did you ever use Facebook Messenger?
3    A.  With Connor?
4    Q.  Yeah.
5    A.  I'm not -- I don't think so.
6    Q.  Did you ever talk about the assault, or this
7 lawsuit, or the university non-academic misconduct
8 proceeding with anyone on Facebook Messenger?
9    A.  No.
10    Q.  What about Instagram direct message?
11    A.  No.
12    Q.  What about Snapchat?
13    A.  Sometimes.
14    Q.  And did you preserve copies of your
15 communications about those things?
16    A.  On what?
17    Q.  On Snapchat.
18    A.  No, because it goes away.
19    Q.  So you didn't take a screenshot before you sent
20 it?
21    A.  No.
22    Q.  Do you believe that that was complying with your
23 duty to preserve all evidence?
24    MR. CLUNE:  Objection, asks for a legal

JANE DOE  Volume II
March 18, 2022

Page 173

1  conclusion.
2       THE WITNESS:  I'm not sure.
3  BY MS. BACHHUBER:
4    Q.  Did you -- Do you use, like, Gmail chat or
5  anything like that?
6    A.  No.
7    Q.  Is there, like, a chat platform on Yahoo?
8    A.  Not to my knowledge.
9    Q.  Or direct message?
10   A.  Not to my knowledge.
11   Q.  Did anybody on campus ever come up to you and say
12 anything to you about what happened with Mr. Cephus?
13   A.  No.
14   Q.  Okay.  Now, I understand that you had a previous
15 incident in 2017 that happened at Gordon Commons,
16 correct?
17      MR. CLUNE:  I couldn't hear you Rachel.
18 Could you repeat that?
19      MS. BACHHUBER:  Sure.  No problem.
20 BY MS. BACHHUBER:
21   Q.  It's my understanding that there was a previous
22 incident of assault that happened to you at Gordon's
23 Commons in 2017; is that correct?
24   A.  Yes.

Page 174

1    Q.  Okay.  And how did you find out about that?
2       MR. CLUNE:  So, Rachel, I'm going to object
3  to the line of questioning about this.  This goes to
4  prior sexual history of hers, non-consensual sexual
5  history is also sexual history, and under Rule 412 it's
6  presumptively not relevant.
7       MS. BACHHUBER:  But you requested discovery
8  about it, so you've opened the door.
9       MR. CLUNE:  I don't think we have.
10      MS. BACHHUBER:  You had a request for
11 production of documents about it, yes, you did.
12      MR. CLUNE:  I'm happy to take a look at what
13 you're talking about.
14      MS. BACHHUBER:  All right, let's take a look
15 at it.  These aren't my discovery requests.  Just a
16 moment here.  It's actually not -- it's not that
17 important.
18 BY MS. BACHHUBER:
19   Q.  I'm not going to ask you any details about it.  I
20 just wanted to know when you found out about it, if --
21 that's literally all I wanted to know.
22      MR. CLUNE:  When she found out about --
23      MS. BACHHUBER:  Yes, I'm not going to ask
24 any details.  I promise.

Page 175

1       MR. CLUNE:  Okay.  That's fine.
2  BY MS. BACHHUBER:
3    Q.  When did you find out about it?
4    A.  December 2017.
5    Q.  And did you receive some academic accommodations
6  after that?
7    A.  Yes.
8    Q.  I'll share my screen again.  I would like to look
9  at Exhibit 3, at page 129, which is Doe 343.
10      Who is Elise ▇▇▇▇ [pronouncing], or ▇▇▇▇
11   A.  My friend.
12   Q.  And what are you talking about here with your
13 friend?
14      MR. CLUNE:  Take a minute to look at it.
15      Actually, are you just talking about -- when
16 you say, "here," are you talking about that upper
17 section of the page that we can see?
18      MS. BACHHUBER:  It's a one-page text
19 message, and this is it.
20      THE WITNESS:  What's the question?
21 BY MS. BACHHUBER:
22   Q.  What are you talking about with Elise in this --
23 on this page, Doe 343?
24   A.  I was talking about getting help for writing -- I

