**Chancellor's Decision**

**Appeal of a Non-Academic Misconduct Committee Decision**

**Regarding Quintez Cephus**

**March 13, 2019**

I.  **Background**

Chapter 17 of the University of Wisconsin System Administrative Code (UWS 17) governs non-academic misconduct on the University of Wisconsin-Madison campus and authorizes appeals to the Chancellor in certain circumstances. On February 12, 2019, the Office of the Chancellor received an appeal in the above referenced matter from Quintez Cephus, an undergraduate student at the university and the Respondent in this non-academic misconduct case.

This matter involves charges brought against the Respondent alleging that he committed one act of sexual assault and one act of sexual harassment against Complainant 1 and two acts of sexual assault and one act of sexual harassment against Complainant 2, both also undergraduate students. Specifically, it has been alleged that on April 21-22, 2018, Respondent had sexual intercourse with Complainant 1 without her consent and that afterward he created a hostile environment for Complainant 1 through the effects of the sexual assault. Further, it has been alleged that on April 21-22, 2018, Respondent had sexual intercourse with Complainant 2 while he had actual knowledge that she was too intoxicated to give her consent, that he had sexual intercourse with Complainant 2 without her consent, and that he harassed Complainant 2 by creating a hostile environment for her through the effects of the sexual assault.

The allegations were investigated by Lauren Hasselbacher, the university's Title IX Coordinator, who issued the Final Investigative Report on October 9, 2018. In preparing her Report, the Title IX Coordinator interviewed both Complainant 1 and Complainant 2. The Title IX Coordinator offered the same opportunity to Respondent. While Respondent's attorneys submitted written statements from other individuals and legal filings, Respondent declined to participate in an interview with the Title IX Coordinator, stating that it may prejudice him in his pending and parallel criminal proceedings. The Title IX Coordinator also reviewed documents and text messages provided by the Complainants. Following receipt of the Title IX Coordinator's Report and an opportunity to review the Title IX Coordinator's investigative file, Assistant Dean Ervin Cox, the Investigating Officer in this case, issued a letter dated October 30, 2018 charging

1

**Exhibit 114 p. 001**

Confidential

BOR_018345

Respondent with the following violations of the university's non-academic misconduct code (Chpt. UWS 17, Wis. Admin. Code):

Charges related to Complainant 1:
1. UWS 17.09(2) Sexual Assault: Third Degree defined in s. 940.225(3)(a)
2. UWS 17.09(19) Sexual Harassment: Conduct defined in UW-Madison Policy on Sexual Harassment and Sexual Violence

Charges related to Complainant 2:
1. UWS 17.09(2) Sexual Assault: Second Degree defined in s. 940.225(2)(cm)
2. UWS 17.09(2) Sexual Assault: Third Degree defined in s. 940.225(3)(a)
3. UWS 17.09(19) Sexual Harassment: Conduct defined in UW-Madison Policy on Sexual Harassment and Sexual Violence

The Investigating Officer further recommended a sanction of University Disciplinary Expulsion. UWS 17.11(4)(c)2 requires that a hearing be held in cases involving the sanction of expulsion unless a respondent waives the right to the hearing. Respondent did not waive his right to hearing in this case and, as such, a hearing was scheduled for January 15, 2019. Present at the hearing were members of the Non-academic Misconduct Hearing Committee ("Committee"), legal counsel to the Committee, the Investigating Officer, Complainant 1 and her advisor, Complainant 2 and her advisor, and Respondent and his advisor. The Committee had access to a number of documents submitted by the parties and received oral statements from the Investigating Officer, the Complainants and their advisors, and Respondent's advisor. In addition, the Investigating Officer presented the Title IX Coordinator as a witness and brought Detective Schirmacher from the UW-Madison Police Department (UWPD) to show several security videos.

The parties were informed of the Committee's decision via email immediately following its deliberations on January 15, 2019. A written decision dated January 28, 2019 and containing the Committee's rationale was emailed to the parties on January 29, 2019. The Committee unanimously concluded that a preponderance of evidence existed to find Respondent responsible for violating the following provisions of the non-academic misconduct code:

For Complainant 1:  17.09(2) Sexual Assault Third Degree and 17.09(19) Sexual Harassment
For Complainant 2:  17.09(2) Sexual Assault Third Degree and 17.09(19) Sexual Harassment

**Exhibit 114 p. 002**

Confidential

BOR_018346

The Committee determined that there was not a preponderance of the evidence to support the charge that Respondent violated 17.09(2) Sexual Assault Second Degree regarding Complainant 2. In a 2 (yes) to 1 (no) vote, the Committee upheld the recommended sanction of expulsion. The Committee's decision reviewed the facts as presented at the hearing and explained how the basis for the Committee's conclusions.

## II. Appeal

Respondent's appeal focuses on several challenges to the university's non-academic misconduct process. He suggests that the portions of the process provided for in UWS 17 as applied to his case are inconsistent with federal guidance and that the university did not follow its process in certain aspects. Essentially Respondent argues that the process was unfair, arbitrary and subject to bias such that he was unable to adequately present a defense to the allegations of non-academic misconduct without prejudicing his concurrent criminal case. Accordingly, he claims the Committee's findings and sanction of expulsion should be vacated and he should remain an enrolled student at the university.

## III. Analysis

UWS 17.13 allows for an appeal to the Chancellor in matters involving suspension or expulsion. My consideration of the appeal is based on a review of the record, including all materials submitted as part of the hearing, the audio recording of the hearing, and the Committee's written decision. UWS 17.13 also requires that I sustain the Committee's decision unless I find one or more of the following:

a) The information in the record does not support the findings or decision.
b) Appropriate procedures were not followed which resulted in material prejudice to the respondent or complainant.
c) The decision was based on factors proscribed by state or federal law.

If I make any finding under (a)-(c), I may return the matter for consideration or invoke an appropriate remedy of my own. Under 17.13(3), I must issue a decision within 30 days of receipt of the appeal.

Confidential

**Exhibit 114 p. 003**
BOR_018347

Respondent's submission specifically raises an appeal under both (b) and (c) above and my decision appropriately addresses those bases. My review of Respondent's appeal does not indicate any argument under (a). To the extent one could be interpreted to exist, I find that there is sufficient evidence using the required preponderance of evidence standard under UWS 17.12(4)(f)(3) to support the conclusion that Respondent violated two counts of UWS 17.09(2) and two counts of UWS 17.09(12). After careful consideration of the record and the appeal overall, I find that the Committee's decision must be sustained in its entirety.

The Committee's decision outlines in detail the specific factual findings upon which it based its decision to find Respondent responsible for sexual assault and sexual harassment. A summary of the pertinent findings follows:

- Complainant 1's immediate response to the assault, in reporting the assault to peers, medical staff, and police.
- Consistency of Complainant 1's recollection of the evening during the entire non-academic misconduct process, including reports to police and medical staff hours after the sexual assault, her interview with the Title IX Coordinator during the investigation, and her testimony at the hearing.
- The existence of text message shortly following the incident from Complainant 1 to a friend stating she had been "raped."
- The testimony by a UWPD detective who stated that Complainant 1 appeared to have just been subjected to a traumatic event.
- That Complainant 1 had consented to the sensitive and intrusive Sexual Assault Nurse Exam [SANE] exam.
- The review of the SANE report showed that Complainant 1 had physical injuries consistent with a non-consensual sexual intercourse.
- Complainant 1's recounting to police, medical staff, the Title IX Coordinator, and the Committee of several specific refusals to engage in sexual activity with the Respondent or at his direction.
- Complainant 1's specific recollection of Complainant 2's instances of verbal non-consent to sexual activity by Respondent.

The record supports these findings and the Committee's decision. My analysis of the Respondent's particular claims on appeal follows below.

4

**Exhibit 114 p. 004**

Confidential

BOR_018348

A. **"Guidelines for my appeal as set forth in Ms. Schmidt's January 29, 2019 correspondence are erroneous and seeks [sic] the scope of my appeal as prescribed by UWS 17.13(3)."**

While conducting my review and analysis of this appeal, I have remained cognizant of the requirements of UWS 17.13(3). As indicated in the beginning of this section, I have applied the bases for appeal as stated by UWS 17.13(3), not as stated by Ms. Schmidt in her January 29, 2019 correspondence. Further, Ms. Schmidt cited UWS 17.13(3) in her correspondence in a manner in which Respondent and his advisors could easily find, and in fact did find, the appropriate bases for appeal. As a result, Respondent has suffered no harm and the scope of his appeal has not been limited. Therefore, I find this claim without merit.

B. **"Procedural errors occurred that adversely impacted the outcome of the hearing."**

 1. **Claim – "The University's failure to hold in abeyance its Title IX investigation pending my criminal trial, stemming from Complainants' allegations was in violation of UWS 17.01."**

Respondent alleges that the university's decision to move forward with its non-academic misconduct process before the conclusion of his criminal case violates UWS 17.01 and its statement that "The University of Wisconsin System is committed to respecting students' constitutional rights…." Specifically, Respondent argues that the pending criminal matter prevented him from participating fully in the investigation and deprived him of a meaningful opportunity to be heard.

I do not find merit to Respondent's allegations. Under Title IX, universities have an obligation to perform prompt investigations into sexual harassment and sexual assault allegations.[1] The U.S. Department of Education 2001 Revised Sexual Harassment Guidance directly addresses this issue, stating, "However, because legal standards for criminal investigations are different, police investigations or reports may not be determinative of whether harassment occurred under Title IX and do not relieve the school of its duty to respond promptly and effectively."

---

[1] 20 U.S.C. 1092(f)(8)(B)(iv)(I)(aa); 34 CFR 668.46(k)(2)(i) and (3)(i)(A); DoE 2017 Q&A on Campus Sexual Misconduct (still in effect) Questions 4 and 5 https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf; DoE 2001 Revised Sexual Harassment Guidance (still in effect) https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html

5

**Exhibit 114 p. 005**

Confidential

By citing to UWS 17.01, Respondent is presumably claiming that the university has failed in its commitment to respecting students' constitutional rights. He suggests that the university violated his Fifth Amendment right against self-incrimination by refusing to pause its Title IX investigation and hearing until the final disposition of his criminal case. This position is unsupported in the law. A review of federal case law identifies several court decisions addressing the exact issue of whether postponement of a college disciplinary hearing until resolution of related criminal charges is constitutionally required. The courts have specifically rejected this argument and found that a student does not face an unconstitutional choice about whether to testify at a student disciplinary hearing that occurs during a related criminal proceeding. Instead, courts have determined that where a student can remain silent during a hearing and have no adverse inference drawn from the silence, any testimony the student provides is entirely voluntary and no Fifth Amendment concerns are implicated. *See*; *Hart v. Ferris State College,* 557 F.Supp. 1379 (W.D. Mich. 1983), *Gabrilowitz v. Newman,* 582 F.2d 100 (1st Cir. 1978), *DeVita v. Sills,* 422 F.2d 1172, 1178-80 (3rd Cir. 1970) (Fifth Amendment does not require postponement of civil proceedings whenever related criminal charges are pending). Even where a student's testimony at a hearing is considered compelled because of the threat of expulsion, courts have found that any such testimony would not be admissible in the parallel criminal proceeding, and therefore no Fifth Amendment right is implicated. *Furutani v. Ewigleben,* 297 F. Supp. 1163 (N.D. Cal. 1969).

