## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

**JANE DOE**,                                      Case No.: 3:20-CV-dinin00856 - WMC

     Plaintiff,

v.

**BOARD OF REGENTS, THE**
**UNIVERSITY OF WISCONSIN**.

     Defendants.

## PLAINTIFF JANE DOE'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

SUMMARY OF UNDISPUTED FACTS ........................................................................... 2

STANDARD OF LAW ...................................................................................................... 5

ARGUMENT ..................................................................................................................... 6

I.    Allowing UW Football Player 1 a One-Party Fact-Finding Proceeding Constituted an
      Erroneous Outcome in Violation of Title IX ........................................................... 7

      A.    Where the UW football player had one sided access to a readmission process,
            Plaintiff has shown an articulable doubt as to the accuracy of the findings in the
            Restoration Decision. ..................................................................................... 8

      B.    Gender bias in favor of the men's football team was indisputably a motivating factor
            behind the erroneous outcome. ..................................................................... 14

      C.    Conclusion ................................................................................................... 17

II.   UW's One-Party Retrial of A Disciplinary Outcome Constitutes Deliberate Indifference to
      Sexual Harassment .............................................................................................. 17

      D.    UW exercised control over the harasser and context in which plaintiff's harassment
            occurred ....................................................................................................... 18

      E.    UW had actual knowledge of the gender-based harassment Plaintiff experienced. ... 19

      F.    Excluding Plaintiff from participation in what amounts to a retrial constitutes
            deliberate indifference. ................................................................................. 20

      G.    UW's deliberate indifference made Plaintiff more vulnerable to gender-based
            harassment .................................................................................................... 22

      H.    The harassment of going to school with her assailant deprived Plaintiff of educational
            opportunities ................................................................................................ 24

CONCLUSION ............................................................................................................... 26

## Cases

*Albiez v. Kaminski*, No. 09-CV-1127, 2010 WL 2465502 (E.D. Wis. June 14, 2010)................ 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................... 5

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) .. 6, 18, 20, 24

*DeGroote v. Arizona Bd. of Regents*, No. CV-18-00310-PHX-SRB, 2020 WL 10357074 (D. Ariz. Feb. 7, 2020) ......................................................................................................................... 6

*Doe 1 v. Howard Univ.*, 396 F.Supp.3d 126 (D.D.C. 2019)......................................................... 23

*Doe 4 v. Freeburg Cmty. Consol. Sch. Dist. No. 70*, 279 F.Supp.3d 807 (S.D. Ill. 2017) 6, 20, 21, 22

*Doe ex rel. Doe v. Coventry Bd. of Educ.*, 630 F.Supp.2d 226 (D. Conn. 2009) ......................... 24

*Doe v. Columbia Coll. Chicago*, 299 F.Supp.3d 939 (N.D. Ill. 2017), *aff'd*, 933 F.3d 849 (7th Cir. 2019)........................................................................................................................................... 8

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016)......................................................... 9, 14, 15

*Doe v. Derby Bd. of Educ.*, 451 F.Supp.2d 438 (D. Conn. 2006)........................................... 18, 23

*Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257 (4th Cir. 2021) ............................................................. 22

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018)......................................................................... 13

*Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) ........................................................... 7, 10, 20

*Doe v. St. Francis. Sch. Dist.*, 694 F.3d 869 (7th Cir. 2012) ........................................................ 18

*Doe v. Trs. of Boston College*, 892 F.3d 67 (1st Cir. 2018) ........................................................... 7

*Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015).............................................................................................................................................. 8, 9

*Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507 (7th Cir. 2010).............. 18

*Farmer v. Kansas State Univ.*, 918 F.3d 1094 (10th Cir. 2019)............................................... 22, 24

*Ford Motor Credit Co. v. Devalk Lincoln-Mercury, Inc.*, 600 F.Supp. 1547 (N.D. Ill. 1985)....... 5

*Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist.* 163, 315 F.3d 817 (7th Cir. 2003) 19

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ...................................................... 22

*Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 729 (1975) ...................................................................... 11

*Hill v. Cundiff*, 797 F.3d 948 (11th Cir. 2015) ............................................................................ 22

*In re Echelbarger*, 600 B.R. 39 (Bankr. S.D. Ind. 2019)................................................................ 5

*Joyce v. Wright State Univ.*, No. 3:17-cv-387, 2018 WL 3009105 (S.D. Ohio June 15, 2018).. 22, 25

*Kelly v. Yale Univ.*, No. Civ.A. 3:01-CV-1591, 2003 WL 1563424 (D. Conn. Mar. 26, 2003) .. 23

*Kirk v. Home Indemnity Co.*, 431 F.2d 554 (7th Cir. 1970) ........................................................... 5

*L.E. v. Lakeland Joint Sch. Dist. #272*, 403 F.Supp.3d 888 (D. Idaho 2019)........................ 18, 19

*Landon ex rel. Munici v. Oswego Unit Sch. Dist. #308*, No. 00 C 1803, 2001 WL 649560 (N.D. Ill. June 8, 2001).............................................................................................................................. 20

*Lozano v. Baylor Univ.*, 408 Supp.3d 861 (W.D. Tex. 2019) ...................................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...................................... 5

*Menaker v. Hofstra Univ.*, 935 F.3d 20 (2d Cir. 2019)................................................................. 15

*Pogorzelska v. VanderCook Coll. of Music*, 442 F.Supp.3d 1054 (N.D. Ill. 2020)............... 20, 22

*Wells v. Xavier Univ.*, 7 F.Supp.3d 746 (S.D. Ohio 2014) ..................................................... 11, 20

*Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994)................................................................. 6, 7, 8

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................................... 1, 5

Plaintiff Jane Doe, pursuant to Fed. R. Civ. P. 56, moves for summary judgment as to her Erroneous Outcome and Deliberate Indifference Claims against Defendant University of Wisconsin ("UW"), and states as follows:

## INTRODUCTION

## SUMMARY OF UNDISPUTED FACTS

Plaintiff incorporates herein by reference and summarizes here her separately-filed

Plaintiff's Proposed Findings of Fact (hereinafter "PPFF").

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

## STANDARD OF LAW

Summary judgment is appropriate as a matter of law where there are no material facts in dispute. Fed. R. Civ. P. 56(a). Only factual disputes that may "affect the outcome of the suit under the governing law will preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the record cannot "lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Summary judgment may allow a court to streamline the trial process as to certain claims where there is no genuine issue as to any material fact. *In re Echelbarger*, 600 B.R. 39, 45 (Bankr. S.D. Ind. 2019). Given the "ever-increasing burden upon the judiciary," courts in the Seventh Circuit rely on summary judgment procedures to promote judicial economy, and they should not, therefore, "strain to find the existence of a genuine issue where none exists." *Ford Motor Credit Co. v. Devalk Lincoln-Mercury, Inc.*, 600 F. Supp. 1547, 1549 (N.D. Ill. 1985), citing *Kirk v. Home Indemnity Co*., 431 F.2d 554, 559–60 (7th Cir. 1970).

5

## ARGUMENT

At UW, as perhaps it is true on many college campuses, football is king.  As Chancellor Blank testified, the school football program brings in 60-70 million dollars per year and the University profits from the program. PPFF ¶ 148. It is the only sport that Chancellor Blank attends regularly, where she has a personal, climate-controlled suite to host UW donors, members of the Board of Regents and other individuals. PPFF ¶¶ 151-154. Likewise, UW attorney Raymond Taffora testified that it is the only sport where his attendance is sometimes required. PPFF ¶ 195. The head football coach is the highest paid school employee (if not state employee) now making over 5 million dollars per year, and even UW assistant football coaches collect higher salaries than the Chancellor herself. PPFF ¶¶ 149-150. Player 1 was a star member of this program. PPFF ¶ 10.

