IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**JANE DOE**,                                                        Case No.: 3:20-CV-00856 - WMC

      Plaintiff,

v.

**BOARD OF REGENTS, THE UNIVERSITY OF WISCONSIN**.

      Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S ADDITIONAL PROPOSED FINDINGS OF FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff hereby responds to the Defendant Board of Regents of the University of Wisconsin System's additional proposed findings of fact in opposition to Plaintiff's Motion for Summary Judgment ("Defendant's PFF") as follows:

**Female American Football Players**

1. Women athletes participate in American football at the college level. (Hoechst Decl. Ex. 166, at 6-7.)

**RESPONSE: Plaintiff disputes this paragraph.**

UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.

To the extent that the Court is inclined to consider "Wikipedia," it should further consider the Wikipedia article on the sport in general, found at https://en.wikipedia.org/wiki/American_football. *See* **Declaration of Sarah Robertson,**

**Reply Exhibit 6.** The https://en.wikipedia.org/wiki/American_football article states, "As of 2012, nearly 1.1 million high school athletes and 70,000 college athletes play the sport in the United States annually." The Wikipedia article relied upon by UW identified twenty-one women who have played collegiate football between 1997 and 2021. Using Wikipedia, somewhere over 99.99% of college football players are male. More importantly, no woman has ever played football at UW. PPFF at ¶ 147.

2. Katie Hnida was the third woman to score in a college football game, following Liz Heaston, who played for Willamette University, and Ashley Martin, who played for Jacksonville State University. (Hoechst Decl. Ex. 167, at 1.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

3. Hnida first enrolled at the University of Colorado Boulder and played as a walk-on freshman placekicker for the Colorado Buffaloes football team. (Hoechst Decl. Ex. 167, at 1.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

4. Hnida was the second woman to suit up for games in Division I football and the first to suit-up for a bowl game when Colorado went to the 1999 Insight.com Bowl. (Hoechst Decl. Ex. 167, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

5. Hnida transferred to the University of New Mexico and played for the New Mexico Lobos football team as a walk-on placekicker. (Hoechst Decl. Ex. 167, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

6. Hnida became the first woman to play in a Division I-A bowl game when she played in the 2002 Las Vegas Bowl against UCLA. Hnida kicked an extra point that was blocked. (Hoechst Decl. Ex. 167, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

7. In 2003, Hnida became the first woman to score in a Division I-A game when she kicked two extra points against Texas State University. (Hoechst Decl. Ex. 167, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

8. Female athlete KaLena Barnes kicked a 35-yard punt for the University of Nebraska Cornhusker's football team during their spring game in 2000. (Hoechst Decl. Ex. 168, at 1.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

9. Barnes was the first woman to work out with the Nebraska football team. (Hoechst Decl. Ex. 168, at 1.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

10. Barnes stated, "I wanted to make things go as smoothly for me as possible. Keep in mind I wanted to be like any other guy on the team. I didn't want to make a big deal out of me being a female." (Hoechst Decl. Ex. 168, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

11. Tonya Butler is the first woman to score a field goal in a college football game when she played as a placekicker for the University of West Alabama Tigers, a NCAA Division II team. (Hoechst Decl. Ex. 169, at 1.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

12. Butler played as the placekicker for West Alabama during the 2003 and 2004 seasons. (Hoechst Decl. Ex. 169, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

13. Butler made 13 of 19 field goal attempts and 48 of 53 extra point attempts. (Hoechst Decl. Ex. 169, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

14. Butler scored 50 points during the 2003 season and was named special teams captain for both of her seasons with the team. (Hoechst Decl. Ex. 169, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

15. Butler's helmet, jersey and cleats were displayed at the NCAA Hall of Champions in Indianapolis in recognition of her accomplishments as a student athlete. (Hoechst Decl. Ex. 169, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

16. Butler held the record for the most points scored by a female college football player with 87 points through the 2010 season. Brittany Ryan established the new record following Butler. (Hoechst Decl. Ex. 169, at 2.)