Page 176

1  forget what it's called -- a personal statement for law
2  school.
3    Q.  And who's Mrs. Matousek?
4    A.  That is a family friend of hers, one of her
5  friend's moms.
6    Q.  And why would Elise reach out to Mrs. Matousek
7  about your law school personal statement?
8    A.  So that I could have some help in direction of
9  how to write it.
10   Q.  Is Mrs. Matousek a lawyer?
11   A.  Yes.
12   Q.  Oh, okay.
13      And is she, like, a professor?
14   A.  I don't think she's a professor.
15   Q.  Then let's look at the next page, which is Doe
16 344, Deposition Exhibit 3, at page 130.
17      The top message is with Jill ▇▇▇▇ on
18 January 19th at 2021.  Take a moment to review this, and
19 let me know when you want me to scroll down.
20   A.  You can scroll down.  Please scroll up.  Okay.
21      What's the question.
22   Q.  What were you talking about with Jill here?
23   A.  I think we were talking about our parents.
24   Q.  Okay.  Let's go to the next page.  Take a moment

JANE DOE  Volume II
March 18, 2022

Page 177

1  to review this page and let me know when you're done.
2     A.  You can scroll down, please.  Okay.
3     Q.  What were you and Jill talking about on
4  October 7th of 2020?
5     A.  Possibly my birthday party.
6     Q.  What happened at your birthday party?
7     A.  No, I think we were planning my birthday party,
8  and I didn't want it at my dad's house.
9     Q.  Oh, okay.
10     A.  I'm not exactly sure though.  I don't
11  specifically recall these texts.
12     Q.  Okay.  And then this is page 132 of Exhibit 3,
13  and Doe 346.
14     A.  Uh-hm.
15     Q.  Who is Katie Hendricks?
16     A.  She's a friend from Wisconsin.
17     Q.  And what were you and Katie talking about here?
18     A.  Her bunny died.
19     Q.  Oh.
20        Who's Fern?
21     A.  Fern is her bunny.
22     Q.  Okay.  Let's look at the next page, which is page
23  133 of Exhibit 3, and it's Doe 347.  Who is Kelly Is a
24  Ten?

Page 178

1     A.  She's a friend from middle school.
2     Q.  And what are you and Kelly talking about here?
3     A.  We were talking about me being anxious.
4     Q.  It says at the bottom here, "I went on a walk,
5  got my Starbs."  Oh, is that Starbucks?
6     A.  Yeah.
7     Q.  It just clicked right now.  Okay.
8        And then who is Marty Maggiore?
9     A.  Oh, he's a friend from -- I never went to school
10  with him.  He's just a friend.
11     Q.  And what are you talking about with him?
12     A.  Can I see the whole conversation?
13     Q.  Sure.
14     A.  I think we're talking about me being upset.
15     Q.  Why did you say, "I'm gay as aids?"
16     A.  It was just a not funny way of saying I'm unwell.
17     Q.  And were you looking up Mr. Cephus's -- were you
18  looking up articles about Cephus?
19     A.  Uh-hm.
20     Q.  That's a yes?
21     A.  Yes.
22     Q.  I am getting close to being done, so that's good
23  news.  If we could take five minutes, and I can talk to
24  my counsels quickly, and then hopefully we'll just be

Page 179

1  finished pretty quickly here.
2        (Discussion off the record.)
3  BY MS. BACHHUBER:
4     Q.  So it's my understanding that your dad recently
5  published a book called "Ice Water Please"; is that
6  right?
7     A.  Correct.
8     Q.  And did you get any money for that book?  Do you
9  get any payouts for that?
10     A.  No.
11     Q.  Okay.  Are the stories that your dad tells about
12  you in the book true?
13     A.  For the most part, yeah.
14     Q.  Okay.  That's all I have.  Thank you for your
15  time and your patience.
16     A.  Thank you.
17        CROSS-EXAMINATION
18  BY MR. CLUNE:
19     Q.  Isabella, do you remember the beginning of the
20  deposition, when Miss Bachhuber was asking you about
21  your transcript?
22     A.  Yes.
23     Q.  And you recall when she was asking about the
24  contention that you would have graduated in three years,

Page 180

1  instead of three-and-a-half years, if it were not for
2  being overwhelmed after the petition outcome?  Do you
3  remember that?
4     A.  Yes.
5     Q.  She had pointed out that you took nine credit
6  hours in your final semester.  Did you need nine credit
7  hours to graduate?
8     A.  No, I only needed six credit hours to graduate.
9     Q.  So at the start of the Fall of 2019, could you
10  have added the three credit hour class, and then taken
11  an additional three-hour class in the Spring of 2020,
12  and then graduated in the Spring of 2020?
13     A.  Yes.
14     Q.  Do you think that's what you would have done if
15  it weren't for everything that went on after the
16  petition?
17        MS. BACHHUBER:  Objection: Form, leading.
18  Go ahead.
19        THE WITNESS:  Yes, I think that's what I
20  would have done, because it was always my plan to
21  graduate in three years.
22        MR. CLUNE:  That's all.
23        MS. BACHHUBER:  All right.  I don't have any
24  follow-up.