Respondent had numerous opportunities to provide information to the Title IX Coordinator during the initial investigation, including any exculpatory information provided to him by the District Attorney's office that the District Attorney would not provide the University. While Respondent did not accept the request from the Title IX Coordinator to interview him as part of the investigation, the record shows that Respondent provided written statements from other individuals for consideration. Respondent also had an opportunity to testify at the hearing. As indicated in the testimony at hearing and in the Committee's decision, the Investigating Officer and ultimately the Committee respected Respondent's decision to remain silent during the investigatory process and drew no adverse inference from his limited participation. This is consistent with the training provided to the university's student conduct staff and hearing panel members. Likewise, it is consistent with the way courts have interpreted similar situations. Accordingly, I find that Respondent's silence was voluntary and the university did not infringe on his Fifth Amendment rights by conducting a prompt investigation into his conduct, despite the

6

**Exhibit 114 p. 006**

Confidential                                                                                          BOR_018350

existence of an ongoing related criminal process. Moreover, Respondent could have testified and provided any necessary information to the investigation, claiming that any information given should not be admissible in his parallel criminal proceeding as has been successfully argued in other court cases.

2. **Claim – "The University's use of the preponderance of the evidence standard was improper and violated the current OCR guidelines."**

UWS 17.12(4)(f)(3) states, in pertinent part, "[a] hearing examiner's or committee's finding of nonacademic misconduct shall be based on one of the following . . . A preponderance of the evidence, regardless of the sanction to be imposed, in all cases of sexual harassment, sexual assault, dating violence, domestic violence, or stalking." Respondent was charged with two counts of second degree sexual assault, one count of third degree sexual assault, and two counts of sexual harassment. As a result, I find that the Hearing Committee complied with the requirements of UWS 17.12 (4)(f)(3) by using the preponderance of the evidence standard. Respondent claims that applying the preponderance standard in UWS 17.12 (4)(f)(3) violates his federal rights because, under the most recent federal Office for Civil Rights (OCR) interim guidance, "The findings of fact and conclusions should be reached by applying either a preponderance of the evidence standard or a clear and convincing evidence standards, as long as the standard for evaluating claims of sexual misconduct is the same as that applied in other student disciplinary hearings."[2] Respondent asserts that since UWS 17.12(4)(f)(1) requires a committee's findings of nonacademic misconduct in cases not involving sexual assault and harassment claims that result in either enrollment restrictions, suspension or expulsion to meet the burden of clear and convincing evidence, so too must findings in cases involving sexual assault and harassment claims. I do not find merit to Respondent's position. As an administrative code provision, UWS 17 maintains the force of law in Wisconsin and as it applies to the university. The Department of Education has not completed its process for issuing new binding rules and the interim guidance is not binding. The university strives to follow the interim guidance but must yield to the provisions of UWS 17 where the guidance conflicts with the provisions of UWS 17. Without formal Department of Education rules requiring a different standard, the university is obligated to have its Title IX proceedings governed and bound by UWS 17 as required by law. Therefore, I find that the use of the preponderance of the evidence standard for findings of fact in Respondent's case was appropriate and in compliance with current law.

---

[2] Q&A on Campus Sexual Misconduct, DEPARTMENT OF EDUCATION, September 2017, https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf, at 5

**Exhibit 114 p. 007**

Confidential                                                                                           BOR_018351

3. **Claim – "The Investigating Officer, Assistant Dean Cox, violated UWS 17 by allowing two unnamed, unidentified "colleagues" to influence his decision of responsibility."**

Respondent claims that the Investigating Officer violated his responsibilities under 17.05 by consulting with two members of the Office of Student Conduct and Community Standards (OSCCS) about the case prior to issuing his charging decision. There is no provision in UWS 17 that prohibits the OSCCS's practice of Investigating Officers seeking input and review from others prior to making their final decision regarding whether to issue charges. Here, the record clearly establishes that while the Investigating Officer stated that he consulted with two other members of OSCCS, the final decision was that of the Investigating Officer. He issued the notice of charges and presented the case at the hearing. There is no information indicating that the Investigating Officer's actions violated UWS 17.

4. **Claim – "The Chair of the Hearing Panel violated UWS 17.12(4)(b) by refusing to allow my advisor to directly cross examine the Complainants."**

Under UWS 17.12(4)(c)(3), the hearing examiner or committee is granted the authority to "take reasonable steps to maintain order, and to adopt procedures for the questioning of a witness appropriate to the circumstances of that witness's testimony . . ." In this case, the Committee concluded that the most appropriate procedure for Respondent's advisor to question the Complainants was to have the Committee Chair receive the questions from Respondent's advisor and then direct those questions to the intended Complainant. Nothing in the record of the hearing suggests that Respondent and his advisor were prohibited from effectively questioning the Complainants. The hearing recording indicates that the Committee Chair and the Respondent's advisor sat next to each other and carefully discussed the questions to be asked, including at times specific information from Respondent's advisor about what she was trying to accomplish by the particular question to provide context to the Chair about how to ask the question. I find no evidence in the record to support Respondent's claim that the Chair "completely changed the tenure [sic], meaning and effect of respondents' cross-examination questions in such a bias slant in favor of the complainants." Respondent's advisor was free to object to or correct the Chair's phrasing of any of the proposed questions. At no point during the hearing did Respondent's advisor complain about, object to, or correct the phrasing of the questions or the manner in which the Committee chair asked her questions to the Complainants. Respondent asserts that the Chair's statement "Okay. I know your -- your recollection of the hospital is -- is fuzzy. Do you recall

8

**Exhibit 114 p. 008**

Confidential      BOR_018352

interacting with any nurses or receiving medication or anything to that effect?" was inappropriate and "gave the Complainant an explanation for not remembering the details of these critical events...." This allegation is inaccurate and Respondent takes the statement out of context regarding the questions and answers leading up to it. The hearing recording indicates that in the immediate questions leading up to this question, the referenced Complainant had independently stated that she did not remember very much of her time in the hospital. The Chair's later acknowledgement, as part of a question, that the Complainant's memory of the hospital was "fuzzy" did not feed an excuse or explanation to the Complainant as the Complainant had already made it clear that she did not remember much of her time in the hospital. Having reviewed the hearing audio and the requirements of UWS 17, I find no merit to Respondent's claim.

5. **Claim - "The Investigating Officer, Dean Cox violated UWS 17.12(2) by considering, and relying solely on the Complainants [sic] wishes in determining the date of my hearing."**

Respondent claims that the Investigating Officer (Assistant Dean Cox) violated UWS 17.12 when he scheduled the nonacademic misconduct hearing for January 15, 2019 because the Investigating Officer refused to postpone the non-academic misconduct hearing until after the conclusion of Respondent's criminal proceedings. Respondent also claims that the Investigating Officer impermissibly relied too heavily on Complainants' scheduling preferences and did not weigh the Respondent's preferences equally.

UWS 17.12 (2) provides; "If . . . a hearing is required to be scheduled under s. UWS 17.11(4)(c)(2) [as it was in this case] the student affairs officer shall take the necessary steps to convene the hearing and shall schedule it within 15 days of receipt of the request or written report. The hearing shall be conducted within 45 days of receipt of the request or written report, unless a different time period is mutually agreed upon by the respondent and investigating officer, or is ordered or permitted by the hearing examiner or committee." (Emphasis added). The university is also required by certain amendments to the federal Clery Act to designate reasonably prompt timeframes for the major stages of its investigatory and disciplinary procedures for cases involving sexual assault and to treat complainants and respondents equitably through those procedures.

Through a variety of mechanisms, Respondent's advisors sought to delay the university's disciplinary process and hearing until the conclusion of the parallel criminal process. As noted in

9

**Exhibit 114 p. 009**
Confidential

a previous section of this decision, Respondent is not entitled to postpone the university's disciplinary process until his criminal case is completed. The university, however, is obligated to provide a prompt process and to treat complainants and respondents equitably during that process. Consistent with its obligations, the university expects that parties, their advisors, and others involved in the process will reasonably make themselves available for proposed hearing dates. The Investigating Officer began attempting to schedule the hearing in November 2018 and on November 9 offered Respondent's advisors specific hearing dates in December. On November 12, Respondent's advisors responded by email with a request that the "hearing(s) in question be adjourned until sometime after the New Year." They further cited scheduling conflicts and inadequate time to prepare before then for a hearing due to business travel in November, religious holiday in December, and a trial "scheduled for four (4) days in early January, 2019." They did not identify the specific days in early January. In a November 14 email, the Investigating Officer noted that he had confirmed with the Complainants that they were willing to postpone the hearing until January 2019, but that they wanted to complete the hearing before classes resumed on January 22. As they are parties to the process, Complainants' wishes are taken into account. Considering both parties' requests, the Investigating Officer offered 1/14, 1/15, 1/16, 1/18, 1/22, 1/24, and 1/25 as possible hearing dates.

Respondent's advisors informed the Investigating Officer by email on November 15 that they would review the proposed dates and get back to him. After receiving no further response from Respondent's advisors, the Investigating Officer emailed again on November 26, 2018 indicating he had hearing panels available on January 14, 15, 16, and 18 and asking Respondent's advisors to indicate their availability. Receiving no response again from Respondent's advisors, he emailed them on December 5 indicating the hearings would be scheduled for January 14 and 18. Respondent's advisors emailed the same day indicating that they "were unavailable for the dates set forth in your email below. We will be in California attending a Privilege and Tenure hearing on January 11, 12, 14, and 24th." Since they indicated a conflict on the proposed hearing date of January 14, the Investigating Officer responded on December 5 to offer January 15 as an alternate date while keeping the other hearing set for January 18. The Investigating Officer again received no response and emailed Respondent's advisors on December 11 stating that the hearings would be scheduled for January 15 and 18 because they had not identified any conflicts with those particular hearing dates. He again received no response and opted to email Respondent's advisors on December 18 regarding details for the hearing. Respondent's advisors did not respond until

**Exhibit 114 p. 010**

December 21, at which time they again indicated a work conflict on January 14 and repeated their request to delay the hearing until after the criminal proceedings.

I find that the Investigating Officer made good faith efforts to strike a balance and accommodate the availability of the Committee, the Respondent and his advisors, the Complainants and their advisors, and witnesses in scheduling the hearing. I find no evidence that he scheduled the hearing solely based on the Complainants' wishes. The Investigating Officer accommodated the Respondent's request to wait until after January 1, 2019 to schedule the hearing and accommodated the Complainants' request to complete the hearings before the start of the Spring 2019 semester. In addition, the January 15 and 18 dates did not conflict with the dates Respondent's advisors indicated they were unavailable.

6. **Claim – The University violated my rights by scheduling my hearing for a date that my advisors of choice were not available.**

Respondent claims that he was unfairly prejudiced during the non-academic misconduct hearing itself because the hearing was scheduled for a date on which the advisor of his choice could not attend the hearing. Respondent claims that his advisor of choice could not attend the hearing due to involvement in separate litigation occurring in California on January 11, 12, 14, and 24, and therefore was unable to travel to Wisconsin to be present and provide effective legal counsel for him during the hearing. Further, Respondent asserts that the University intentionally scheduled the hearing on this date to disadvantage him.