Undisputed facts show that UW's decision to jettison its own Title IX disciplinary procedure and to supplant it with an exclusively one-sided and fundamentally unfair decision, was patently motivated at least in part by gender bias favoring a star player for the UW men's football team.  This is discrimination based on gender.  *Yusuf v. Vassar College,* 35 F.3d 709, 715-16 (2nd Cir. 1994). Further, UW's one-sided process constituted deliberate indifference to known sexual harassment that was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities and benefits.  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). The undisputed facts here are so compelling that summary judgment is warranted. *Doe 4 v. Freeburg Cmty. Consol. Sch. Dist. No. 70*, 279 F. Supp. 3d 807, 813-15 (S.D. Ill. 2017) (Summary judgment is warranted in favor of the Plaintiff where the evidence shows Title IX liability and "no rational trier of fact" could conclude otherwise.); *see DeGroote v. Arizona Bd. of Regents*, CV-18-00310-PHX-SRB, 2020 WL 10357074, at *9 (D. Ariz. Feb. 7, 2020) (finding in

favor of the Plaintiff as a matter of law on all elements of Plaintiff's Title IX deliberate indifference claim except for impact to educational opportunities.

## I.    Allowing UW Football Player 1 a One-Party Fact-Finding Proceeding Constituted an Erroneous Outcome in Violation of Title IX

As the Court recognized in its *Order Granting in Part and Denying in Part Defendant's Motion to Dismiss*, overturning a disciplinary outcome and readmitting a student due to his status as a star men's football player gives rise to the inference that the resulting harassment by UW was gender based.  [Doc. 047 at pp. 10-11].  As those facts have clearly borne out in discovery, summary judgment is warranted.

Title IX provides a cause of action to plaintiffs who suffer harm resulting from a university's disciplinary proceeding being unlawfully tainted by gender bias.  *Yusuf v. Vassar College,* 35 F.3d 709, 715-16 (2nd Cir. 1994).  An educational institution violates its Title IX duties where it reaches an "erroneous outcome" in a disciplinary proceeding as a result of discrimination "on the basis of sex." *Id.; see Doe v. Purdue Univ*., 928 F.3d 652, 668 (7th Cir. 2019) .  A plaintiff makes an erroneous outcome showing where she introduces facts sufficient to cast "articulable doubt on the accuracy of the outcome of the disciplinary proceeding," and shows that "gender bias was a motivating factor" in the school's reaching that erroneous outcome.  *Yusuf*, 35 F.3d at 715-16; *Doe v. Trs. of Boston College*, 892 F.3d 67 (1st Cir. 2018).  A bias based on gender need not be the only motivating factor.  *See Yusuf*, 35 F.3d at 715 (finding that "…Title IX bars the imposition of university discipline where gender is *a* motivating factor in the decision to discipline," and citing the Civil Rights Act of 1991's language that an unlawful employment practice is established when "sex was a motivating factor for any employment practice, *even though other factors also motivated the practice*") (emphasis added).

7

A.

████████████████████████████████████████████████████

The first prong of an erroneous outcome claim is the introduction of evidence that illustrates an "articulable doubt" as to the accuracy of the outcome of the underlying disciplinary proceeding. *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 953 (N.D. Ill. 2017), aff'd, 933 F.3d 849 (7th Cir. 2019). To meet this standard, a plaintiff may "point to particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of … witnesses, particularized strengths of [a claim], *or ... particular procedural flaws affecting the proof.*" *Yusuf*, 35 F.3d at 715 (emphasis added).