**RESPONSE: Plaintiff disputes this paragraph.**

**UW refers to a declaration from a UW representative who has reviewed "Wikipedia" and a "Wikipedia" article. This paragraph therefore relies on impermissible hearsay. F.R.E 801, 802.**

### Tonya Schmidt's response to the January 15, 2019 incident

17. Tonya Schmidt is employed as Assistant Dean of Students and Director of the Office of Student Conduct and Community Standards (OSCCS). Schmidt started this role in 2007. (Schmidt Decl. ¶ 1.)

RESPONSE: **Admit.**

18. Schmidt leads the OSCCS, and investigates and adjudicates potential violations of the codes of conduct found in Chapters UWS 14, 17, and 18 of the Wisconsin Administrative Code. (Schmidt Decl. ¶ 2.)

RESPONSE: **Admit.**

19. Schmidt also serves on the Threat Intervention Team. The Threat Intervention Team assesses and coordinates response to threatening situations at UW-Madison by developing strategies to assess, intervene, interrupt, and mitigate threats posed by students, faculty, staff, visitors, and others. (Schmidt Decl. ¶ 3.)

RESPONSE: **Admit.**

20. In Schmidt's role as Assistant Dean of Students and Director of the OSCCS, she knew that UW-Madison issued a no contact directive to Player 1 regarding the Plaintiff Jane Doe. (Schmidt Decl. ¶ 4.)

RESPONSE: **Admit.**

21. Schmidt served as the staff person to the Nonacademic Misconduct Hearing Committee for the January 15, 2019, hearing on the nonacademic misconduct charges against Player 1. (Schmidt Decl. ¶ 5.)

RESPONSE: **Admit.**

22. As the staff person to the Hearing Committee, Schmidt was primarily in the hearing room (where the Hearing Committee and Player 1 were located) and responsible for making sure the recording was on during the hearing and paused during the breaks. (Schmidt Decl. ¶ 5.)

RESPONSE: **Admit.**

23. During the hearing, Schmidt also checked in with the complainants (Doe and Complainant 1) and their advisors, who were in a separate room and appearing via Skype, to make sure everything was working properly and to troubleshoot any technology issues. (Schmidt Decl. ¶ 6.)

RESPONSE: **Admit.**

24. On one of the occasions that Schmidt was in the complainants' room, Doe's advisor, Amy Bogost, told her that Player 1 approached Doe, and Bogost was concerned because it had upset Doe. Schmidt told Bogost that she would talk to Player 1. (Schmidt Decl. ¶ 7.)

RESPONSE: **Plaintiff disputes this paragraph.**

**Ms. Schmidt's declaration at ¶ 7 regarding her statement to Ms. Bogost is inadmissible hearsay for which Defendant offers no exception or exemption. F.R.E. 801, 802.**

**Without waiving the hearsay objection, Plaintiff admits that Ms. Schmidt's declaration contains this statement.**

25. After Bogost informed Schmidt of the situation, Schmidt immediately spoke to Player 1. Schmidt reminded Player 1 that if he saw the complainants (Doe or Complainant 1), he needed to walk in the other direction and remove himself from the area. (Schmidt Decl. ¶ 8.)

RESPONSE:  **Plaintiff disputes this paragraph.**

**Ms. Schmidt's declaration at ¶ 8 regarding her statement to Player 1 is inadmissible hearsay for which Defendant offers no exception or exemption.  F.R.E. 801, 802.**

**Without waiving the hearsay objection, Plaintiff admits that Ms. Schmidt's declaration contains this statement**

### Student 1's Petition for Readmission

26. In 2017, a male student (Student 1) was expelled from the University of Wisconsin – Madison following allegations of sexual misconduct on campus. (4/27/22 Mayrl Supp. Decl. ¶ 3.)

RESPONSE: **Admit.**

27. Student 1 filed a petition for readmission. In accordance with UWS 17.18, the complainant in Student 1's case was not notified about the petition and did not participate in or respond to the petition. (4/27/22 Mayrl Supp. Decl. ¶ 4.)

RESPONSE: **Plaintiff disputes this paragraph.**

**Defendant's ¶ 27 includes a purported statement of law regarding UWS 17.18, not fact, and therefore that portion of the paragraph does not warrant a factual response.**

**Plaintiff admits that Mr. Maryl's declaration states that Student 1 filed a petition for readmission and that the complainant was not notified about the petition.**

28. Chancellor Blank denied his petition and there was no change in the sanction or circumstance. (4/27/22 Mayrl Supp. Decl. ¶ 5.)