JANE DOE   Volume II
March 18, 2022

Page 181

1  MR. CLUNE: Read and sign.
2  MS. BACHHUBER: E-tran.
3  MR. CLUNE: Copy.
4       (FURTHER DEPONENT SAITH NOT.)

Page 182

1  DECLARATION UNDER PENALTY OF PERJURY
2
3       I, JANE DOE, do hereby certify under penalty of
4  perjury that I have read the foregoing transcript of my
5  deposition taken on March 18, 2022; that I have made
6  such corrections as appear noted herein in ink,
7  initialed by me; that my testimony as contained herein,
8  as corrected, is true and correct.
9
10       Dated this ____ day of _____, 2022, at
11  _____, Illinois.
12
13
14
15  _____
16  JANE DOE

Page 183

1       DEPOSITION ERRATA SHEET
2  Page No. ____ Line No. ____
3  Change: _____
4  Reason for change:_____
5  Page No. ____ Line No. ____
6  Change: _____
7  Reason for change:_____
8  Page No. ____ Line No. ____
9  Change: _____
10  Reason for change:_____
11  Page No. ____ Line No. ____
12  Change: _____
13  Reason for change:_____
14  Page No. ____ Line No. ____
15  Change: _____
16  Reason for change:_____
17  Page No. ____ Line No. ____
18  Change: _____
19  Reason for change:_____
20
21
22  _____        _____
23  JANE DOE                    DATED

Page 184

1  STATE OF ILLINOIS    )
                         ) SS:
2  COUNTY OF DUPAGE     )
3
4       I, ROBIN HEJNAR, a Certified Shorthand Reporter
5  and Registered Professional Reporter do hereby certify:
6       That prior to being examined, the witness in
7  the foregoing proceeding was by me duly sworn to testify
8  to the truth, the whole truth, and nothing but the
9  truth;
10       That said proceedings were taken remotely
11  before me at the time and places therein set forth and
12  were taken down by me in shorthand and thereafter
13  transcribed into typewriting under my direction and
14  supervision;
15       I further certify that I am neither counsel
16  for, nor related to, any party to said proceedings, not
17  in anywise interested in the outcome thereof.
18       In witness whereof, I have hereunto subscribed
19  my name.
20  Dated: March 23, 2022
21
22  _Robin Hejnar_
23  _____
    ROBIN HEJNAR, RPR
24  CSR No. 084-004689

**$**

**$80,500**
  169:7,10

**1**

**129**
  175:9
**130**
  176:16
**132**
  177:12
**133**
  177:23
**16**
  168:23
**19th**
  176:18

**2**

**2**
  168:23
**2017**
  173:15,23
  175:4
**2019**
  170:5,6  180:9
**2020**
  177:4  180:11,12
**2021**
  176:18
**22**
  168:24

**3**

**3**
  175:9  176:16
  177:12,23
**343**
  175:9,23
**344**
  176:16
**346**
  177:13
**347**
  177:23

**4**

**412**
  174:5

**7**

**7th**
  177:4

**A**

**academic**
  175:5
**accommodations**
  175:5
**accurate**
  170:12
**actions**
  169:3
**added**
  180:10
**additional**
  167:4  180:11
**ahead**
  180:18
**aids**
  178:15
**anxiety**
  169:24
**anxious**
  169:22  178:3
**approximately**
  169:7
**articles**
  178:18
**asks**
  172:24
**assault**
  172:6  173:22
**Atlanta**
  167:20
**attorney**
  169:13
**average**
  169:11,15

**B**

**Bachhuber**
  167:2,10,17
  168:2,12
  171:16  173:3,19,20  174:7,10,14,18,23
  175:2,18,21
  179:3,20
  180:17,23
  181:2
**beginning**
  179:19
**birthday**
  177:5,6,7
**book**
  179:5,8,12
**bottom**
  178:4
**Buggy**
  171:6,7,13
**bunny**
  177:18,21

**C**

**called**
  176:1  179:5
**campus**
  169:21  173:11
**case**
  167:8  169:3
  171:13
**category**
  169:1
**caused**
  169:24
**cbuggy5@gmail.com**
  171:3
**Cephus**
  167:4  173:12
  178:18
**Cephus's**
  178:17
**charge**
  169:15
**chat**
  173:4,7
**circumstances**
  168:6,10
**claim**
  169:2
**class**
  180:10,11

clicked
  178:7
close
  178:22
CLUNE
  167:6,13,24
  168:8 171:14
  172:24 173:17
  174:2,9,12,22
  175:1,14
  179:18 180:22
  181:1,3
Commons
  173:15,23
communicate
  171:20
communications
  172:15
complying
  172:22
computation
  169:1,4,12
conclusion
  173:1
Connor
  171:6,7,13,17,
  20,22,24 172:3
contention
  179:24
continued
  167:1
conversation
  178:12
copies
  172:14
Copy
  181:3
correct
  173:16,23