I refer to my response in Section (5) above for the timeline of scheduling communications. A review of the hearing record indicates that Respondents claim is factually inaccurate. The hearing was scheduled on a day that was not noted by Respondent's advisors as one for which they had a conflict. One of Respondent's criminal attorneys, Attorney Kathleen Stilling, served as his advisor during the hearing. She noted on the record that she was contacted by Respondent's other attorneys to serve as a last-minute substitute for Respondent's preferred advisor because one of his preferred advisors was currently in California and the other was unable to attend the hearing due to illness. This statement indicates that one of Respondent's advisors of choice intended to participate in the hearing, and would have done so but for an unforeseen illness. Additionally, while Attorney Stilling noted that she was appearing instead of Respondent's chosen advisor, the record shows she did not request any action by the Committee with regard to the hearing. Moreover, the hearing recording indicates that Attorney Stilling was an active participant in the

Confidential

**Exhibit 114 p. 011**
BOR_018355

hearing process raising objections or questions at various times and engaging in cross-examination of witnesses. As his criminal attorney, Attorney Stilling was also familiar with the facts of the case and the legal standards and definitions for the alleged sexual assault violations in that they are based on the criminal statutes. For these reasons, I find that there is no merit to Respondent's claim.

7. **Claim – "The University violated UW-Madison's Policy on Sexual Harassment and Sexual Violence by not allowing my support person to accompany me during the hearing."**

Respondent asserts that he was entitled to have both an advisor and a support person in the hearing, and that the university's refusal to allow the presence of Bishop Tavis Grant as his support person in the hearing room violated university policy. Respondent asserts that his criminal attorney and the Title IX Coordinator agreed that Respondent could have two advisors due to the pending criminal investigation and an ADA accommodation.

UWS 17 clearly provides that the Respondent and Complainant are entitled to a single advisor in the hearing. University policy allows for **one** support person or advisor to accompany both complainants and respondents throughout the investigation and hearing process. The university policy uses the terms support person and advisor interchangeably. Neither complainants nor respondents are entitled to **both** a support person and an advisor during the hearing process. Additionally, the hearing record indicates that the Committee denied Respondent's request in part because it was not made in a timely manner so that the Complainants could also have arranged to have more than one advisor with them as well. Moreover, as this was a closed hearing, there were also confidentiality concerns about allowing more people than necessary to be present for the hearing. The record also indicates that the Committee stated that it was more than willing to allow Respondent to take as many breaks as needed throughout the hearing process in order to get support from Bishop Grant, which I find is a reasonable response to Respondent's last-minute request.

Respondent presents no evidence that the Complainants were accompanied by anyone other than their respective advisors. While in a separate room, they were connected by video conferencing to the Committee, the Respondent and his advisor. In addition, the hearing recording notes at least one occurrence of Ms. Schmidt going back and forth between the hearing room and the separate

12

**Exhibit 114 p. 012**

Confidential                                                                                                    BOR_018356

room for the Complainants to address a technology issue with no concerns expressed regarding the presence of anyone in the separate room other than the Complainants and their advisors.

Regarding Respondent's disability accommodation, he was provided CART real-time captioning at the hearing and the ability to take breaks when needed. Ms. Hasselbacher did not evaluate any ADA accommodation request as part of the Title IX investigative process. The university denied the request for two advisors because Respondent's advisors did not provide any explanation as to how that would mitigate Respondent's disability or provide documentation to support the request, even when offered an additional opportunity to do so. Accordingly, I find no merit to Respondent's claims.

8. **Claim – "The University violated my rights making unilateral decisions concerning how many Hearing panels would be empaneled regarding Dean Cox' [sic] October 30, 2018 findings."**

Respondent asserts that the decision to hold one panel, as opposed to two or more was an arbitrary and unilateral decision by the University. He argues that because of the unilateral nature of the decision, he is entitled to the relief he seeks, namely that the Committee's decision should be vacated.

When notified that there would originally be two panels empaneled to resolve this matter, Respondent's advisors sent a letter on January 4, 2019 objecting to the use of two panels on the grounds that the issues covered in both arose from a single fact pattern and were materially and substantially related. In addition, Respondent's advisors considered the decision to have two separate hearing committees was "simply to increase the University's odds of achieving its preconceived responsibility finding." Acknowledging this objection, the university notified Respondent's advisors that it was granting its request to consolidate the matters into a single hearing before one hearing panel to occur on January 15. Respondent's appeal suggests that this concession to consolidate was also problematic, stating that he did not request one panel, but merely objected to the use of two separate panels.

Respondent's assertion is nonsensical. I find no merit to this claim and believe the university acted reasonably in this matter. When Respondent objected to the use of two panels, the university made an effort to accommodate him by consolidating the original two hearings into one. Respondent did not indicate any concern with that decision until this appeal and his advisors

13

**Exhibit 114 p. 013**
Confidential

offered no information in the January 4 letter indicating that consolidation would be problematic or inappropriate in their view. Therefore, I find this claim lacks merit.

### 9. Claim – "The University violated my civil rights by the lack of racial diversity throughout the University's Title IX Investigation and adjudication process."

Respondent asserts that he was entitled to a hearing committee composed of his peers to include a black male. The university creates pools for hearing committees from nominations and volunteers from the university's governance bodies for students, faculty, and academic staff for those individuals to serve a specified term. When a hearing committee is necessary, OSCCS sends a request to the pool of panelists to see who is available on the proposed hearing dates and traditionally assigns the first individuals to respond. For more complex cases, OSCCS requires the hearing committee members to have served on a prior hearing committee. All hearing committee members are required to undergo a three-hour training regarding unconscious bias. There is no indication in the record that the university took any action to exclude persons of color from the hearing process.

Further, race is not a valid basis for objecting to hearing panel members. Courts have rejected the argument that racial makeup of a student disciplinary hearing body is evidence of discrimination. *See, e.g., Yusuf v. Vassar College,* 35 F.3d 709 (2d Cir. 1994). Accordingly, I do not find any merit to this claim.

### 10. Claim – "The University's additional procedural violations render their Title IX Investigation and adjudication process inherently untrustworthy and warrant the vacating of the Hearing Panel's findings."

Respondent cites three additional procedural concerns: 1) the Title IX Coordinator ignored or rejected Respondent's request to include his motion to dismiss and accompanying exhibits in the criminal proceedings as part of the investigative report; 2) the Title IX Coordinator used a second investigator to assist her who was a new employee; and 3) the Committee used a script for the hearing which created an unfair and biased hearing process.

I find no merit to any of these claims.

a. During the investigative stage, Respondent submitted to the Title IX Coordinator several legal filings from other related court matters. These documents contained primarily legal argument with some factually substantive information. The materials were included in the investigative file but not specifically appended as an exhibit to the Title IX investigative

14

**Exhibit 114 p. 014**

Confidential

report that is focused on collecting and summarizing factually substantive information related to the allegations. Not all submitted materials are appended to the final investigative report. Regardless of whether the investigative report incorporated the legal filings, the information was in the Title IX Coordinator's investigative file which is available to the Investigating Officer to review as part of the decision making process in determining whether to issue charges of non-academic misconduct. Respondent concedes that he submitted the referenced materials as part of his contribution to the final hearing packet for consideration by the Committee. There is no evidence that Respondent was prejudiced or adversely impacted because the parties and the Committee were able to review and consider the submission and give it the appropriate weight.

b.  Respondent states that the Title IX Coordinator enlisted assistance from a newly hired employee investigator midway in the investigation, but presents no information to explain or identify the issues or concerns. According to the hearing testimony, the investigation started in May, before the additional investigator was hired. The additional investigators started assisting midway in the investigation because that is when she was hired. Respondent's statement provides no basis for an appeal. While the Title IX Coordinator had assistance from another investigator with some aspect of the investigation, the Title IX Coordinator issued the investigative report and provided testimony regarding her investigation at the hearing.

c.  Respondent states that the Committee Chair's use of a script at the hearing "demonstrates the unfairness and bias of the hearing process" but fails to provide any support for this claim. The script used by the Committee Chair was included in the hearing packet given in advance to all the parties. The script's purpose at non-academic misconduct hearings is to ensure that the appropriate legal statements are made for the record and to assist the Committee Chair with following the proper order for the hearing.

Respondent's appeal lacks any foundation for these additional allegations of procedural issues. Accordingly, I find no merit to these claims.

IV.  **Conclusion**

For all the foregoing reasons, I find that the record supports the Committee's decision that there was a preponderance of the evidence to support the findings that Respondent violated UWS 17.09(2) and UWS 17.09(19) with respect to both Complainant 1 and 2. Further, I find that the process was conducted according to the university's obligations under UWS 17, state and federal

15

Confidential

**Exhibit 114 p. 015**

BOR_018359

law, and the United States Constitution. As such, I uphold the Committee's decision and recommended sanction of University Disciplinary Expulsion.

As this is the final institutional decision in this matter, Respondent's expulsion from the university is effective as of the date of this decision but the exclusion from campus provisions noted below will not be enforced until March 16. UWS 17.02 defines expulsion as the "termination of student status with resultant loss of all student rights and privileges." Under UWS 17.17, students who are expelled may not enroll in any of the institutions within the University of Wisconsin System and may not be present on any campus within the University of Wisconsin System for any reason without consent of the chief administrative officer of that campus. A copy of this decision will be shared with the Office of Student Conduct and Community Standards, and will become part of the official record in this matter.

Either Complainants or Respondent may seek further review of this decision by the UW System Board of Regents. The Regents may, in their discretion, grant an appeal on the record. (UWS 17.14). Any appeal to the Regents must be submitted in writing to the Board's Executive Director and Corporate Secretary, presently Jess Lathrop. The deadline for filing an appeal with the Regents is fourteen (14) calendar days from the date of this decision. Further information about a potential Regent appeal can be found in the Wisconsin Administrative Code (UWS) Chapter 17, which is available here: https://docs.legis.wisconsin.gov/code/admin_code/uws/17, or by contacting board@uwsa.edu. As noted above, the sanction of expulsion remains in effect notwithstanding any request for further review by the Board of Regents.

Respectfully submitted this 13th day of March 2019,

Rebecca M. Blank
Chancellor

16

**Exhibit 114 p. 016**
BOR_018360
Confidential

**2017269701**          Contacts

████████████████████████   █████████████

## DEMOGRAPHIC INFORMATION

DOB
██████████

Classification
SOPHOMORE

Athletics
N/A

Gender
Female

Major
POLITICAL SCIENCE BA

Greek
N/A

Ethnicity

Academic Advisor

Honors
N/A

GPA Last Term        Cume
0.000              0.000

ROTC/Veteran
N/A

## CONTACT INFORMATION

Housing Address
Gillin Sellery ██████████



Local Address



Permanent Address

Email Address
 @WISC.EDU

Emergency Contact

## INCIDENT AND CASE INFORMATION

Role
Victim/Complainant

Incident Date          Incident Time
2018-04-21

Incident Location
Off-Campus in Madison (please specify)

Reported Date          Referral Source
2018-04-24            a parent

Reported By
Dad

Charges/Issues
1. Victim of Sexual Assault
2.
3.
4.
5.
6.

Clery Reportability

Tags

Case Status
Open

Access Restriction
Title IX Case Group

Case Created Date      Case Created By
2018-04-24            Tonya Schmidt

Assigned To
Kate Dougherty (DoSO 5)

Next Deadline Date     Reason
2018-05-01            Unspecified at case creation

The information contained on these pages is privileged and confidential, and is intended solely for the individual or entity who has accessed it for official purposes and by lawful means. Any dissemination, distribution, or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at 608/263-5700, and return the original message to us via the U.S. Postal Service to the Office of Student Conduct & Community Standards, Division of Student Life, University of Wisconsin-Madison, 70 Bascom Hall, 500 Lincoln Drive, Madison, WI 53706-1380, without retaining a copy.