████████████████████████████████████████████████████

. Courts have found a showing of "articulable doubt" with far less. Articulable doubt exists in disciplinary rulings where the underlying proceeding relied on an evidentiary record that blatantly favors one party over the other. *See Doe v. Washington & Lee Univ.*, 6:14-CV-00052, 2015 WL 4647996, at \*10 (W.D. Va. Aug. 5, 2015). In *Washington & Lee University,* the plaintiff, John Doe, had been found responsible for sexual misconduct, but the university's proceeding had been subjected to a "host of flaws," "ranging from critical omissions in … witness summaries" to a "failure to consider [certain relevant] evidence." *Id.* In that case, the hearing in question was devoid of direct testimony, and the decision-makers relied entirely on summaries of witness statements, and Plaintiff's objections to their incompleteness were

8

dismissed. *Id.* at 6-7. The university in *Washington & Lee* not only relied on "several alleged inconsistencies in Jane Doe's testimony," it also barred John Doe from introducing his own evidence regarding, among other things, his subsequent consensual sexual relationship with Jane Doe. *Id.* at *7. The court found that the facts were "sufficient … to cast doubt on the accuracy of the outcome reached in the proceeding against him." *Id.* at 10; *see Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (plaintiff adequately alleged erroneous outcome where school failed to investigate or consider witnesses and evidence identified by plaintiff.)



Title IX's prohibitions on gender discrimination cannot be so easily circumvented.

The blatant procedural bias obviously cut in favor of the UW football player and raises an undeniable articulable doubt in the accuracy of the Chancellor's Restoration Decision.

2.

To engage in a process that bars one party from all participation sets a new high-water mark of fundamental unfairness in campus disciplinary proceedings. In *Purdue University,* the plaintiff alleged that he had been subjected to a biased and "fundamentally unfair" disciplinary proceeding, ultimately resulting in an erroneous outcome. *Purdue*, at 928 F.3d at 663-64. On appeal, while the Seventh Circuit declined there to follow the traditional "doctrinal test," the hallmarks of the two prongs remained. John Doe raised an articulable doubt in the correctness of

the underlying proceeding's outcome given its fundamental unfairness, which was linked to a bias based on gender. To wit, the plaintiff received notice of a proceeding commenced against him, but none of the evidence considered therein was disclosed to him. *Id* at 663, citing *Goss v. Lopez*, 419 U.S. 565, 580, 95 S. Ct. 729, 739 (1975) ("(F)airness can rarely be obtained by secret, one-sided determination of facts decisive of rights."). ████████████████████████████████

████████████████████████ the deciding members of the disciplinary panel in *Purdue* credited one party "based on her accusation alone, given that they took no other evidence into account," going so far as "refus[ing] to hear from John's witnesses." 928 F.3d at 669; *see Washington & Lee Univ.,* 2015 WL 4647996*, at \*10* (Plaintiff raised an articulable doubt on the accuracy of the outcome reached in the proceeding where the disciplinary procedures were so unfair that they amounted to a "practice of railroading".); *Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 748 (S. D. Ohio 2014) (Allegations of unfair disciplinary hearing that failed to comply with school policies were actionable under Title IX erroneous outcome and deliberate indifference claims.).

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████. The decision is particularly striking given Ms. Hasselbacher's extensive Title IX background and training versus Chancellor Blank's periodic online trainings. PPFF ¶¶ 13-22, 133-134.





(*see Miami Univ.*, 882 F.3d 579, 592-93 (6th

Cir. 2018) (Evidence that a hearing panel-member was "mistaken about the applicable standard of consent" cast "some articulable doubt on the accuracy of the outcome of [the] disciplinary

hearing.)), ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

B. <u>Gender bias in favor of the men's football team was indisputably a motivating factor behind the erroneous outcome.</u>

The outcome of Player 1's Petition Restoration was, in no small part, the result of prioritizing of the men's football team over the educational environment of the female students. The second prong of an erroneous outcome claim requires a Plaintiff to show a causal nexus between the flawed outcome of the underlying proceeding and a bias on the part of the school that is based on gender. *Purdue Univ.*, 928 F.3d at 669-70; *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016), *see Lozano v Baylor Univ.*, 408 Supp.3d 861, 882 (W.D. Tex. 2019) (Plaintiff plausibly alleged Title IX selective enforcement bias favoring the men's football team in reports of rape.)   In determining whether there is a plausible inference that the educational institution was influenced by a gender-based bias, a court must analyze the facts in totality. *See Purdue Univ.,* 928 F.3d at 667-70 (put together, a school panel crediting a female student's account without hearing directly from her, declining to hear any testimony from a male student's witnesses, and accepting the involvement of a victim-advocacy center with what appeared to be an anti-male slogan, was enough to raise the presumption that gender bias played a role in the panel's ultimate determination).   As the Second Circuit noted in *Columbia University*, a university "that adopts, even temporarily, a policy of bias in favoring one sex over the other in a disciplinary dispute, doing so in order to avoid liability or bad publicity, has practiced sex discrimination, notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias against that particular sex." 831 F.3d 46, 58 n. 11 (2d Cir. 2016).   Where the school decision-maker chooses to accept one party's version of events and "decline[s] even to explore the testimony of [the