RESPONSE: **Plaintiff admits that Mr. Maryl's declaration contains this statement.**

29. Because the outcome of the petition did not change and the student remained expelled, Mayrl did not notify the complainant of the outcome of the petition for readmission. (4/27/22 Mayrl Supp. Decl. ¶ 6.)

**RESPONSE: Plaintiff disputes this paragraph.**

**To the extent Defendant's ¶ 29 relies on UWS 17.18, it is a purported statement of law, not fact, and therefore does not warrant a factual response.**

**Plaintiff does not dispute that Mr. Mayrl's declaration states that he did not notify the complainant of the outcome of the petition.**

### Dane County Circuit Court Case No. 18CF1694

30. Surveillance footage used during the preliminary hearing in Dane County Circuit Court Case No. 18CF1694 was sealed by the Court on September 18, 2018. (Hoechst Decl. Ex. 170.)

**RESPONSE: Plaintiff does not dispute the language in the Court's Order. Plaintiff disputes any characterization that the Order prevented Player 1 from providing the footage to UW, which it did not. Per WI Stat. § 801.21(1)(b) "'Seal' means to order that a portion of a document or an entire document shall not be accessible to the public."**

### Other Granted Petitions for Restoration of Rights

31. Chancellor Blank granted two other student's petitions for restoration of rights: Petitioner 1 and Petitioner 2. (Hoechst Decl. Ex. 171 at 2-3, Def's Resp. to Pl's Second Interrogatories, Interrogatory No. 13)

**RESPONSE: Plaintiff does not dispute that UW's discovery responses state that Chancellor Blank granted petitions for restoration of rights to Petitioner 1 and Petitioner 2.**

32. Petitioner 1 filed his petition under UWS 17.18 on January 9, 2015. Chancellor Blank granted Petitioner 1's petition on January 16, 2015, which allowed Petitioner 1 to enroll in the spring 2015 semester at UW-Madison. (Hoechst Decl. Ex. 171 at 2-3, Def's Resp. to Pl's Second Interrogatories, Interrogatory No. 13)

**RESPONSE: Plaintiff does not dispute that UW's discovery responses contain the information in this paragraph.**

33. Petitioner 2 petitioned for restoration of rights on May 27, 2015. Chancellor Blank granted the petition on July 7, 2015, which allowed Petitioner 2 to enroll in the fall 2015 semester at UW-Madison. (Hoechst Decl. Ex. 171 at 2-3, Def's Resp. to Pl's Second Interrogatories, Interrogatory No. 13)

**RESPONSE: Plaintiff does not dispute that UW's discovery responses contain the information in this paragraph.**

### Player 1's Petition for Restoration of Rights

34. Chancellor Blank did not consider Doe's or Player 1's gender when she decided Player 1's appeal and Petition. (Blank Decl. ¶ 55, dkt. 112:13.)

RESPONSE: **Plaintiff disputes this paragraph.**

**Plaintiff admits that Chancellor Blank's Declaration [Doc. 112] states the above. Plaintiff disputes the accuracy of this statement, however, as Chancellor Blank's Restoration Decision was based on Player 1's status as a football player. See PPFF ¶¶ 137-166, 196-216.**

### Doe's Academic Performance

35. Doe received the worst grade of her undergraduate studies in fall semester 2017— a BC (i.e., a B–) in microeconomics, Econ 101. (Doe Dep. Ex. 3 at125, dkt. 97-3:10.)

RESPONSE: **Admit.**

Dated: May 13, 2022

Respectfully submitted,

HUTCHINSON BLACK AND COOK, LLC

By: ___*/s/ John Clune*___
John Clune
Christopher Ford
921 Walnut Street, Suite 200
Boulder, CO  80302
(303) 442-6514
clune@hbcboulder.com
ford@hbcboulder.com

DAVIS & PLEDL, SC

By: */s/ Robert Theine Pledl*
Robert (Rock) Theine Pledl
Victoria Davis Davila
1433 N. Water Street – Suite 400
Milwaukee, WI 53202
Telephone: (414) 488-1354
rtp@davisandpledl.com
vldd@davisandpledl.com

*Attorneys for Plaintiff*