  179:7
counsels
  178:24
credit
  180:5,6,8,10
CROSS-
EXAMINATION
  179:17
current
  170:19

        D

dad
  179:4,11
dad's
  177:8
damages
  169:2,4,8,18,
  20 170:4
December
  175:4
defendant's
  169:3
delay
  169:7
delayed
  169:5
depend
  168:14
DEPONENT
  181:4
deposition
  176:16 179:20
describe
  169:19
details
  174:19,24

determined
  169:9
died
  177:18
direct
  172:10 173:9
direct-
examination
  167:1
direction
  176:8
discontinue
  170:1
discovery
  174:7,15
discussion
  179:2
distractions
  170:10
distress
  169:8,18,20
  170:3 171:18
documents
  169:4 174:11
Doe
  175:9,23
  176:15 177:13,
  23
door
  174:8
due
  169:7

  176:17
duty
  172:23

        E

E-TRAN
  181:2
earnings
  169:6
educational
  170:1
Elise
  175:10,22
  176:6
email
  171:24
emotional
  169:8,18,20
  170:3 171:18
entering
  169:5
estimate
  169:6
events
  170:2
evidence
  167:4 168:15,
  19,22 172:23
exact
  168:22
Exhibit
  168:23 175:9
  176:16 177:12,
  23
extra
  168:19
extremely
  169:21

        F

Facebook

172:2,8
**Fall**
 180:9
**family**
 170:12  171:4,8
 176:4
**favor**
 167:9
**fearful**
 169:21
**Fern**
 177:20,21
**filed**
 167:4
**final**
 180:6
**find**
 174:1  175:3
**fine**
 175:1
**finished**
 179:1
**follow-up**
 180:24
**forensic**
 168:3
**forget**
 176:1
**forgot**
 170:13
**form**
 167:6,13,24
 168:8  171:14
 180:17
**found**
 174:20,22
**foundation**
 168:9

**friend**
 171:4,8,9,12
 175:11,13
 176:4  177:16
 178:1,9,10
**friend's**
 176:5
**friends**
 170:9  171:11
**funny**
 178:16

G

**gay**
 178:15
**Gmail**
 173:4
**good**
 178:22
**Gordon**
 173:15
**Gordon's**
 173:22
**graduate**
 169:11  180:7,
 8,21
**graduated**
 179:24  180:12

 ▆▆▆▆
 175:10

 ▆▆▆▆
 175:10

H

**happened**
 171:18  173:12,
 15,22  177:6

**happy**
 174:12
**hear**
 173:17
**Hendricks**
 177:15
**history**
 174:4,5
**hour**
 180:10
**hours**
 180:6,7,8
**house**
 177:8

I

**Ice**
 179:5
**identify**
 169:3
**important**
 174:17
**incident**
 173:15,22
**Instagram**
 167:18  168:17
 172:10
**Interrogatory**
 168:24
**investigation**
 167:12
 ▆▆▆▆
 179:19

J

**January**
 176:18

**Jill**
 176:17,22
 177:3
**job**
 169:5
**jobs**
 169:14,16

K

**Katie**
 177:15,17
**Kelly**
 177:23  178:2
**knowledge**
 173:8,10

L

**law**
 176:1,7
**lawsuit**
 172:7
**lawyer**
 176:10
**leading**
 180:17
**legal**
 172:24
**legally**
 170:21
**life**
 170:2
**literally**
 174:21
**lives**
 167:20
**long**
 168:21

lost
  169:6
lot
  169:22,24
Loyola
  169:11

**M**

made
  170:2
Maggiore
  178:8
market
  169:6
Marty
  178:8
Matousek
  176:3,6,10
message
  168:17 172:10
  173:9 175:19
  176:17
Messenger
  172:2,8
middle
  178:1
mine
  171:12
minute
  175:14
minutes
  178:23
misconduct
  168:17 172:7
mitigate
  170:3
mitigation
  170:17

moment
  170:19 174:16
  176:18,24
moms
  176:5
money
  179:8

**N**

needed
  180:8
news
  178:23
non-academic
  168:16 172:7
non-consensual
  174:4
number
  169:10
nurse
  168:3