**Exhibit 114 p. 017**

**INCIDENT DESCRIPTION**

reported she was sexually assaulted by a student athlete Quintez Chephus

**Exhibit 114 p. 018**

Confidential

# PERSONAL AND CONFIDENTIAL RE: student in your class

| | |
|---|---|
| **From:** | Amy Bogost <abogost@gmail.com> |
| **To:** | Eleanor Powell <eleanor.powell@wisc.edu>; ELIZABETH MABEL SAWYER <esawyer3@wisc.edu>; Kenneth Mayer <krmayer@wisc.edu>; TIMOTHY VERN WILLIAMS <tvwilliams3@wisc.edu>; STEFFEN SILVIS <ssilvis@wisc.edu>; lshell@wisc.ed; Annie Menzel <acmenzel@wisc.edu>; Cyra K. Polizzi <ckpolizzi@wisc.edu> |
| **Cc:** | Catherine Dougherty <catherine.dougherty@wisc.edu> |
| **Date:** | Tue, 12 Feb 2019 14:28:53 -0600 |
| **Attachments:** | DA LETTER FOR IA.docx (23.65 kB) |

Dear UW Faculty,

You are receiving this email due to the fact that my client, ▮▮▮▮ ▮▮▮ is a student in your class. I have attached a letter from the Dane County DA's office that discusses the fact that Ms. ▮▮▮ was a victim of a sensitive crime and has been cooperating with their office for the last several months. I know that Kate Dougherty from the Dean of Students Office has already sent out a notice regarding this issue. Ms. ▮▮▮ is an extremely conscientious student and is doing her very best to keep up with her work under what has been and continues to be an extremely difficult time. Unfortunately, she will have to continue to deal with the legal ramifications of this for the rest of the semester as this plays out in the legal system. Therefore, we are requesting that Ms. ▮▮▮ continue to have the understanding and support from you as well as any necessary accommodations to help her succeed this semester.

This is notice is confidential and I remind all of you that this information shall not be shared in accordance with FERPA. If you have any questions regarding this matter, I suggest that you speak with Ms. Dougherty whose copied on this email. Thank you very much.

Best Regards,

Amy B. Bogost

Amy B. Bogost
Attorney at Law
16 N. Carroll Street
Suite 800
Madison, WI 53703
(608) 206-6821
(608) 442-7129 (f)

CONFIDENTIALITY NOTICE: This email communication may contain private, confidential, or legally privileged information intended for the sole use of the designated and/or duly authorized recipient(s). If you are not the intended recipient or have received this email in error, please notify the sender immediately by email and permanently delete all copies of this email including all attachments without reading them. If you are the intended recipient, secure the contents in a manner that

**Exhibit 114 p. 019**

Confidential

BOR_018363

conforms to all applicable state and/or federal requirements related to privacy and confidentiality of such information.

**Exhibit 114 p. 020**

Confidential

BOR_018364

# DANE COUNTY
# DISTRICT ATTORNEY
## ISMAEL R. OZANNE



February 11, 2019 [Current Date (September 24, 2000)]

 **[Defendant Name(s) separated by comma] [Court Case #]**

To Whom it may concern:

This letter is to confirm that ███████ ██████ had been subpoenaed for a Jury Trial the week of February 11th. This trial has been scheduled since late December of 2018. Until the morning of Monday, February 11, 2019, it was expected that she would be needed as a witness in that trial for multiple days.  On the morning of Monday, February 11, 2019, for reasons that had nothing to do with ██████, the court postponed the Jury Trial.

Please contact me directly if you have any questions

Sincerely,

Shellie Gillette
Victim Witness Case Manager
Dane County District Attorneys Office
608-284-6889 [DA/ADA Assigned To] [DA/ADA Assigned To Job Title]



No Photo Available

## 2017269701
Contents

Open

████████████████████████    ████████████

## DEMOGRAPHICS

**DOB**
███████████

**Gender**
Female

**Ethnicity**

**Classification**
SOPHOMORE

**Major**
POLITICAL SCIENCE BA

**Academic Advisor**

**GPA Last Term / GPA Cumulative**
0.000 / 0.000

**Athletics**
N/A

**Greek**
N/A

**Honors**
N/A

**ROTC / Veteran**
N/A

**Pronouns**

**Honorific**

## CONTACT INFORMATION

**Housing**
Gillin Sellery - █████

**Username**
█████

**Email Address**
████████@WISC.EDU

**Emergency Contact**

**Local**
███████████████
███████████████

**Permanent**
███████████████
███████████████

## INCIDENT AND CASE INFORMATION

**Report Number**

**Incident Date**
2018-04-21

**Reported Date**
2018-04-24

**Case Created Date**
2018-04-24

**Access Restriction**
Restricted

**Clery Reportability**

**Role**
Victim/Complainant

**Incident Time**

**Referral Source**
a parent

**Assigned To**
Lauren Hasselbacher
(Title IX Coordinator)

**Incident Location**
Off-Campus in Madison (please specify)

**Reported By**
Dad

**Home Office**
Dean of Students Office

**Exhibit 114 p. 022**

Confidential

BOR_018366

**Clery Rationale**

**Tags**
Title IX Academic Accommodation Requested and Provided
Title IX Outreach and Resources

| Next Deadline Date | Reason |
|---|---|
| 2018-05-25 | Unspecified at case creation |

**Incident Description**
reported she was sexually assaulted by a student athlete Quintez Cephus

---

## RESOLUTION INFORMATION

| Charges/Issues | | Findings (if applicable) |
|---|---|---|
| 1) Victim of Sexual Assault | | |

| Appt. Date | Appt. Time | Appt. Location |
|---|---|---|
| | | |

| Hearing/Resolution Date | Hearing/Resolution Type | Hearing Officer(s) |
|---|---|---|
| | | |

| Parental Notification | Holds in Place | Appeal Status |
|---|---|---|
| No | | No appeal filed |

**Rationale**

**CC List**

---

## SANCTIONS / ACTIONS

✔ = completed, ✖ = incomplete, ➜ = referred to another case

No sanctions/actions listed

## NOTES

**Universal Notes**
Do not contact ▋▋▋▋ per RCC. - 12/14/17

**Individual Notes**

| Update | UNCATEGORIZED |
|---|---|
| *Kate Dougherty* | Tuesday April 24, 2018 at 11:26am |

csa report form completed

**Exhibit 114 p. 023**

Confidential

BOR_018367

**Update**
*Kate Dougherty*

Email sent to faculty:

My name is Kate Dougherty and I work in the Dean of Students Office, specifically with student assistance. ████████ (Campus ID: 9073573116) is a student enrolled in your class. ████ has been a victim of a sensitive crime. She is connected to resources and she is receiving the proper care and assistance she currently needs. We are working with her and campus partners to provide additional follow up and support. She has expressed to me that she is very engaged in her course work and really loves what she is learning this semester. She is committed to doing well.

At this time, ██████ is not on campus but is home in the Chicago area. I recognize that academic standards are always the prerogative of each instructor. However, I ask for your understanding during this difficult time. Any assistance you can offer ████ will be greatly appreciated. This correspondence serves to open the door for her to have a conversation with you to ask for accommodations, as necessary. Please contact me if you have any questions or concerns.

Thank you,
Kate

**Call with Jamie (RCC)**
*Lauren Hasselbacher*

Jamie said the ████ family is overwhelmed with communication and would like communication to go through her. Jamie asked about the investigation - I confirmed that we do not have sufficient information to proceed with investigation at this time, and that we can either meet and speak with Complainants or wait for the MPD report to become available. I asked Jamie to comunicate that the decision is up to the Complainant, and that we will move forward when requested.

**Update**
*Kate Dougherty*

student and faculty have made plans to accommodate classes. student is home in Chicago area

**Update**
*Kate Dougherty*

From: Kathy Kruse
Sent: Wednesday, August 22, 2018 8:13 PM
To: LAUREN HASSELBACHER
Subject: Re: SICT

Perfect! Thank you, Lauren.
Kathy.

From: LAUREN HASSELBACHER
Sent: Wednesday, August 22, 2018 6:41:38 PM
To: Kathy Kruse
Subject: RE: SICT

Hi Kathy,
I've been working with her advocate at RCC this week so I don't believe you need to make an independent outreach (all my communication goes through advocate). I'll check in with her and remind her that DoSO can help, especially if she is preparing to return to campus. Thanks for checking in.

Lauren

From: Kathy Kruse
Sent: Wednesday, August 22, 2018 4:35 PM
To: LAUREN HASSELBACHER
Subject: SICT

Hi Lauren-
Sitting in SICT and we are wondering if you or DOSO should do a reach out to ██████ ████ again for support especially after all the media. You've been working the most with her so let me know your opinion.
Thanks!
Kathy

**Update**
*Kate Dougherty*

Met with ██████ and her attorney today. FERPA release in place with DoSO. faculty emails will be sent shortly after ██████ reviews the draft email.

**Update**
*Kate Dougherty*

Email sent to all faculty. See attachment

**Update**
*Kate Dougherty*

Check in email sent to student. see attached

**Update**
*Kate Dougherty*

Email from Amy Bogost was received requesting academic accommodation letters be sent for spring 19 semester. letters have been sent and student was cc on messages. see attached

**Update**
*Kate Dougherty*

Amy emailed asked for DoSO to alter faculty of a change in date. Emails have been sent.

**Update**
*Kate Dougherty*

Amy called and spoke with KD via phone. She is planning to share a letter from the DA to ████'s faculty. She wanted to be sure we were ok with that message and wanted to cc our office. See attachment

**Information**
*Tonya Schmidt*

Amy Bogost called to ask if an appeal was received by the Chancellor. I confirmed that an appeal was received yesterday and that the complainants and their attorneys would receive official correspondence from the Chancellor's office today.

## ELECTRONIC FILE CABINET

| Doc ID | Filename | Date Modified | File Size | Associated with |
|---|---|---|---|---|
| 00163521 | Case Creation Sheet | April 24, 2018 8:45 am | 9.11kb | This individual |
| 00167375 | ROI-████ ████.pdf | September 6, 2018 3:14 pm | 349.75kb | All parties |
| 00167426 | Dean of Students Office Notification Regarding a Student .msg | September 7, 2018 9:05 am | 806.00kb | All parties |
| 00170927 | Check in.msg | October 17, 2018 12:47 pm | 30.50kb | All parties |
| 00176678 | Written Hearing Decision.htm | January 31, 2019 8:46 am | 1.39MB | This individual |
| 00176852 | Dean of Students Office- Notification Regarding A Student .msg | February 4, 2019 7:59 am | 868.00kb | All parties |
| 00177398 | PERSONAL AND CONFIDENTIAL RE student in your class.msg | February 13, 2019 7:44 am | 198.00kb | All parties |
| 00179570 | Re_ Notice of Appeal-████.htm | March 13, 2019 10:01 pm | 1.39MB | This individual |
| 00179571 | 03 13 19.pdf | March 13, 2019 10:01 pm | 1.84MB | This individual |
| 00184148 | Mail - Tonya Schmidt - Outlook-email.notification.htm | August 20, 2019 11:16 am | 699.32kb | This individual |
| 00184149 | Chancellor Decision - QC Petition for Restoration - REDACTED Version for Complainants 8-19-2019.pdf | August 20, 2019 11:16 am | 3.59MB | This individual |