14

other's] witnesses," this "gives plausible support to the proposition that they were motivated by bias in discharging their responsibilities to fairly investigate and adjudicate..." *Id.* at 57; *see also Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 (2nd Cir. 2019) (In Title VII context, "clearly irregular" adjudicative processes which included barring one party's testimony and witnesses supported *prima facie* sex discrimination.)

Here, the undisputed evidence explained below shows much more than a plausible inference. ███████████████████████████      ██████████████████████

████████████████████████████████████████████████████████████

███

   *1.*  █████████████████████████████████████████████████

   ██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

   ████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████

Mr. Kellner is, in Chancellor Blank's own words, a "long-time, very major donor and friend of the [football] program" who usually watches the football games from the sideline of the field with the UW football team and its coaches.  PPFF ¶ 155.  Mr. Kellner was a "major donor" to the renovations of UW's football stadium, Camp Randall Stadium, and the athletic director and football program are headquartered in "Kellner Hall," an addition to Camp Randall that was made possible in part by Mr. Kellner's donations and is named in his honor. PPFF ¶ 156.  Mr. Kellner is a long-time close friend of then-athletic director and former UW legendary football coach Barry Alvarez. PPFF ¶ 157.  The year before Plaintiff reported being raped, Mr. Kellner pledged 25 million dollars to UW. PPFF ¶ 158. According to Chancellor Blank, however, that money is scheduled to be paid out over time, and Mr. Kellner could always revoke his gift. *Id.*



C. Conclusion

The fact stated herein are not disputed. The one-sided nature of the retrial and the inconsistencies inherent in its finding give rise to a clear articulable doubt in the correctness of that finding, and there can be no doubt that the gender-based bias that influenced that decision was due to "Football."

**II.     UW's One-Party Retrial of A Disciplinary Outcome Constitutes Deliberate Indifference to Sexual Harassment**

The actions taken by UW to supplant its Title IX proceeding with the one-sided retrial display manifest deliberate indifference to the hostile educational environment suffered by Plaintiff. Student on student sexual harassment gives rise to Title IX liability where the university (1) exercises substantial control over both the harasser and the context in which the harassment occurs; (2) has actual knowledge of, and (3) is deliberately indifferent to, (4) harassment that is so severe, pervasive, and objectively offensive (5) that it deprives the student-victim of access to the educational benefits or opportunities provided by the school. *Davis*, 526 U.S. 629 (1999); *Doe v. St. Francis. Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012).

D. UW exercised control over the harasser and context in which plaintiff's harassment occurred.

The first prong of deliberate indifference Title IX liability is premised on the defendant-school's having "substantial control over both the harasser and the context in which the known harassment occurs." *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 512 (7th Cir. 2010).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ A school "undoubtedly" has control over its students during the academic year. *L.E. v. Lakeland Joint Sch. Dist. #272*, 403 F. Supp. 3d 888, 900 (D. Idaho 2019); *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 630, 119 S. Ct. 1661, 1665, 143 L. Ed. 2d 839 (1999)  (a school has requisite control over harasser, "for it has disciplinary authority over its students").