**O**

object
  174:2
objection
  167:6,13,24
  168:8 171:14
  172:24 180:17
obligated
  170:21
occur
  167:15
October
  177:4
one-page
  175:18

opened
  174:8
opportunities
  170:1
opportunity
  167:3
original
  167:11
outcome
  180:2
overwhelmed
  180:2

**P**

parents
  171:9,11
  176:23
part
  179:13
party
  177:5,6,7
patience
  179:15
payouts
  179:9
period
  170:5
person
  169:23 171:21
personal
  176:1,7
petition
  167:5 180:2,16
pictures
  169:23
plan
  180:20

planning
  177:7
platform
  173:7
pointed
  180:5
Possibly
  168:5 177:5
preserve
  172:14,23
presumptively
  174:6
pretty
  179:1
previous
  173:14,21
prior
  174:4
private
  169:13
problem
  173:19
proceeding
  168:17 172:8
production
  174:11
professor
  176:13,14
promise
  174:24
pronouncing
  175:10
Provide
  169:1
public
  169:13
published
  179:5

|  |  |  |  |
|---|---|---|---|
| **Q** | remembering<br>  170:19 | section<br>  175:17 | stories<br>  179:11 |
| question<br>  170:24  175:20<br>  176:21 | repeat<br>  173:18 | seek<br>  170:9 | strategies<br>  170:17 |
| questioning<br>  174:3 | report<br>  168:4 | seeking<br>  169:8 | stuff<br>  167:8 |
| questions<br>  170:21 | request<br>  174:10 | semester<br>  180:6 | submit<br>  167:4,11 |
| quickly<br>  178:24  179:1 | requested<br>  174:7 | sexual<br>  174:4,5 | submitted<br>  167:5,8  168:3,<br>  7,11 |
| **R** | requests<br>  174:15 | share<br>  168:24  175:8 | support<br>  170:9 |
| Rachel<br>  173:17  174:2 | response<br>  169:5 | show<br>  170:22 | supporting<br>  169:4 |
| rapist<br>  169:23 | restoration<br>  167:5 | sign<br>  181:1 | supportive<br>  170:11 |
| reach<br>  176:6 | review<br>  176:18  177:1 | situation<br>  168:14 | sustained<br>  169:2 |
| Read<br>  181:1 | Rule<br>  174:5 | Snapchat<br>  172:12,17 | **T** |
| recall<br>  170:16  177:11<br>  179:23 | running<br>  169:22 | social<br>  170:2 | taking<br>  169:23 |
| receive<br>  175:5 | **S** | sounds<br>  170:11 | talk<br>  172:6  178:23 |
| received<br>  167:15 | SAITH<br>  181:4 | specific<br>  170:24 | talked<br>  171:13,17 |
| recently<br>  179:4 | salary<br>  169:12 | specifically<br>  177:11 | talking<br>  174:13  175:12,<br>  15,16,22,24<br>  176:22,23<br>  177:3,17<br>  178:2,3,11,14 |
| record<br>  179:2 | school<br>  176:2,7  178:1,<br>  9 | Spring<br>  180:11,12 | tells<br>  179:11 |
| relevant<br>  167:8  174:6 | screen<br>  175:8 | Starbs<br>  178:5 | Ten<br>  177:24 |
| remember<br>  170:23  179:19<br>  180:3 | screenshot<br>  172:19 | Starbucks<br>  178:5 | text |
|  | scroll<br>  176:19,20<br>  177:2 | start<br>  180:9 |  |
|  |  | statement<br>  176:1,7 |  |

   171:22 175:18
**texts**
   177:11
**therapist**
   170:7
**things**
   172:15
**threat**
   167:15,23
**three-and-a-half**
   180:1
**three-hour**
   180:11
**time**
   168:1,16,21
   170:5,16,18,
   20,23 179:15
**top**
   176:17
**transcript**
   179:21
**trial**
   169:9
**true**
   179:12

      U

**Uh-hm**
   177:14 178:19
**understand**
   173:14
**understanding**
   173:21 179:4
**university**
   168:15 172:7
**unwell**
   178:16

**upper**
   175:16
**upset**
   178:14

      W

**walk**
   178:4
**wanted**
   174:20,21
**Water**
   179:5
**Wisconsin**
   177:16
**woman**
   167:18,20
**worried**
   169:22
**worries**
   170:14
**worse**
   170:2
**write**
   176:9
**writing**
   175:24

      Y

**Yahoo**
   173:7
**year**
   169:6,7
**years**
   179:24 180:1,
   21