## AUDIT TRAIL

| | | | |
|---|---|---|---|
| 2018-04-24 | 08:45:43 | Tonya Schmidt | Case created |
| 2018-04-24 | 08:45:44 | Tonya Schmidt | Notification of new case sent to Kate Dougherty (catherine.dougherty@wisc.edu) |
| 2018-04-24 | 09:06:03 | Tonya Schmidt | Case record accessed on Update Existing Case screen |
| 2018-04-24 | 11:26:17 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-04-24 | 11:26:33 | Kate Dougherty | Note #19898 created on Update Existing Case |
| 2018-04-24 | 11:27:44 | Amy Lynn Edmonds | Summary case record viewed on Find Priors screen |
| 2018-04-24 | 11:27:47 | Amy Lynn Edmonds | Summary case record viewed on Find Priors screen |
| 2018-04-24 | 11:59:04 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-04-24 | 12:10:25 | Kate Dougherty | Note #19901 created on Update Existing Case |
| 2018-04-24 | 12:10:25 | Kate Dougherty | Ping sent to Lauren Hasselbacher (lauren.hasselbacher@wisc.edu) |
| 2018-04-24 | 12:34:15 | Amanda Thwing | Summary case record viewed on Find Priors screen |
| 2018-04-24 | 12:34:18 | Amanda Thwing | Case record accessed on Update Existing Case screen |
| 2018-04-24 | 13:47:40 | Lauren Hasselbacher | Summary case record viewed on Find Priors screen |
| 2018-04-24 | 13:47:44 | Lauren Hasselbacher | Case record accessed on Update Existing Case screen |
| 2018-04-24 | 13:58:25 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-04-25 | 10:04:12 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2018-04-25 | 10:04:17 | Tonya Schmidt | Case record accessed on Update Existing Case screen |
| 2018-04-25 | 17:35:24 | Lauren Hasselbacher | Summary case record viewed on Find Priors screen |
| 2018-04-25 | 17:35:29 | Lauren Hasselbacher | Case record accessed on Update Existing Case screen |
| 2018-04-29 | 08:54:57 | Argyle Wade | Summary case record viewed on Find Priors screen |
| 2018-04-29 | 08:54:58 | Argyle Wade | Case record accessed on Update Existing Case screen |
| 2018-04-29 | 09:06:30 | Argyle Wade | Summary case record viewed on Find Priors screen |
| 2018-04-29 | 09:06:32 | Argyle Wade | Case record accessed on Update Existing Case screen |
| 2018-04-29 | 09:06:49 | Argyle Wade | Database entry updated. INCIDENT_DESCRIPTION changed from reported she was sexually assaulted by a student athlete Quintez Chephus to reported she was sexually assaulted by a student athlete Quintez Cephus |
| 2018-04-30 | 11:13:20 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-04-30 | 17:50:51 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2018-04-30 | 17:50:53 | Lauren Hasselbacher | Case record accessed on Update Existing Case screen |
| 2018-05-01 | 13:10:47 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-05-03 | 11:51:24 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-05-03 | 13:50:03 | Lauren Hasselbacher | Summary case record viewed on Find Priors screen |
| 2018-05-03 | 13:50:05 | Lauren Hasselbacher | Case record accessed on Update Existing Case screen |

**Exhibit 114 p. 026**

| | | | |
|---|---|---|---|
| 2018-05-03 | 14:25:15 | Lauren Hasselbacher | Note #20176 created on Update Existing Case |
| 2018-05-04 | 15:16:28 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-05-04 | 15:16:36 | Kate Dougherty | Database entry updated. DEADLINE changed from 2018-05-01 to 2018-05-25 |
| 2018-05-09 | 08:37:20 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-05-18 | 11:41:08 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-05-18 | 11:42:56 | Kate Dougherty | Database entry updated. ASSIGNED_TO changed from DoSO 5 to Title IX Coordinator |
| 2018-05-18 | 11:42:56 | Kate Dougherty | Notification of case reassignment sent to Lauren Hasselbacher (lauren.hasselbacher@wisc.edu) |
| 2018-05-18 | 11:42:56 | Kate Dougherty | Note #20458 created on Update Existing Case |
| 2018-05-18 | 11:42:56 | Kate Dougherty | Ping sent to Lauren Hasselbacher (lauren.hasselbacher@wisc.edu) |
| 2018-05-21 | 10:40:44 | Argyle Wade | Summary case record viewed on Find Priors screen |
| 2018-05-21 | 10:43:42 | Lauren Hasselbacher | Summary case record viewed on Find Case screen |
| 2018-05-21 | 10:46:24 | Argyle Wade | Summary case record viewed on Find Priors screen |
| 2018-05-21 | 10:46:27 | Argyle Wade | Case record accessed on Update Existing Case screen |
| 2018-05-31 | 09:11:51 | Kathy Kruse | Summary case record viewed on Find Priors screen |
| 2018-07-02 | 10:30:53 | Lauren Hasselbacher | Summary case record viewed on Find Case screen |
| 2018-07-02 | 10:30:55 | Lauren Hasselbacher | Case record accessed on Update Existing Case screen |
| 2018-08-06 | 17:03:03 | Argyle Wade | Summary case record viewed on Find Priors screen |
| 2018-08-06 | 17:04:37 | Argyle Wade | Summary case record viewed on Find Priors screen |
| 2018-08-22 | 16:27:41 | Ervin Cox | Summary case record viewed on Find Priors screen |
| 2018-08-22 | 16:28:00 | Ervin Cox | Case record accessed on Update Existing Case screen |
| 2018-08-22 | 16:29:09 | Ervin Cox | Summary case record viewed on Find Priors screen |
| 2018-08-22 | 19:10:23 | Lauren Hasselbacher | Summary case record viewed on Find Case screen |
| 2018-08-22 | 19:10:30 | Lauren Hasselbacher | Summary case record viewed on Find Case screen |
| 2018-08-22 | 19:10:49 | Lauren Hasselbacher | Summary case record viewed on Find Case screen |
| 2018-08-23 | 07:28:50 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2018-08-23 | 07:28:52 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-08-23 | 07:30:06 | Kate Dougherty | Database entry updated. APPT_DATE changed from (no value set) to (no value set) |
| 2018-08-23 | 07:30:06 | Kate Dougherty | Note #20948 created on Update Existing Case |
| 2018-08-29 | 08:51:48 | Lauren Hasselbacher | Summary case record viewed on Find Case screen |
| 2018-08-29 | 08:51:51 | Lauren Hasselbacher | Case record accessed on Update Existing Case screen |
| 2018-09-04 | 15:32:30 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2018-09-04 | 15:32:34 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-09-05 | 13:34:00 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2018-09-06 | 15:11:18 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2018-09-06 | 15:11:20 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-09-06 | 15:14:06 | Kate Dougherty | Note #21058 created on Update Existing Case |
| 2018-09-06 | 15:14:13 | Kate Dougherty | Document #00167375 ROI- ▮▮▮▮ ▮▮▮▮.pdf added for entire case |
| 2018-09-06 | 15:33:03 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2018-09-07 | 09:04:41 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2018-09-07 | 09:04:42 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-09-07 | 09:05:28 | Kate Dougherty | Note #21074 created on Update Existing Case |
| 2018-09-07 | 09:05:32 | Kate Dougherty | Document #00167426 Dean of Students Office Notification Regarding a Student .msg added for entire case |
| 2018-10-09 | 10:21:23 | Ervin Cox | Summary case record viewed on Find Priors screen |
| 2018-10-09 | 10:21:26 | Ervin Cox | Case record accessed on Update Existing Case screen |
| 2018-10-09 | 12:30:25 | Ervin Cox | Summary case record viewed on Find Priors screen |
| 2018-10-16 | 06:47:34 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2018-10-16 | 15:52:11 | Nicholas Oleksy | Case record accessed on Update Existing Case screen |
| 2018-10-16 | 15:53:36 | Nicholas Oleksy | Export produced (including EFC objects) based on File ID |
| 2018-10-17 | 12:46:37 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2018-10-17 | 12:46:45 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2018-10-17 | 12:47:15 | Kate Dougherty | Note #21994 created on Update Existing Case |
| 2018-10-17 | 12:47:15 | Kate Dougherty | Document #00170927 Check In.msg added for entire case |
| 2019-01-04 | 10:02:23 | Ervin Cox | Summary case record viewed on Find Priors screen |
| 2019-01-29 | 16:32:34 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2019-01-29 | 16:32:37 | Tonya Schmidt | Case record accessed on Update Existing Case screen |
| 2019-01-31 | 08:46:35 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2019-01-31 | 08:46:37 | Tonya Schmidt | Case record accessed on Update Existing Case screen |
| 2019-01-31 | 08:46:55 | Tonya Schmidt | Document #00176678 Written Hearing Decision.htm added |
| 2019-02-04 | 07:57:45 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2019-02-04 | 07:57:47 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2019-02-04 | 07:59:37 | Kate Dougherty | Note #24441 created on Update Existing Case |
| 2019-02-04 | 07:59:37 | Kate Dougherty | Document #00176852 Dean of Students Office- Notification Regarding A Student .msg added for entire case |
| 2019-02-04 | 07:59:37 | Kate Dougherty | Database entry updated. Title IX Outreach and Resources tag added |
| 2019-02-04 | 07:59:37 | Kate Dougherty | Database entry updated. Title IX Academic Accommodation Requested and Provided tag added |
| 2019-02-11 | 10:17:11 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2019-02-11 | 10:17:13 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2019-02-11 | 10:17:41 | Kate Dougherty | Note #24567 created on Update Existing Case |
| 2019-02-13 | 07:42:28 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2019-02-13 | 07:42:29 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2019-02-13 | 07:44:58 | Kate Dougherty | Note #24633 created on Update Existing Case |
| 2019-02-13 | 07:44:58 | Kate Dougherty | Document #00177398 PERSONAL AND CONFIDENTIAL RE student in your class.msg added for entire case |
| 2019-02-13 | 10:02:24 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2019-02-13 | 10:02:25 | Tonya Schmidt | Case record accessed on Update Existing Case screen |
| 2019-02-13 | 10:02:42 | Tonya Schmidt | Note #24640 created on Update Existing Case |
| 2019-02-21 | 13:09:22 | Claire Allen | Summary case record viewed on Find Case screen |
| 2019-02-21 | 13:09:29 | Claire Allen | Case record accessed on Update Existing Case screen |
| 2019-03-12 | 13:16:09 | Claire Allen | Summary case record viewed on Find Case screen |
| 2019-03-12 | 13:16:13 | Claire Allen | Case record accessed on Update Existing Case screen |
| 2019-03-13 | 22:00:29 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2019-03-13 | 22:00:41 | Tonya Schmidt | Case record accessed on Update Existing Case screen |
| 2019-03-13 | 22:01:27 | Tonya Schmidt | Document #00179570 Re_ Notice of Appeal-▮▮▮▮.htm added |