A school also has the requisite control over the context of harassment where a Title IX plaintiff suffers on-campus hostile environment following sexual violence by one student against another. *Doe v. Derby Board of Education*, 451 F. Supp. 2d 438, 445 (D. Conn. 2006) (where

assault occurred off-campus, school had requisite control over plaintiff's vulnerability to harassment on campus, even where perpetrator never directly harassed plaintiff again. Wherever the initial sexual violence may have occurred, the defendant-institution is responsible "for the post-assault school situation" given its control over the students and their educational environment. *Lakeland Joint Sch. Dist. #272*, 403 F. Supp. 3d at 900-01. ██████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████

E. ████████████████████████████████████████████████████████████████████

A university's notice of the underlying harassment must be actual rather than constructive, and the Seventh Circuit has focused "on reports or observations in the record of inappropriate behavior to determine when school officials had actual notice." *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist*. 163, 315 F.3d 817, 823 (7th Cir. 2003).

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████

F. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ As here, where a school's

response to harassment is clearly unreasonable in light of the known circumstances, it has acted with deliberate indifference, subjecting it to Title IX liability. *Davis*, 526 U.S. at 648–49; *Landon ex rel. Munici v. Oswego Unit Sch. Dist. #308*, 00 C 1803, 2001 WL 649560, at \*5 (N.D. Ill. June 8, 2001). And under circumstances such as these, there is "no reason why courts on a motion for summary judgment could not identify a response as … 'clearly unreasonable' as a matter of law." *Doe 4 v. Freeburg Cmty. Consol. Sch. Dist. No. 70*, 279 F. Supp. 3d 807, 814 (S.D. Ill. 2017) citing *Davis*, 526 U.S. at 649 (internal quotations removed).

The Seventh Circuit made clear in *Doe v. Purdue University* that regardless of which "doctrinal test" is imposed on interpretation of the statute, be it "deliberate indifference" or "erroneous outcome," Title IX liability stems from a university's discrimination against a student on the basis of sex. 928 F.3d 652, 667 (7th Cir. 2019). Where a school's disciplinary proceeding amounts to such gender-based discrimination, the school has violated Title IX. *Id.* at 668; *see Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 748 (S. D. Ohio 2014) (allegations of unfair disciplinary hearing were actionable under both Title IX erroneous outcome and deliberate indifference claims). Likewise, where a school has made a Title IX determination that it subsequently ignores, it can be acting clearly unreasonably under the known circumstances. *Pogorzelska v. VanderCook College of Music*, 442 F. Supp. 3d 1054, 1064 (N. D. Ill. 2020).

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

In *Freeburg Community Consolidated School District*), the District Court of the Southern District of Illinois granted the *plaintiff's* motion for summary judgment upon review of the

defendant school district's "clearly unreasonable" response to known sexual harassment. 279 F. Supp. 3d 807, 814-15 (S. D. Ill. 2017). In reviewing the school district's response to sexual abuse of the plaintiff, the court concluded that "at a minimum," the school's failure to provide a response to the plaintiff's complaint, thereby denying him any role in their disciplinary proceedings, "was clearly unreasonable, and a rational factfinder could not conclude otherwise. It amounted to an official decision not to remedy the situation." *Id.* (citing *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 290 (1998) (internal quotations removed)).

G.

A defendant-institution has acted with deliberate indifference in the form of a failure to adequately respond to known harassment where the school's official decision "causes students to undergo harassment or makes them more vulnerable to it." *Pogorzelska*, 442 F. Supp. 3d at 1062; *Hill v. Cundiff*, 797 F.3d 948, 973 (11th Cir. 2015).