**Exhibit 114 p. 027**

Confidential

BOR_018371

| | | | |
|---|---|---|---|
| 2019-03-13 | 22:01:28 | Tonya Schmidt | Document #00179571 03 13 19.pdf added |
| 2019-03-18 | 11:31:34 | Erin Strange | Summary case record viewed on Find Priors screen |
| 2019-03-18 | 11:31:41 | Erin Strange | Case record accessed on Update Existing Case screen |
| 2019-03-18 | 11:31:59 | Erin Strange | Database entry updated. ACCESS_RESTRICTION changed from 16 to 19 |
| 2019-07-25 | 10:09:33 | Ervin Cox | Summary case record viewed on Find Priors screen |
| 2019-08-08 | 19:46:06 | Argyle Wade | Summary case record viewed on Find Priors screen |
| 2019-08-08 | 19:46:19 | Argyle Wade | Case record accessed on Update Existing Case screen |
| 2019-08-12 | 10:05:28 | Lauren Hasselbacher | Summary case record viewed on Find Case screen |
| 2019-08-12 | 10:05:32 | Lauren Hasselbacher | Case record accessed on Update Existing Case screen |
| 2019-08-20 | 11:15:40 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2019-08-20 | 11:15:45 | Tonya Schmidt | Case record accessed on Update Existing Case screen |
| 2019-08-20 | 11:16:23 | Tonya Schmidt | Document #00184148 Mail - Tonya Schmidt - Outlook-email.notification.htm added |
| 2019-08-20 | 11:16:23 | Tonya Schmidt | Document #00184149 Chancellor Decision - QC Petition for Restoration - REDACTED Version for Complainants 8-19-2019.pdf added |
| 2019-09-11 | 13:17:04 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2019-09-11 | 13:17:08 | Tonya Schmidt | Case record accessed on Update Existing Case screen |
| 2021-11-10 | 07:29:10 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2021-11-10 | 07:29:41 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2021-11-10 | 07:29:44 | Kate Dougherty | Case record accessed on Update Existing Case screen |
| 2021-11-16 | 12:16:48 | Kate Dougherty | Summary case record viewed on Find Priors screen |
| 2021-11-16 | 12:41:51 | Tonya Schmidt | Summary case record viewed on Find Priors screen |
| 2021-11-16 | 12:41:59 | Tonya Schmidt | Case record accessed on Update Existing Case screen |
| 2021-11-16 | 17:01:15 | Lauren Hasselbacher | Summary case record viewed on Find Case screen |

**Exhibit 114 p. 028**

Confidential

BOR_018372

# Dean of Students Office- Notification Regarding A Student

**From:** Catherine Dougherty <catherine.dougherty@wisc.edu>
**To:** STEFFEN SILVIS <ssilvis@wisc.edu>; Lily Zyndorf Shell <lshell@wisc.edu>
**Cc:** ████████ ████████ ████ <i████@wisc.edu>
**Date:** Mon, 04 Feb 2019 07:43:27 -0600
**Attachments:** Academic Accommodations under Title IX.pdf (770.17 kB)

Hi Mr. Silvis,

My name is Kate Dougherty and I work in the Dean of Students Office, specifically with student assistance. ████████ (Campus ID: 9073573116) is a student enrolled in your class. ████ has been a victim of a sensitive crime. She is connected to resources and she is receiving the proper care and assistance she currently needs. We are working with her and campus partners to provide additional follow up and support. She has expressed to me that she is committed to being engaged in her course work this semester.

Please note that the next few weeks may be difficult for her and I recognize that academic standards are always the prerogative of each instructor. However, I ask for your understanding during this difficult time. Any assistance you can offer ████ will be greatly appreciated. Moreover, I have attached a letter from our Title IX Coordinator on campus, Lauren Hasselbacher which further details reasonable accommodations. Please contact me if you have any questions or concerns. This correspondence serves to open the door for her to have a conversation with you to ask for accommodations, as necessary.

Kate


Kate Dougherty
Dean of Students Office (DoSO)
Student Assistance Specialist
UW-Madison
70 Bascom Hall
608-263-5700
catherine.dougherty@wisc.edu


Top Five:
Achiever, Discipline, Learner, Competition, Includer

Concerned about a student? Report it here through the Student of Concern Report



**Exhibit 114 p. 029**
BOR_018373

# Message from Campus Title IX Coordinator

To Faculty and Instructors:

My name is Lauren Hasselbacher, and I am the UW-Madison Title IX Coordinator. You are receiving this letter because a student in your course or under your supervision has experienced sexual misconduct (which can include sexual harassment, sexual assault, dating violence or stalking) and is requesting an academic accommodation.

When we become aware that a student has experienced sexual misconduct, UW-Madison is obligated to comply with the student's request for academic accommodations when those accommodations are reasonably available. We do this to ensure that the student's educational experience is not negatively impacted as a result of the misconduct.

Accommodations can provide an alternate way for a student to meet essential course requirements and actively participate in the course while also allowing students to feel safe on campus and heal in the aftermath of a traumatic event(s). You may receive notice that a student has requested an accommodation through the Dean of Students Office, UHS Survivor Services, or the Title IX Program.

On the next page, you will find additional information and guidance on this topic, including an explanation as to why we offer accommodations in this context and what might be considered "reasonably available" in the context of attendance, meeting deadlines, extended time for and/or rescheduling of exams. It also describes student and instructor responsibilities.

In general, as you navigate this process please remember the following:

- Do not ask the student for details or specifics about the conduct they experienced.
- Trust that the sender of this letter has discussed safety needs with the student and provided the student other important resources on campus. This letter *alone* does not trigger any reporting obligations.
- Talking about this subject may be difficult or uncomfortable with the student; if you have technical questions about your obligations as an instructor, please direct them to the sender of the letter or to the Title IX Coordinator. You can then discuss details and specific expectations with your student.
- If the student's request(s) seems reasonable to you and you feel comfortable granting the accommodation without further discussion, you are not required to consult with anyone before granting the request.

If you have any questions about this document or attached guidance, please feel free to contact me at 608-890-3788 or lauren.hasselbacher@wisc.edu. If you have questions about a particular student's requests or needs, please contact the sender of the letter or email. Thank you for your assistance and cooperation.

Sincerely,

Lauren Hasselbacher
Title IX Coordinator

**Exhibit 114 p. 030**
BOR_018374

## *Why do we grant accommodations?*

Students who have experienced sexual misconduct may ask for accommodations for a variety of reasons.

- Safety
  - o Avoiding a particular person or place on campus
- Scheduling reasons
  - o A student may need to meet with law enforcement or attend meetings having to do with a criminal or university investigation
- Effects of trauma[1]
  - o Students who have experienced trauma(s) have symptoms that may interfere with their ability to achieve their educational goals. It is difficult to predict the onset of symptoms and how long they may last. Experiencing these symptoms may impede a student's academic success and ability to fully participate in the classroom.
  - o Symptoms may include, but are not limited to, the following:
    - Changes in thinking, feeling, relating, and functional behaviors
    - Diminished capacity to cope with the demands of daily life
    - Inability to concentrate and focus on the tasks at hand, slower recall and organization of information
    - Lack of energy; fatigue
    - Sleep and eating disturbances
    - Flashbacks (feelings of reliving the event), intrusive memories, and nightmares
    - Depression; anxiety
    - Hypervigilance

## *What does "reasonably available" mean?*

<u>Test accommodations</u>

Examples of some common test accommodations include extended time, testing alone or in a small group. Accommodations might include an alternative test date or test format.

- *Extended time* may be appropriate for a student who is having difficulty focusing.
- *Testing alone or in a small group* may be appropriate for students who are having difficulty with concentration or who want to avoid a particular student or space during the exam period.
- *Alternative test dates*: may be appropriate when a scheduling conflict occurs (related to their report of misconduct to law enforcement or the university) or when a student experiences an unanticipated impact from a traumatic experience. Students are expected to take exams within a reasonable amount of time from the original test date and to notify the instructor of this request in a timely manner.

---

[1] Information about the effects of trauma provided by UHS Survivor Services.

**Exhibit 114 p. 031**
BOR_018375

Attendance

Generally, students are expected to follow established course attendance policies. However, in this situation, an accommodation to flex the attendance policy may be appropriate. Instructors are encouraged to work directly with the student to find a flexible way for the student to meet course requirements. The following are some guidelines instructors can use when determining whether attendance is an essential function of the course:

1. How much classroom interaction is there between the instructor and students, and among students?
2. Do in-class student contributions constitute a significant component of the learning process?
3. Does the fundamental nature of the course rely upon student participation as an essential method for learning, e.g. foreign language?
4. To what degree does a student's absence constitute a significant loss to the educational experience of other students in the class?
5. How is attendance calculated in the final grade?
6. What is the classroom policy regarding attendance?

Due date/deadline extensions and missed exams

Students may request a due date extension or to reschedule an exam. Professors and students are strongly encouraged to proactively discuss the possibility of the student requesting an extension and/or rescheduling an exam. Items to discuss include:

- How and when the student will notify their instructor
- How the student will make up missed content
- The time frame/deadline for completion

Graduate & Professional Students

Graduate and professional students may have very different types of requests, depending on their program. Please speak with the student about what types of accommodations they are requesting. If you are unsure if you are willing or able to provide what is requested, please contact the sender of this letter or the Title IX Coordinator.

## *Who is ultimately responsible?*

Student Responsibilities
- Meet with instructor as soon as possible to discuss potential accommodations.
- Communicate with instructor regularly throughout the semester to keep them apprised of changes and confirm expectations of the course.

Instructor Responsibilities
- Be available to discuss potential accommodations with the student/representative.
- Discuss how you expect the student to communicate with you when a class will be missed or a postponement is being requested, and the guidelines/deadlines for making up missed work.
- Respect and uphold student privacy to the extent that you are able.
- Keep in mind that each student is different and will have differing needs. Let the student guide you on how you can best support them.

Reply |
Delete
Junk |

## Re: Notice of Appeal

**MM**

Matthew Mayrl

Reply |
Today, 12:39 PM

██████  ██████  ██████;
Amy Bogost
...

Inbox
Inbox

[x]

03 13 19.pdf 2 MB

Show all 1 attachments (2 MB) Download
Save to OneDrive - UW-Madison Report Spam

Dear Ms. ████,

Please find attached here the appeal decision in your non-academic misconduct matter.

Sincerely,
Matt


--

Matthew Mayrl
Chief of Staff
Office of the Chancellor
University of Wisconsin-Madison


**From:** Matt Mayrl <matthew.mayrl@wisc.edu>
**Date:** Wednesday, February 13, 2019 at 8:25 PM
**To:** ██████ ██████ ████ <i████@wisc.edu>
**Cc:** Amy Bogost <abogost@gmail.com>
**Subject:** Notice of Appeal

**Exhibit 114 p. 033**
Confidential                                    BOR_018377

Ms. ███,

I am writing to inform you that the Chancellor's office received the attached timely appeal from the respondent in the non-academic misconduct matter in which you are a complainant. The standards and procedures for processing the appeal to the Chancellor are found in UWS Chapter 17.13. This notice is provided as required under UWS 17.13 and there is no action that you need to take. Chancellor Blank is required to review the decision based on the record and issue her decision within 30 days of receipt of the appeal.

We will communicate the Chancellor's decision no later than March 14. Thank you.

Sincerely,
Matt

--

Matthew Mayrl
Chief of Staff
Office of the Chancellor
University of Wisconsin-Madison

**Exhibit 114 p. 034**

Confidential                                                                                                    BOR_018378

# Dean of Students Office Notification Regarding a Student

**From:** Catherine Dougherty <"/o=exchangelabs/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=7bb7a1e278f74d5ebc0e3b8d153dbf5b-cdougherty2">

**To:** BRADLEY S SINGER <bsinger@geology.wisc.edu>; SHAUN MARCOTT <smarcott@wisc.edu>

**Cc:** ██████ ██████ ██████ <i██ @wisc.edu>

**Date:** Fri, 07 Sep 2018 08:57:59 -0500

**Attachments:** Academic Accommodations under Title IX.pdf (770.17 kB)

Hi Professor Singer and Professor Marcott,

My name is Kate Dougherty and I work in the Dean of Students Office, specifically with student assistance. ██████ ██████ (Campus ID: 9073573116) is a student enrolled in your class. ██████ has been a victim of a sensitive crime. She is connected to resources and she is receiving the proper care and assistance she currently needs. We are working with her and campus partners to provide additional follow up and support. She has expressed to me that she is committed to being engaged in her course work this semester.