Specifically, courts have repeatedly held that deliberate indifference on the part of the educational institution will result in heightened vulnerability to harassment where a student is forced to attend school in fear of encountering her or his harassers on campus. *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1105 (10th Cir. 2019) (fear of encountering student-rapists caused plaintiffs actionable harm); *Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 274 (4th Cir. 2021) (school may be held liable under Title IX if "its response to a single incident of severe sexual harassment … was clearly unreasonable and thereby made the plaintiff more vulnerable to future harassment or further contributed to the deprivation of the plaintiff's access to educational opportunities"); *Joyce v. Wright State Univ.*, 2018 WL 3009105, at \*7-\*8 (S.D. Ohio) ("it could be said that

[university's] alleged failure to enforce the expulsion order made [plaintiff] 'vulnerable' to additional incidents of sexual assault and sexual harassment…"); *Kelly v. Yale Univ.*, 2003 WL 1563424, at *4-*5 (D. Conn.) (plaintiff adequately pled her reported "discomfort and fear that she would feel if she encountered" the alleged assailant—made her "liable or vulnerable" to her assailant's harassment, even though no further actual harassment occurred); *Doe 1 v. Howard Univ.*, 396 F.Supp.3d 126, 138 (D.D.C. 2019) (finding plaintiff's allegations that "she felt depressed and constantly fearful of encountering her rapist on campus" sufficient to demonstrate she was vulnerable to future harassment); *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F.Supp.2d 438, 440, 444-45 (D. Conn. 2006 (holding that school could be liable under Title IX for its post-assault deliberate indifference which "constantly exposed" the plaintiff "to the possibility of an encounter with" the perpetrator, even if there was no evidence that the perpetrator actually harassed the victim after she reported rape).



23

H. ████████████████

Under Title IX, Plaintiff must show that she was subjected to "harassment that is so severe, pervasive and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. Evaluating whether harassment rises to the level of severe and pervasive "depends on a constellation of surrounding circumstances, expectations, and relationships." *Id.* at 651. Ultimately, the harassment must be "sufficiently pervasive or severe so as to alter the conditions of [the plaintiff's] education." *Albiez v. Kaminski*, 09-CV-1127, 2010 WL 2465502, at *7 (E.D. Wis. June 14, 2010).

As multiple courts have found across the country, a victim of sexual assault who is forced to attend school with her assailant suffers from a hostile educational environment that deprives her of educational opportunities. *See Farmer*, 918 F.3d at 1105 (where plaintiffs' fear of running into their assailants manifested in "specific" and "reasonable" "actions that deprived them of the educational opportunities offered to other students," students adequately alleged a hostile educational environment); *Doe ex rel. Doe v. Coventry Bd. of Educ.*, 630 F.Supp.2d 226, 233 (D. Conn. 2009) (stating that a reasonable jury could find that funding recipient forcing high school victim of sexual assault to attend school with her assailant amounted to sufficiently severe harassment to deprive victim of access to educational opportunities, based on "potential interactions" between victim and the student harasser); *Joyce v. Wright State Univ.*, 2018 WL

24

3009105 at *8 (S.D. Ohio Jun. 15, 2018) (university's failure to enforce the expulsion such that plaintiff continued to risk confronting her rapist may constitute actionable creation of a hostile environment).



The hallmark of deliberate indifference is where a school knows the right thing to do, and for reasons of preference, or apathy, or money, or sports, they choose the opposite.

## CONCLUSION

No questions of material fact exist as to UW's liability under Title IX. UW deliberately chose the men's football program over its obligations to one of its most vulnerable students, and Plaintiff and her education suffered as a result. For the forgoing reasons, Plaintiff asks this Court to grant this Motion and the sole issue for trial should be Plaintiff's damages.

Dated:  April 8, 2022.

Respectfully submitted,

HUTCHINSON BLACK AND COOK, LLC

By: ___*/s/ John Clune*_____
     John Clune
     Christopher Ford
     Colleen Koch
     921 Walnut Street, Suite 200
     Boulder, CO  80302
     (303) 442-6514
     clune@hbcboulder.com
     ford@hbcboulder.com


DAVIS & PLEDL, SC

By: *_/s/ Robert Theine Pledl_*_____
     Robert (Rock) Theine Pledl
     Victoria Davis Davila
     1433 N. Water Street – Suite 400
     Milwaukee, WI 53202
     Telephone: (414) 488-1354
     rtp@davisandpledl.com
     vldd@davisandpledl.com

     *Attorneys for Plaintiff*