I recognize that academic standards are always the prerogative of each instructor. However, I ask for your understanding during this difficult time. Any assistance you can offer ██████ will be greatly appreciated. Moreover, I have attached a letter from our Title IX Coordinator on campus, Lauren Hasselbacher which further details reasonable accommodations. Please contact me if you have any questions or concerns. This correspondence serves to open the door for her to have a conversation with you to ask for accommodations, as necessary.

Thank you,

Kate


Kate Dougherty
Dean of Students Office (DoSO)
Student Assistance Specialist
UW-Madison
70 Bascom Hall
608-263-5700
catherine.dougherty@wisc.edu


Top Five:
Achiever, Discipline, Learner, Competition, Includer

Concerned about a student? Report it here through the Student of Concern Report



Confidential

**Exhibit 114 p. 035**
BOR_018379

# Message from Campus Title IX Coordinator

To Faculty and Instructors:

My name is Lauren Hasselbacher, and I am the UW-Madison Title IX Coordinator. You are receiving this letter because a student in your course or under your supervision has experienced sexual misconduct (which can include sexual harassment, sexual assault, dating violence or stalking) and is requesting an academic accommodation.

When we become aware that a student has experienced sexual misconduct, UW-Madison is obligated to comply with the student's request for academic accommodations when those accommodations are reasonably available. We do this to ensure that the student's educational experience is not negatively impacted as a result of the misconduct.

Accommodations can provide an alternate way for a student to meet essential course requirements and actively participate in the course while also allowing students to feel safe on campus and heal in the aftermath of a traumatic event(s). You may receive notice that a student has requested an accommodation through the Dean of Students Office, UHS Survivor Services, or the Title IX Program.

On the next page, you will find additional information and guidance on this topic, including an explanation as to why we offer accommodations in this context and what might be considered "reasonably available" in the context of attendance, meeting deadlines, extended time for and/or rescheduling of exams. It also describes student and instructor responsibilities.

In general, as you navigate this process please remember the following:

- Do not ask the student for details or specifics about the conduct they experienced.
- Trust that the sender of this letter has discussed safety needs with the student and provided the student other important resources on campus. This letter *alone* does not trigger any reporting obligations.
- Talking about this subject may be difficult or uncomfortable with the student; if you have technical questions about your obligations as an instructor, please direct them to the sender of the letter or to the Title IX Coordinator. You can then discuss details and specific expectations with your student.
- If the student's request(s) seems reasonable to you and you feel comfortable granting the accommodation without further discussion, you are not required to consult with anyone before granting the request.

If you have any questions about this document or attached guidance, please feel free to contact me at 608-890-3788 or lauren.hasselbacher@wisc.edu. If you have questions about a particular student's requests or needs, please contact the sender of the letter or email. Thank you for your assistance and cooperation.

Sincerely,

Lauren Hasselbacher
Title IX Coordinator

**Exhibit 114 p. 036**

BOR_018380

## *Why do we grant accommodations?*

Students who have experienced sexual misconduct may ask for accommodations for a variety of reasons.

- Safety
  - o Avoiding a particular person or place on campus
- Scheduling reasons
  - o A student may need to meet with law enforcement or attend meetings having to do with a criminal or university investigation
- Effects of trauma[1]
  - o Students who have experienced trauma(s) have symptoms that may interfere with their ability to achieve their educational goals. It is difficult to predict the onset of symptoms and how long they may last. Experiencing these symptoms may impede a student's academic success and ability to fully participate in the classroom.
  - o Symptoms may include, but are not limited to, the following:
    - Changes in thinking, feeling, relating, and functional behaviors
    - Diminished capacity to cope with the demands of daily life
    - Inability to concentrate and focus on the tasks at hand, slower recall and organization of information
    - Lack of energy; fatigue
    - Sleep and eating disturbances
    - Flashbacks (feelings of reliving the event), intrusive memories, and nightmares
    - Depression; anxiety
    - Hypervigilance

## *What does "reasonably available" mean?*

Test accommodations

Examples of some common test accommodations include extended time, testing alone or in a small group. Accommodations might include an alternative test date or test format.

- *Extended time* may be appropriate for a student who is having difficulty focusing.
- *Testing alone or in a small group* may be appropriate for students who are having difficulty with concentration or who want to avoid a particular student or space during the exam period.
- *Alternative test dates*: may be appropriate when a scheduling conflict occurs (related to their report of misconduct to law enforcement or the university) or when a student experiences an unanticipated impact from a traumatic experience. Students are expected to take exams within a reasonable amount of time from the original test date and to notify the instructor of this request in a timely manner.

---

[1] Information about the effects of trauma provided by UHS Survivor Services.

**Exhibit 114 p. 037**
BOR_018381

Attendance

Generally, students are expected to follow established course attendance policies. However, in this situation, an accommodation to flex the attendance policy may be appropriate. Instructors are encouraged to work directly with the student to find a flexible way for the student to meet course requirements. The following are some guidelines instructors can use when determining whether attendance is an essential function of the course:

1. How much classroom interaction is there between the instructor and students, and among students?
2. Do in-class student contributions constitute a significant component of the learning process?
3. Does the fundamental nature of the course rely upon student participation as an essential method for learning, e.g. foreign language?
4. To what degree does a student's absence constitute a significant loss to the educational experience of other students in the class?
5. How is attendance calculated in the final grade?
6. What is the classroom policy regarding attendance?

Due date/deadline extensions and missed exams

Students may request a due date extension or to reschedule an exam. Professors and students are strongly encouraged to proactively discuss the possibility of the student requesting an extension and/or rescheduling an exam. Items to discuss include:

- How and when the student will notify their instructor
- How the student will make up missed content
- The time frame/deadline for completion

Graduate & Professional Students

Graduate and professional students may have very different types of requests, depending on their program. Please speak with the student about what types of accommodations they are requesting. If you are unsure if you are willing or able to provide what is requested, please contact the sender of this letter or the Title IX Coordinator.

## *Who is ultimately responsible?*

Student Responsibilities
- Meet with instructor as soon as possible to discuss potential accommodations.
- Communicate with instructor regularly throughout the semester to keep them apprised of changes and confirm expectations of the course.

Instructor Responsibilities
- Be available to discuss potential accommodations with the student/representative.
- Discuss how you expect the student to communicate with you when a class will be missed or a postponement is being requested, and the guidelines/deadlines for making up missed work.
- Respect and uphold student privacy to the extent that you are able.
- Keep in mind that each student is different and will have differing needs. Let the student guide you on how you can best support them.

**Exhibit 114 p. 038**
BOR_018382



WISCONSIN
UNIVERSITY OF WISCONSIN–MADISON

**Chancellor's Decision**
**Regarding Quintez Cephus**
**Petition for Restoration of Rights**
**August 19, 2019**

I.  **Background**

Chapter 17 of the University of Wisconsin System Administrative Code (UWS 17) governs
non-academic misconduct on the University of Wisconsin-Madison campus. Section 17.18
authorizes a student who has been expelled from the University to petition the chancellor for
the right to apply for readmission. On August 6, 2019, attorneys representing Quintez Cephus
(Petitioner) filed a Petition for Restoration of Rights on his behalf seeking his readmission to
the University of Wisconsin-Madison.  Per UWS 17.18, as Chancellor of the University of
Wisconsin-Madison, I am charged with making the readmission decision.

The Petitioner seeks readmission following his expulsion from the university related to a
finding of non-academic misconduct. The University received reports that the Petitioner
sexually assaulted two fellow students (Complainants). The allegations were investigated by
the University's Title IX Coordinator, who issued the Final Investigative Report on October 9,
2018. Following receipt of the Title IX Coordinator's Report and an opportunity to review the
Title IX Coordinator's investigative file, the investigating officer from the University's Office
of Student Conduct and Community Standards issued a letter dated October 30, 2018
charging the Petitioner with numerous violations of the University's non-academic
misconduct code and recommending a sanction of University Disciplinary Expulsion.

UWS 17.11(4)(c)2 requires that a hearing be held in cases involving the sanction of expulsion
unless a respondent waives the right to the hearing. The Petitioner did not waive his right to
hearing in this case and, as such, a hearing was held January 15, 2019. The parties were

Chancellor Rebecca M. Blank
**Morgridge Friends Distinguished Chair of Leadership**
Bascom Hall   University of Wisconsin–Madison   500 Lincoln Drive   Madison, Wisconsin 53706
608-262-8967   Fax: 608-262-8333   TTY 608-263-2473

**Exhibit 114 p. 039**

Confidential                                                                            BOR_018383

informed of the Committee's decision via email following its deliberations on January 15, 2019. A written decision outlining the Committee's rationale was emailed to the parties on January 29, 2019. The Committee unanimously concluded that a preponderance of evidence (more likely than not) existed to find the Petitioner responsible for violating the following provisions of the non-academic misconduct code:

For Complainant 1: 17.09(2) Sexual Assault Third Degree and 17.09(19) Sexual Harassment
For Complainant 2: 17.09(2) Sexual Assault Third Degree and 17.09(19) Sexual Harassment

The Committee also upheld the recommended sanction of expulsion. On January 30, 2019, the Petitioner appealed the Committee's decision to me as provided for in UWS 17.13. I issued a decision on March 13, 2019 upholding the Committee's findings and sanction. On March 13, 2019, the Petitioner requested that the Board of Regents review my decision. The Board of Regents released its decision and order on June 7, 2019 denying the Petitioner's request and upholding my decision.

I think it is important to note that all of these actions followed the guidelines established by Title IX and UWS 17. They were in accordance with appropriate procedures; given the information available, the University acted appropriately. The provision of additional information leading to the decision outlined below does not indicate any mistakes in this earlier procedure.

The Petitioner was also charged criminally for sexual assault against both Complainants. Following a not guilty verdict by a jury on August 2, 2019, the Petitioner filed this Petition for Restoration on August 6. The Petitioner asserts that the non-academic misconduct findings and expulsion must be vacated and his request for readmission be granted based on the recent jury verdict in his favor. The petition consists of a written summary of select pieces of evidence from the trial and several attachments including the jury verdicts, media accounts, credentials for certain expert witnesses, select pages of a medical exam of one Complainant, transcript of a video deposition for one witness, a brief excerpt of a portion of cross examination of one Complainant at trial, select text messages, defense and prosecution

2

**Exhibit 114 p. 040**

Confidential

BOR_018384

investigator interviews with two witnesses, transcript of police interview of one Complainant at hospital, weather data, and multiple prepared video clips. At the University's request, the Petitioner's counsel provided lists of the witnesses who testified at the criminal trial and independently offered notes of closing arguments at trial for one of Petitioner's counsel. Petitioner's counsel subsequently offered a letter they previously provided to the District Attorney's office regarding the Petitioner's background, as well as to two affidavits from an expert witness who did not participate in the trial. Petitioner and his counsel declined to provide other requested information for the review of the petition. The University independently sought additional information that it understood was available at the trial or subject to release upon the trial's conclusion. Despite numerous attempts to obtain a wide variety of materials related to the trial, not all information requested was available for review in a timely manner.

II.     **Decision and Analysis**

Pursuant to the University's non-academic misconduct code, the burden of proof in university disciplinary proceedings for sexual assault and sexual harassment is "a preponderance of the evidence." UWS 17.12(4)(f)3. This is a lower burden of proof than the "beyond a reasonable doubt standard" applicable in criminal trials, which is appropriate given the different liberty interests at stake in the two types of proceedings. Accordingly, acquittal in the criminal proceeding is not, by itself, a basis for vacating the University's disciplinary findings and sanctions; I must assess the available information.

Substantial amounts of information were not made available to the University during the University's Title IX investigation and disciplinary proceedings, including information available to and under the Petitioner's control. As UW-Madison officials explained throughout the disciplinary process, the University is legally required to move forward with its disciplinary proceedings even if there is an ongoing criminal case involving the same conduct. Courts have repeatedly held that this does not violate due process or the Fifth Amendment's privilege against self-incrimination. *See e.g., Roe v. Director, Miami University, Office of Community Standards*, 2019 WL 1439585 (S.D. Ohio April 1, 2019); *DOE v. DiStefano*, 2019 WL 2372685 (D. Colo. June 5, 2019).

3

**Exhibit 114 p. 041**

Confidential                                                                        BOR_018385

In evaluating the petition, I reviewed the following materials to which the University obtained access: (1) the University's investigatory and hearing record; (2) the materials submitted with the Petition for Restoration and by Petitioner's counsel thereafter; and (3) available police reports. After conducting a thorough review of the available information, I have concluded that the newly supplied information affects the University's prior findings in this matter related to third-degree sexual assault, but not sexual harassment. A review of the available police reports, separate witness statements obtained through interviews with the University's investigators, and video clips supports a conclusion that 1) the Complainants were consistently reported as having consumed alcohol; 2) the Petitioner did not consume any alcohol; 3) witness descriptions of the Complainants' levels of intoxication ranged from "drunk", "very drunk", "buzzed", "tipsy", "hammered", "drunk but acting normal" and "blacked out"; 3) the Complainants were also consistently described by nearly all of the same witnesses, as well as viewed in video evidence, as not exhibiting outward signs of incapacitation such as slurred speech or difficulty walking or standing; and 4) there is great divide in the accounts of the activities that occurred in the Petitioner's apartment and bedroom. The University's ability to assess credibility of witnesses during the initial investigation was impacted by the refusal of numerous individuals with relevant information to participate in the University's process. In addition, the recent receipt of police reports highlights the incompleteness of certain witness statements provided to the University during its investigatory process even though the witnesses could have provided the full information to the University.

The level of ambiguity created by these conflicting accounts is, practically speaking, incapable of resolution. As a result, the evidence falls short of the preponderance of the evidence standard required to find the Petitioner responsible for sexual assault.

That said, I maintain that the information made available at the time to the Title IX investigator, the Hearing Committee, me, and the Board of Regents during the disciplinary process amply supported both findings of sexual assault. The fact that more information available at a later date calls this finding into question does not invalidate the conclusions reached based on available information during the initial disciplinary process. In addition, I

4

**Exhibit 114 p. 042**

Confidential

BOR_018386

affirm the University's decision to follow federal law by proceeding with available information notwithstanding the pending criminal process. It is particularly disappointing that certain individuals with relevant information testified at trial but refused to participate in the University's process even when they were not subject to any criminal prosecution.

I do not make the decision lightly to reverse the sexual assault charges. I am painfully aware of the challenges that complainants face in reporting sexual violence and the additional difficulty of participating in court and administrative proceedings and establishing evidence sufficient to meet the various burdens of proof to hold respondents accountable. My decision in no way suggests that the Complainants in this matter were not telling the truth as they perceived it. The decision simply indicates that the additional information creates a level of ambiguity that precludes a finding of responsibility for third-degree sexual assault.

As noted above, I do not reverse the University's prior findings of responsibility of Petitioner for sexual harassment. Following Petitioner's original denial to police, the Petitioner eventually admitted in a police interview and at trial that he took steps to document his sexual interaction with the Complainants, including enlisting the assistance of a friend to photograph the women in a vulnerable state and without their consent. Both Complainants were in a vulnerable state and the University's investigation concluded that one of the Complainants was in a state of undress when photographed at the Petitioner's direction. The police report of the interview with the witness who was the photographer confirmed that one Complainant was nude from the waist down when photographed.

The Petitioner's instigation of photographing the women in his bedroom, including one in a state of undress, without their consent represents behavior that violates the non-academic misconduct code prohibiting sexual harassment as defined in Board of Regent policies and the UW-Madison Policy on Sexual Harassment and Sexual Violence. The Petitioner's conduct had the effect of creating a hostile environment for Complainants as defined in the UW-Madison Policy on Sexual Harassment and Sexual Violence. Photographing without consent the women with whom he had just had sex, including one nude from the waist down, for the sole purpose of documenting the sexual interaction constitutes conduct of a sexual nature. By

5

**Exhibit 114 p. 043**

Confidential

initiating that action, the Petitioner is responsible for the impact of that decision. Taking a photo in the situation as described, even if the photo was deleted, was an invasion of privacy and is hostile, intimidating, and offensive. This type of behavior can have continuing effects on the educational environment for the impacted Complainants.

Notwithstanding my decision to vacate the finding of third-degree sexual assault, the Petitioner's behavior associated with the intact findings of sexual harassment is incompatible with the expectations of students at the University. This suggests that some University disciplinary action is appropriate. Hence, I reduce the sanction from expulsion to University Disciplinary Suspension from the effective date of the Chancellor's Appeal decision (March 13, 2019) through August 19, 2019.



Confidential

**Exhibit 114 p. 044**

BOR_018388



Specifically, I am directing that:

1. The two separate findings of responsibility of Petitioner for third-degree sexual assault are vacated.
2. The two separate findings of responsibility of Petitioner for sexual harassment remain intact.
3. The expulsion sanction imposed on the Petitioner is vacated and replaced with University Disciplinary Suspension effective March 13, 2019 through August 19, 2019.
4. Petitioner is readmitted to the University of Wisconsin-Madison effective August 19, 2019.
5. The no-contact directives issued to the Petitioner prohibiting contact with the Complainants remain in effect.

Finally, let me be clear that this judgment is rendered without regard to the Petitioner's past status as a student athlete. This decision readmits him as a student at the University. His future status as a student athlete depends upon actions by the NCAA and any other applicable governing bodies to readmit him to that status and is not the subject of this letter.

Dated this 19th day of August 2019,

by: _Rebecca Blank_

Rebecca M. Blank, Chancellor

7

Confidential

**Exhibit 114 p. 045**

BOR_018389

*ï¥º*
Reply
*îœ*
*i*
Delete
*îœ³*
Junk
Block
*îœ'*

## FW: Notice of Decision - Petition for Restoration of Student Rights

CO

*i£¡*
*ï¥º*
*i¸Š*
*îœª*
*îœ'*

**CHRISTINA MARIE OLSTAD**

Tue 8/20/2019 11:12 AM

Tonya Schmidt

*i*

Chancellor Decision - QC Petition for Restoration - REDACTED Version for
Complainants 8-19-2019.pdf
4 MB



**Christina Olstad, EdD**
Dean of Students
She/her/hers
University of Wisconsin-Madison
70 Bascom Hall | 500 Lincoln Drive | Madison, WI 53706 | (608) 263-5700
https://students.wisc.edu/

**From:** Office of the Chancellor <chancellor@wisc.edu>
**Sent:** Monday, August 19, 2019 9:34 AM
**To:** Nancy Lynch <nancy.lynch@wisc.edu>; CHRISTINA MARIE OLSTAD
<colstad2@wisc.edu>
**Subject:** FW: Notice of Decision - Petition for Restoration of Student Rights



**Exhibit 114 p. 046**

Confidential

**From:** Office of the Chancellor <chancellor@wisc.edu>
**Date:** Monday, August 19, 2019 at 9:31 AM
**To:** ██████████ ████████ ██████ <██████@wisc.edu>
**Cc:** Amy Bogost <abogost@gmail.com>
**Subject:** Notice of Decision - Petition for Restoration of Student Rights

Dear Ms. ██████,

Please find attached here the notice of decision regarding the petition for restoration of student rights, related to your non-academic misconduct matter. You are receiving a redacted version reflecting only the information to which you are entitled. This serves as the notice required to complainants regarding any change to the disciplinary outcome under UWS 17.18.

Sincerely,

Office of the Chancellor

**Exhibit 114 p. 047**

BOR_018391

Confidential



THE UNIVERSITY
*of*
WISCONSIN
M A D I S O N

Authorization for Release of Student Information

TO: Dean of Students Office, University of Wisconsin-Madison

Please provide information from the educational records of _____ [Name of Student requesting the release of educational records]

to: _____Amy Bogost_____ [Name(s) of person to whom the educational records will be released, and if appropriate the relationship to the student such as "parents" or "prospective employer" or "attorney"]. (Note: this Consent does not cover medical records held solely by Student Health Services or the Counseling Center – contact those offices for consent forms.)

The only type of information that is to be released under this consent is:

_____ transcript

_____ disciplinary records

_____ recommendations for employment or admission to other schools

__X__ all records

_____ other (specify) _____

The information is to be released for the following purpose:

__X__ family communications about university experience

_____ employment

_____ admission to an educational institution

__X__ other (specify) _____accommodations_____

I understand the information may be released orally or in the form of copies of written records, as preferred by the requester. I have a right to inspect any written records released pursuant to this Consent (except for parents' financial records and certain letters of recommendation for which the student waived inspection rights). I understand I may revoke this Consent upon providing written notice to [Name of Person listed above as the University Official permitted to release the educational records]. I further understand that until this revocation is made, this consent shall remain in effect and my educational records will continue to be provided to [Name of Person listed above to whom the educational records will be released] for the specific purpose described above.

Name (print)_____ Signature_____

Student ID Number __907-357 3116__ Date ____4/6/18_____

**Exhibit 114 p. 048**

Confidential

## Check in

**From:** Catherine Dougherty <"/o=exchangelabs/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=7bb7a1e278f74d5ebc0e3b8d153dbf5b-cdougherty2">

**To:** ████████ ████████ ████ <i████ @wisc.edu>

**Date:** Wed, 17 Oct 2018 12:41:40 -0500

Hi ████ ,

I know that we are about midway through the semester and I wanted to check in to see how things are going.  I know that you are connected to support but please know that I am here as well if you need anything.

Kate


Kate Dougherty
Dean of Students Office (DoSO)
Student Assistance Specialist
UW-Madison
70 Bascom Hall
608-263-5700
catherine.dougherty@wisc.edu


Top Five:
Achiever, Discipline, Learner, Competition, Includer

Concerned about a student? Report it here through the Student of Concern Report



**Exhibit 114 p. 049**

Confidential

BOR_018393

Reply |
Delete
Junk |

# Written Hearing Decision

Tonya Schmidt



Reply |
Tue 1/29, 4:33 PM

████████  ████████  ████████;

Amy Bogost

...
Sent Items
Sent Items

📄

Q Cephus Decision.pdf 122 KB

Show all 1 attachments (122 KB) Download
Save to OneDrive - UW-Madison  Report Spam

Dear ████████,

Attached is the written hearing decision from the non academic misconduct committee.
Please let me know if you have any questions.

Sincerely,

Tonya Schmidt
Assistant Dean, Director of Student Conduct and Community Standards
Division of Student Life
70 Bascom Hall
500 Lincoln Dr
Madison, WI 53706
(608) 263-5700
Pronouns: She/Her/Hers

**Exhibit 114 p. 050**

Confidential